UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 4:14-CR-00175 AGF (DDN) |
| MARK PALMER *et. al*, | ) |
| | ) |
| Defendant. | ) |

**MOTION TO DISMISS COUNT I OF THE INDICTMENT ON GROUNDS THAT THE INDICTMENT FAILS TO STATE AN OFFENSE AND THAT 21 U.S.C. § 813 AND 21 U.S.C. 802(32)(A) ARE UNCONSTITUTIONALLY VAGUE AS APPLIED TO DEFENDANTS OR, IN THE ALTERNATIVE, TO STRIKE CERTAIN SUBSTANCES FROM THE INDICTMENT**

COME NOW Defendants, by and through their respective undersigned counsel, and pursuant to Federal Rules of Criminal Procedure 12(b) move this Court to dismiss Count I of the Indictment or in the alternative to strike certain substances from the Indictment. In support of their Motion, Defendants state as follows:

**I.     INTRODUCTION**

Under Count I of the Indictment Defendants are charged with distributing Schedule I controlled substances and "Schedule I controlled substance analogues" in violation of Title 21, U.S.C. §§ 841(a)(1) and 813.  The Controlled Substance Analogue Enforcement Act in 21 U.S.C. § 813 ("the Analogue Act") became effective on October 27, 1986 and provides in general terms for the regulation of analogues, or chemically similar compounds, of controlled substances to be treated for the purpose of any federal law as schedule I controlled substances.

After years of struggling to prosecute synthetic cannabinoids as controlled substance analogues under the Controlled Substances Act, the DEA sought clearer scheduling of such

substances from Congress.  In response, Congress passed S.B. 3187 on July 9, 2012, a date within the period of the alleged conspiracy in Count I of the Indictment.  The passage of S.B. 3187 and the resulting codification of 21 U.S.C. 812(c)(d)(2)(A) greatly changed the landscape against which synthetic cannabinoids and stimulants may be prosecuted and made the prosecution of such substances under the Analogue Act no longer appropriate.

This later-enacted provision codified at 21 U.S.C. 812(c)(d)(2)(A) is exclusive to cannabinoids and contains explicit directives and definitions of those categories of substances deemed to be analogues to cannabis.  These definitions are distinct from the more generally applicable guidelines set forth 26 years earlier in the Analogue Act, and evince a clear congressional intent that analysis and prosecution of synthetic substances in the cannabinoid family shall fall exclusively within their ambit.

Specifically, the Analogue Act, 21 U.S.C. § 813 provides:

> "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

"Controlled Substance Analogues" are generally defined as follows:

> *"Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance—*
>     *(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;*
>     ***(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or***
> ***(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II."*** (Emphasis added)

21 U.S.C. § 802(32)(A).

By contrast, statutory definition of "cannabimimetic agents," or analogues specific to cannabis, are defined" in 21 U.S.C. 812(c)(d)(2)(A), which became effective on July 9, 2012, and provides:

> "21 USC § 812(c)(d)(2)(A) The term "cannabimimetic agents" means any substance that is a **cannabinoid receptor type 1 (CB1 receptor) agonist as demonstrated by binding studies and functional assays** within any of the following structural classes:
>
> (i) 2-(3-hydroxycyclohexyl)phenol with substitution at the 5-position of the phenolic ring by alkyl or alkenyl, whether or not substituted on the cyclohexyl ring to any extent.
>
> (ii) 3-(1-naphthoyl)indole or 3-(1-naphthylmethane)indole by substitution at the nitrogen atom of the indole ring, whether or not further substituted on the indole ring to any extent, whether or not substituted on the naphthoyl or naphthyl ring to any extent.
>
> (iii) 3-(1-naphthoyl)pyrrole by substitution at the nitrogen atom of the pyrrole ring, whether or not further substituted in the pyrrole ring to any extent, whether or not substituted on the naphthoyl ring to any extent.
>
> (iv) 1-(1-naphthylmethylene)indene by substitution of the 3-position of the indene ring, whether or not further substituted in the indene ring to any extent, whether or not substituted on the naphthyl ring to any extent.
>
> (v) 3-phenylacetylindole or 3-benzoylindole by substitution at the nitrogen atom of the indole ring, whether or not further substituted in the indole ring to any extent, whether or not substituted on the phenyl ring to any extent.
>
> (B) Such term includes—
>
> (i) 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP–47,497);
> (ii) 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol or CP–47,497 C8-homolog);
> (iii) 1-pentyl-3-(1-naphthoyl)indole (JWH–018 and AM678);
> (iv) 1-butyl-3-(1-naphthoyl)indole (JWH–073);
> (v) 1-hexyl-3-(1-naphthoyl)indole (JWH–019);
> (vi) 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH–200);
> (vii) 1-pentyl-3-(2-methoxyphenylacetyl)indole (JWH–250);
> (viii) 1-pentyl-3-[1-(4-methoxynaphthoyl)]indole (JWH–081);
> (ix) 1-pentyl-3-(4-methyl-1-naphthoyl)indole (JWH–122);
> (x) 1-pentyl-3-(4-chloro-1-naphthoyl)indole (JWH–398);
> (xi) 1-(5-fluoropentyl)-3-(1-naphthoyl)indole (AM2201);
> (xii) 1-(5-fluoropentyl)-3-(2-iodobenzoyl)indole (AM694);
> (xiii) 1-pentyl-3-[(4-methoxy)-benzoyl]indole (SR–19 and RCS–4);

> *(xiv) 1-cyclohexylethyl-3-(2-methoxyphenylacetyl)indole (SR–18 and RCS–8); and*
> *(xv) 1-pentyl-3-(2-chlorophenylacetyl)indole (JWH–203)."*
>
> (Emphasis added).

In this statute Congress clearly defines exactly what characteristics must exist for a chemical to meet the statutory definition of a "cannabimimetic agent" (21 USC § 812(c)(d)(2)(A)). Each of the fifteen (15) "cannabimimetic agents" under 21 U.S.C. 812(c)(d)(2)(B) are listed solely because they meet this precise statutory definition. Such agents are not amenable to analysis or categorization under the broader, older provisions of the Analogue Act. Alleging that a substance is a controlled substance analogue of one (1) of the fifteen (15) "cannabimimetic agents" permanently scheduled in Schedule I of the Controlled Substances Act, 21 U.S.C. 812(c)(d)(2)(B) contradicts the legislative intent of 21 U.S.C. 812(c)(d)(2)(A).

The Indictment in this case does exactly that. The Indictment alleges that four (4) out of the six (6) substances listed in Count I of the Indictment are "controlled substance analogues" of specific "cannabimimetic agents" listed under 21 U.S.C. 812(c)(d)(2)(B). Those four substances are as follows:

a) N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide, also known as "AKB48" and "APINACA"[1];

b) [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone,   also known as "XLR-11" and "5-flouro-UR-144"[2];

---

[1] On May 16, 2013, "AKB48" became temporarily scheduled into Schedule I of the Controlled Substances Act pursuant to 21 U.S.C. § 811(h).
[2] On May 16, 2013, "XLR11" became temporarily scheduled into Schedule I of the Controlled Substances Act pursuant to 21 U.S.C. § 811(h).

c)  (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone, also known as "UR-144"; and

d)  Quinolin-8-yl 1-(5-fluoropentyl)-iH-indole-3-caroxylate, also known as "5F-PB-22".

Under traditional statutory construction, the Defendants' conduct related to synthetic cannabinoids must only be analyzed under the more specific provisions of 21 U.S.C. 812(c)(d)(2)(A), and not under the broad and more confusing "substantially similar" definition of the old Analogue Act.  The Government's attempt to do otherwise in this case runs afoul of the most basic canons of statutory construction, and should not be endorsed by the Court.  Because analysis or prosecution of these substances under the Analogue Act as charged in the Indictment thwarts congressional intent, Count I of the Indictment must be dismissed.  Alternatively, the substances that have been improperly charged as analogues to separately-scheduled cannabimimetic agents must be stricken from the Indictment.

## II.   BACKGROUND

### A.  The Analogue Act.

The Analogue Act became effective on October 27, 1986.  In order for the Analogue Act to apply, the substance: (1) must not be scheduled as a controlled substance under the Controlled Substances Act; (2) must be "intended for human consumption"; and, (3) must meet the definition of "controlled substance analogue" under 21 U.S.C. § 802(32)(A).

The statutory definition of "controlled substance analogues" is provided within 21 U.S.C. § 802(32)(A), which contains two elements:  (1) "structure" element (underlined portion) as provided under "(i)"; and (2) "effect" element (**bold portion**) as provided under "(ii)" and "(iii)". The courts have held that in order to meet the statutory definition, a substance must meet "(i)"

AND EITHER "(ii)" or "(iii)"[3].  Thus, a substance must meet BOTH the structure element, AND one of the two alternative effect elements.

The "structure" element requires that the substance have a "<u>substantially similar</u> chemical structure to the chemical structure of a controlled substance in schedule I or II."  The "effect" element requires either:  (1) the substance has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is <u>substantially similar</u> to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or, "with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is <u>substantially similar</u> to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II."

The Analogue Act places a series of burdens on the court and the government.  Joseph T. Rannazzisi (Deputy Assistant Administrator for the DEA Office of Diversion Control) best described these burdens in a statement for the record before the Senate Caucus on International Control.[4]  Mr. Rannazzisi's statement was made in support of the language (statutory definition of "cannabimimetic agents") submitted by his office, and provides, in part, as follows:

> "The major differences between a substance specifically controlled under the CSA and a substance treated as an analogue in terms of preventing diversion and abuse include:
>
> • Additional investigation is necessary on each and every potential analogue case to ascertain whether the substance was "intended for human consumption."
>
> • It is acceptable for a forensic chemist to present testimony regarding laboratory analysis results in order to identify a controlled substance, while

---

[3] *United States v. Washam*, 312 F.3d 926, 930 n. 2 (8th Cir. 2002); *United States v. McKinney*, 79 F.3d 105, 107-08 (8th Cir. 1996), *vacated on other grounds*, 520 U.S. 1226, 117 S.Ct. 1816 (1997).
[4] The statement is dated April 6, 2011, the date of the hearing on "Dangerous Synthetic Drugs."

additional testimony is necessary from experts in different scientific disciplines to establish that a particular substance is an analogue.

• In criminal prosecutions involving analogue substances, an additional burden is on the government to establish, through experts in the field of chemistry, that the substance is substantially similar in chemical structure to a schedule I controlled substance. This is by its nature an "opinion" and therefore subject to opposing views from other expert chemists.

• In criminal prosecutions involving analogue substances, an additional burden is on the government to establish, through experts in the field of pharmacology, that the substance is substantially similar in pharmacological activity to a schedule I controlled substance. Such expert testimony can be based on pharmacological models that are subject to opposing views from other expert pharmacologists.

• A single successful prosecution under the analogue provision of the CSA does not render the substance an analogue in subsequent prosecutions. Each prosecution must establish that the particular substance is an analogue under the statutory definition, as set out above.

Because of these considerations, <u>the current availability of the **"analogue"** process to prevent diversion and abuse of synthetic cannabinoids and stimulants is **not adequate to address the problem**, necessitating more assertive action through direct scheduling of these substances</u>."

(Emphasis added).

---

B. <u>The Statutory Definition of "Cannabimimetic Agents."</u>

On July 9, 2012 when Congress passed Senate Bill 3187 it provided a clear definition of "cannabimimetic agents" within 21 USC § 812(c)(d)(2)(A). It contains two elements: (1) "structure" element (<u>underlined portion</u>); and, (2) "effect" element (**bold portion**). In order for a chemical to be a "cannabimimetic agent," the chemical must meet both elements.

The "structure" element, 21 USC § 812(c)(d)(2)(A)(i-v), lists a total of seven (7)[5] broad structural classes.  In order to meet the structure element, a chemical's structure need only fall within one of those broad structural classes.

The "effect" element requires that the chemical be a "cannabinoid receptor type 1 agonist," which must be established using two scientific methods.  First, *binding studies* have been conducted on that chemical, with the results establishing that the chemical binds to a "cannabinoid receptor type 1."  Second, *functional assays* have been conducted on that chemical, with the results establishing that the chemical displays "agonist" behavior toward the "cannabinoid receptor type 1."  So, the effect element provides the targeted effect ("cannabinoid receptor type 1 agonist"), and also provides the two scientific methods ("binding studies" and "functional assays") that must be performed in determining whether that targeted effect has a potential to be exerted by the subject chemical.

21 U.S.C. § 812(c)(d)(2)(B) provides a list of fifteen (15) chemicals that meet the definition of "cannabimimetic agents."  As illustrated in Exhibit 1, each of the fifteen (15) chemicals falls within one of the seven structural classes.  If any of these chemicals did not fall within one of the classes, they would not have met the definition of "cannabimimetic agents" and would not have been listed under 21 USC § 812(c)(d)(2)(B).

The statute's legislative history supports this interpretation.  On September 30, 2011, the U.S. Department of Justice, Office of Legislative Affairs, submitted a letter (Exhibit 2) in support to the U.S. House of Representatives, Committee on the Judiciary.  This letter was signed by Assistant Attorney General Ronald Weich and provides, in part, as follows:

---

[5] 21 USC § 812(c)(d)(2)(A)(ii) and (v) each contain two (2) structural classes, bringing the total number of structural classes to seven (7).

"To address synthetic cannabinoid abuse, the bill names 15 unique substances that would be placed in schedule I; this list includes those temporarily scheduled by the DEA. Additionally, the bill creates five structural classes of substances collectively referred to as "cannabimimetic agents." In order for a substance to be a cannabimimetic agent, the substance **must**: 1) bind to the CB1 receptor[3]; **and** 2) meet any of the definitions for those structural classes. **If both criteria are met**, that substance will be a schedule I cannabimimetic agent controlled substance." (emphasis added)

## III. ARGUMENT

### A. THE RULES OF STATUTORY CONSTRUCTION PROHIBIT THE APPLICATION OF THE STATUTORY DEFINITION OF "CONTROLLED SUBSTANCE ANALOGUES" TO "CANNABIMIMETIC AGENTS"

#### 1. 21 USC § 812(c)(d)(2)(A) is the Exclusive Statutory Definition of the Term "Cannabimimetic Agents."

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 133 S.Ct. 1886, 1893 (2013) (citing *BP America Production Co. v. Burton*, 549 U.S. 84, 91, 127 S.Ct. 638, 166 L.Ed.2d 494 (2006). *Burgess v. U.S.*,553 U.S. 124 (2008) ("Statutory definitions control the meaning of statutory words….")).   Here, 21 USC § 812(c)(d)(2)(A) provides the statutory "definition" of the term "cannabimimetic agents."

"As a rule, a statutory definition which declares what a term 'means' excludes any meaning that is not stated." *Burgess v. U.S.*,553 U.S. 124 (2008); *Colautti v. Franklin*, 439 U.S. 379, 392–393, n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979.); s*ee also Groman v. Commissioner*, 302 U.S. 82, 86, 58 S.Ct. 108, 82 L.Ed. 63 (1937) (when an exclusive definition is intended the word 'means' is employed).  In *Burgess*, the United States Supreme Court based its ruling on the language within the statutory definition of "Felony Drug Offense," 21 USC § 802(44), which provides "**the term** 'felony drug offense' ***means*** an offense that is punishable by imprisonment

for more than one year." (emphasis added). Similar to the definition of "felony drug offense," 21 USC § 812(c)(d)(2)(A) provides: "**the term** 'cannabimimetic agent *__means__* any substance that…" (emphasis added), thereby declaring what the term "means." Accordingly, pursuant to *Burgess*, the definition contained in § 812(c)(d)(2)(A) declares what the term "cannabimimetic agents" *__means__*, and thereby excludes any meaning that is not stated.

There is no language within § 812(c)(d)(2)(A) extending the meaning of "cannabimimetic agents" to substances that may meet the separate statutory definition of "controlled substance analogues". It is therefore self-evident that the statutory definition of "cannabimimetic agents" explicitly excludes those substances that meet the statutory definition of "controlled substances analogues" because they must independently meet the definition of a cannabimimetic agent, and CANNOT therefore be an analogue. *Meese v. Keene*, 481 U.S. 465, 484–485, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987)("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"); See also *Stenberg v. Carhart*, 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) ("When a statute includes an explicit definition, we must follow that definition ...").

> **2.  The General Statutory Definition of "Controlled Substance Analogues" (21 U.S.C. § 802(32)(A)) Must Yield to the Specific Statutory Definition of "Cannabimimetic Agents" (21 USC § 812(c)(d)(2)(A)).**

21 USC § 812(c)(d)(2)(A) provides a specific statutory definition for "cannabimimetic agents", while 21 U.S.C. § 802(32)(A) provides only a general definition for "controlled substance analogues".

It is a principle of statutory construction that the specific governs the general. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065 (2012); *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)

*San Luis & Delta-Mendota Water Authority v. U.S. Dept. of the Interior,* 2015 WL 893365 (E.D.CA 2015).  The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one. *RadLAX Gateway Hotel, LLC*, at 132 S.Ct. 2065.

It has long been held that "specific terms prevail over the general in the same or another statute which otherwise might be controlling." *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S. Ct. 322, 323, 76 L. Ed. 704 (1932); *Nguyen v. United States*, 556 F.3d 1244, 1253 (11th Cir.2009) ("The canon is that a specific statutory provision trumps a general one.").  An ambiguous or general statutory provision enacted at an earlier time must yield to a specific and clear provision enacted at a later time.  *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").  "That is particularly true where…"Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Varity Corp. v. Howe*, 516 U.S. 489, 519, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (THOMAS, J., dissenting); see also HCSC–Laundry v. United States, 450 U.S. 1, 6, 101 S.Ct. 836, 67 L.Ed.2d 1 (1981) (per curiam) (the specific governs the general "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]"); *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*  529 U.S. 120, 133, 120 S.Ct. 1291 (2000) ("the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand").

It is important to note that there are similarities between the definition of "controlled substance analogues" (21 U.S.C. § 802(32)(A))  and that of "cannabimimetic agents" (21 USC § 812(c)(d)(2)(A)).  Both definitions are comprised of a structure prong (<u>underlined portion</u>), and an effect prong (**bold portion**).  However, as illustrated in the chart below, that is where the similarities between these two definitions end.

| Structure Element | "Cannabimimetic Agents" | 21 USC § 812(c)(d)(2)(A)(i-v) is specific in that it provides the seven (7) specific structural classes within which a chemical's structure must fall in order to meet the structure prong for the definition of "cannabimimetic agents". |
|---|---|---|
| | "Controlled Substance Analogues" | To the contrary, 21 U.S.C. § 802(32)(A)(i) is extremely general/ambiguous, by stating that the chemical structure must be "*substantially similar to the chemical structure of a controlled substance in schedule I or II.*"  There is no statutory or scientific definition for the phrase "substantially similar," which results in both sides having to present expert (PhD in Organic Chemistry) testimony in support of their interpretation. |
| Effect Element | "Cannabimimetic Agents" | 21 USC § 812(c)(d)(2)(A) is specific in that it provides a specific definition of the specific pharmacological mechanism of action (i.e., "*cannabinoid receptor type 1 (CB1 receptor) agonist*") that must exist for a chemical to meet the effect prong portion of the definition for "cannabimimetic agents".<br><br>Also 21 USC § 812(c)(d)(2)(A) provides the specific scientific methods (i.e., "*as demonstrated by binding studies and functional assays*") that must be used in evaluating whether a substance possesses the required effect (*cannabinoid receptor type 1 (CB1 receptor) agonist*). |
| | "Controlled Substance Analogues" | To the contrary, 21 U.S.C. § 802(32)(A)(ii-iii) is again extremely general/ambiguous in that it requires a chemical to have (or intended/represented to have) a "*stimulant, depressant, or hallucinogenic effect on the central nervous system that is 'substantially similar' to or greater than the stimulant,* |

| | | |
|---|---|---|
| | | *depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II."* |
| | "Controlled Substance Analogues" (continued) | This element fails to define any specific pharmacological mechanisms of action responsible for the alleged effect(s).<br><br>In addition, the element fails to mention any scientific method to be used in evaluating whether the substance has the required effect.<br><br>Lastly, because there is no statutory or scientific definition for the phrase "substantially similar", both sides must present expert (separate expert with a PhD in Pharmacology) testimony in support of their interpretation. |

By enacting the statutory definition of "cannabimimetic agents" in 21 USC § 812(c)(d)(2)(A) on July 9, 2012, Congress enacted a comprehensive scheme that deliberately targeted a specific problem (i.e., "cannabimimetic agents") with a specific solution. Therefore, based on the foregoing, the ambiguous/general statutory definition of "controlled substance analogues" (21 U.S.C. § 802(32)(A) (enacted October 27, 1986), must yield to the specific/clear statutory definition of "cannabimimetic agents" (21 USC § 812(c)(d)(2)(A))(enacted July 9, 2012).

### 3.   An Irreconcilable Conflict Exists Between the Statutory Definition of "Cannabimimetic Agents" (21 USC § 812(c)(d)(2)(A)) and the Statutory Definition of "Controlled Substance Analogues" (21 U.S.C. § 802(32)(A)).

"Under the usual rules of statutory construction, where there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs." (emphasis added). *I.C.C. v. S. Ry. Co.*, 543 F.2d 534, 539 (5th Cir.1976); *ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc.*, 504 F.3d 1208, 1210 (11th Cir.2007) ("[W]here two statutory provisions

would otherwise conflict, the <u>earlier enacted one yields</u> to the later one to the extent necessary to prevent the conflict." (Emphasis added)).

The process of ascertaining whether a new substance meets the statutory definition of a controlled substance analogue, involves comparing the structure and effect of a new substance to the structure and effect of a substance already listed as a controlled substance in Schedule I or Schedule II of the Controlled Substance Act.  A new substance cannot however be a controlled substance analogue of one of the fifteen (15) cannabimimetic agents without conflicting with the statutory definition of "cannabimimetic agents".  As illustrated in Exhibit 3, the main conflict between the statutory definition of "cannabimimetic agents" (21 USC § 812(c)(d)(2)(A)) and the statutory definition of "controlled substance analogues" (21 U.S.C. § 802(32)(A)) is that both contain their own structure element and effect element.

| XLR11 | JWH-018 |
|---|---|
| (1-(5-Fluoropentyl)-1*H*-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone | 1-pentyl-3-(1-naphthoyl)indole |
|  |  |
| STRUCTURAL CLASS:<br><br>"Tetramethylcyclo-propanoylindole"<br><br>[NOT listed under  21 USC § 812(c)(d)(2)(A)] | STRUCTURAL CLASS:<br><br>"3-(1-naphthoyl)indole"<br><br>[Listed under 21 USC § 812(c)(d)(2)(A)(ii)] |

For illustrative purposes, as shown in the chart above, the new substance will be XLR11, and the cannabimimetic agent will be JWH-018 in 21 USC § 812(c)(d)(2)(A)(ii).  The first element of the statutory definition of controlled substance analogues is the structure element, which requires that the "*chemical structure*" of the new substance be "***substantially similar** to the chemical structure of a controlled substance in schedule I or II*."  Thus, to meet the first (structure) element within the definition of "controlled substance analogues," the chemical structure of XLR11 must be "substantially similar" to the chemical structure of JWH-018.

Undoubtedly, the process of evaluating whether the chemical structure of XLR11 is "substantially similar" to the chemical structure of JWH-018, involves independent evaluations of both XLR11 and JWH-018..  However, the problem arises while attempting to evaluate the chemical structure of JWH-018 because Congress has already articulated which aspects of JWH-018's chemical structure are significant.  JWH-018 is only scheduled because, in addition to meeting the effect element, the chemical structure of JWH-018 falls within one of the seven (7) structural classes in 21 USC § 812(c)(d)(2)(A)(i-v).  Specifically, as illustrated in Exhibit 1, the chemical structure of JWH-018 falls within the structural class of "*3-(1-naphthoyl)indole*" (a.k.a. "naphthoylindole" structural class) in § 812(c)(d)(2)(A)(ii).

However, as illustrated in the chart above, the chemical structure of XLR11 falls within a structural class named, "Tetramethylcyclopropanoylindole."  Therefore, the chemical structure of XLR11 does not fall within the same structural class as JWH-018.  Moreover, the chemical structure of XLR11 is not within *any* of the seven (7) broad structural classes provided by Congress defining the structure element for "cannabimimetic agents" in § 812(c)(d)(2)(A)(i-v).

21 U.S.C. § 812(c)(d)(2)(A) already provides *the* test for determining whether a chemical is similar enough to those fifteen (15) cannabimimetic agents specifically listed at §

- 15 -

812(c)(d)(2)(B).  Thus, any attempt to claim that a new substance (e.g., "XLR11") is a controlled substance analogue of one of the fifteen (15) cannabimimetic agents in § 812(c)(d)(2)(B) (e.g., JWH-018), would violate the rules of statutory construction and directly conflict with the legislative intent.

> **4.  Effect Must Be Given to the Detailed and Unyielding Provisions Within the Statutory Definition of "Cannabimimetic Agents" in 21 USC § 812(c)(d)(2)(A).**

When Congress has enacted a definition with detailed and unyielding provisions, the Supreme Court teaches that effect must be given to that definition even when it could be argued that the line should have been drawn at a different point.  *Carcieri v. Salazar*, 555 U.S. 379 (2009); *INS v. Hector*, 479 U.S. 85, 88–89, 107 S.Ct. 379, 93 L.Ed.2d 326 (1986).

Within the statutory definition of "cannabimimetic agents" (21 USC § 812(c)(d)(2)(A)), Congress declares exactly what characteristics must exist for a chemical to meet the definition.In the structure element, Congress explicitly defines each ___*class*___ of included structures.  Moreover, In the effect element, Congress clearly defines the targeted effect (i.e., "cannabinoid receptor type 1 (CB1 receptor) agonist"); Congress also defines the two scientific methods ("binding studies" and "functional assays") that must be performed in determining whether the subject chemical has the targeted effect.  Therefore, based on the foregoing, the statutory definition of "cannabimimetic agents", as enacted by Congress, contains detailed and unyielding provisions that must be given effect. No exists.

It has long been held that where there are two acts upon the same subject, effect should be given to both if possible.  *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503, 56 S. Ct. 349, 352, 80 L. Ed. 351 (1936).   There are two well-settled categories of repeals by implication: (1) where provisions in the two acts are in irreconcilable conflict, the later act to the

extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. *Id.*  But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general principle, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment.  *Id.*

So, in this case, there are two possible outcomes: (1) 21 USC § 812(c)(d)(2)(A) is to be construed as a continuation of 21 U.S.C. § 802(32)(A) and will continue to speak, so far as the two acts are the same; OR (2) the two statutes are in irreconcilable conflict, and the later act, 21 USC § 812(c)(d)(2)(A), to the extent of the conflict, constitutes an implied repeal of the earlier one, 21 U.S.C. § 802(32)(A).

Support for the first outcome has been discussed at length, *supra*.  In the event of the second outcome, however, 21 USC § 812(c)(d)(2)(A) would act as a continuation of 21 U.S.C. § 802(32)(A) by precisely defining the structure and effect elements.  So, if a new substance is alleged to be a controlled substance analogue of one of those fifteen (15) cannabimimetic agents listed under 21 USC § 812(c)(d)(2)(B), the court simply adopts the same structure and effect element enacted by Congress to define that "cannabimimetic agent" and requires that the new substance also meet the same structure and effect element.   As a result, the court is not burdened with expert testimony.

**B. <u>THE STATUTORY DEFINITION OF "CONTROLLED SUBSTANCE ANALOGUES" IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO ANY SUBSTANCE ALLEGED TO BE A "CONTROLLED SUBSTANCE ANALOGUE" OF A "CANNABIMIMETIC AGENT."</u>**

"The void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional 'if its prohibitions are not clearly defined.' "*Karlin v. Foust*, 188 F.3d 446, 458

(7th Cir.1999)(quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222(1972). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of ordinary notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)(citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)); *Grayned*, 408 U.S. at 108-09, 92 S.Ct. at 2298-99 (by failing to clearly define prohibited conduct "[v]ague laws may trap the innocent by not providing fair warning [and may] … impermissibly delegate . . . basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application"). *United States v. Black*, 469 F.Supp.2d 513, 530 (N.D.Ill 2006). A party may raise a vagueness challenge by arguing either that a statute is vague as applied to the facts at hand, or that a statute is void on its face. As to facial vagueness challenges, a court, "must uphold a facial challenge 'only if the enactment is impermissibly vague in all of its applications.'" *Fuller v. Decatur Public School Bd. of Educ. School Dist.* 61, 251 F.3d 662, 667 (7th Cir. 2001)(quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d. 362 (1982)). An "as applied" challenge, in contrast, asks whether the defendant "receive[d] fair warning of the criminality of his own conduct from the statute in question" because "[o]ne whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). As stated above, Defendants are making an "as applied" challenge to the constitutionality of the statutory scheme and asking that Count I of the Indictment be

dismissed or in the alternative to strike from the Indictment any substances that have been improperly charged as analogues to separately-scheduled cannabimimetic agents.

The statutory definition of "controlled substance analogues" (21 U.S.C. § 802(32)(A)) is unconstitutionally vague as applied to substances alleged to be controlled substance analogues of one (1) of the fifteen (15)  cannabimimetic agents listed under 21 USC § 812(c)(d)(2)(B).

In this case, the question is whether the Defendants received fair warning that the Analogue Act would apply to alleged cannabimimetic agents.  On July 9, 2012, Congress enacted 21 USC § 812(c)(d)(2)(A) and expressly defined the term "cannabimimetic agent," by providing the specific structure and effect elements that must be met for a substance to be a "cannabimimetic agent."  Because 21 USC § 812(c)(d)(2)(A) contains the exclusive statutory definition of "cannabimimetic agent," the Defendants had no fair warning that the statutory definition of "controlled substance analogues" could somehow be applied to alleged "cannabimimetic agents."

The process of ascertaining whether a new substance meets the statutory definition of controlled substance analogue, 21 U.S.C. § 802(32)(A), involves comparing the structure and effect of a new substance to the structure and effect of a substance already listed as a controlled substance in Schedule I or Schedule II of the Controlled Substance Act.  As previously mentioned, the fifteen (15) cannabimimetic agents listed under 21 USC § 812(c)(d)(2)(B) are listed solely because they have each met the statutory definition of "cannabimimetic agent" under 21 USC § 812(c)(d)(2)(A).  This is important.  By only listing those substances that meet the structure and effect elements of 21 USC § 812(c)(d)(2)(A), Congress has explicitly articulated the structural and effect qualities it deems significant within each of those fifteen (15) cannabimimetic agents.  Therefore, the government is prohibited from utilizing one of the fifteen

(15) cannabimimetic agents for the purpose of deeming a substance to be a controlled substance analogue, especially if such action involves straying from those structural and effect qualities Congress deemed sufficiently significant to separately specify each of the fifteen (15) cannabimimetic agents under 21 USC § 812(c)(d)(2)(B).

It is unequivocal that Congress intended for the statutory definition of cannabimimetic agents under 21 USC § 812(c)(d)(2)(A) to act independently of the statutory definition of "controlled substance analogues", 21 U.S.C. § 802(32)(A).  Therefore any attempt to apply the statutory definition of controlled substance analogues, 21 U.S.C. § 802(32)(A), to an alleged cannabimimetic agent is unconstitutionally vague as applied.

## IV.    CONCLUSION

Based on the foregoing, Defendants respectfully request this Court to dismiss Count I of the Indictment or, in the alternative, to strike from the Indictment any substances that have been improperly charged as analogues to separately-scheduled cannabimimetic agents and grant such further relief as the Court deems appropriate.

Respectfully submitted,

LUCCO, BROWN, THRELKELD & DAWSON          DOWD BENNETT LLP

By: /s/ J. William Lucco                         By: /s/ James E. Crowe, III   (with permission)
    J. William Lucco  #1701835IL                    James E. Crowe, III #50031MO
    Christopher P. Threlkeld   #6271483IL            7733 Forsyth Boulevard, Suite 1900
    224 St. Louis Street                            St. Louis, Missouri 63105
    Edwardsville, Illinois 62025                    Telephone: (314) 889-7300
    Telephone: (618) 656-2321                       Fax: (314) 863-2111
    Fax: (618) 656-2363                             Email: jcrowe@dowdbennett.com
    Email: blucco@lbtdlaw.com
           cthrelkeld@lbtdlaw.com

    *Attorneys for Defendant Charles Wolfe*          *Attorney for Defendant Joseph Gabrick*

    BOROWIAK LAW FIRM                               THE LAW OFFICE OF JASON A. KORNER

By: /s/ Zachary J. Borowiak (with permission)
    Zachary J. Borowiak  #58855MO
    225 South Meramec, Suite 301
    St. Louis, Missouri 63105
    Telephone: (314) 537-2351
    Fax: (314) 269-1042
    Email: borowiaklaw@gmail.com

*Attorney for Defendant Robert Wolfe*

THE MUTRUX LAW FIRM

By: /s/ Tyson Mutrux (with permission)
    Tyson Mutrux
    1717 Park Avenue
    St. Louis, Missouri 63104
    Telephone: (314) 270-227
    Fax: (314) 884-4333
    Email: tyson@mtruxlaw.com

*Attorney for Defendant Mark Palmer*

By: /s/ Jason A. Korner (with permission)
    Jason A. Korner  #58495MO
    7911 Forsyth Blvd. Suite 300
    Clayton, Missouri 63105
    Telephone: (314) 409-2659
    Fax: (314) 863-5335
    Email: jasonkorner@kornerlaw.com

*Attorney for Defendant Samuel Leinicke*

THE LAW OFFICES OF SHELBY M. COWLEY

By: /s/ Shelby M. Cowley (with permission)
    Shelby M. Cowley  #62819MO
    1717 Park Avenue
    St. Louis, MO 63104
    Telephone: (314) 721-1024
    Fax: (314) 446-4700
    Email: shelby@cowleylaw.net

*Attorney for Defendant Mark Palmer*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 8th day of October, 2015, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, and service upon all participants in the case who are CM/ECF users will be accomplished by operation of that system.


       /s/ J. William Lucco