

**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

September 30, 2011

The Honorable F. James Sensenbrenner Jr.
Subcommittee on Crime, Terrorism, and Homeland Security
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Chairman:

    This letter provides the Department of Justice's views on H.R. 1254, as amended by the Committee on Energy and Commerce, titled the "Synthetic Drug Control Act of 2011." The bill would amend the Controlled Substances Act (CSA) to address the growing use and misuse of synthetic drugs by placing a number of substances in schedule I and by extending the length of time that a drug may be temporarily placed in schedule I.

    We support the bill as drafted, but believe it can be strengthened with the addition of the "2C family" of drugs listed in an appendix to this letter and in S. 839. The Department also supports the goals of S. 605, Dangerous Synthetic Drug Control Act of 2011 or the "David Mitchell Rozga Act"; S. 839, Combating Designer Drugs Act of 2011; and S. 409, Combating Dangerous Synthetic Stimulants Act of 2011. H.R. 1254 already contains many provisions included in S. 605 and S. 409, and we urge that the bill be expanded to include the provisions of S. 839.

*The Threat of Synthetic Drugs*

    In recent years, a growing number of dangerous products have been introduced into the U.S. marketplace. Products labeled as "herbal incense" have become increasingly popular, especially among teens and young adults. These products consist of plant materials laced with synthetic cannabinoids which, when smoked, mimic the deleterious effects of delta-9-tetrahydrocannabinols (THC), the principal psychoactive constituent in marijuana. To underscore the scope and breadth of the synthetic cannabinoid problem, a recent report prepared by the United Nations Office on Drugs and Crime (UNODC) notes that more than 100 such substances have been synthesized and identified to date.[1]

    There is also growing evidence demonstrating the abuse of a number of substances labeled as "bath salts" or "plant foods" which, when ingested, snorted, smoked, inhaled, or injected, produce stimulant and other psychoactive effects. These synthetic stimulants are based on a variety of compounds and are purported to be alternatives to the controlled substances cocaine, amphetamine, and Ecstasy (MDMA). These drugs have been distributed and abused in

---

[1] UNODC. Synthetic cannabinoids in herbal products. SCITEC/24. April 2011: p. 5.

**EXHIBIT 2 to
DEFENDANTS' MOTION TO DISMISS COUNT 1 OR, IN THE ALTERNATIVE, TO STRIKE**

The Honorable F. James Sensenbrenner Jr.
Page 2

Europe for several years and have since appeared here in the United States. According to a recent National Drug Intelligence Center report, poison control centers and medical professionals around the country have reported an increase in the number of individuals suffering adverse physical effects associated with abuse of these drugs.

There are other newly developed drugs that also pose a significant threat to the public. This includes the "2C family" of drugs (dimethoxyphenethylamines), which are generally referred to as synthetic psychedelic/hallucinogens. Recently, a 19-year-old male in Minnesota died of cardiac arrest after allegedly ingesting 2C-E, one of the substances within this class of drugs. We note that the 2C substances listed in the attached Appendix are included in the list of substances covered by S. 839. The Department supports the addition of the 2C family of substances listed in the Appendix to H.R. 1254.

Products containing synthetic drugs are dangerous and represent a growing challenge to law enforcement. Apart from the wide array of harmful or even lethal side effects of many of the listed substances, neither the products nor their active ingredients have been approved by the Food and Drug Administration for use in medical treatment, and manufacturers and retailers of the products containing these substances do not disclose that there are synthetic drugs in their products. Synthetic drug abusers may endanger not only themselves but others: some become violent when under the influence of these substances, and abusers who operate motor vehicles after using synthetic drugs likely present similar dangers as those under the influence of controlled substances.

With the exception of the five substances recently controlled by the Drug Enforcement Administration (DEA) pursuant to its temporary scheduling authority, the listed synthetic cannabinoids and synthetic stimulants are not currently in any schedule under the CSA.

*Efforts to Control Synthetic Drugs*

Congress created an interagency process for placing new and emerging drugs into one of five schedules of the CSA (21 U.S.C. 811 *et seq*.). One such mechanism, temporary scheduling (21 U.S.C. 811(h)), was specifically designed to enable the Department to act in an expeditious manner if such action is necessary to avoid an imminent hazard to the public safety. In response to the growing threat posed by known synthetic cannabinoids, on March 1, 2011, the DEA temporarily placed the following five synthetic cannabinoids in schedule I: JWH-018, JWH-073, JWH-200, CP-47, 497, and CP-47, 497 C8 homologue.[2]

The DEA is currently gathering scientific data and other information about synthetic cathinones as well as evaluating their psychoactive effects to support administrative action to schedule these substances under the CSA. To temporarily schedule these stimulants, the DEA must find that placement in schedule I is necessary to avoid an imminent hazard to the public

---

[2] 76 FR 11075. Published March 1, 2011.

**EXHIBIT 2 to
DEFENDANTS' MOTION TO DISMISS COUNT 1 OR, IN THE ALTERNATIVE, TO STRIKE**

The Honorable F. James Sensenbrenner Jr.
Page 3

safety, a finding that requires the DEA to consider the following three factors: history and current pattern of abuse; the scope, duration, and significance of abuse; and what, if any, risk there is to the public health, including actual abuse; diversion from legitimate channels; and clandestine importation, manufacture, or distribution. Once data have been gathered to meet the statutory criteria to temporarily schedule these cathinones, the Department will initiate an action to temporarily place them into schedule I. In fact, on September 8, 2011, the DEA published a notice of intent in the Federal Register (21 FR 55616) to temporarily place mephedrone, methylone and MDPV in schedule I.

Unfortunately, however, the distribution and abuse of synthetic drugs cannot be fully addressed by temporary scheduling because as law enforcement investigates, researches, and develops evidence to support such action, illicit drug makers create *new* synthetic drugs for the purpose of evading federal law. Scheduling via legislation is an additional tool to promote public health and safety.

*Purpose of Legislation*

Placing synthetic cannabinoid and synthetic stimulant substances in schedule I would expose those who manufacture, distribute, possess, import, and export synthetic drugs without proper authority to the full spectrum of criminal, civil, and administrative penalties, sanctions, and regulatory controls. Unless authorized by the DEA, the manufacture and distribution of these substances, and possession with intent to manufacture or distribute them, would be a violation of the CSA and/or the Controlled Substances Import and Export Act.

H.R. 1254, as well as S. 409, would amend the CSA by expanding the list of substances in schedule I of the CSA (21 U.S.C. 812(c)). To address synthetic cannabinoid abuse, the bill names 15 unique substances that would be placed in schedule I; this list includes those temporarily scheduled by the DEA. Additionally, the bill creates five structural classes of substances collectively referred to as "cannabimimetic agents." In order for a substance to be a cannabimimetic agent, the substance must: 1) bind to the CB1 receptor[3]; and 2) meet any of the definitions for those structural classes. If both criteria are met, that substance will be a schedule I cannabimimetic agent controlled substance.

To address emerging synthetic stimulant abuse, H.R. 1254 names 17 unique substances that would be placed in schedule I. These substances have either been encountered by law enforcement here in the United States or are most likely to be encountered by law enforcement in the United States based on their use and misuse in Europe, which is likely where the use and misuse originated.

---

[3] The CB1 receptor is located mainly in the brain and spinal cord and is responsible for the typical physiological and psychotropic effects associated with marijuana use.

**EXHIBIT 2 to**
**DEFENDANTS' MOTION TO DISMISS COUNT 1 OR, IN THE ALTERNATIVE, TO STRIKE**

The Honorable F. James Sensenbrenner Jr.
Page 4

Finally, the bill seeks to double the amount of time allowed for the Department to temporarily schedule new and emerging drugs by amending 21 U.S.C. 811(h). In this regard, the bill seeks to enhance the tools available to the Department to combat the abuse of new drugs that will appear in the future.

For these reasons, the Justice Department supports H.R. 1254 and recommends that the Committee consider strengthening it in the ways we have proposed.

Thank you for the opportunity to present our views. The Office of Management and Budget has advised us that from the perspective of the Administration's program, there is no objection to the submission of this letter.

Sincerely,

Ronald Weich
Assistant Attorney General

cc:   Robert "Bobby" Scott
      Ranking Member
      Subcommittee on Crime, Terrorism, and Homeland Security
      Committee on the Judiciary

      Charles W. Dent
      U.S. House of Representatives

**EXHIBIT 2 to
DEFENDANTS' MOTION TO DISMISS COUNT 1 OR, IN THE ALTERNATIVE, TO STRIKE**