**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 4:14CR00175-AGF-DDN |
| MARK PALMER et. al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MOTION FOR BILL OF PARTICULARS WITH SUPPORTING AUTHORITY**</u>

COME NOW Defendants by and through their undersigned counsel, and pursuant to the provisions of Federal Rule of Criminal Procedure 7(f), request leave to file a Motion for Bill of Particulars, and further move this Honorable Court to direct the Government to file Bill of Particulars with respect to critical issues that are ambiguously alleged in this Indictment.  In support of their Motion, Defendants submit as follows:

1.     An Indictment was returned against the Defendants on June 5, 2014 in the above-referenced case ("Indictment").  *See* Doc. 2.  The allegations against the Defendants include ones that they conspired to distribute and possess with the intent to distribute controlled substance analogues intended for human consumption in violation of Title 21 U.S.C. 841(a)(1) and 813 (Count I-all defendants); conspiracy to cause the introduction of misbranded drugs into interstate commerce in violation of Title 21 U.S.C. 331 (a) and 333(a)(2) (Count II-all defendants); knowingly conducting and attempting to conduct a monetary transaction involving a financial institution in violation of Title 18 U.S.C. 1957 and 1956 (Count III-Mark Palmer, Charles Wolfe, Robert Wolfe and Joseph Gabrick); conspiracy to import Schedule I controlled substances and Schedule I controlled substance analogues in violation of Title 21 U.S.C. 952, 960(a)(1), 960(b)(3), and 963

(Count IV- defendants Mark Palmer and Anthony Palmer); and conspiracy to receive conceal, buy, sell, or in any manner facilitate the transportation of merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law in violation of Title 18 U.S.C. 545 (Count V-defendants Mark palmer and Anthony Palmer) [Doc. #2].

2.      Defendants seek leave to file the instant motion, pursuant to Rule 7(f), due to the fact that more than fourteen (14) days have passed since the arraignment of each defendant.  However, the instant motion is timely due to the fact that the Government has only recently represented to Defendants and the Court that its production of discovery is complete.  As the Court is well aware, discovery is extremely voluminous and has been made by the Government at various times over the course of the years 2014 and 2015.  Should leave not be granted, Defendants would be prejudiced for the reasons that are further established herein.

3.      The Indictment alleges "[b]eginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown", *See Indictment*, Count I, Section A, the defendants conspired to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues, "including but not limited to":

a)      (1-Pentyl-3-(1-naphthoyl) indole (a.k.a. "JWH-018")

b)      2-Pyrrolidinovalerophenone, (a.k.a. "alpha-PVP")

c)      N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide (a.k.a. "AKB48" and "APINACA")

d)       (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "UR-144")

e)      [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "XLR11" and "5-Flouro-UR-144")

2

f)      Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate (a.k.a. "5F-PB-22")

*See Indictment* Section B, ¶6.

4.      The Indictment further expands the aforementioned list of substances by alleging "including, but not limited to" immediately prior to listing the substances outlined in the previous paragraph. *See Indictment* Count I, Section B, ¶6.

5.      The Indictment was filed as a companion to three other indictments: *United States v. Greg Sloan, et. al.* (4:14CR00152 RWS/NCC), *United States v. Anwer Rao, et. al.* (4:14CR00150 JAR/TCM), and *United States v. Pamela Tabatt, et. al.* (4:14CR00187 JAR/DDN) (collectively, the "Companion Indictments").

6.      The discovery is being supplied universally to defendants in all indictments, and extremely voluminous in that it contains nearly one million of PDF pages, video and audio files, information within large-volume portable hard drives and other materials.  A final batch containing 412 gigabytes of information was distributed in August 2015.

7.      The Government's Disclosure of Arguably Suppressible Evidence [Doc #94] applies all evidence collected to "All Defendants" in all but two instances.

8.      The Indictment and Companion Indictments each contain one count of conspiracy to distribute Schedule I controlled substances and "Schedule I analogues" against twenty-nine (29) total defendants.  Each indictment further includes a list of substances, similar to that previously described, and the "including, but not limited to" language before specifically listing substances.  A matrix of those substances, by indictment, is attached hereto as "Exhibit A" and incorporated herein by this reference.

9.      Among the four different indictments, a total of twenty (20) substances are listed with a few substances appearing in more than one indictment.  Certain substances appear to be similar

3

given their common "a.k.a." designations, but whether or not those substances are the same is unknown given slight changes in the spelling of their technical names.[1]  The number of substances applied to each indictment is only expanded by the phrase "including, but not limited to."  To date, it is unclear as to what particular substances are applied to which defendants.  The fact that four indictments allege the distribution of 20 different substances, which list is further expanded by the phrase, "including, but not limited to," has created a significant ambiguity around what substances apply to which defendants even within a single indictment.

      10.    Furthermore, the date range applied to the Indictment is "Beginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown…". *See* Indictment, Count I, Section A.  With such a prolonged timeframe and expansive list of substances, Counsel for Defendants are unable to determine when said substances were allegedly distributed or possessed with the intention to distribute.  Counsel for Defendants are similarly unable to determine within a reasonable degree of certainty when defendants were engaged in any alleged illegal activity, as it applies to Count I of the Indictment, and what substances may be applied to which defendants within the alleged timeframe.  As a result, Defendants are prejudiced in that they cannot prepare an adequate defense to Count I of the Indictment.

      11.    The Indictment also fails to allege the controlled substances to which those listed in each indictment are analogues.  The Government is required to prove that said substances are analogues to either a Schedule I or Schedule II controlled substance, but it has failed to allege the specific controlled substance to which any given substance in the Indictment is purportedly

---

[1] For example, the Sloan and Rao indictments list 2-Pyrrolidinovalerophenone (a,k.a. "a-PVP"); the Palmer indictment lists 2-Pyrrolidinovalerophenone (a.k.a. "alpha-PVP") and the Tabatt indictment lists alpha-Pyrrolidinovalerophenone (a.k.a. "alpha-PVP"). And the Palmer indictment lists [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "XLR11" and "5-Flouro-UR-144"); and the Tabatt indictment lists 1-( 5-Fluoropentyl) 1 H-indol-3-(2,2,3 ,3-tetramethylcyclopropyl)indole, (a.k.a "XLR-11").

analogous.

12.     A "controlled substance analogue" is defined as a substance…

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

This definition has been construed by the Eighth Circuit to be conjunctive, as if subsection (i) were followed by the word "and" and the disjunctive "or" providing that in addition to the chemical structure being similar under (1), the elements of either subsection (ii) or (iii) must also be met. *United States v. Washam*, 312 F.3d 926, 930 n. 2 (8th Cir. 2002); *United States v. McKinney*, 79 F.3d 105, 107-08 (8th Cir. 1996), vacated on other grounds, 520 U.S. 1226, 117 S.Ct. 1816 (1997).

13.     The statute requires the identification of a controlled substance in schedule I or schedule II.  The Indictment, however, fails to allege the Schedule I or Schedule II controlled substance to which any of the substances specified in the Indictment is analogous.  Without notice of the substance to which each of those in the Indictment is analogous, Defendants are prejudiced against preparing an adequate defense.  Without receiving such notice, Defendants are left guessing as to the alleged substance's analogous controlled substance, and may further be forced to frivolously exhaust their budgets on the consultation of chemists or other potential experts.

14.     The Indictment further alleges that Defendants conspired to "distribute and possess

5

with the intent to distribute Schedule I controlled substances and 'Schedule I controlled substance analogues'". It is specifically alleged that certain substances were in fact scheduled while others were not, however, those other substances were in fact analogues. The allegation creates separate designations for substances that were in fact scheduled and those that were not scheduled, but considered analogous to a Schedule I controlled substance.

15.     Of the substances listed in the Indictment, the Deputy Administrator of the Drug Enforcement Agency scheduled some substances on an emergency basis while others may have been scheduled by an act of Congress or other means. It is unclear from within the four corners of the Indictment which substances are scheduled controls and which are considered analogues. Without a specific delineation, Defendants are prejudiced from adequately defending their cases.

16.     Defendant requests a bill of particulars to provide additional details about the following information as it applies to the Indictment:

a.   (1) the identity of the Scheduled Controlled Substance of which (1-Pentyl-3-(1-naphthoyl) indole (a.k.a. "JWH-018") is an analogue,

(2) the date, if any, that (1-Pentyl-3-(1-naphthoyl) indole (a.k.a. "JWH-018") was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which (1-Pentyl-3-(1-naphthoyl) indole (a.k.a. "JWH-018") was allegedly distributed or possessed with intent to distribute;

b.   (1) the identity of the Scheduled Controlled Substance of which 2-Pyrrolidinovalerophenone, (a.k.a. "alpha-PVP") is an analogue,

(2) the date, if any, that 2-Pyrrolidinovalerophenone, (a.k.a. "alpha-PVP") was

scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which 2-Pyrrolidinovalerophenone, (a.k.a. "alpha-PVP") was allegedly distributed or possessed with intent to distribute;

c. (1) the identity of the Scheduled Controlled Substance of which N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide (a.k.a. "AKB48" and "APINACA") is an analogue,

(2) the date, if any, that N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide (a.k.a. "AKB48" and "APINACA") was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide (a.k.a. "AKB48" and "APINACA") was allegedly distributed or possessed with intent to distribute;

d. (1) the identity of the Scheduled Controlled Substance of which (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "UR-144") is an analogue,

(2) the date, if any, that (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "UR-144") was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "UR-144") was allegedly distributed or possessed with intent to distribute;

e. (1) the identity of the Scheduled Controlled Substance of which [1-(5-Fluoro-

7

pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "XLR11" and "5-Flouro-UR-144") is an analogue,

(2)   the   date,   if   any,   that   [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (a.k.a. "XLR11" and "5-Flouro-UR-144") was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone   (a.k.a. "XLR11" and "5-Flouro-UR-144") was allegedly distributed or possessed with intent to distribute;

f.   (1) the identity of the Scheduled Controlled Substance of which Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate (a.k.a. "5F-PB-22") is an analogue,

(2) the date, if any, that Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate (a.k.a. "5F-PB-22") was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(3) the range of dates, and which defendant within those dates, as to which Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate (a.k.a. "5F-PB-22") was allegedly distributed or possessed with intent to distribute;

g.   (1) identify all other substances included by use of the phrase "including, but not limited to" in Count I of Paragraph 6 of the Indictment,

(2) the identity of the Scheduled Controlled Substance(s) included is an analogue,

(3) the date, if any, that the included substance(s) was scheduled as a controlled substance via emergency scheduling, act of congress or other means, and

(4) the range of dates, and which defendant within those dates, as to which the identified substance(s) was/were allegedly distributed or possessed with intent to distribute.

## SUPPORTING AUTHORITY

A bill of particulars serves to provide a defendant with essential details of the charges against him in order that he is adequately "informed of the nature and cause of the accusation" under the Sixth Amendment and can be prepared to meet the charges and avoid surprise. *Russell v. United States*, 369 U.S. 749,763 (1962).

A bill of particulars should be granted where a defendant is not apprised of the "central facts which will enable him to conduct his own investigation of the transactions giving rise to the charge," *United States v. Manetti*, 323 F.Supp. 683, 695-6 (D. Del. 1971) and where "nondisclosure until trial would result in prejudicial surprise or the preclusion of an opportunity for meaningful defense preparation..." *United States v. Thevis*, 474 F.Supp. 117, 123-4 (N. D. Ga. 1979). In *Russell v. United States*, 369 U.S. 749 (1962), the Supreme Court stated:

> To allow the prosecutor, or the court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of the basic protection which the guaranty of the intervention of the grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

369 U.S. at 770.

The specifics of relevant information should be provided to permit defendants to prepare a proper defense.  Since the grand jury sits is secret, for a defendant facing charges, the indictment is the only record of what the grand jury considered.  The precise substances in question, the dates that they became unlawful to distribute or possess with the intent to distribute, and the dates in which

9

they were possessed and being applied to each defendant should be provided in the same way that they should have been supplied to the grand jury.  It is further imperative that Defendants are given notice as to what substances are included by the Government's assertion of "including, but not limited to."

Given the expansive list of substances, the large number of defendants spanning four indictments, the wide timeframe alleged, the blanket application of the Disclosure of Arguably Suppressible Evidence, and the abyss of discovery, a bill of particulars is necessary to place the Defendants on notice as to what proscribed conduct they have been charged with, if not also to place the Government and Defendants on more equal footing.

In the face of the ambiguities presented by the Indictment, any failure to provide the clarity that a Bill of Particulars can supply would cause Defendants to suffer a great prejudice.  The Defendants will be forced to guess as to critical facts that a Bill of Particulars will easily provide. Defendants may unnecessarily expend a great amount of resources and time in their attempts to clarify any ambiguities.  A Bill of Particulars that provides the information requested in paragraph 16 above and as to all substances subsumed within the "including but no limited to" language employed consistently in the Indictment will help to ameliorate some of the many ambiguities in the Indictment and allow Defendants to better prepare their defenses to Count I.

WHEREFORE, for the above-stated reasons and for any other such reasons as shall appear to the Court, the Defendants request leave to file the instant Motion for a Bill of Particulars and that it enter its Order directing Counsel for the Government to provide Defendants with a bill of particulars as requested herein.

Respectfully Submitted,

10

BOROWIAK LAW FIRM

By: /s/ Zachary J. Borowiak
    Zachary J. Borowiak  #58855MO
    225 South Meramec, Suite 301
    St. Louis, Missouri 63105
    Telephone: (314) 537-2351
    Fax: (314) 269-1042
    Email: borowiaklaw@gmail.com

    *Attorney for Defendant Robert Wolfe*

DOWD BENNETT LLP

By: /s/ James E. Crowe, III   (with permission)
    James E. Crowe, III  #50031MO
    7733 Forsyth Boulevard, Suite 1900
    St. Louis, Missouri 63105
    Telephone: (314) 889-7300
    Fax: (314) 863-2111
    Email: jcrowe@dowdbennett.com

    *Attorney for Defendant Joseph Gabrick*

THE LAW OFFICE OF JASON A. KORNER

By: /s/ Jason A. Korner (with permission)
    Jason A. Korner  #58495MO
    7911 Forsyth Blvd. Suite 300
    Clayton, Missouri 63105
    Telephone: (314) 409-2659
    Fax: (314) 863-5335
    Email: jasonkorner@kornerlaw.com

    *Attorney for Defendant Samuel Leinicke*

LUCCO, BROWN, THRELKELD & DAWSON

By: /s/ J. William Lucco (with permission)
    J. William Lucco  #1701835IL
    Christopher P. Threlkeld   #6271483IL
    224 St. Louis Street
    Edwardsville, Illinois 62025
    Telephone: (618) 656-2321
    Fax: (618) 656-2363
    Email: blucco@lbtdlaw.com
        cthrelkeld@lbtdlaw.com

    *Attorneys for Defendant Charles Wolfe*

THE MUTRUX LAW FIRM                   THE LAW OFFICES OF
                                      SHELBY M. COWLEY


By: /s/ Tyson Mutrux (with permission)      By: /s/ Shelby M. Cowley (with permission)
Tyson Mutrux  #63117MO               Shelby M. Cowley  #62819MO
1717 Park Avenue                     1717 Park Avenue
St. Louis, Missouri 63104            St. Louis, MO 63104
Telephone: (314) 270-2273            Telephone: (314) 721-1024
Fax: (314) 884-4333                  Fax: (314) 446-4700
Email: tyson@mtruxlaw.com            Email: cowley_shelby@yahoo.com

*Attorney for Defendant Mark Palmer*      *Attorney for Defendant Mark Palmer*


12

## <u>CERTIFICATE OF SERVICE</u>

Signature of the foregoing document is also certification that a true and correct copy has been filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following on this 8th day of October, 2015 to:

James Delworth
Assistant United States Attorney
111 S. 10th Street
St. Louis, Missouri 63102

/s/Zachary J. Borowiak

13