IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 4:14-CR-00175-AGF-DDN |
| MARK PALMER *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR BILL OF PARTICULARS**

COME NOW Defendants by and through their undersigned counsel, and for their joint reply to the Government's Response to Defendants' Motion for Bill of Particulars, state as follows:

Defendants' Motion for a Bill of Particulars seeks information necessary to clarify lingering issues, which if left unresolved, would prejudice Defendants, subjecting them to surprise and ambiguities and thereby hindering their ability to prepare their defense of the instant case. While the Government would have it that the indictment serves to ameliorate any uncertainty on the part of Defendants, the indictment is instead the very source of the confusion that Defendants seek to have addressed by the Bill of Particulars they have requested. The uncertainty with which Defendants are left in view of the Indictment is not resolved by the voluminous discovery disclosures that have been made universally across four separate indictments.

A Bill of Particulars provides a defendant with essential details of the charges against him in order that he is adequately "informed of the nature and cause of the accusation" under the Sixth Amendment and can be prepared to meet the charges and avoid surprise. *Russell v. United States*, 369 U.S. 749, 763 (1962). A Bill of Particulars serves to inform Defendants of the nature of the charge with specific precision and to avoid the danger of surprise at trial. *United States v.*

*Livingstone*, 576 F.3d 881,883 (8th Cir. 2009) (citing *United States v. Hernandez*, 299 F.3d 984, 989 (8th Cir. 2002)).  "If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." *Livingstone*, 576 F.3d at 883.  A bill of particulars may be appropriate when a defendant requires clarification in order to prepare a defense. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

Since Count I alleges violations involving both controlled substances and controlled substance analogues, it is hardly beyond the pale of reasonableness for Defendants to be apprised of the specific substances the Government is actually prosecuting them to have conspired to possess and distribute, whether those substances were controlled substances or controlled substance analogues, and which defendant allegedly possessed or distributed them as part of the alleged conspiracy.  Defendants therefore seek for the Court to require the Government to supply a Bill of Particulars that would serve to address the failure of the indictment to:[1]

1) identify the Schedule I or Schedule II controlled substance to which any named substance is considered to be an analogue, as is required in order for a substance to be considered an analogue under 21 U.S.C. § 802(32)(A);

2) identify any other substance referred to through the use of the phrase "including, but not limited to" in Count I, Paragraph 6, whether it be a controlled substance or a controlled substance analogue;

3) identify the date or range of dates when each substance—whether it be a controlled substance or an alleged controlled substance analogue—was distributed or possessed, or to identify the defendant(s) who allegedly distributed each given controlled substance or analogue within those dates; and

---

[1] Defendants' requests are further detailed in their Motion for a Bill of Particulars (Doc. # 184), but Defendants summarize those requests here for ease of reference.

4) specify the date when any alleged controlled substance analogue was scheduled as a controlled substance, or the manner by which it became scheduled (legislative or emergency).

The Government's response failed to address the fact that Count I, paragraph 6 of the Indictment employs the expansive language, "including, but not limited to." Particularly when applied to controlled substances and even more so as it relates to alleged controlled substance analogues, the use of that phrase radically expands the scope of the Indictment. Not only does it bring into question the identified substances, but further brings into question an indeterminate list of known and unknown substances. Across the four filed indictments, 20 substances were identified, and the indictment in this case lists seven. When taken together with the "including, but not limited to" language in Count I, the fact that the Government regards other substances beyond the seven in this case as either controlled substances or controlled substance analogues makes very real the prospect that it may actually be prosecuting the defendants in this case for violations of Title 21 that are premised upon substances not listed in the indictment.

Indeed, the presence of the phrase, "including, but not limited to," in the Indictment leaves wide open—and, in the absence of a Bill of Particulars, unknown until trial, the possibility that such language can be used as a gateway for the Government to attempt to introduce evidence of presently unspecified substances—whether controlled substances or alleged analogues. A Bill of Particulars is necessary to determine the exact substances for which the Defendants are being prosecuted. This information is necessary to permit the preparation of an adequate defense, particularly in focusing the review of what could, with the benefit of a Bill of Particulars be understood to be the corresponding relevant discovery and scoping the work to be performed by expert witnesses. As it now stands, Defendants could engage expert witnesses to opine as to

whether any of the seven substances in the indictment meets the definition of a controlled substance analogue, only to face proof at trial that relates to entirely different substances that fall within the broad ambit of the "including, but not limited to" language of Count I.  That the Indictment provides a license for a roving prosecution requires clarification that only a Bill of Particulars can provide.

Without the clarification they have requested through a Bill of Particulars, Defendants are prejudiced and subject to surprise because fundamental facts remain unknown, specifically the identity of each substance (controlled or analogue) upon which the conspiracy charge against Defendants rests.  While the volume of discovery the Government has disclosed is large, that fact compounds, rather than resolves uncertainties created by the language of the Indictment.   The discovery furnished consists of information that the Government represents applies universally to four separate indictments, only one of which has a defendant in common with this indictment.  Defendants therefore require clarification as to exactly which of the substances reflected in that discovery that the Government intends to prosecute through this particular indictment, and whether those substances are alleged to be controlled substances or controlled substance analogues.  If the latter, then the Government should identify the controlled substance to which a given alleged analogue is substantially similar.

Knowing the identity of the controlled substances at issue, as well as those of any alleged controlled substance analogues is also information Defendants require in order to defend this case.  The distribution of a controlled substance analogue is regulated by means of 21 U.S.C. § 813 and 21 U.S.C. § 841(a)(1).  However, an analogue itself is defined by 21 U.S.C. § 802(32)(A), which requires a substance's chemical structure to be "substantially similar to the chemical structure of a controlled substance in schedule I or II."  The very definition of an analogue requires the

identification of an analogous scheduled, controlled substance.  However, the Government has failed to correlate any alleged analogue to its purported controlled substance.

In this case, the burden is on the Government to establish that any alleged analogue is substantially similar to a Schedule I or II controlled substance.  That the indictment does not reflect the product of conclusions the grand jury would need to have reached in order to return a true bill—i.e. that particular alleged analogues were substantially similar to corresponding controlled substances—gives rise to concerns beyond those raised in Defendants' request for a Bill of Particulars.  Because the grand jury should have been provided with the evidence sufficient to permit it to conclude that each alleged analogue was in fact substantially similar to a specific controlled substance, the Government cannot claim it is too burdensome to furnish that same information to Defendants now.  Presumably either the preliminary declarations of DEA experts to which the Government's responses refers (Doc. 192 at 21) or equivalent expert testimony was received by the grand jury.  If this is not a correct assumption, the indictment is faulty for reasons other than those addressed in Defendants' already-filed motions to dismiss.

So too, the evidence that must have been supplied to the grand jury for it to have the ability to properly find probable cause that the alleged controlled substances and analogues that were the subject of the conspiracy "include[ed], but [were] not limited to" those described in the indictment[2] would serve as a ready means for the Government to identify those substances to Defendants in a Bill of Particulars.

The indictment in this case fails to provide notice of which named substances are chemically similar to the allegedly corresponding scheduled controlled substances.  To minimize the danger of unfair surprise to Defendants at trial, for each alleged analogue, the Government

---

[2] Even if without specifying whether those substances were controlled or analogues.

should identify the corresponding schedule I or schedule II controlled substance to which the Government maintains the alleged analogue is substantially similar. This is hardly a tall order since it is what section 803(32)(A) requires in order for any substance to meet the definition of a controlled substance analogue in the first place.

Allowing the Government to withhold critical information that relates to an essential element of the charges Defendants face subjects them to unfair, and at base, unnecessary speculation. The Bill of Particulars that Defendants requested will provide clarification that serves to diminish unfair surprise at trial. The Government's proposal that such clarification should only be had through its expert witnesses, and not until the unspecified point in time when those witnesses' "preliminary declarations" are disclosed, serves no practical purpose and only contributes to additional delays and confusion within the proceeding.

It is further necessary for the Government to provide information regarding which substances that are the subject of this prosecution are scheduled and which it considers to be analogues. That disclosure starts with a full identification of all substances that are the subject of the indictment, a fact that the indictment specifically does not reveal through the open-ended use of the phrase "including, but not limited to". Compounding that vagary is the fact that the indictment charges Defendants with conspiracy to: (1) distribute controlled substances in violation of 21 U.S.C. § 841 <u>and</u> (2) distribute controlled substance analogues in violation of 21 U.S.C. § 813, which violation can only be established where a substance first meets the definition of an analogue under 21 U.S.C. § 802(32)(A).

The single count of conspiracy alleges that Defendants conspired to "distribute Schedule I controlled substances *and* Schedule I controlled substance analogues…" (emphasis added). But, without an allegation in the Indictment that identifies which substances are scheduled and which

are regarded as analogues, Defendants cannot know the operative facts upon which they are being charged. Given the wide range of substances already pled within the instant indictment, Defendants are left to speculate as to which substances are considered scheduled and which are considered analogues, particularly when the indictment does not specify the period of time in which a given substance was allegedly distributed by the conspiracy. Clarification as to the dates of alleged distribution would help to inform whether a given substance can be prosecuted as a controlled substance or only as an analogue. During the time frame alleged within the indictment, some substances listed were scheduled by Congress, others by the Administrator of the Drug Enforcement Agency, all at different points time during the period of the conspiracy, while other substances—specified and otherwise, may have only ever been regarded as analogues.

The Government's time frame alleged in the Indictment is further confounded by use of the phrase "Beginning sometime in 2012, and continuing to on or about the date of this Indictment, with the exact dates unknown…" *See* Indictment, Count I, Section A. The Indictment itself begs the question as to when a particular substance was distributed, thus leaving unresolved the classification of a particular substance at any given time. Such information about specific timing is required in order to prepare a defense and avoid surprise.

The requested Bill of Particulars would have the Government provide dates (or a range of dates) when any substance that is the subject of the indictment (whether specified in the indictment or not) is alleged to have been distributed or possessed by a member of the alleged conspiracy and which defendant(s) allegedly distributed such substance(s). Without that information, however, Defendants are left to defend a moving target.

Defendants are prejudiced in that they are now forced to construct two separate defenses under one count without a clear picture as to what substances are considered scheduled and which

are analogues.  As Count I is currently pled, the Government may choose to prosecute Defendants for one of two charges without having to provide Defendants notice of which charge, or both, they intend to pursue against which Defendant, let alone which substance will form the basis for the violations that the Indictment charges.  And, if the Government elects to pursue prosecution under an analogue theory, Defendants do not know which controlled substance the alleged analogue is alleged to share substantial similarities.

The Government points to the volume of discovery and the indictment as a proxy for the clarification Defendants seek to receive through a Bill of Particulars.  Given the volume of discovery disclosures and the fact that such disclosures are not exclusive to this case, but were also made in connection with three separately-indicted cases, Defendants are unable to determine the unspecified substances that purport to have been the object of their alleged conspiracy, let alone the date(s) on which those substances were distributed by any alleged conspirator.  Without that information, Defendants are subject to unfair surprise and are unable to prepare an adequate defense to Count I.

The Defendants' requests for a Bill of Particulars are made in an effort to clarify issues that, if left unaddressed, will subject Defendants to unnecessary surprise.  None of the 19 pages of the indictment, nor any of the 1,000,000 pages of discovery to which the Government points in its response addresses these issues.  Moreover, the Indictment's use of "including, but not limited to" coupled with the fact that discovery received in this case includes discovery that may only relate to other cases, Defendants are left to guess which controlled substances and alleged analogues are the subject of the indictment in their case.

The clarification that is required can only begin to be had by granting Defendants' Motion for a Bill of Particulars.  Because that clarification is critical to the Defendants' ability to

understand the charges and thereby prepare a proper defense, Defendants respectfully request that the Court grant their motion and require the Government to supply the Bill of Particulars Defendants have requested.

Dated:  December 3, 2015

Respectfully Submitted,

| BOROWIAK LAW FIRM | LUCCO, BROWN, THRELKELD & DAWSON |
|---|---|
| By: /s/ Zachary J. Borowiak<br>Zachary J. Borowiak  #58855MO<br>225 South Meramec, Suite 301<br>St. Louis, Missouri 63105<br>Telephone: (314) 537-2351<br>Fax: (314) 269-1042<br>Email: borowiaklaw@gmail.com | By: /s/ J. William Lucco (with permission)<br>J. William Lucco  #1701835IL<br>Christopher P. Threlkeld   #6271483IL<br>224 St. Louis Street<br>Edwardsville, Illinois 62025<br>Telephone: (618) 656-2321<br>Fax: (618) 656-2363<br>Email: blucco@lbtdlaw.com<br>       cthrelkeld@lbtdlaw.com |
| *Attorney for Defendant Robert Wolfe* | *Attorneys for Defendant Charles Wolfe* |
| DOWD BENNETT LLP | THE LAW OFFICE OF JASON A. KORNER |
| By: /s/ James E. Crowe, III<br>James E. Crowe, III  #50031MO<br>7733 Forsyth Boulevard, Suite 1900<br>St. Louis, Missouri 63105<br>Telephone: (314) 889-7300<br>Fax: (314) 863-2111<br>Email: jcrowe@dowdbennett.com | By: /s/ Jason A. Korner (with permission)<br>Jason A. Korner  #58495MO<br>7911 Forsyth Blvd. Suite 300<br>Clayton, Missouri 63105<br>Telephone: (314) 409-2659<br>Fax: (314) 863-5335<br>Email: jasonkorner@kornerlaw.com |
| *Attorney for Defendant Joseph Gabrick* | *Attorney for Defendant Samuel Leinicke* |
| THE MUTRUX LAW FIRM | THE LAW OFFICES OF SHELBY M. COWLEY |
| By: /s/ Tyson Mutrux (with permission)<br>Tyson Mutrux  #63117MO<br>1717 Park Avenue<br>St. Louis, Missouri 63104<br>Telephone: (314) 270-2273<br>Fax: (314) 884-4333<br>Email: tyson@mtruxlaw.com | By: /s/ Shelby M. Cowley (with permission)<br>Shelby M. Cowley  #62819MO<br>1717 Park Avenue<br>St. Louis, MO 63104<br>Telephone: (314) 721-1024<br>Fax: (314) 446-4700<br>Email: cowley_shelby@yahoo.com |
| *Attorney for Defendant Mark Palmer* | *Attorney for Defendant Mark Palmer* |

## **CERTIFICATE OF SERVICE**

      Signature of the foregoing document is also certification that on this 3rd day of December, 2015 a true and correct copy has been filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all registered users of the CM/ECF system.

                                    /s/Zachary J. Borowiak