UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14-CR-00175 AGF (DDN) |
| ) | |
| MARK PALMER *et. al*, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANTS' JOINT MOTION REQUESTING A *FRANKS* HEARING WITH MEMORANDUM IN SUPPORT**

COME NOW Defendants Robert Wolfe, Chuck Wolfe, Joseph Gabrick, Mark Palmer, and Samuel Leineke, by and through their respective undersigned counsel, and hereby jointly move the Court to enter its Order granting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to receive evidence on the validity of certain search warrants executed in connection with the investigation of this case.  In support of their joint motion, Defendants state as follows:

**I.     BACKGROUND**

On June 5, 2014, a grand jury returned an Indictment against defendants, that *inter alia*, alleges violations of Title 21, United States Code, §§ 841(a)(1), 813, and 846.  *See* Doc. 2, (Count I).  Those allegations include ones that Defendants violated the Controlled Substances Act (21 U.S.C. § 841, (the "CSA")) and conspired to "distribute and possess with intent to distribute Schedule I controlled substance analogues intended for human consumption." *Id*., Count I, ¶ A.[1]  That particular violation can only be premised upon findings that would have to

---

[1] The allegations against the Defendants include: (1) conspiracy to distribute and possession with the intent to distribute controlled substance analogues intended for human consumption in violation of Title 21 U.S.C. 841(a)(1) and 813 (Count I, all defendants); (2) conspiracy to cause the introduction of misbranded drugs into interstate commerce in violation of Title 21 U.S.C. 331 (a) and 333(a)(2) (Count

be made under the Controlled Substance Analogue Enforcement Act of 1986, Pub. L. No. 99-570, 100 Stat.3207-13 (21 U.S.C. § 813) (the "Analogue Act"), among them that the substance possessed was in fact an analogue within the definition of 21 U.S.C. § 802(32)(A).

Throughout the Government's investigation, agents of Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security ("DHS"), the United States Postal Inspection Service ("Postal Inspection") and the Internal Revenue Service – Criminal Investigative Division ("IRS") applied for, were issued and executed twenty-four separate search warrants at various places and times.[2]  The ensuing searches resulted in the seizure of property and evidence that the Government now intends to introduce against all of the undersigned Defendants.[3]

In each supporting affidavit, ICE Agent Wayne House, IRS Agent Robert Anderson and Postal Inspector James V. O'Hanlon assert foundational paragraphs under sections entitled "Controlled Substance Analogues" that include general statements as to the operations of

---

II-all defendants); (3) knowingly conducting and attempting to conduct a monetary transaction involving a financial institution in violation of Title 18 U.S.C. 1957 and 1956 (Count III-Mark Palmer, Charles Wolfe, Robert Wolfe and Joseph Gabrick); (4) conspiracy to import Schedule I controlled substances and Schedule I controlled substance analogues in violation of Title 21 U.S.C. 952, 960(a)(1), 960(b)(3), and 963 (Count IV- defendants Mark Palmer and Anthony Palmer); and (5) conspiracy to receive conceal, buy, sell, or in any manner facilitate the transportation of merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law in violation of Title 18 U.S.C. 545 (Count V-defendants Mark palmer and Anthony Palmer). *See* Doc. 2.

[2] The 24 separate search warrants that are the subject of this motion are attached as Exhibits 1 through 9 (including sub-exhibits) and are incorporated herein by this reference.  Exhibit 10 lists all 24 search warrants that are the subject of this motion.

[3] Defendants each join in this motion as to all 24 search warrants out an abundance of caution because the Government's Supplemental Disclosure of Arguably Suppressible Evidence Pursuant to Federal Rule of Criminal Procedure 12(b)(4) (Doc. 188) asserts that the evidence seized pursuant to the search warrants executions may apply to "All Defendants".  Defendants' assertion of standing in the instant motion is necessary due to the breadth of the Government's Rule 12(b)(4) disclosure and is not and should not be construed an affirmative statement that each Defendant has an interest in all property seized pursuant to every search warrant.  Each Defendant reserves his respective right to object to the introduction of any evidence against him at trial.

"individuals [who] have begun to manufacture and traffic in smokable synthetic cannabinoid products…"[4] Among these paragraphs are assertions and scientific conclusions that are traditionally reserved for highly specialized professionals and for which the affidavits provide no independent support. The statements are necessary to establish any unlawful conduct, but when those assertions are false, inaccurate or misleading, it removes a nexus required to establish probable cause to believe that evidence of criminal activity would be found at the premises for which a warrant was sought. Without that nexus, probable cause is absent from the affidavits, and any searches made based upon those warrants are unlawful.

Affidavits submitted in support of search warrants identified in Exhibits 1 through 9 (including sub-exhibits) contain misleading and unreliable information that undermines probable cause to support the related searches. As is addressed separately in Defendants' Joint Motion to Suppress Evidence, the ensuing searches and seizures of evidence were therefore unlawful as they violated Defendants' rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that evidence should therefore be suppressed.

## II.     LEGAL STANDARD

In order for search warrants to serve the critical role in safeguarding against violations of the Fourth Amendment rights of persons whose property is searched and seized, courts must ensure that the representations made by affiants in support of a search warrant affidavit are made in good faith. As the Court in *Franks* well noted:

> 'when the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing' (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be

---

[4] Exhibit 11 contains the language found in the corresponding affidavits that is the subject to of the challenge Defendants raise by this motion and supplies the initial premise for the *Franks* relief they seek herein. For ease of common reference, the lettered paragraphs A-J of Exhibit 11 will serve as points of reference throughout this Motion and Defendants' Joint Motion to Suppress Evidence.

- 3 -

> founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), *aff'd.*, Docket No. 31369 (2nd Cir. 1967) (unreported)).

The Supreme Court in *Franks* ultimately held:

> [w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56.

"When a search warrant is based upon an affidavit setting forth a facially sufficient showing of probable cause, as in this case, the defendant is nonetheless entitled to an evidentiary suppression hearing if he makes a "substantial preliminary showing" that a false statement necessary to the finding of probable cause was "knowingly and intentionally, or with reckless disregard for the truth, included in the warrant affidavit." *United States v. Freeman*, 625 F.3d 1049, 1050 (8th Cir. 2010) (quoting *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). "*Franks* requires an evidentiary hearing to evaluate the veracity of a warrant affidavit if a defendant makes a preliminary showing that the affidavit contains an intentional or reckless falsehood necessary to the finding of probable cause." *United States v. Finley*, 612 F.3d 998, 1003 n.7 (8th Cir. 2010). And, as the Eighth Circuit said in *Finley*, "[w]e have stated that omission of material information from an affidavit can form the basis of a *Franks* violation where the additional information would have negated probable cause." *Id.* at 1003 n.8.

The standard to be met at a *Franks* hearing is preponderance of evidence. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "[A] court may look behind a search warrant when

the affiant intentionally or recklessly misleads the magistrate judge by making an affirmatively false statement or by omitting material information that would alter the magistrate judge's probable cause determination." *United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999). Should the evidence at the hearing establish an affidavit contained false or misleading information—either through the information included in the affidavit or material information that was omitted from the affidavit, Defendants would be entitled to relief if they can establish by a preponderance of the evidence: (1) the affiant falsified or omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading; and (2) the affidavit, if supplemented by the omitted information or read without the untrue facts would not have been sufficient to support a finding of probable cause. *Id*. "If a defendant shows a *Franks* violation, then the "the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Finley*, 612 F.3d at 1002.

Through this motion, Defendants make the showing required by *Franks*, request a hearing, and submit that the Fourth Amendment and the *Franks* decision both require such a hearing. Defendants' motion fulfills the requirements of *Franks* that once met, requires an evidentiary hearing to be held.[5] Indeed, Defendants submit that in order to protect their rights under the Fourth and Fourteenth Amendments to the Constitution and the decision of the Supreme Court of the United States in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978) a *Franks* hearing is required.

---

[5] "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted … is only that of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171-72.

### A. The Affidavits Contain Material Misleading Statements Made With Reckless Disregard For the Truth.

The Affidavits contain a substantial number of scientific conclusions about the makeup of various substances that the affidavit ultimately concludes are to be controlled substance analogues within the definition of 21 U.S.C. § 802(32)(A) or cannabimimetic agents under 21 U.S.C. § 812.  *See* Exhibits 1-9 (the "Affidavits"), *passim*.  By way of contrast, however, the professional experience related by the affiants who are agents from ICE, IRS-CID and Postal Inspection does not provide any exposition of relevant training in identification of controlled substance analogues or cannabimimetic agents.  *See, e.g.* Exhibit 2-I, ¶¶ 1, 75-76 (citing experience in importation, smuggling, and trafficking of controlled substances and "narcotics-based economic crime"), Ex. 5-A, ¶¶ 1, 52-60 (citing experience in investigations of tax fraud, health care fraud, financial fraud, money laundering and "narcotics-based economic crime"), and Ex. 7, ¶¶ 1, 34-35 (use of the U.S. Mails and private carriers to illegally transport controlled substances, investigation of narcotics offenses, methods used to traffic narcotics through the U.S. Mails, and "narcotics-based economic crime").

Much of what is captioned in the Affidavits as experience of the affiants and the investigative teams instead details techniques that the affiants assert to be ones used by individuals who distribute controlled substances.  *See e.g.,* Exhibit 2-I at ¶¶ 75-76, Ex. 5-A at ¶¶ 52-60 and Ex. 7 at ¶¶ 34-35.  None of the experience or techniques described provides a basis to support the conclusions reached by the affiants in regard of what substances are or may be controlled substance analogues.

Each of the Affidavits contains a section captioned "Controlled Substance Analogues" that begins with a blanket statement "I know that …" and is punctuated with assertions of facts that are understood through the affidavit to have become known to the affiant "through

experience" or "through research, training, and experience." *See e.g.,* Ex. 11, Paragraphs A-C. These assertions among others, purport to substantiate a litany of conclusions about the chemical composition and structure of various substances, including ones the affidavits ultimately conclude to be controlled substance analogues.

As is demonstrated by the Declaration of Allen S. Kesselring, Ph.D., however, "[a] person who does not have formal education and training in organic chemistry, molecular structure and biochemistry would not have sufficient knowledge or understanding to reach the scientific conclusions set forth in paragraphs [A-G]." *See* Exhibit 12 at ¶ 12; *see also* Exhibit 11, ¶¶ A-G.  All seven paragraphs A-G are included in 19 the 24 Affidavits.  *See* Exhibit 10.  At least two of the seven paragraphs A-G are included in the remaining five affidavits. *Id.*

But even more problematic is that paragraphs F and G contain what is, "at a minimum, a misleading statement." *See* Exhibit 12 at ¶¶ 6, 9, 14, 17 and 19; *see also* Exhibit 11, ¶¶ F and G. Dr. Kesselring explains that as to paragraph F, the:

> Affidavit states that AKB48 and 5F-AKB48 "are *structurally related* to other synthetic cannabinoids with a core indole structure, such as Schedule I substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively)". **This statement is, at minimum, misleading** because JWH-018 and AM2201 fall within a specific recognized structural class of Cannabimimetic Agents under Title 21, U.S.C. § 812 and the materials AKB48 and 5F-AKB48 which have indazole cores, do not fall within any of the defined structural classes of Cannabimimetic Agents.

*See* Exhibit 12 at ¶¶ 6, 14, and 19(emphasis supplied).

To include in the Affidavit the statement in paragraph F that "AKB48 and 5F-AKB48 "are *structurally related* to other synthetic cannabinoids with a core indole structure" without including the corresponding explanation that "'structurally related' is not a term that is defined, nor does it have precise scientific meaning" (Ex. 12 at ¶ 7) or certainly to inform the reviewing magistrate that the substances "do not fall within any of the defined structural classes of

- 7 -

Cannabimimetic Agents" under Title 21, U.S.C. § 812 represents a material omission. *See* Ex. 12 at ¶ 6. But, the inaccuracies of Paragraph F do not end with this misleading statement.

> Dr. Kesselring continues on about paragraph F:
>
> If the Affidavit intends to suggest that the "structural relationship" it claims AKB48 and 5F-AKB48 to have with other synthetic cannabinoids such as Schedule I substances JWH-018 and AM2201 renders AKB48 and 5F-AKB48 to be controlled substance analogues of JWH-018 and AM2201 within the definition of analogue under Title 21 U.S.C. § 802(32)(A)(i), then that assertion of Paragraph 21 of the Affidavit is **false**. To conclude that AKB48 and 5F-AKB48 are controlled substance analogues of JWH-018 and AM2201 on that basis would be to say that "structurally related" is sufficient to meet the § 802(32)(A)(i) criteria of "substantially similar to". If this were scientifically true (which it is not), then the common and essential amino acid tryptophan, having structural relation to several schedule I controlled substances, could be considered a controlled substance analog on the same basis (which it is not).

Ex. 12 at ¶ 7 (emphasis supplied).

> Dr. Kesselring then goes on to explain that as to Paragraph G, the:
>
> Affidavit states that "AB-PINICA and AB-FUBINACA are cannabimimetic indazole-derivatives". This too is**, at a minimum, a misleading statement**. Neither AB-PINICA nor AB-FUBINACA falls within any of the five classes of compounds that are formally defined as Cannabimimetic Agents in Title 21, U.S.C. § 812.

*See* Exhibit 12 at ¶¶ 9 and 17(emphasis supplied). Here again, the omission that AB-PINICA and AB-FUBINACA are not within any of the five classes of compounds that are formally defined as Cannabimimetic Agents in Title 21, U.S.C. § 812 is a material one. Paragraph G's statement that "AB-PINICA and AB-FUBINACA are cannabimimetic indazole-derivatives" leads the reviewer of the affidavit to conclude that those substances are controlled substance analogues. By omitting the information that is crucial to assessing the legality of those substances, *i.e.* that they are not within any of the five classes of compounds that are formally defined as Cannabimimetic Agents in Title 21, Paragraph G is affirmatively misleading.

All but two of the 24 Affidavits contain both paragraphs F and G.  *See* Exhibit 10.  Both of these misleading statements and the related omissions are material because they mark the difference between whether the substances described in the Affidavit are Cannabimimetic Agents in Title 21, U.S.C. § 812.  The Eighth Circuit Court of Appeals has "acknowledged that recklessness may be 'inferred from the fact of omission of information from an affidavit … when the material omitted would have been 'clearly critical' to the finding of probable cause." *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007 (quoting *United States v. Rievich*, 793, F.2d. 957, 961 (8th Cir. 1986)).  "Under the *Franks* decision, if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth, that is the legal equivalent of intentional falsehood." *United States v. Cobb*, 2007 WL 3504171 at *9 (N.D. Iowa May 16, 2007) (citing *Franks*, 438 U.S. at 156 (remaining citations omitted)).

The inaccuracies Dr. Kesselring identified only lend further support to his conclusion that a certain degree of scientific expertise is required to reach many of the conclusions in the Affidavits.  Those are not the only instances Dr. Kesselring identified that suggest the affiant likely did not understand the information being presented to the reviewing magistrate.  Dr. Kesselring also reviewed Affidavits whose paragraphs corresponded to Paragraphs F and H of Exhibit 11 and found as follows:

> R1 and R2 have no independent significance without a related structural illustration of the corresponding substitution positions of each term.  The affidavit contains no material that establishes where R1 and R2 are found on any corresponding illustration, or the significance of those positions to the conclusion the affidavit reaches**.  The use of the R1 and R2 references** in the affidavit appears to be a careless replication of text from an uncited source that omits the corresponding structural illustration and therefore **provides no basis for the related conclusions**.  In order to take the related assertions as true, the reader would therefore have to make assumptions regarding the substitution positions of R1 and R2, which are not found in the affidavit.

Exhibit 12 at ¶¶ 11, 15, and 20.  Effectively, Dr. Kesselring identifies that the statements made in the Affidavits do not substantiate the conclusions they reach, despite purporting to do so by including scientific jargon that leads the reader to conclude otherwise.  Moreover, he points out that the information needed to assess whether the assertions of these paragraphs is not found within the Affidavit itself.  On that basis, probable cause cannot be substantiated on any of these statements as it would require the reader "to make assumptions regarding the substitution positions of R1 and R2, which are not found in the affidavit." Exhibit 12 at ¶¶ 11, 15, and 20.

Dr. Kesselring's review of Paragraph J resulted in yet another material misstatement of a substance's status as an analogue of a controlled substance:

> Paragraph 36(a) of the Orchard Drive Affidavit provides no basis to support the assertion that AKB48 N-(5-fluoropentyl), also known as (N-((3s,5s,7s)-adamantan-l-yl)-l-(5-fluoropentyl)-iH-indazole-3-carboxamide also known as 5F-AKB48, meets criteria of "a synthetic cannabinoid controlled substance analog per DEA control # 7201".  DEA control # 7201 is that of the material known as AM2201.  As previously noted, the structure of AM2201 falls within one of the five classes of Cannabimimetic Agents defined in 21 U.S.C. § 812.  Also as previously noted, 5F-AKB48, having an indazole core, does not fall within any of the structural classes of Cannabimimetic Agents defined in 21 U.S.C. § 812.  Furthermore, the presence of the "N-((3s,5s,7s)-adamantan-l-yl)" functionality in 5F-AKB48 continues to render it distinct from AM2201 insofar as 5F-AKB48 is an "alkyl amide" and AM2201 is an "aryl ketone".  **Agent House's assertion that 5F-AKB48 is a controlled substance analogue of AM2201 is incorrect** as they share neither a core structural class, nor predominate structural functionality.

Exhibit 12 at ¶ 10 (emphasis supplied); see also Exhibit 13 – DEA Control Numbers at p. 7 (defining as DEA Number 7201 the substance AM-2201 (1-(5-Fluoropentyl)-3-(1-naphthoyl) indole)). Absent from the statements in the Affidavit is the information material to whether a substance is properly categorized as a controlled substance analogue within the definition of 21 U.S.C. § 802(32)(A).  Specifically, the information that if included in the Affidavits, would

establish to a negative that 5F-AKB48, having an indazole core, does not fall within any of the structural classes of Cannabimimetic Agents defined in 21 U.S.C. § 812.

Paragraph G represents the rare instance where the Affidavits actually identifies and cites to a source of the information upon which it relies. Incredibly, however, that paragraph relies upon information drawn from the website Wikipedia. Paragraph G cites to what Wikipiedia refers to as a "Stub" for the limited history of AB-FUBINACA it provided and ultimately to support the conclusion that AB-FUBINACA was not "pursued for human use." [6] Ex. 11 at ¶ G. A Wikipedia "stub" "is an article deemed too short to provide encyclopedic coverage of a subject." *See* Ex. 14-C at pp. 1 and 3. Wikipedia is not independently verified, nor is it a reliable source. Anyone can edit the content of a page on Wikipedia. *See* Ex. 14-C at pp. 7-8 ("Anyone can contribute to Wikipedia by clicking on the *Edit* tab in an article"). As a result, reliance on Wikipedia for any statement, let alone a material one, cannot be properly construed as anything short of reckless. Stated another way, the rights of individuals under the Fourth and Fourteenth Amendments are not protected when warrants are issued based upon snippets of unverified information from the internet. To conclude otherwise is to ignore the holdings of the Supreme Court in *Franks*.

That Wikipedia was relied upon in the Affidavits to support any conclusion at all begs inquiry at a hearing into the sources that were consulted or relied upon for other scientific conclusions for which no citation to any reference material is made in the Affidavits. What is more, by asserting that AB-FUBINACA is not intended for human use, the premise that

---

[6] Exhibit 14-A reflects the Wikipedia page as it would have appeared as of September 24, 2013 when applications were made for the search warrants in Exhibits 2-A through 2-I. As Exhibit 14-A reflects, that "version of the page has been revised. Besides normal editing, the reason for revision may have been that this version contains factual inaccuracies, vandalism, or material not compatible with the Creative Commons AttributionShareAlike License. That page had then most recently been updated on July 17, 2013 and was not updated until December 11, 2013. *See* Ex. 14-B at 4.

Paragraph G takes the reader to is material. Paragraph G allows that AB-PINICA nor AB-FUBINACA may not be controlled substance analogues[7], but concludes that manufacturing and distributing that substance "intended for human consumption without proper labeling is in violation of 21 U.S.C. § 331." Other than the citation to Wikipedia for the statement that AB-FUBINACA was not "pursued for human use" there is there is no other support in Paragraph G for the conclusion that it is not suited for human use. Nor is there any assertion that AB-FUBINACA was being mislabeled at the premises to be searched. As a result, any probable cause to believe there was a violation of 21 U.S.C. § 331 stemming from activity related to AB-PINICA or AB-FUBINACA is at best speculative, but certainly unfounded based on the information not found within the four corners of the Affidavits.

### B. A *Franks* Hearing is Required.

"The magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations. The pre-search proceeding will frequently be marked by haste, because of the understandable desire to act before the evidence disappears; this urgency will not always permit the magistrate to make an extended independent examination of the affiant or other witnesses." *Franks*, 438 U.S, at 169. Here, the search warrant affidavits submitted to the Court suggested a level of scientific knowledge and analytical ability that as demonstrated by the misleading and inaccurate statements Dr. Kesselring identified, the affiants did not have. Without the requisite knowledge base or other demonstrated means by which the affiants showed in the search warrant affidavits the bases for their scientific conclusions, many

---

[7] Properly so, because despite suggestions that being cannabimimetic indazole-derivatives renders them to be analogues (as is discussed *supra*), "[n]either AB-PINICA nor AB-FUBINACA falls within any of the five classes of compounds that are formally defined as Cannabimimetic Agents in Title 21, U.S.C. § 812." Exhibit 12 at ¶ 17.

of the crucial foundational assertions made in those affidavits were made in a misleading and careless manner, one that in several instances across the Affidavits omitted material facts.

"Because it is the magistrate who must determine independently whether there is probable cause . . . it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Franks,* 438 U.S. at 165 (citations omitted).  This is because "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning. The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause." *Id.* at 667.  To prevent against the dangers that the Supreme Court cautioned against in *Franks*, Defendants respectfully submit that a *Franks* hearing is required in this case.  "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." *Franks*, 438 U.S. at 171-72.

Defendants therefore request a *Franks* hearing be held to permit the independent examination of the affiants that will allow a full exposition of the purported bases for the conclusions reached in the affidavits at issue here.

    **C.**    **Evidence at the Hearing May Further Support Suppression of Evidence**

Because Defendants have met the preliminary requirements of *Franks* (438 U.S. at 171; *see* n. 5, *supra*) an evidentiary hearing is warranted.   The evidence to be received at that hearing will permit the Court to evaluate the impact upon the overall probable cause of each search

warrant application once the statements that were made with reckless disregard for the truth are disregarded and set to the side.

"It is established law . . . that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks*, 438 U.S. at 165 (citations omitted).  Here the missing and misleading information identified above did not afford the reviewing magistrates an opportunity to make such an independent evaluation of the related search warrant applications. Because the information presented by the search warrant affidavits did not permit a full evaluation by the magistrate and because once removed, the offending statements analyzed herein do not leave sufficient basis for probable cause to support the related searches, suppression of evidence is required to protect against violations of the Fourth and Fourteenth Amendments to the U.S. Constitution.  Defendants' Joint Motion to Suppress Evidence further addresses the bases for suppressing that evidence and is incorporated by reference into this motion.

In ruling on a motion to suppress, probable cause is determined based on "the information before the issuing judicial officer." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986).  Based upon the reckless disregard for the truth demonstrated herein and the fact that the evidence omitted from the Affidavits negates at least some of the probable cause to support the related searches conducted pursuant to the warrants that were issued, suppression of the evidence seized pursuant to those warrants is appropriate.

### III.     CONCLUSION

Absolute proof is not the burden the Defendants' must meet in order for an evidentiary hearing to be required under *Franks*.  Instead, to obtain a *Franks* hearing, Defendants merely need to make a substantial ***preliminary*** showing that one or more of the affidavits at issue contained statements that were made with reckless disregard for the truth. Such a showing has been made, and Defendants therefore respectfully request that a *Franks* hearing be set.

WHERFORE, Defendants respectfully request the Court enter its Order setting a *Franks* evidentiary hearing to permit a full examination of the statements made by the affiants in support of the search warrant affidavits identified herein, the related impact upon whether probable cause existed to conduct the ensuring searches, and granting all such other and further relief this Court finds just and warranted under the circumstances.

Respectfully submitted,

| DOWD BENNETT LLP | BOROWIAK LAW FIRM |
|---|---|
| By: /s/ James E. Crowe, III | By:  /s/ Zachary J. Borowiak (with permission) |
| James E. Crowe, III  #50031MO | Zachary J. Borowiak  #58855MO |
| 7733 Forsyth Boulevard, Suite 1900 | 225 South Meramec, Suite 301 |
| St. Louis, Missouri 63105 | St. Louis, Missouri 63105 |
| Telephone: (314) 889-7300 | Telephone: (314) 537-2351 |
| Fax: (314) 863-2111 | Fax: (314) 269-1042 |
| Email: jcrowe@dowdbennett.com | Email: borowiaklaw@gmail.com |
| *Attorney for Defendant Joseph Gabrick* | *Attorney for Defendant Robert Wolfe* |

| | |
|---|---|
| THE MUTRUX LAW FIRM | THE LAW OFFICES OF SHELBY M. COWLEY |
| By: /s/ Tyson Mutrux (with permission)<br>Tyson Mutrux  #63117MO<br>1717 Park Avenue<br>St. Louis, Missouri 63104<br>Telephone: (314) 270-2273<br>Fax: (314) 884-4333<br>Email: tyson@mtruxlaw.com<br><br>*Attorney for Defendant Mark Palmer* | By: /s/ Shelby M. Cowley (with permission)<br>Shelby M. Cowley  #62819MO<br>1717 Park Avenue<br>St. Louis, MO 63104<br>Telephone: (314) 721-1024<br>Fax: (314) 446-4700<br>Email: cowley_shelby@yahoo.com<br><br>*Attorney for Defendant Mark Palmer* |
| LUCCO, BROWN, THRELKELD & DAWSON | THE LAW OFFICE OF JASON A. KORNER |
| By: /s/ J. William Lucco (with permission)<br>J. William Lucco  #1701835IL<br>Christopher P. Threlkeld   #6271483IL<br>224 St. Louis Street<br>Edwardsville, Illinois 62025<br>Telephone: (618) 656-2321<br>Fax: (618) 656-2363<br>Email: blucco@lbtdlaw.com<br>          cthrelkeld@lbtdlaw.com<br><br>*Attorneys for Defendant Charles Wolfe* | By: /s/ Jason A. Korner (with permission)<br>Jason A. Korner  #58495MO<br>7911 Forsyth Blvd. Suite 300<br>Clayton, Missouri 63105<br>Telephone: (314) 409-2659<br>Fax: (314) 863-5335<br>Email: jasonkorner@kornerlaw.com<br><br>*Attorney for Defendant Samuel Leinicke* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of March, 2016, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, and service upon all participants in the case who are CM/ECF users will be accomplished by operation of that system.

_____/s/ James E. Crowe, III_____