**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 4:14CR00175-AGF-DDN |
| MARK PALMER et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT MOTION TO SUPPRESS EVIDENCE
WITH MEMORANDUM IN SUPPORT**

COME NOW Defendants Robert Wolfe, Chuck Wolfe, Joseph Gabrick, Mark Palmer, and Samuel Leineke, by and through their respective undersigned counsel, and hereby jointly move the Court to enter its Order suppressing evidence seized pursuant to certain search warrants executed in connection with the investigation of this case.  In support of their joint motion, Defendants state as follows:

**INTRODUCTION**

1.  Between September of 2013 and continuing into June of 2014, twenty-four (24) separate search warrants were applied for by federal agents and were executed[1] in a variety of locations. The warrants were not supported by probable cause, and the Government now intends to use

---

[1] The 24 separate search warrants that are the subject of this motion are attached to Defendants' Joint Motion Requesting a *Franks* Hearing as Exhibits 1 through 9 (including sub-exhibits) and are incorporated herein by this reference.  Exhibit 10 to Defendants' Joint Motion Requesting a *Franks* Hearing lists all 24 search warrants that are the subject of this motion.    Factual backround is set out in Defendants' *Franks* Motion.

evidence seized as a result of those executions against all Defendants charged in the instant case. Defendants now challenge the the affidavits supporting said search warrants.[2]

2.   Seizure of that evidence is a violation of the protections guaranteed to Defendants pursuant to the Fourth Amendment to the United States Constitution and as a result, should be excluded from evidence at trial.

3.   Affidavits supporting the search warrants contained reckless statements on behalf of the affiants that were false, inaccurate or misleading with regard to critical information used to establish probable cause.

4.   Affiants were not qualified to make assertions and conclusions necessary to create a nexus between alleged controlled substances and violations of the law. Affiants lacked the qualifications, training and experience necessary to make statements traditionally reserved for experts.

5.   When *Franks* relief is granted, and statements are removed from supporting affidavits, the court awarding that relief should then revisit the original search warrant affidavits to determine whether that affidavit still establishes probable cause sufficient to justify the search of the designated location.

6.   If the Court finds that defendants are entitled to *Franks* relief and critical paragraphs are removed from the supporting affidavits, then suppression is warranted because the affidavits then

---

[2] Defendant each joins in this motion as to all 24 search warrants out an abundance of caution because the Government's Supplemental Disclosure of Arguably Suppressible Evidence Pursuant to Federal Rule of Criminal Procedure 12(b)(4) (Doc. 188) asserts that the evidence seized pursuant to the search warrants executions may apply to "All Defendants". Defendants' assertion of standing in the instant motion is necessary due to the breadth of the Government's Rule 12(b)(4) disclosure and is not and should not be construed an affirmative statement that each Defendant has an interest in all property seized pursuant to every search warrant. Each Defendant reserves his respective right to object to the introduction of any evidence against him at trial.

fail to establish independent probable cause that evidence of illegal activity would be discovered at the designated locations.

7.   Evidence seized pursuant to the execution of said search warrants constitute fruit of the poisonous tree and should be excluded with any additional evidence seized as a result of the initial seizure.

8.   Defendants refer the Court to Exhibits 1 through 12 attached to Defendants' Joint Motion Requesting a *Franks* Hearing with Memorandum in Support ("*Franks* Motion") filed contemporaneously with the instant motion and incorporate both that Motion and its Exhibits herein by this reference.

## SUPPORTING AUTHORITY

The Fourth Amendment requires that law enforcement officers secure a warrant based upon a finding of probable cause by a neutral and detached magistrate before conducting a search. *United States v. Montes–Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009).  Probable cause to issue a search warrant exists if the affidavit in support of the warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the decision of the issuing judge, the court must determine if the issuing judge "had a substantial basis for ... conclud[ing] that probable cause existed." *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003).  If the issuing judge relied solely on the supporting affidavit to issue the warrant, then "only that information which is found within the four corners of the affidavit" may be considered in determining the existence of probable cause. *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) (citing *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).

Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231).

Probable cause to issue a search warrant is found by looking at the totality of the circumstances contained within the four corners of the affidavit. *Gates* at 236.  A basis of knowledge, veracity and reliability are all factors which are relevant to the probable cause determination. *Id.*  Magistrates making probable cause determinations must be careful not to simply ratify factual allegations without some showing of reliability on the part of the source. *Id.* "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be the mere ratification of the bare conclusions of others." *Id.* at 239.  An affidavit that cites opinions or conclusions by the affiant is insufficient to maintain a showing of probable cause. *Gates* at 239.  Additionally, probable cause exists where the facts and circumstances within the affiant's knowledge are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

In *Gates*, the United States Supreme Court cites two decisions that dealt with affidavits that did not reach the level probable cause because they only put forth conclusions and did not include sufficient foundation for those conclusion. The decisions were *Nathanson v. United States*, 290 U.S. 41 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964).  *Nathanson* dealt with a search warrant to search a location for illegal liquor. The search warrant was held insufficient by the Supreme Court because the affidavit only held bare bones conclusions regarding illegal activity. *Aguilar* was a drug case where a search warrant affidavit used a confidential informant in an attempt to establish probable cause.  Even with the confidential information language in the

4

*Aguilar* affidavit, the Supreme Court determined there were still only conclusion without a sufficient basis included in the affidavit for those conclusions.

Even with a facially sufficient search warrant, the court may nevertheless look behind the allegations supporting the warrant where the affiant intentionally or recklessly misleads the judge by making an affirmatively false statement or by omitting material information that would affect the probable cause determination. *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that where probable cause is established by reckless false statements, the false statements are to be disregarded.  If the remainder of the affidavit is insufficient to establish probable cause, then the warrant must be voided and the fruits of the search must be excluded from trial. *Id.*  In cases decided subsequent to *Franks*, the Eighth Circuit has repeatedly held that false information can be provided when the affiant deliberately or with reckless disregard for the truth, omits material information from the affidavit which undermines probable cause. See, e.g., *United States v. Snyder*, 511 F.3d 813 (8th Cir. 2008); *United States v. Jacobs*, 686 F.2d 1231, 1234 (8th Cir. 1993) (citing *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986)); *United States v. Davis*, 471 F.3d 938, 947 (8th Cir. 2006).

It is well-established law that evidence which is illegally obtained cannot be used, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), and that the "fruits" resulting from evidence seized or leads resulting from such evidence must also be excluded. *Nardone v. United States*, 308 U.S. 338 (1939); Wong Sun v. United States, 371 U.S. 471 (1963).

In the instant case, after the *Franks* relief has been granted, the affiant is left with a bare affidavit similar to those in *Nathanson* and *Aguilar* that fails to set forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime

will be found in a particular place.  When the paragraphs challenged in the Defendants' *Franks* Motion filed herewith are removed, the agent is unable to show that the activity complained of as illegal is in actuality illegal. Chemical substances are inherently legal, and only drift into criminality when scheduled or if they fall under the Analogue Act. A search warrant affidavit that only speaks to chemical substances without fully establishing their nexus to criminal activity is not sufficient on its face.  Accordingly, any evidence obtained as a result of the search warrants must be excluded as fruit of the poisonous tree.

### A. The Affidavits fail to state probable cause once the critical offending paragraphs are removed.

As previously set out in the *Franks* Motion, and shown in by Exhibit 12, the report of Dr. Allen Kesselring, agents recklessly asserted allegations within affidavits supporting search warrants in Exhibits 1 through 9.  Pursuant to *Franks*, the necessary relief in this instance is the removal of the reckless language and any language, phrases and paragraphs that are contingent upon such language.

Removing paragraphs that agents recklessly prepared creates a critical void within the foundational paragraphs that describe the potential illegality of the alleged substances.  Without those paragraphs, which are outlined in Exhibit 11, and attached to the *Franks* Motion, agents fail to establish a nexus of criminality to those substances.

Furthermore, any reference to those paragraphs or substances named therein should be stricken pursuant to *Franks*.  What remains are allegations of conduct that fail to rise to a level of criminality. The agents' conclusions as to alleged criminal conduct are therefore not supported by other material facts that establish probable cause.  The affidavits then fail under a *Gates* analysis: the Court's probable cause determination may not be the "mere ratification of the bare conclusions of others."  *Gates* at 239.

6

As the agents' investigation progresses they rely on the seizure of evidence pursuant to previous warrant executions.  The affidavits build on each other with like, if not identical, paragraphs throughout Exhibits 1 through 9.  As each affidavit builds on the previous warrant's seizure, the removal of language in the previous affidavits creates a cascading effect from the first affidavit to the last as the evidence upon which assertions are made are fruits of illegal searches.

       i.    <u>The Affidavit supporting the search warrant listed as Exhibit 1 fails for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.</u>.

The Affidavit supporting Exhibit 1 is for the search of Box #327 located at UPS Store #869, 6025 Stage Road, Bartlett, TN 38134.  Upon removing the language recklessly asserted by the affiant as described in the *Franks* Motion, in particular paragraphs 9, 10, 11, 21, 22, 23, 30a and 30b, or at least substantial portions thereof, the remaining affidavits do little to support probable cause that criminal activity, or evidence relating thereto, is located in the place to be searched or item to be seized.

The affiant's allegations of criminal conduct to support probable cause is located within the section entitled "Facts Supporting This Affidavit" contained in paragraphs 12 through 28.  Absent the language removed pursuant to *Franks*, there is little more alleged than descriptions of legal and permissible interactions.

If the affidavits lack the foundational language necessary to state why alleged substances are illicit, any reference to those substances merely describes an object that is not tainted by illegality.  The substances themselves cannot be used to meet the probable cause standard. The

remaining paragraphs use conclusory statements in an attempt to make broad and sweeping accusations against defendants and others charged in companion indictments.

The affiant appears to draw much of his investigation from "suspicious packages" being delivered to the UPS Store located at 6025 Stage Road, #42, Bartlett, TN. However, the allegations fail to specify any misconduct between the parties. In fact, the person receiving one of said packages, Anthony Palmer, was allowed to leave with the package after signing the proper receiving paperwork at the UPS Store.

There is also much discussion of border seizures in Anchorage and Chicago, but the allegations fail to specify any misconduct committed by the parties.  What remains is mere legal interactions between businesses and individuals.

There is also reference to trash runs at 13761/13765 St. Charles Rock Road, Ste. 118, in Bridgeton, MO 63044.  However, all that was found were receipts of business transactions. Additionally, once the reckless statements are removed pursuant to the *Franks* Motion, all that remains is simply objects found in the trash with no nexus to a statutory violation. Without actual scientific verification of the objects structural makeup, there is no affirmative statement verifying criminal activity and the affidavits fail to establish the necessary probable cause to execute a search warrant.

ii.    The Affidavits supporting the search warrants listed as Exhibits 2A through 2H fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish fail to establish probable cause necessary to issue a search warrant.

The Affidavits supporting Exhibits 2A through 2H are identical and are for the properties located at 1901 Williamstown Drive, St. Peters, MO 63376; 13761 St. Charles Rock Road, Ste.

118, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Ste. 101, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Ste. 102, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Ste. 111, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Ste. 115, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Ste. 116, Bridgeton, MO 63044; and 13765 St. Charles Rock Road, Ste. 121, Bridgeton, MO 63044.

Upon removing the language recklessly asserted by the affiant as described in the *Franks* Motion, in particular paragraphs 16, 17, 18, 19, 20, 21, 22, 23, 30a, 30b, 51, or at least substantial portions thereof, the remaining affidavits do little to support probable cause that criminal activity, or evidence relating thereto, is located in the place to be searched or item to be seized.  Absent the language removed pursuant to *Franks*, there is little more alleged than descriptions of legal and permissible interactions.

The affiant's allegations of criminal conduct to support probable cause is located within the section entitled "Details of Investigation" contained in paragraphs 23 through 74.

If the affidavits lack the foundational language necessary to state why alleged substances are illicit, any reference to those substances merely describes an object that is not tainted by illegality.  The substances themselves cannot be used to establish probable cause. Remaining paragraphs use conclusory statements in an attempt to make broad and sweeping accusations against the defendants.

There is much discussion of search warrants issued against other defendants in Companion Indictments, but the allegations fail to specify any misconduct between the parties. What remains are mere interactions between businesses and individuals.

In paragraphs 23-28, the affiant merely states business locations and addresses, the locations of various mailboxes, and makes conclusory allegations regarding the manufacture and

distribution of synthetic drugs in an attempt to make broad and sweeping accusations against Charles Wolfe, Mark Palmer and Anthony Palmer.

The affiant appears to draw much of his investigation from "suspicious packages" being delivered to the UPS Store located at 6025 Stage Road, #42, Bartlett, TN.   However, the allegations fail to specify any misconduct between the parties. In fact, the person receiving one of said packages, Anthony Palmer, was allowed to leave with the package after signing the proper receiving paperwork at the UPS Store.

There is also much discussion of border seizures in Anchorage and Chicago, but the allegations fail to specify any misconduct committed by the parties.  What remains is mere interactions between businesses and individuals.

The affiant also makes much of a traffic stop on September 17, 2013 of John Galvin. However, the stop of Mr. Galvin revealed only that he was a delivery driver of "aroma products" and that he at times consumed synthetic drugs himself, nothing more.

Paragraphs 59-66 in the affiant's "Details of Investigation" were spent discussing synthetic marijuana seller Henry Wilson.  However, the most Henry Wilson could tell agents was that his mother and brother worked for a synthetic marijuana manufacturer in the "southern St. Louis metropolitan area." The affiant discusses the remaining paragraphs regarding Henry Wilson's drug problems and how and where he sells synthetic marijuana.  Not one of the defendants are mentioned in those paragraphs.

There is also much discussion of checks and bank accounts regarding defendants, Smoke Sensations, and South 94 Bait and Tackle Store, but the allegations fail to specify any misconduct committed by the parties.  What remains is mere interactions between businesses and individuals.

Without actual scientific verification of the objects structural makeup, there is no affirmative statement verifying criminal activity and the affidavits fail to create the necessary probable cause to execute a search warrant.

The affiant spends the majority of the affidavit referencing trash runs at various locations which revealed nothing more than invoices, receipts, price lists, utility bills, letters between Mr. Palmer and his attorney, shipping labels and materials, mortgage loan documents, packaging materials, office supplies, materials to create herbal incense, and lab reports indicating the absence of illegal synthetic chemicals. Once the reckless statements are removed pursuant to the *Franks* Motion, all that remains is simply objects found in the trash with no nexus to a statutory violation.

The affiant and other agents spent considerable amounts of time surveilling defendants. Despite the several hours of surveillance, the allegations fail to specify any misconduct committed by the parties. Rather, the conduct the affiant describes are that of businesses and individuals conducting typical financial transactions.

Finally, much of the affidavit relies on seizures made pursuant to the execution several warrants list in Exhibits 1-9.  However, as seen above, a reliance on the previously executed warrants is fruit of the poisonous tree, and as such should be excluded from consideration in affidavits supporting Exhibits 2A through 2I.

iii.    <u>The Affidavit supporting the search warrants listed as Exhibits 3A through 3D fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.</u>

The Affidavit supporting Exhibits 3A-3D are for searches of Storage Unit F80 at the U-Lock Stor, Inc. located at 13789 St. Charles Rock Road, Bridgeton, MO 63044; Storage Unit

F81, U-LOK STOR, Inc., 13789 St. Charles Rock Road, Bridgeton, MO 63044; Storage Unit F37, U-LOK STOR, Inc., 13789 St. Charles Rock Road, Bridgeton, MO 63044; and Unit F38, U-LOK STOR, Inc., 13789 St. Charles Rock Road, Bridgeton, MO 63044. Upon removing the language recklessly asserted by the affiant as described in the *Franks* Motion, in particular paragraphs 16, 17, 18, 19, 20, 21, 22, 29, or at least substantial portions thereof, the remaining affidavits do little to support probable cause that criminal activity, or evidence relating thereto, is located in the place to be searched or item to be seized.

The affiant's allegations of criminal conduct to support probable cause is located within the section entitled "Details of Investigation" contained in paragraphs 23 through 44. Absent the language removed pursuant to *Franks*, there is little more alleged than descriptions of legal and permissible interactions.

If the affidavits lack the foundational language necessary to state why alleged substances are illicit, any reference to those substances merely describes an object that is not tainted by illegality.  The substances themselves cannot be used to meet the probable cause standard.

In paragraphs 23-26, the affiant merely states business locations and addresses, the locations of various mailboxes, and makes conclusory allegations regarding the manufacture and distribution of synthetic drugs in an attempt to make broad and sweeping accusations against Charles Wolfe, Mark Palmer and Anthony Palmer.

The affiant relies heavily on a phone call placed by a confidential informant (CI) to a person by the name of Cindy McRoberts. In that call, the CI placed an order for a "sample package of synthetic cannabinoids." However, no mention is made of Ms. McRoberts' location, her employer, or her affiliation in any way to defendants.

Of the 21 paragraphs in the "Details of Investigation, " eight (paragraphs 33-40) were spent discussing synthetic marijuana seller Henry Wilson.  However, the most Henry Wilson could tell agents was that his mother and brother worked for a synthetic marijuana manufacturer in the "southern St. Louis metropolitan area." The affiant discusses the remaining paragraphs regarding Henry Wilson's drug problems and how and where he sells synthetic marijuana.  Not one of the defendants are mentioned in those paragraphs.

However, the allegations fail to specify any misconduct between the parties. In fact, the person receiving one of said packages, Anthony Palmer, was allowed to leave with the package after signing the proper receiving paperwork at the UPS Store.

There is also much discussion of checks and bank accounts regarding defendants, Smoke Sensations, and South 94 Bait and Tackle Store, but the allegations fail to specify any misconduct committed by the parties.  What remains is mere interactions between businesses and individuals.

There is also reference to trash runs at various locations.  However, once the reckless statements are removed pursuant to the *Franks* Motion, all that remains is simply objects found in the trash with no nexus to a statutory violation.  In particular, all that remains is evidence of transactions between individuals that the agents admit are in the herbal incense business.

Without actual scientific verification of the objects structural makeup, there is no affirmative statement verifying criminal activity and the affidavits fail to create the necessary probable cause to execute a search warrant.

The affiant also makes much of a traffic stop on September 17, 2013 of John Galvin. However, the stop of Mr. Galvin revealed only that he was a delivery driver of "aroma products" and that he at times consumed synthetic drugs himself, nothing more.

13

Finally, paragraphs 42 through 44 rely on seizures made pursuant to the execution of Exhibits 2A through 2I.  However, as seen above, a reliance on the previously executed warrants is fruit of the poisonous tree, and as such should be excluded from consideration in affidavits supporting Exhibits 3A-3D.

iv.    The Affidavit supporting the search warrants listed as Exhibits 4A through 4C fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.

The Affidavit supporting Exhibits 4A-4C are for searches of Storage Unit D17, U-LOK STOR, Inc., 13789 St. Charles Rock Road, Bridgeton, MO 63044; Storage Unit D21, U-LOK STOR, Inc., 13789 St. Charles Rock Road, Bridgeton, MO 63044; and Storage Unit E004, Public Storage, 3760 Pennridge Drive, Bridgeton, MO 63044. Upon removing the language recklessly asserted by the affiant as described in the *Franks* Motion, in particular paragraphs 16, 17, 18, 19, 20, 21, 22, 24, 26, 29, 30, 33, or at least substantial portions thereof, the remaining affidavits do little to support probable cause that criminal activity, or evidence relating thereto, is located in the place to be searched or item to be seized.

The affiant's allegations of criminal conduct to support probable cause is located within the section entitled "Details of Investigation" contained in paragraphs 23 through 38. Absent the language removed pursuant to *Franks*, there is little more alleged than descriptions of legal and permissible interactions.

If the affidavits lack the foundational language necessary to state why alleged substances are illicit, any reference to those substances merely describes an object that is not tainted by illegality.  The substances themselves cannot be used to meet the probable cause standard.

14

In paragraphs 23-26, the affiant merely states business locations and addresses, the locations of various mailboxes, and makes conclusory allegations regarding the manufacture and distribution of synthetic drugs in an attempt to make broad and sweeping accusations against Mark Palmer and Anthony Palmer.

The affiant relies heavily on a phone call placed by a confidential informant (CI) to a person by the name of Cindy McRoberts. In that call, the CI placed an order for a "sample package of synthetic cannabinoids." However, no mention is made of Ms. McRoberts' location, her employer, or her affiliation in any way to defendants.

The affiant appears to draw much of his investigation from "suspicious packages" being delivered to the UPS Store located at 6025 Stage Road, #42, Bartlett, TN.   However, the allegations fail to specify any misconduct between the parties. In fact, the person receiving one of said packages, Anthony Palmer, was allowed to leave with the package after signing the proper receiving paperwork at the UPS Store.

There is also much discussion of border seizures in Anchorage and Chicago, but the allegations fail to specify any misconduct committed by the parties.  What remains is mere interactions between businesses and individuals.

Without actual scientific verification of the objects structural makeup, there is no affirmative statement verifying criminal activity and the affidavits fail to create the necessary probable cause to execute a search warrant.

Finally, paragraphs 35 through 38 rely on seizures made pursuant to the execution of Exhibits 2A through 2I.  However, as seen above, a reliance on the previously executed warrants is fruit of the poisonous tree, and as such should be excluded from consideration in affidavits supporting Exhibits 4A-4C.

v.      The Affidavits supporting the search warrants listed as Exhibits 5A and 5B fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.

The affidavits supporting Exhibits 5A and 5B, referred to as the "Yahoo Email Affidavit" in "Kesselring Exhibit A," are identical. The affiant's allegations of criminal conduct to support probable cause are located within the section entitled "Details of Investigation" contained in paragraphs 30 through 51.  Of the 22 paragraphs, only three of them contain the specific name of any alleged illicit substance, such as AM 2201 or AB Fubinaca.[3].

Upon removing the language recklessly asserted by the affiant, as described in the *Franks* Motion, the remaining affidavits do little to support probable cause that criminal activity, or evidence relating thereto, is located in the place to be searched or item to be seized.  Absent the language removed pursuant to *Franks*, there is little more alleged than descriptions of legal and permissible interactions.

If the affidavits lack the foundational language necessary to state why alleged substances are illicit, any reference to those substances merely describes an object that is not tainted by illegality.  The substances themselves cannot be used to meet the probable cause standard.

Remaining paragraphs use conclusory statements in an attempt to make broad and sweeping accusations against Charles and Robert Wolfe.  There is much discussion of search warrants issued against other defendants in Companion Indictments, but the allegations fail to

---

[3] It is worth noting that several substances are listed in these paragraphs.  Nearly half of them are not discussed in the paragraphs A through H, listed in Exhibit 10.  While the Affiant persuades the Court to believe that these substances are illicit in nature, the conclusion is not supported by facts within the four corners of the affidavits.

specify any misconduct between the parties.  What remains is mere interactions between businesses and individuals.

There is also reference to trash runs at various locations.  However, once the reckless statements are removed pursuant to the *Franks* Motion, all that remains is simply objects found in the trash with no nexus to a statutory violation.

Paragraphs 49 of Exhibits 5A and 5B reference a witness interview, but the statements are conclusory, assuming that the objects discussed, such as "K2", is a controlled substance analogue.  Without actual scientific verification of the objects structural makeup, there is no affirmative statement verifying criminal activity and the affidavits fail to create the necessary probable cause to execute a search warrant.

Finally, paragraphs 50 and 51 rely on seizures made pursuant to the execution of Exhibits 1 through 4.  However, as seen above, a reliance on the previously executed warrants is fruit of the poisonous tree, and as such should be excluded from consideration in affidavits supporting Exhibits 5A and 5B.

vi and vii.   The Affidavits supporting the search warrants listed as Exhibits 6 and 7 fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.

Affidavits supporting the warrants applicable to Exhibits 6 and 7 seek the search of packages delivered to UPS Stores in Tennessee and Kentucky.  Specifically, Exhibit 6 seeks the search of one package at UPS Store #2863 in Nashville, Tennessee and Exhibit 7 seeks the seizure of two packages at UPS Store #5369 in Louisville, Kentucky.  The affidavits in support of the search warrants are identical except in their descriptions of the items to be searched.

The affidavits use foundational language in paragraphs 14 through 16 entitled "Controlled Substance Analogues", but substances referenced as having any illicit nature, such as JWH-018, are not described in any paragraph detailing the investigation.

The affiant's allegations of criminal conduct to support probable cause are located within sections entitled "Details of Investigation" contained in paragraphs 17 through 33.

Paragraphs 17 through 19 make conclusions that are not substantiated by any specific act of illegal conduct.  The agent references relationships between Mark and Anthony Palmer, alleged business interests and subsequent filings with the secretary of state.  Any reference to Schedule I controlled substances is not supported by a reference to a specific substance.

The affidavits fail to articulate how the substances listed in paragraphs 20(a), 20(b) and 20(c) are controlled substances or controlled substance analogues.  The affidavit simply makes a conclusion that the seized items are analogues, but fails to state how they are chemically similar or have a chemically similar effect, as required by 21 U.S.C. §802(32)(A).  It draws a conclusions as to whether or not the substances are analogues, but those conclusions are not supported by any further reference as to how such a conclusion is drawn.

Substances described in Paragraphs 21 and 22 lack foundational language that could classify them as an analogue. The agent makes conclusions that FUR-144 and AKB48 are analogues, but there is nothing supporting the conclusion.

Paragraphs 23 to 29 describe the search and seizure of evidence pursuant to warrants described in Exhibits 1 and 2.  The affidavit supporting those warrants were described above and failed to establish probable cause.  Any reference to those previous search and seizures is excluded as their reference is now fruit of the poisonous tree.

18

The remaining paragraphs describe the items to be seized, but with no corroborating information describing their alleged illicit nature, the affidavits fail as they do not meet the standard of probable cause.

viii. The <u>Affidavits supporting the search warrants listed as Exhibits 8A and 8B fail for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.</u>

This affidavit seeks authorization to search two storage units, Unit G730, Ample Storage, 2960 Elmpoint Industrial, St. Charles, MO 63301 and Unit I606, 2960 Elmpoint Industrial, St. Charles, MO 63301.

Exhibits 8A and 8B rely on the same affidavit, from Wayne House, Special Agent with Immigration and Customs Enforcement. This is also the same affidavit for exhibit 9 in all material respects, with the exception of paragraphs 20, 21, 46, 47, 48, 49, 50, 51, 52, and 53 of that affidavit. The affiant's allegations supporting probable cause are contained in paragraphs 16-53.

Paragraph 16 is a recitation of the focus of the investigation and contains no probable cause.

Paragraph 17 states that "synthetic drugs" were seized pursuant to a warrant, but no foundational information on the illegality of the "synthetic drugs" is given by the affiant and the paragraph does not support probable cause.

Paragraph 18 is a mere recitation of the conclusory allegations that the defendants are involved in manufacturing and distributing "synthetic drugs" without any specific act of illegality alleged.

Paragraphs 19, 20, and 21 must be removed from consideration pursuant to the *Franks* motion.

Paragraph 22 and 23 is the recitation of the creation of a legal business under the laws of the State of Missouri. No probable cause can be found in these paragraphs.

Paragraph 24 must be removed from consideration pursuant to the *Franks* motion.

Paragraphs 25, 26, 27, and 28 are all legal activities.

Paragraphs 29 through 41 are all the unsupported allegations of a witness of unknown reliability and without a factual basis for any illegal activity. By way of example, the term "synthetic marijuana" is used throughout these paragraphs but there is no indication of a specific illegal compound mentioned.

Paragraph 42 references "trash runs" at the target address. The materials retrieved from the trash are either legal or lacking any foundation for being illegal. The closest the trash runs get to illegal activity is the conclusory statement that receipts for "synthetic drugs" were found in the trash. However, the conclusory statement is itself lacking a factual basis to establish probable cause.

ix. The <u>Affidavit supporting the search warrants listed as Exhibit 9 fails for the reason that once critical paragraphs are removed pursuant to *Franks* relief, the remaining paragraphs fail to establish probable cause necessary to issue a search warrant.</u>

Exhibit 9 seeks authorization to search 21 Winding Stairway, O'Fallon, MO 63368.

The defendants repeat the arguments made regarding Exhibits 8A and 8B with the additional arguments regarding the additional paragraphs in this affidavit, paragraphs  20, 21, 46, 47, 48, 49, 50, 51, 52, and 53.

Paragraph 20 must be removed from consideration pursuant to the *Franks* motion.

Paragraph 21 fails to establish a foundation on any illegal activity. Neither an illegal compound nor a current crime is alleged. A more likely explanation for the alleged activity is that Mr. Sloan was purchasing legal product at a discount and selling them prior to an alleged ban of the unknown substance.

Paragraphs 46-53 do not allege any illegal activity at all. The leasing of rental units, the accessing of those same units, business records, and the prior criminal record of a target of the investigation do not add up to probable cause.

## CONCLUSION

20

When the challenged paragraphs contained within the affidavits are removed pursuant to *Franks*, the affidavits fail to set forth sufficient probable cause. The affidavits are left with bare, conclusory statements that fail to establish any evidence of criminal activity. Without actual scientific verification of the structural makeup of the substances at issue, there is no verification of criminal activity and the affidavits fail to create the necessary probable cause to execute a search warrant.

The result of the *Franks* removal is that there is a lack of foundation to establish any criminal activity associated with defendants or the locations searched. Without the *Franks* language, the affidavits are left without the ability to establish the chemical substances involved as illegal.  Standing alone, the substances themselves cannot create probable cause.  Nothing located at the searched locations was illegal if the chemical substances were not illegal, and therefore the affidavits fail to establish any probable cause of criminal activity at the searched locations.

After removing the *Franks* material, the affidavits fail to provide any facts that corroborate criminality. Rather, what is remaining are generalized descriptions of legal and permissible interactions. Without the challenged *Franks* material, the agents are left with bare and conclusory statements of activity that does not meet the standard of probable cause.

The removal of the *Franks* language from the original affidavits creates a cascading effect through each subsequent affidavit. This occurred because warrant executions were based upon faulty affidavits, and the fruits of each search was used in an effort to build and bolster each successive affidavit.  The agents essentially built a house of cards upon the foundation of an original insufficient affidavit.

For the foregoing reasons and in furtherance of the rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution, Defendants urge this Court to find that the warrants mentioned above were issued without probable cause, in violation of the Fourth Amendment, and the searches of the properties were unreasonable and violative of their Fourth Amendment Rights. Thus, defendants respectfully request that the Court suppress all evidence seized, tangible or intangible, as fruit of the facially flawed warrant. The defendants respectfully request an evidentiary hearing be convened on their motion.

WHEREFORE Defendants Robert Wolfe, Chuck Wolfe, Joseph Gabrick, Mark Palmer, and Samuel Leineke hereby jointly move the Court to enter its Order suppressing evidence seized pursuant to search warrants described in Exhibits 1 through 9 in Defendants' Joint Motion Requesting a *Franks* Hearing.

Dated: March 8, 2016

Respectfully submitted,


DOWD BENNETT LLP                          BOROWIAK LAW FIRM


By: /s/ James E. Crowe, III               By:  /s/ Zachary J. Borowiak (with permission)
    James E. Crowe, III #50031MO              Zachary J. Borowiak  #58855MO
    7733 Forsyth Boulevard, Suite 1900        225 South Meramec, Suite 301
    St. Louis, Missouri 63105                 St. Louis, Missouri 63105
    Telephone: (314) 889-7300                 Telephone: (314) 537-2351
    Fax: (314) 863-2111                       Fax: (314) 269-1042
    Email: jcrowe@dowdbennett.com             Email: borowiaklaw@gmail.com

    *Attorney for Defendant Joseph Gabrick*   *Attorney for Defendant Robert Wolfe*


THE MUTRUX LAW FIRM                       THE LAW OFFICES OF
                                          SHELBY M. COWLEY


By: /s/ Tyson Mutrux (with permission)    By: /s/ Shelby M. Cowley (with permission)
    Tyson Mutrux  #63117MO                    Shelby M. Cowley  #62819MO

1717 Park Avenue
St. Louis, Missouri 63104
Telephone: (314) 270-2273
Fax: (314) 884-4333
Email: tyson@mtruxlaw.com

*Attorney for Defendant Mark Palmer*

LUCCO, BROWN, THRELKELD &
DAWSON

By: /s/ J. William Lucco (with permission)
    J. William Lucco  #1701835IL
    Christopher P. Threlkeld   #6271483IL
    224 St. Louis Street
    Edwardsville, Illinois 62025
    Telephone: (618) 656-2321
    Fax: (618) 656-2363
    Email: blucco@lbtdlaw.com
            cthrelkeld@lbtdlaw.com

*Attorneys for Defendant Charles Wolfe*

1717 Park Avenue
St. Louis, MO 63104
Telephone: (314) 721-1024
Fax: (314) 446-4700
Email: cowley_shelby@yahoo.com

*Attorney for Defendant Mark Palmer*

THE LAW OFFICE OF JASON A. KORNER

By: /s/ Jason A. Korner (with permission)
    Jason A. Korner  #58495MO
    7911 Forsyth Blvd. Suite 300
    Clayton, Missouri 63105
    Telephone: (314) 409-2659
    Fax: (314) 863-5335
    Email: jasonkorner@kornerlaw.com

*Attorney for Defendant Samuel Leinicke*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of March, 2016, a true and correct copy of the foregoing was filed with the Court using the CM/ECF system, and service upon all participants in the case who are CM/ECF users will be accomplished by operation of that system.


            /s/ James E. Crowe, III