## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

In The Matter Of The Search Of

UPS Store #869
6025 Stage Road
Bartlett, TN 38134

# SEARCH WARRANT UNDER
**18 U.S.C. §§ 3103 and 3103a; 21 U.S.C. § 879**

Permanent Case No: 13 - SW - 124

Temporary Case No:_____

TO:  _Special Agent  Wayne House and/or_ any authorized law enforcement officer:

An application by a federal law enforcement officer requests the search of the following property located in the ___WESTERN___ District of ___TENNESSEE___:

**(SEE ATTACHMENT A which is attached hereto and fully
 incorporated herein by reference)**

The property to be searched, described above, is believed to conceal:

**(SEE ATTACHMENT B which is attached hereto and fully
 incorporated herein by reference)**

I find that the affidavit establishes probable cause to search and seize the property. I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized for (30) thirty days.

**YOU ARE COMMANDED** to execute this warrant on or before _July 25, 2013_ in the daytime (6:00 A.M. to 10:00 P.M.)

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to a United States Magistrate Judge.

_July 11, 2015 at 1:53 pm_
Date and Time Issued

__Memphis, Tennessee__
City and state

Diane K. Vescovo
Signature of Judicial Officer

Diane K. Vescovo
Diane K. Vescovo
United States Magistrate Judge

**Exhibit 1**

NC 00015126

**RETURN**

| Case No. | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
|  |  |  |

Continued on attached sheet and made a part hereof _____Yes _____No

## Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____      _____
                                         Signature of Executing Officer


                                    _____
                                  Printed name and title of Executing Officer


**Exhibit 1**

NC 00015127

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

In The Matter Of The Search Of

UPS Store #869
6025 Stage Road
Bartlett, TN 38134

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

Permanent Case No:_____

Temporary Case No:_____

I___Wayne House, being duly sworn depose and say:

I am a(n) Special Agent with Homeland Security Investigations and have reason to believe that on the property or premises known as

**(SEE ATTACHMENT A which is attached hereto and fully
incorporated herein by reference)**

in the _WESTERN_ District of _TENNESSEE_ there is now concealed certain property, namely

**(SEE ATTACHMENT B which is attached hereto and fully
incorporated herein by reference)**

which is (1) property that constitutes evidence of the commission of a criminal offense; (2) contraband, the fruits of crime; (3) property designed or intended for use and which is or has been used as the means of committing a criminal offense,

concerning a violation of Title 21 United States Code, Section(s) 841.

The facts to support a finding of Probable Cause are as follows:

**(SEE ATTACHMENT C: AFFIDAVIT OF
in support of Application For Search Warrant, which is attached
hereto and fully incorporated herein by reference)**

Continued on the attached sheet and made a part hereof Yes __X__ No _____

_____
Signature of Affiant

Pursuant to Federal Rule of Criminal Procedure 41(d)(3), the undersigned judicial officer has on this date considered information communicated by [x] telephone or [ ] other reliable electronic

**Exhibit 1**

NC 00015128

means or [ ] both, in reviewing and deciding whether to issue a search warrant.  In doing so, this judicial officer has placed the affiant under oath and has confirmed by speaking personally with the affiant on the telephone [x] that the signatures on the search warrant application and affidavit are those of the affiant or [ ] that the affiant has authorized the placement of the affiant's signatures on the application and affidavit, the documents received by the judicial officer are a correct and complete copy of the documents submitted by the affiant, and the information contained in the search warrant application and affidavit are true and correct to the best of the affiant's knowledge.

Sworn to and subscribed before me by telephone this 11th day of July, 2013.

*Diane Vescovo*                              *Diane K. Vescovo*
_____          _____
Diane K. Vescovo                                Signature of Judicial Officer
United States Magistrate Judge

**Exhibit 1**

NC 00015129

## ATTACHMENT "A"

## LOCATION TO BE SEARCHED:

The premises known as the UPS Store #869, 6025 Stage Road, Bartlett, Shelby County, Tennessee 38134.

1

**Exhibit 1**

NC 00015130

## ATTACHMENT "B"

### ITEMS TO BE SEIZED:

INTERNATIONAL EXPRESS MAIL PACKAGE EE736342346CN ADDRESSED TO TONY PALMER, NGURU, LLC INC. 6025 STAGE ROAD SUITE #62 BARTLETT TENNESSEE 38134, USA, FROM SHANGHAI KEEPS TRADING CO., LTD., SHANGHAI, CHINA AND INTERNATIONAL EXPRESS MAIL PACKAGE EE916942899CN ADDRESSED TO TONY PALMER, NGURU, LLC INC. 6025 STAGE ROAD SUITE #62, BARTLETT, TENNESSEE 38134, USA LOCATED AT THE UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, BARTLETT, TENNESSEE 38134, SHELBY COUNTY TENNESSEE, ALL LOCATED IN THE WESTERN DISTRICT OF TENNESSEE.

ALL PARCELS, PACKAGES, AND MAIL ADDRESSED TO ANTHONY PALMER aka TONY PALMER, or MARK PALMER D/B/A NGURU, LLC, PAGGREGATE, LLC or PALM CORP, LLC found in, for and/or around BOX #327, IN THE NAME TONY PALMER, NGURU, LLC, INC, LOCATED AT THE UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, Bartlett, TENNESSEE 38134, SHELBY COUNTY TENNESSEE, ALL LOCATED IN THE WESTERN DISTRICT OF TENNESSEE.

1

**Exhibit 1**

NC 00015131

## ATTACHMENT "C"

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your affiant, Wayne House, a Special Agent with Immigration and Customs Enforcement (hereinafter "ICE"), Homeland Security Investigations (hereafter HSI), within the Department of Homeland Security, being duly sworn, depose and state the following:

1. I am a Special Agent of ICE HSI, within the Department of Homeland Security, currently assigned to the Resident Agent in Charge St. Louis, Missouri office. I have been a federal officer for nine (9) years and have served in ICE HSI's Kansas City and St. Louis field offices and just recently completed a two (2) year tour of duty in a headquarters level programmatic unit. Prior to my employment with ICE, I was employed as a police officer for five (5) years with the City of Chesterfield, Missouri, Police Department. During my employment with ICE HSI and with the City of Chesterfield, I have had the opportunity to lead, conduct, coordinate and/or participate in investigations concerning the importation, smuggling, and trafficking of controlled substances. I have received training focused on the importation, smuggling, and trafficking of controlled substances. More specifically, I discovered and led a multi-jurisdictional investigation and interdiction of an international cocaine smuggling and trafficking scheme based in Kansas City, Missouri. The investigation and enforcement action, have been the affiant of an international marijuana smuggling operation destined for St. Louis, Missouri; and I led the enforcement action, investigation, and was the affiant of an international designer drug (2CB) smuggling and trafficking investigation based in Du Quoin, Illinois. Each of the investigations led to the successful federal prosecution of the respective primary violators.

2. I make this affidavit in support of an application for a search warrant for

1

Exhibit 1                                          NC 00015132

**INTERNATIONAL EXPRESS MAIL PACKAGE EE736342346CN ADDRESSED TO TONY PALMER, NGURU, LLC INC. 6025 STAGE ROAD SUITE #62 BARTLETT TENNESSEE 38134, USA, FROM SHANGHAI KEEPS TRADING CO., LTD., SHANGHAI, CHINA AND INTERNATIONAL EXPRESS MAIL PACKAGE EE916942899CN ADDRESSED TO TONY PALMER, NGURU, LLC INC. 6025 STAGE ROAD SUITE #62, BARTLETT, TENNESSEE 38134, USA LOCATED AT THE UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, BARTLETT, TENNESSEE 38134, SHELBY COUNTY TENNESSEE, ALL LOCATED IN THE WESTERN DISTRICT OF TENNESSEE.**

**LOCATIONS TO BE SEARCHED:**

3. The premises known as the UPS Store #869, 6025 Stage Road, Bartlett, Tennessee 38134. More specifically described as **ALL PARCELS, PACKAGES, AND MAIL ADDRESSED TO ANTHONY PALMER aka TONY PALMER, or MARK PALMER D/B/A NGURU, LLC, PAGGREGATE, LLC or PALM CORP, LLC found in, for and/or around BOX #327, IN THE NAME TONY PALMER, NGURU, LLC, INC, LOCATED AT THE UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, Bartlett, TENNESSEE 38134, SHELBY COUNTY TENNESSEE, ALL LOCATED IN THE WESTERN DISTRICT OF TENNESSEE..**

**ITEMS TO BE SEIZED:**

4. The items to be seized at the location to be searched are listed in "Attachment B" incorporated within and attached hereto .

5. Because this affidavit is being submitted for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this

2

**Exhibit 1**

NC 00015133

investigation.  I have set forth only those facts that I believe are necessary to establish

probable cause for the requested search warrant.  Where statements of others are set forth

in this affidavit, they are set forth in substance and in part.

### FEDERAL STATUTES

**CONTROLLED SUBSTANCES**

6.   A person is in violation of Title 21 U.S.C. § 841, if that person knowingly or intentionally:

    a.   Manufactures, distributes, or dispenses, or possesses with intent to manufacture,
distribute, or dispense, a controlled substance; or

    b.   Creates, distributes, or dispenses, or possesses with intent to distribute or
dispense, a counterfeit substance.

**ANALOGUE CONTROLLED SUBSTANCES ACT**

7.   Under Title 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended
for human consumption, be treated, for the purposes of any Federal law as a controlled
substance in Schedule I.

8.   Title 21, U.S.C. § 802(32)(A) defines a "controlled substance analogue" as a substance:

    a.   The chemical compound of which is substantially similar to the chemical
structure of a controlled substance in Schedule I or II; and

    b.   Which has a stimulant, depressant, or hallucinogenic effect on the central nervous
system that is substantially similar to or greater than the stimulant, depressant, or
hallucinogenic effects on the central nervous system of a controlled substance in
Schedule I or II.

**CONTROLLED SUBSTANCE ANALOGUES**

3

**Exhibit 1**

NC 00015134

9. I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products, many times known on the street as "Spice" or "K2." Smokable synthetic cannabinoid products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana. Currently, there are hundreds of synthetic cannabinoid compounds. The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011. In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws. Smokable synthetic cannabinoid products are commonly purchased in head shops, tobacco shops, convenience stores, adult stores and over the Internet. They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." These markings are routinely in place in an attempt to circumvent the product being identified as a controlled substance analogue of the newly controlled synthetic cannabinoids. Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

10. Through research, training and experience, I know that the synthetic cannabinoid 1-pentyl-3-(1-naphthoyl)indole (JWH-018) is a schedule I controlled substance, and that until July 2012 the synthetic cannabinoids: 1-Pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250), 1-Pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122) and 1-(5-Fluoropentyl)-3-(1-

4

**Exhibit 1**

NC 00015135

naphthoyl)indole (AM2201) were all considered controlled substance analogues of JWH-018. As referenced earlier, I know these substances to be considered hallucinogens and further affect the human body in a similar way to THC, the active hallucinogen found in the organic drug marijuana.

11. Through experience, I know that individuals, in an attempt to circumvent laws in place which make the possession and distribution of certain synthetic drugs illegal, seek out and purchase or produce substances which have a similar but slightly different chemical structure. These substances will produce the same pharmacological effect on the human body when ingested. In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986. I am aware that JWH-122, JWH-250, and AM-2201 all meet the definition of controlled substance analogues found at Title 21 U.S.C. § 802(32), and when intended for human consumption, all are treated as if it is a schedule I controlled substance under Title 21 of the United States Code (Title 21 U.S.C. § 813). I know that JWH-122, JWH-250 and AM-2201 have been found to have a substantially similar chemical structure as well as a substantially similar pharmacological effect as the schedule I controlled substance JWH-018. I know that on or about July 9, 2012, the President signed the Synthetic Drug Abuse Prevention Act of 2012 that added JWH-018, JWH-19, JWH-073, JWH-081 JWH-250 and AM-2201, along with several other chemical compounds, to the list of Schedule I controlled substances.

### FACTS SUPPORTING THIS AFFIDAVIT

12. During the course of this investigation, several sources of information have been utilized, including but not limited to corporate security records, public records, business records, financial records, state and local law enforcement personnel and their reports of

5

**Exhibit 1**

NC 00015136

investigation, physical and electronic evidence seized and analyzed through the use of state and federal search warrants. All the information contained in this affidavit is based on the personal knowledge of your affiant and the investigative sources of your affiant and the other agents working on this investigation.

13. I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation with Internal Revenue Service Criminal Investigation, Drug Enforcement Administration, Federal Bureau of Investigation, United States Postal Inspection Service, Illinois States Attorney's Office, Effingham Police Department, St. Charles County Sherriff's Office and the United States Attorney's Office concerning **MICHAEL J. LENTSCH** Jr. (hereinafter "**LENTSCH**"), **ANWER N. RAO** (hereinafter "**RAO**") and **GREGORY SLOAN** (hereinafter "**SLOAN**") for manufacturing, marketing and distributing "synthetic herbal incense" in the Eastern District of Missouri, the Southern District of Illinois and elsewhere. **LENTSCH** and **RAO** d/b/a **OPM Midwest, Inc.** and **TS Botanical, Inc.** manufacture and market their synthetic herbal incense under the brand name "CLOUD 9"through store fronts (the "Tha Grind" store fronts are located within the Southern District of Illinois and Eastern District of Missouri) and the internet as a product which is legal for sale. **LENTSCH** and **RAO** provide their customers with laboratory reports that give the appearance that the product they are selling is in compliance with federal and state law. In addition, **LENTSCH** and **RAO** attempt to circumvent the Controlled Substance Analogue Enforcement Act of 1986 by placing the phrase "not for human consumption" on the rear of each package[1]. In 12/2011, **LENTSCH** and **RAO** expanded their operation to include the sale of "research chemicals" through the web site www.BPBLabs.com. According to the website,

6

**Exhibit 1**

NC 00015137

BPBLabs.com was formed to provide, the most prompt, reliable, and discreet service in the research chemical industry by offering the highest quality products available at the absolute best price. However, most if not all the drugs products offered for sale on the website are known to be used in the manufacturing of synthetic drugs (i.e. synthetic herbal incense). BPB Labs and the website itself were registered in the name of **RAO's** and **LENTSCH's** accountant. The website itself provides a detailed drawing of the molecular structure of the products being sold and provides the user with a link for more information. The "click for more information" link directs the user to a Wikipedia cite for that particular product. According to bank records, merchant deposits are being made to BPB Lab's bank account.

14. **SLOAN** markets and distributes the synthetic herbal incense that **LENTSCH** and **RAO** manufacture under the brand name "**CLOUD 9**"; along with other synthetic herbal incense blends through a wholesale and retail distribution network know as **NEB Distributing, LLC** and the **Silver Rocket Group.**

15. The government decided to expand the investigation to include some of the individuals that continued to distribute "**CLOUD 9**" along with other synthetic herbal incense blends at the wholesale and retail level after the execution of a number of search warrants at the residences and business locations owned and or controlled by RAO, LENTSCH and SLOAN in July 2012. One of these individuals is **CHARLES A WOLFE II** (herein "**WOLFE**") and **ROBERT WOLFE** d/b/a **PSYCHEDELIC BLUR, LLC** and **PSYCHEDELIC BLUR MIDWEST.**

16. On June 24, 2013, your agents were advised that individuals linked to **WOLFE**, namely **MARK A. PALMER and ANTHONY L. PALMER dba PAggregate, LLC, NGURU,**

7



**Exhibit 1**                    NC 00015138

LLC and **PALM CORP, LLC** have been receiving international packages addressed to UPS Stores in the Western District of Tennessee. These packages were marked chemicals: "sodium tripolyphosphate sample" "pentaerythritol" and "potassium carbonate".

17. According to the report your affiant received from S/A Richard Howard, Alcohol Tobacco and Firearms, on Thursday, June 13 2013, ATF Memphis was notified of suspicious packages which had been delivered to the UPS Store located at 6025 Stage Rd, #42, Bartlett, TN. ATF SA Jason Crenshaw and SA Rick Howard met with the store owner regarding the items. Robert Brown, the UPS Store owner advised an **ANTHONY PALMER**, W/M, 11/02/88, of Mt. Vernon, IL had opened a mailbox at the store on May 23, 2103. At that time **ANTHONY PALMER** advised his address was 1203 N. 18th St, Mt. Vernon, IL 62864 and gave his phone number as 618-610-1207 and e-mail palmcorp@hushmail.com. On June 12, 2013, two packages arrived for **ANTHONY PALMER** from China. One of the packages contained a strong chemical odor, causing Brown to open the packaging manifest and check its contents. According to the manifest, the package contained 2.3 kilograms of Pentaerythritol. Brown notified authorities and ATF responded. SA Howard and Crenshaw inspected the packages which were addressed to **TONY PALMER, NGURU, LLC. Inc.,** at that location. According to the manifest one package contained the Pentaerythritol and the other contained .20KG of Potassium Carbonate. The packages were shipped from two separate companies in China. The ATF Laboratory in Atlanta was contacted regarding the chemicals. Pentaerythritol is a precursor in PETN, a high explosive, but is inert by itself. Potassium Carbonate and Pentaerythritol combined together do not have any uses to the knowledge of the lab.

18. ATF Agents intercepted **ANTHONY PALMER** on June 13, 2013 at approximately 4:30pm when he arrived at the UPS Store to pick up the chemicals. **ANTHONY**

8

**Exhibit 1**

NC 00015139

PALMER was driving a 2004 white, Pontiac Grand Am, Illinois Tag #R635814.  Agents identified themselves and asked to speak with **ANTHONY PALMER**, who agreed to talk.  **ANTHONY PALMER** admits he drove form Mt. Vernon, IL to Bartlett, TN to pick up the packages and that it is approximately 4 ½ hour drive each way.  **ANTHONY PALMER** stated he takes I-64 to St. Louis then I-55 south to Memphis.  **ANTHONY PALMER** said the company he works for, **NGURU, LLC**, is based out of St. Louis.  A records check showed this company to be based in Carson City, NV and was formed in January 2013.  **ANTHONY PALMER** advised he was there to pick up the package and transport the same to St. Louis, MO.  **ANTHONY PALMER** advised he uses multiple other UPS Stores to receive shipments, but they are all outside the state of Illinois. **ANTHONY PALMER** said the company he works for uses the chemicals to make potpourri.  When Agents asked PALMER why he drives such a great distance to obtain chemicals that are relatively inexpensive he stated, "As far as I know the companies I deal with are on the up and up, but I do not want to answer any more questions without an attorney present." Agents concluded the interview of **ANTHONY PALMER** at that time. **ANTHONY PALMER** was allowed to leave with the chemicals after signing the proper receiving paperwork at the UPS Store.  Later it was discovered that Pentaerythitol was possibly used in the production of methamphetamine.  UPS Stores are independent franchises and customer records are in local databases according to the UPS Store security division, so the locations of **ANTHONY PALMER** other mailboxes are unknown at this time.

9

**Exhibit 1**

NC 00015140

19. **ANTHONY PALMER** advised he was in the US Air Force and worked in a Narco-Terrorism unit based out of California. **ANTHONY PALMER** said he worked as a spotter looking at the footage from unmanned drones in Iraq and Afghanistan.

20. Based on the report prepared by S/A Richard Howard, Alcohol Tobacco and Firearms, your agents requested the Department of Homeland Security, U.S. Customs and Border Protection query their databases for information related to **MARK A. PALMER** and **ANTHONY L. PALMER** their businesses **PAggregate, LLC, NGURU, LLC** and **PALM CORP, LLC**, addresses used by the them and/or their businesses, the names of their associates and their addresses. As a result of that query the Department of Homeland Security, U.S. Customs and Border Protection determined the following:

   a. On March 6, 2013 at approximately 9:19 am, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Anchorage, Alaska, hereafter "CBP Anchorage", seized 3.09 Kilograms of **AKB48 N-(5-fluoropentyl)**, a synthetic cannabinoid controlled substance analogue per DEA control # 7201, from a parcel inbound to the United States and previously detained on January 26, 2013. The parcel was addressed to **PAGGREGATE LLC** with a point of contact listed as **MARK PALMER** at 1138 Germantown Parkway, Cordova, Tennessee, 38016 from Deqing Shilin Yngsheng Co. LTD, in China with a point of contact listed as Liu Qi per waybill #8021-1433-7352. The parcel's contents were manifested as "Sample of Antioxidant" and valued at $15.00 USD. Upon intensive examination on January 26, 2013 pursuant to CBP's border search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Anchorage discovered the parcel's contents to be a box labeled "product name: Antioxidant 1010" containing three (3) aluminum foil pouches that further contained three (3)

10

**Exhibit 1**

NC 00015141

clear PVC bags of an off-white powder.  CBP Anchorage detained the parcel and

sent a sample of its contents to the CBP laboratory in San Francisco,

California.  Upon the lab's determination of the sample as **AKB48 N-(5-**

**fluoropentyl)**, CBP Anchorage completed the seizure of the parcel on March 6,

2013.  CBP Anchorage appraised the value of the 3.09 kilograms of **AKB48 N-**

**(5-fluoropentyl)** to be $27,831.19 USD.

b.  On April 23, 2013 at approximately 14:00 pm, Department of Homeland Security

(DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter

"CBP Chicago", seized 3.05 Kilograms of XLR -11 [1-(5-Fluoro-pentyl)1Hindol-

3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid

controlled substance analogue per DEA control # 7011, from a parcel inbound to

the United States and previously detained on April 23, 2013.  The parcel was

addressed to **TONY PALMER** at 4117 Hillsboro Pike, Nashville, Apt/Suite 103 -

363, Tennessee, 37215 from Firmenich Aromatics in China. The parcel's

contents were manifested as "sodium tripolyphosphate same" with and undeclared

value.  Upon intensive examination on April 23, 2013 pursuant to CBP's border

search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Chicago

discovered the parcel's contents to be a 3.05 Kilograms of a light powder.  CBP

Chicago detained the parcel and sent a sample of its contents to the CBP

laboratory in Chicago, Illinois.  Upon the lab's determination of the sample as

XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-

tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance

analogue per DEA control # 7011, CBP Chicago completed the seizure of the

11

**Exhibit 1**

NC 00015142

parcel on April 23, 2013.  Pursuant to CBP Chicago policy and procedures, the contraband contained in the mailing was summarily forfeited and subsequently destroyed on May 23, 2013.

c.  On April 23, 2013 at approximately 14:45 pm, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter "CBP Chicago", seized 3.05 Kilograms of **XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone** a synthetic cannabinoid controlled substance analogue per DEA control # 7011, from a parcel inbound to the United States and previously detained on April 23, 2013.  The parcel was addressed to **TONY PALMER** at 2817 West End Ave., Apt/Suite # 126-225 Nashville, Tennessee, 37203 from Firmenich Aromatics in China.  The parcel's contents were manifested as "sodium tripolyphosphate same" with and undeclared value.  Upon intensive examination on April 23, 2013 pursuant to CBP's border search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Chicago discovered the parcel's contents to be a 3.05 Kilograms of a light powder.  CBP Chicago detained the parcel and sent a sample of its contents to the CBP laboratory in Chicago, Illinois.  Upon the lab's determination of the sample as XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance analogue per DEA control # 7011, CBP Chicago completed the seizure of the parcel on  April 23, 2013.  Pursuant to CBP Chicago policy and procedures, the contraband contained in the mailing was summarily forfeited and subsequently destroyed on May 23, 2013.

12

**Exhibit 1**

NC 00015143

21. Your agents researched the chemical compounds AKB48 N-(5-fluoropentyl) (also known as 5F-AKB48 also known by the chemical name:  N-(adamant-1-yl)-1-(5-fluropentyl)-1H-indazole-3-carboxamide) and XLR-11 (also known as 5F-UR144 also known by the chemical name [1-(5-fluoropentyl)-1*H*-indol-3-yl](2,2,3,3- tetramethylcyclo-propyl)methanone).  According to white papers published by DEA Office of Diversion Control, Drug and Chemical Evaluation Section various synthetic cannabinoids (e.g., JWH-018, JWH- 073, etc.) laced on plant material have been encountered by law enforcement in recent years. These are promoted under the guise of herbal incense products. These products laced with synthetic cannabinoids are smoked for their psychoactive effects. In response to State and Federal control of these synthetic cannabinoids, a transition to new synthetic cannabinoids laced on plant material has been observed.  AKB48, 5F-AKB48 and XLR-11 are three of the many synthetic cannabinoids recently encountered on the designer drug market.

22. AKB48 and 5F-AKB48 belong to a structural class with a core indazole structure. They are structurally related to other synthetic cannabinoids with a core indole structure, such as the Schedule 1 substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances.  AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior to their appearance on the designer drug market.  AKB48 is pharmacologically similar to Schedule 1 substances THC and various synthetic cannabinoids (e.g., JWH-018, AM2201 etc.). In vitro studies show that AKB48, similar to Δ9-THC and various synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist properties in functional assays, suggesting that it would have the

13

**Exhibit 1**

NC 00015144

same in vivo effects as Δ9-THC and various synthetic cannabinoids. The binding affinity of AKB48 is higher than that of Δ9-THC. Based on structure-activity relationship studies, **5F-AKB48** is expected to bind to CB1 receptors as well. There are no published studies as to the safety of AKB48 or **5F-AKB48** for human use. AKB48 and **5F-AKB48** were *not previously reported in the scientific literature prior to their appearance on the designer drug market.* There are no commercial or medical uses for these substances. There are no commercial or medical uses for these substances. Information on user population in the U.S. is limited, and includes information from drug user internet forums. AKB48 and **5F-AKB48** abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products and this abuse is both a public health and safety concern. AKB48 is a schedule I controlled substances under the Federal Controlled Substances Act. If intended for human consumption, **5F-AKB48** may be treated as a "controlled substance analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813.

23. **XLR11, JWH-018, and AM2201** belong to a structural class of substances sharing a core indole structure. This core structure (scaffold) is substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances. Behavioral pharmacology studies show that 5F-UR144 and **XLR11**, similar to JWH-018, have Δ9-THC-like activity in animals. In mice, these decrease overall activity, produces analgesia, decreases body temperature and produces catalepsy. Together, these four effects are used by scientists to predict Δ9-THC-like psychoactivity in humans. In drug discrimination studies in mice, 5F-UR144 and **XLR11** generalized to Δ9-THC similarly to JWH-018, i.e. produced subjective effects similar to those of Δ9-THC. *In vitro* studies show that 5F-UR144 and

14

**Exhibit 1**                                            NC 00015145

XLR11 bind to the brain cannabinoid receptor (CB1 receptor) similarly to JWH- 018 and AM2201. There are no published studies as to the safety of 5F-UR144 or XLR11 for human use. XLR11 was not previously reported prior to encountering on the designer drug market. There are no commercial or medical uses for these substances. Information on user population in the U.S. is limited, and includes information from drug user internet forums. 5F-UR144 and XLR11 abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products and this abuse is both a public health and safety concern. XLR11 is a schedule 1 controlled substances under the Federal Controlled Substances Act.

24. Your agents researched the following consignee addresses MARK PALMER 1138 Germantown Parkway, Cordova, Tennessee, 38016; TONY PALMER at 4117 Hillsboro Pike, Nashville, Apt/Suite 103 - 363, Tennessee, 37215 and TONY PALMER at 2817 West End Ave., Apt/Suite # 126-225 Nashville, Tennessee, 37203 and determined the following. The street addresses listed above are for UPS Stores located in the Western District of Tennessee. Neither MARK PALMER nor ANTHONY PALMER resides at the addresses. Although your agents cannot confirm their relationship at this time, MARK PALMER and ANTHONY PALMER have shared the overlapping addresses since 2006.

25. Based on database searches and surveillance, your agents know that although MARK PALMER resided in Mt Vernon, Illinois, MARK PALMER currently resides in Granite City, Illinois. According to Google Maps, the UPS Store located at the street address 1138 Germantown Parkway, Cordova, Tennessee, 38016 is a minimum of 315 miles from his current residence.

15

**Exhibit 1**

NC 00015146

26. Based on database searches and statements made by **ANTHONY PALMER**, your agents know that **ANTHONY PALMER** currently resides in Mt Vernon, Illinois.  According to Google Maps, the UPS Store located at the street address 4117 Hillsboro Pike, Nashville, Tennessee, 37215 is minimum of 230 miles from his current residence and the UPS Store located at the street address 2817 West End Ave., Nashville, Tennessee, 37203 is a minimum of 226 miles from his current residence.

27. On June 25, 2013, your agents contacted the UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, BARTLETT, TENNESSEE 38134 and talked to the Store Manager.  The store manager advised your agents that the store has received two additional international packages addressed to **TONY PALMER**.  She advised the following:

    a. On June 18, 2013 International Express Mail Package EE736342346CN addressed to **TONY PALMER, NGURU, LLC INC.** 6025 Stage Road Suite #62 Bartlett Tennessee 38134, USA, from Shanghai Keeps Trading Co., Ltd., Shanghai, China.  According to the packaging, the package contained Brightener and weighed .5 kilograms.  As is the normal course of business, the UPS Store emailed **TONY PALMER** at palmcorp@hushmail.com and notified him that the package above had been delivered to the store.

    b. On June 19, 2013, the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134 received the following package:  International Express Mail Package EE916942899CN addressed to **TONY PALMER, NGURU, LLC INC.** 6025 Stage Road Suite #62, Bartlett, Tennessee 38134, USA.  The package

16

**Exhibit 1**

NC 00015147

did not list a shipper.  According to the packaging, the package contained a

sample and weighed .13 kilograms.

    c.  As is the normal course of business at the UPS Store, after each package arrived

and was logged in at the UPS Store, an automatic email was sent from the UPS

Store to **TONY PALMER** at the email address they file.  According to the group

manager the address they have on file is palmcorp@hushmail.com.

On July 9, 2013, your agents contacted the UPS STORE #869, LOCATED AT 6025

STAGE ROAD, SUITE #42, BARTLETT, TENNESSEE 38134 and talked to the Store

Manager.  According to the store manager, she was listening to the conversation and

observing **ANTHONY PALMER** during his discussions with the ATF agents on June

13, 2013.  Based on the conversation she overheard and her observations, the store

manager was of the opinion that **ANTHONY PALMER** would no longer be using their

UPS Store to receive packages.  According to the store manager, as of July 9, 2013,

neither **TONY PALMER** nor anyone else has attempted to pick up the International

Express Mail Package EE916942899CN or International Express Mail Package

EE736342346CN from the store.

28. On Sunday, July 7, 2013, your agents conducted a trash run at multi-unit business

complex located at 13761/13765 St Charles Rock Road, Bridgeton, Missouri, 63044.

Your agents have observed automobiles owned by **MARK PALMER** at this location on

several different occasions during the last two months.  After the agents arrived on the

location, the agents made a record of a white, Pontiac Grand Am, Illinois Tag #R635814

parked in the parking lot of the same address.  Your agents confirmed that the automobile

and Illinois License Plate matched a vehicle currently registered to **ANTHONY L.**

17

**Exhibit 1**

NC 00015148

**PALMER** at 1203 N 18th Street, Mt Vernon, IL 62864.  In addition, the make, model,
color and license plate match that of the **ANTHONY PALMER** interviewed by ATF
agents on June 13, 2013.  Through this trash run, your agents found the following:

a.  A receipt for oil changes addressed to **MARK PALMER** at 2432 Terminal Ave.,
    Granite City, IL 62040,

b.  A packing slip dated February 7, 2013 addressed to **PAGGREGATE, LLC** 2025
    Zumbehl Road, Suite 192, St Charles, MO 63303 from StockBagDepot located in
    Chino, for 8,000, one ounce, poly/foil stand up pouch,

c.  A packing slip dated April 25, 2013, addressed to **PAGGREGATE, LLC** 2025
    Zumbehl Road, Suite 192, St Charles, MO 63303 from IMPAK Corporation
    located in Los Angeles, CA for 20,000 custom printed Bunker Buster 5g
    holographic tamperevident pouch, 22,700 custom printed Golden Leaf 3g
    holographic tamperevident pouch and 21,500 custom printed Vortex 4G
    holographic tamperevident pouch,

d.  Several hand written invoices for the following products: Avalon 5g, Avalon 10g,
    Night Train 4g, Golden Leaf 3g, Lights Out 1g, Lights Out 10g, Freedom 1g,
    Freedom 6g, Black Arts 6g,

c.  Printed copies of emails addressed to "Mark Paggregate@hushmail.com" placing
    orders for 1000 1g devils dank

f.  Printed copies of an email chain between Paggregate@hushmail.com and
    Ancypacking@hotmial.com discussing beginning on or about December 10, 2012
    through June 20, 2013.  The email chain discusses the ordering and delivery of
    Mad Hatter bags, the wording and production of Mad Hatter bags, Mark's

18

**Exhibit 1**

NC 00015149

hesitation to order the bags because in his word, "The reason I am hesitant to order is the chance of customs taking the bags in shipping."

g. A FedEx Invoice dated February 6, 2013, addressed to **PAGGREGATE, LLC, MARK PALMER,** 1138 Germantown Parkway, Suite 101 -184, Cordova TN 38016 for $7.06. Included with the invoice is a FedEx International Air Waybill for a package addressed to **PAGGREGATE, LLC, MARK PALMER,** 1138 Germantown Parkway, Suite 101 -184, Cordova TN 38016 from Liu Qi, DeDing Shilin Yongsheng Co., Ltd., Huzhou China. According to the Waybill, the envelope contained a sample of Antioxidant 1010 that weighed 3.5 kilograms.

h. A FedEx Large Pak envelope  8024 3677 6960 0448 addressed to **TONY PALMER, PALM SHIPPING CORPORATION,** 4117 Hillsboro Pike Suite 103 – 363 Nashville, TN 37215, USA from Ms Ye, Han Xian Trading, 105 # Liu Nan Jie, Shanghai, China 201821. According to the Commercial Invoice, the envelope contained a cloth/bag sample that weighed .5 kilograms. According to the sticker affixed to the envelope, the package was received at the UPS Store #2863 located at, 4117 Hillsboro Pike Suite 103 – 363 Nashville, TN 37215. The package indicates the customer that owns the box #363 is **MARK PALMER.**

i. International Express Mail Package EE 825472776CN addressed to **MARK PALMER, PALM CORPORATION, LLC,** 5543 Edmondson Pike, Suite 178, Nashville, TN 37211, USA from Jiu NGUxin Trading Co., Ltd., China. According to the Commercial Invoice, the envelope contained a sample of Potassium Carbonate. The Waybill indicates the package weighed 3.4 kilograms. According to the sticker affixed to the envelope, the package was received at the

19

**Exhibit 1**

NC 00015150

UPS Store #3012 located at 5543 Edmondson Pike, Suite 178, Nashville, TN 37211.  The package indicates the customer that owns the box #178 is **MARK PALMER.**

### TRAINING EXPERIENCE OF INVESTIGATIVE TEAM

29. With my experience and training, and that of other special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime.  The distribution of controlled substance analogues such as synthetic cannabinoid products and substituted cathinone products is often done through small, home based or internet businesses selling products to convenience stores, adult product stores, head shops and gas stations. These products which are often purchased or manufactured at a small price are sold at prices generating very large profit margins.  Some of the money generated is utilized to continue the business operations.

30. Additionally, based upon my training, experience, and participation in investigations involving importation of controlled substances and analogues through the Drug Enforcement Administration; my investigation into controlled substances, analogues and dangerous drugs; from speaking with other DEA Agents and Officers; and my investigation further detailed in this affidavit, I have learned the following:

   a.  that controlled substance importers and distributors often intentionally mislabel parcels to hide the fact that the package actually contains controlled substances to avoid the substances being seized;

   b.  that distributors of controlled substance analogues will often mislabel packages to hid the fact that the substance will be utilized for human consumption and maintain labeling and packaging material;

20

**Exhibit 1**

NC 00015151

c.  persons involved in importing and distributing controlled substances, in particular
those who import controlled substances such as Pentedrone or other analogue
substances, typically possess items or documents showing the lab testing of
Pentedrone or like substances (e.g. analogues), maintain inventories of organic
material to which  the controlled substances are applied, packaging materials for
the controlled substances; and

d.  persons involved in the production of smokable synthetic cannabinoid products or
substituted cathinones products (which are both analogues of controlled Schedule
I substances) typically illegally import analogue substances into the United States
using the United States Postal Service or a similar postal carrier.  Once the
analogues have entered the United States, these persons typically, in the case of
smokable synthetic cannabinoid products, spray the analogue substance onto an
organic material and allow it to dry or, in the case of substituted cathinones
products, mix the analogue substances with other compounds to produce the
desired mixture.  These persons then sell the altered organic compound for human
consumption under the street names of "spice" and/or "bath salts" utilizing
various product names.

e.  persons involved in setting up a home business operation for the distribution of
synthetic cannabinoid products or substituted cathinones will often utilize storage
facilities to store excess product until it can be distributed.

f.  persons involved in distributing large quantities of synthetic cannabinoid
products or cathinone products generate large amounts of  money which may be

21

**Exhibit 1**

NC 00015152

concealed within a residence or other storage facility within their control and also financial institutions.

## AFFIANT's CONCLUSIONS

31. Based on all the foregoing facts, and my training and experience, and training and experience of the investigative team,  your affiant submits that there is probable cause to believe that evidence of a violation of Title 21, United States Code, Sections 841(a)(1) and 846, will be found in, and, for or around **BOX #327, IN THE NAME TONY PALMER, NGURU, LLC, INC, LOCATED AT THE UPS STORE #869, LOCATED AT 6025 STAGE ROAD, SUITE #42, BARTLETT, TENNESSEE 38134 SHELBY COUNTY TENNESSEE, ALL LOCATED IN THE WESTERN DISTRICT OF TENNESSEE.**

32. Due to the nature, complexity and the geographic scope of the investigation, and the fact that the owners of this property in this case have all but abandoned the same, the governments is respectfully requests the courts permission to delay notice for a period time necessary to allow the government time to gather additional evidence in other districts.

33. Since the ongoing investigation is being conducted in the Eastern District of Missouri, and the subjects themselves work in and operate out of the Eastern District of Missouri it is respectfully requested that after the agents return the search warrant to the appropriate court of jurisdiction, the court provide the agents permission to remove any and all evidence obtained from the execution of this search warrant from the Western District of Tennessee to the Eastern District of Missouri in order to processed by a laboratory of their choosing, maintained as evidence and used in the ongoing investigation and or prosecution.

22

**Exhibit 1**

NC 00015153

34. The disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardized an ongoing investigation and witnesses who have provided information to the agents conducting the same; therefore it is respectfully requested that these materials be filed under seal.

35.    WHEREFORE your affiant request that a warrant be issued pursuant to rule 41 of the federal Rules of criminal Procedure to search the premises and seize those items listed in Attachment "B."

Wayne House, Special Agent
Immigration and Customs Enforcement

Pursuant to Federal Rule of Criminal Procedure 41(d)(3), the undersigned judicial officer has on this date considered information communicated by [x] telephone or [ ] other reliable electronic means or [ ] both, in reviewing and deciding whether to issue a search warrant. In doing so, this judicial officer has placed the affiant under oath and has confirmed by speaking personally with the affiant on the telephone [x] that the signatures on the search warrant application and affidavit are those of the affiant or [ ] that the affiant has authorized the placement of the affiant's signatures on the application and affidavit, the documents received by the judicial officer are a correct and complete copy of the documents submitted by the affiant, and the information contained in the search warrant application and affidavit are true and correct to the best of the affiant's knowledge.

Sworn to and subscribed before me by telephone this 11th day of July, 2013.

Diane K. Vescovo
United States Magistrate Judge

23

**Exhibit 1**

NC 00015154