AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of | ) |
| 1901 Williamstown Drive, St. Peters, MO 63376, further described as a single-family residence that has a three quarter grey front and one quarter white vinyl siding located on the northwest corner of Williamstown Drive and Chance Drive with a brick mailbox that displays the numbers "1901" down the front of it. | ) ) Case No.   4:13MJ07219 SPM ) ) ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ———— EASTERN ———— District of ———— MISSOURI ————

1901 Williamstown Drive, St. Peters, MO 63376 (as more fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 7, 2013 _____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
__Shirley P. Mensah_____.
                        *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                                    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 9/24/13 ; 4:06 p.m.        _____
                                                        *Judge's signature*

City and state:     St. Louis, MO _____        _Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                        *Printed name and title*

**Exhibit 2-A**                                 NC 00015155

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>1901 Williamstown Drive, St. Peters, MO 63376, further described as a<br>single-family residence that has a three quarter grey brick front and one<br>quarter white vinyl siding located on the northwest corner of<br>Williamstown Drive and Chance Drive with a brick mailbox that displays<br>the numbers "1901" down the front of it. | )<br>)<br>)  Case No.    4:13MJ07219 SPM<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

1901 Williamstown Drive, St. Peters, MO 63376 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

_____
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:  James C. Delworth

**Exhibit 2-A**

NC 00015156

## ATTACMENT D

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

NC 00015157

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

8.  Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9.  Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

    a.  All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

    b.  Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    c.  Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    d.  Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-A**

NC 00015159

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-A**

NC 00015160

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of
1901 Williamstown Drive, St. Peters, MO 63376, further described as a
single-family residence that has a three quarter grey brick front and one
quarter white vinyl siding located on the northwest corner of
Williamstown Drive and Chance Drive with a brick mailbox that displays
the numbers "1901" down the front of it.

Case No.    4:13MJ07219 SPM

## APPLICATION FOR A SEARCH WARRANT

I,        Wayne House                      , a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

1901 Williamstown Drive, St. Peters, MO 63376 (as more-fully described above),

located in the        EASTERN        District of         MISSOURI         , there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

□ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

□ Delayed notice of        days (give exact ending date if more than 30 days:                ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    September 24, 2013

*Judge's signature*

City and state:  St. Louis, MO

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-A**

NC 00007949

**ATTACMENT D**

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

**NC 00007950**

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

**NC 00007951**

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-A**

**NC 00007952**

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-A**

**NC 00007953**

ATTACMENT D

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

NC 00007954

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

**NC 00007955**

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-A**

**NC 00007956**

substances and controlled substance analogues and the laundering of proceeds of the same.

e. Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f. Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-A**

NC 00007957

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

|  |  |  |
|---|---|---|
| In the Matter of the Search of | ) | |
| 1901 Williamstown Drive, St. Peters, MO 63376, further described as a<br>single-family residence that has a three quarter grey brick front and one<br>quarter white vinyl siding located on the northwest corner of<br>Williamstown Drive and Chance Drive with a brick mailbox that displays<br>the numbers "1901" down the front of it. | )<br>)<br>)<br>) | Case No.   4:13MJ07219 SPM |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ——— EASTERN ——— District of ——— MISSOURI

1901 Williamstown Drive, St. Peters, MO 63376 (as more fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ————— October 7, 2013 —————

*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Shirley P. Mensah                                                                                    .

*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐for ———— days *(not to exceed 30)*.

☐until, the facts justifying, the later specific date of ————————— .

Date and time issued: 9/24/13 ; 4:06pm

_____
*Judge's signature*

City and state:     St. Louis, MO                Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

**Exhibit 2-A**

NC 00007958

Case: 4:14-cr-00175-AGF   Doc. #:  227-2   Filed: 03/09/16   Page: 17 of 155 PageID #: 863

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>4:13MJ07219 SPM | Date and time warrant executed:<br>09/25/2013  10:00am | Copy of warrant and inventory left with:<br>In residence, on kitchen table. |
| Inventory made in the presence of :<br>James Weber, HSI | | |

Inventory of the property taken and name of any person(s) seized:

Please see HSI Receipt For Property attached.

Nothing further.
10/08/2013

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 10/08/2013

_Executing officer's signature_

Wayne House, SA, HSI
_Printed name and title_

Exhibit 2-A

NC 00007959

## ATTACMENT D

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of
   **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS),**
   **PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with
   the manufacture and distribution of controlled substances, controlled substance analogues,
   and distribution of misbranded drugs in violation of Title 21, United States Code, Sections
   331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title
   18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms,
   deposits, checks, money orders, money transfer forms, cashier checks, any records
   evidencing money being transferred to, from or within a financial institution in any form,
   mortgage insurance documents, organization documents, notices of transfer of servicing, loan
   applications, credit reports, certificates of deposits register receipts, statements, credit card
   statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets,
   financial reports, profit/loss statements, investment records and cash flow statements payroll
   records (W-2 forms), employee information (W-4 forms), employment verification (I-9 )
   forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM**
   **WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or
   any variation of these names associated with the manufacture and distribution of controlled
   substances, controlled substance analogues, and distribution of misbranded drugs in violation
   of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug
   trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-A**

**NC 00007961**

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

Exhibit 2-A                              NC 00007962

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-A**

9.25.13
SW IN VIN-7014

DEPARTMENT OF HOMELAND SECURITY

**RECEIPT FOR PROPERTY**
Handbook 5200-09

1. Reference No.
| 5 | W | 1 | 3 | J | P | 1 | 2 | C | # | 6 | 6 | 1 | 4 |

| 2. **Received By:** | 3. **Received From:** |
|---|---|
| (Print) Name: HST | (Print) Name: CHUCK WOLFE |
| Address: | Address: 1901 WilliAmsTowr DR. ST. PETERS, MO. 63376 |
| Telephone No. ( ) | Telephone No. ( ) |
| Agency/Title: | Agency/Title: |

4. FPF No. | 2 | 0 | 1 | 3 | 4 | 5 | 0 | 3 | 0 | 0 | 0 | 1 | 5 | 6 | - | 0 | 1 |

| 5. Property | | | |
|---|---|---|---|
| a. Line Item No. | b. DHS 6051 No. | c. Description of Item(s) | d. Amount or Quantity |
| | | UNKNOWN AMOUNT US CURRENCY | UNKROWN |
| | | MISC. DOCS. | — |
| | | MISC. CARDS | — |
| | | GATEWAY COMPUTER | 1 |
| | | TOSHIBA COMPUTER | 2 |
| | | WINDOUS Surface tablet | 1 |
| | | iPAD | 1 |
| | | HTC EVO CEL PHONE | 1 |
| | | MEGA KUSH | 1 PAY LEFT |

| 6a. Received By (Signature) | 6b. Date / / | 6c. Print Name/ Title/ Organization |
|---|---|---|
| 7a. Received From (Signature) | 7b. Date / / | 7c. Print Name/ Title/ Organization |
| 8a. Witness (Signature) | 8b. Date / / | 8c. Print Name/ Title/ Organization |

DHS retains original
Copy to other party
Previous editions are obsolete

DHS Form 6051R (08/09)

**Exhibit 2-A**

NC 00007964

# RECEIPT FOR PROPERTY

## INSTRUCTIONS

## BLOCK DESCRIPTIONS
(Fill in all sections that apply)

| | |
|---|---|
| 1. Reference No. | Enter the Investigative Case number. |
| 2. Received By | Enter name, address, telephone number, agency and title of the person accepting custody of the property. |
| 3. Received From | Enter name, address, telephone number, agency and title of the person from whom the property is being accepted. |
| 4. FPF No. | Enter the 16 digit FPF Case Number (Use one DHS 60511R per FPF No.). |

| 5. PROPERTY | |
|---|---|
| a. Line Item No. | Enter S/A/S line item or other reference number. |
| b. DHS 6051S No. | Enter the DHS 6051S serial number if seized property or evidence is being returned or turned over to another custodian. |
| c. Description | Enter a brief description of the item. |
| d. Amount or Quantity | This block contains the quantity of the item described in 4c. If weight, use "net". (i.e. drugs with original packaging) |

| ACCEPTANCE/CHAIN OF CUSTODY | |
|---|---|
| 6a. Received By | Signature of person accepting property. |
| 6b. Date | Enter date person in 5a accepted custody of property. |
| 6c. Received By | Print name, title and organization. |
| 7a. Received From | Signature of person from whom property is received. |
| 7b. Date | Enter date property is received. |
| 7c. Received From | Print name, title and organization. |
| 8a. Witness | Signature of person witnessing transaction. |
| 8b. Date | Enter date person in 7a witnessed transaction. |
| 8c. Witness | Print name, title and organization. |

**Exhibit 2-A**

NC 00007965

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>13761 St. Charles Rock Road, Suite 118, Bridgeton, MO 63044, further<br>described as an industrial office space located on the northwest end of the<br>building located at this address, with a sign located above the door that<br>reads "Kimco Corporation 118." The entrance to the suite has a new brass<br>lock on the outside of the door. | )<br>)<br>)  Case No.     4:13MJ07220 SPM<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13761 St. Charles Rock Road, Suite 118, Bridgeton, MO 63044 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
~~Homeland Security Investigations~~
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

_____
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:  James C. Delworth

**Exhibit 2-B**

NC 00015161

## ATTACMENT D

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-B**

NC 00015162

6.  All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7.  All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-B**

NC 00015163

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

    a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

    b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-B**

NC 00015164

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-B**

NC 00015165

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of                )
13761 St. Charles Rock Road, Suite 118, Bridgeton, MO 63044, further   )
described as an industrial office space located on the northwest end of the )   Case No.     4:13MJ07220 SPM
building located at this address, with a sign located above the door that )
reads "Kimco Corporation 118." The entrance to the suite has a new brass )
lock on the outside of the door.                )
                                                )

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ———— EASTERN ———— District of ———— MISSOURI ————

13761 St. Charles Rock Road, Suite 118, Bridgeton, MO 63044 (as more-fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 7, 2013 _____
                                                                    *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
    Shirley P. Mensah                            .
                *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30).*

                                        ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/24/13; 4:08p.m.     _____
                                                        *Judge's signature*

City and state:    St. Louis, MO _____     Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                        *Printed name and title*

**Exhibit 2-B**

NC 00015166

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of | ) |
| 13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044, further | ) |
| described as an industrial office space behind the first blue door from the | ) |
| southwest corner of the building at this address under the numbers | ) |
| "13765" and an empty black sign hanger. Suite 101 can be accessed from | ) |
| outside of the building through the first exterior blue door on the | ) |
| southwest corner of the building and an interior door in a hallway that | ) |
| runs north/south throughout the length of the building. | ) |

Case No.    4:13MJ07221 SPM

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the ———— EASTERN ———— District of ———— MISSOURI ————

13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044 (as more-fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property.

**YOU ARE COMMANDED** to execute this warrant on or before ————— October 7, 2013 —————
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been
established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Shirley P. Mensah                                .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30).*
☐until, the facts justifying, the later specific date of _____.

Date and time issued: 9|24|13; 4:09pm.

_____
*Judge's signature*

City and state:     St. Louis, MO                    Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

**Exhibit 2-C**

NC 00015167

**ATTACMENT D**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-C**

NC 00015168

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-C**

NC 00015169

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-C**                    NC 00015170

substances and controlled substance analogues and the laundering of proceeds of the same.

e. Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f. Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-C**

NC 00015171

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044, further<br>described as an industrial office space behind the first blue door from the<br>southwest corner of the building at this address under the numbers "13765"<br>and an empty black sign hanger.  Suite 101 can be accessed from outside<br>of the building through the first exterior blue door on the southwest corner<br>of the building and an interior door in a hallway that runs north/south<br>throughout the length of the building. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.        4:13MJ07221 SPM |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and<br>analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

*Judge's signature*

City and state: ____St. Louis, MO____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-C**

NC 00015172

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

13765 St. Charles Rock Road, Suite 102, Bridgeton, MO 63044, further
described as an industrial office space behind the second blue door from
the southwest corner of the building at this address under the numbers
"13765." There is no sign hanger above the door.  Suite 102 can be
accessed from outside of the building through the second exterior blue
door on the southwest corner of the building and an interior door in a
hallway that runs north/south throughout the length of the building.

)
)
)
)
)
)
)
)

Case No.      4:13MJ07222 SPM

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 102, Bridgeton, MO 63044 (as more fully described above),

located in the        EASTERN        District of _____MISSOURI_____ , there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of         days (give exact ending date if more than 30 days: _____ ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     September 24, 2013

City and state:  St. Louis, MO

_____
*Judge's signature*

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-D**

NC 00015173

**ATTACMENT D**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-D**                                    NC 00015174

6.   All documents regarding all loans, deeds to property and titles to vehicles in the name of

**PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS),**

**PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with

the manufacture and distribution of controlled substances, controlled substance analogues,

and distribution of misbranded drugs in violation of Title 21, United States Code, Sections

331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title

18, United States Code, Section 1956.

7.   All financial records including but not limited to bank statements, wire transfer forms,

deposits, checks, money orders, money transfer forms, cashier checks, any records

evidencing money being transferred to, from or within a financial institution in any form,

mortgage insurance documents, organization documents, notices of transfer of servicing, loan

applications, credit reports, certificates of deposits register receipts, statements, credit card

statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets,

financial reports, profit/loss statements, investment records and cash flow statements payroll

records (W-2 forms), employee information (W-4 forms), employment verification (I-9 )

forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM**

**WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or

any variation of these names associated with the manufacture and distribution of controlled

substances, controlled substance analogues, and distribution of misbranded drugs in violation

of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug

trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-D**

NC 00015175

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-D**

NC 00015176

substances and controlled substance analogues and the laundering of proceeds of the same.

e.   Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.   Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-D**

NC 00015177

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of )
13765 St. Charles Rock Road, Suite 102, Bridgeton, MO 63044, further )
described as an industrial office space behind the second blue door from )
the southwest corner of the building at this address under the numbers )      Case No.      4:13MJ07222 SPM
"13765." There is no sign hanger above the door.  Suite 102 can be )
accessed from outside of the building through the second exterior blue )
door on the southwest corner of the building and an interior door in a )
hallway that runs north/south throughout the length of the building. )

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the ———————EASTERN——— District of ————————MISSOURI————————

13765 St. Charles Rock Road, Suite 102, Bridgeton, MO 63044 (as more-fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property.

**YOU ARE COMMANDED** to execute this warrant on or before _____October 7, 2013_____
(not to exceed 14 days)

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been
established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
__Shirley P. Mensah_____.
(name)

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized (check the appropriate box) ☐for _____ days (not to exceed 30).
☐until, the facts justifying, the later specific date of _____.

Date and time issued: 9/24/13 ; 4:10p.m.                    _____
                                                            Judge's signature

City and state:   St. Louis, MO _____      _Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                            Printed name and title

**Exhibit 2-D**                                              NC 00015178

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of ) | |
| 13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044, further ) | Case No.   4:13MJ07223 SPM |
| described as an industrial office space behind the second blue door from ) | |
| the southeast corner of the building at this address under an empty sign ) | |
| hanger and a black surveillance camera located above the door. Suite 111 ) | |
| can be accessed from outside of the building through the second exterior ) | |
| blue door on the southeast corner of the building and an interior door in a ) | |
| hallway that runs north/south throughout the length of the building. ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ——————— EASTERN ——————— District of ——————— MISSOURI ———————

13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044 (as more fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ——————— October 7, 2013 ———————
                                                                                              *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge ——— Shirley P. Mensah ———————————————— .
                                                   *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for ———— days *(not to exceed 30)*.
☐until, the facts justifying, the later specific date of ——————————— .

Date and time issued: 9/24/13; 4:11 P.M.                    _____
                                                                                    *Judge's signature*

City and state:   St. Louis, MO ———————            Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                                              *Printed name and title*

**Exhibit 2-E**                                                    NC 00015179

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-E**

NC 00015180

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044, further<br>described as an industrial office space behind the second blue door from<br>the southeast corner of the building at this address under an empty sign<br>hanger and a black surveillance camera located above the door. Suite 111<br>can be accessed from outside of the building through the second exterior<br>blue door on the southeast corner of the building and an interior door in a<br>hallway that runs north/south throughout the length of the building. | Case No.   4:13MJ07223 SPM |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846;<br><br>18 USC 1956 & 1957 | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and<br>--Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

_____
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:  James C. Delworth

**Exhibit 2-E**

NC 00015181

**ATTACMENT D**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-E**

NC 00015182

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-E**

NC 00015183

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

    a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

    b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-E**

NC 00015184

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-E**

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of
13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044, further
described as an industrial office space behind the sixth blue door from the
southeast corner of the building at this address to the left of a window that
has the numbers "115" under an empty black sign hanger. Suite 115 can be
accessed from outside of the building through the seventh exterior blue
door on the southeast corner of the building and an interior door in a
hallway that runs north/south throughout the length of the building.

Case No.     4:13MJ07224 SPM

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044 (as more fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

_____
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-F**

NC 00015186

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of                                    )
13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044, further )
described as an industrial office space behind the sixth blue door from the )   Case No.    4:13MJ07224 SPM
southeast corner of the building at this address to the left of a window that )
has the numbers "115" under an empty black sign hanger. Suite 115 can )
be accessed from outside of the building through the seventh exterior blue )
door on the southeast corner of the building and an interior door in a       )
hallway that runs north/south throughout the length of the building.         )

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ——————— EASTERN ——————— District of ——————— MISSOURI ———————

13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044 (as more fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 7, 2013 _____
                                                                     *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
____ Shirley P. Mensah _____                .
                          *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
                                            ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/24/13; 4:12 p.m.          _____
                                                          *Judge's signature*

City and state:    St. Louis, MO _____          Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                              *Printed name and title*

**Exhibit 2-F**                                            NC 00015187

**ATTACMENT D**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-F**

**NC 00015188**

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-F**

NC 00015189

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-F**

NC 00015190

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-F**

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of )<br>13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044, further )<br>described as an industrial office space behind the seventh blue door from )<br>the southeast corner of the building at this address under a "ATS, )<br>Advanced Technical Sales, 116" sign. Suite 116 can be accessed from )<br>outside of the building through the seventh exterior blue door on the )<br>southeast corner of the building and an interior door in a hallway that runs )<br>north/south throughout the length of the building. | Case No.    4:13MJ07225 SPM |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ——————— EASTERN ——————— District of ——————— MISSOURI ———————

13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044 (as more-fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ———————— October 7, 2013 ————————
_(not to exceed 14 days)_

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
———— Shirley P. Mensah ————————————.
_(name)_

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized _(check the appropriate box)_ ☐ for ———— days _(not to exceed 30)._
☐ until, the facts justifying, the later specific date of ———————————.

Date and time issued: _9/24/13; 4:13pm_ .    _____
_Judge's signature_

City and state:    St. Louis, MO ————————    Honorable Shirley P. Mensah, U.S. Magistrate Judge
_Printed name and title_

**Exhibit 2-G**

NC 00015192

AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044, further<br>described as an industrial office space behind the seventh blue door from<br>the southeast corner of the building at this address under a "ATS,<br>Advanced Technical Sales, 116" sign. Suite 116 can be accessed from<br>outside of the building through the seventh exterior blue door on the<br>southeast corner of the building and an interior door in a hallway that runs<br>north/south throughout the length of the building. | Case No.     4:13MJ07225 SPM |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____ , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____ , there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule I controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
~~Homeland Security Investigations~~
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

_____
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:  James C. Delworth

**Exhibit 2-G**

NC 00015193

**ATTACMENT D**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-G**

NC 00015194

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-G**

NC 00015195

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

    a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

    b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-G**

NC 00015196

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-G**

NC 00015197

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

In the Matter of the Search of                                )
                                                                                       )
13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044, further   )
described as an industrial office space behind the second blue door from   )      Case No.         4:13MJ07226 SPM
the northeast corner of the building at this address under a "Fox Medical   )
Equipment, 121" sign. Suite 121 can be accessed from outside of the   )
building through the second exterior blue door on the northeast corner of   )
the building and an interior door in a hallway that runs north/south   )
throughout the length of the building.                                        )

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the ————— EASTERN ————— District of ————— MISSOURI —————

                13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044 (as more fully described above),

        The person or property to be searched, described above, is believed to conceal:

   see attached List - referred to as "ATTACHMENT D"


        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property.

        **YOU ARE COMMANDED** to execute this warrant on or before _____ October 7, 2013 _____
                                                                                                                      *(not to exceed 14 days)*

        ☑ in the daytime  6:00 a.m. to 10 p.m.         ☐ at any time in the day or night as I find reasonable cause has been
                                                                                established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
    Shirley P. Mensah _____ .
                                 *(name)*

        ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                        ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  9/24/13; 4:14 p.m.                    _____
                                                                                         *Judge's signature*

City and state:      St. Louis, MO _____           Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                                                    *Printed name and title*


**Exhibit 2-H**                                                            NC 00015198

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044, further<br>described as an industrial office space behind the second blue door from<br>the northeast corner of the building at this address under a "Fox Medical<br>Equipment, 121" sign. Suite 121 can be accessed from outside of the<br>building through the second exterior blue door on the northeast corner of<br>the building and an interior door in a hallway that runs north/south<br>throughout the length of the building. | ) ) ) ) ) ) ) )  Case No.    4:13MJ07226 SPM |

## APPLICATION FOR A SEARCH WARRANT

I, _____Wayne House_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044 (as more-fully described above),

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846;<br><br>18 USC 1956 & 1957 | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and<br>analogues of Schedule I controlled substances, Distribution of misbranded drugs; and<br>--Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____September 24, 2013_____

*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-H**

NC 00015199

## ATTACMENT D

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.  Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2.  Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3.  Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4.  Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5.  All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-H**

NC 00015200

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-H**

NC 00015201

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

    a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

    b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

    d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-H**

NC 00015202

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-H**

NC 00015203

AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of | ) |
| 4738 Orchard Drive, Barnhart, MO 63012, further described as the entire<br>premises, including but not limited to the house and attached garage, the<br>detached garage and the oversized storage building *that has three large*<br>*white garage doors* all of which are backed by woods and located behind a<br>chain link and privacy fence located to the west of the intersection of<br>Orchard Drive and Sonaurah Drive off of Old Highway 21 in Barnhart,<br>MO. | )<br>)<br>)  Case No.   4:13MJ07227 SPM<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ———— EASTERN ———— District of ———— MISSOURI ————

4738 Orchard Drive, Barnhart, MO 63012 (as more-fully described above),

The person or property to be searched, described above, is believed to conceal:

see attached List - referred to as "ATTACHMENT D"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 7, 2013 _____
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Shirley P. Mensah _____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*
☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 9/24/13; 4:15 p.m.      _____
                                                              *Judge's signature*

City and state:    St. Louis, MO _____      Honorable Shirley P. Mensah, U.S. Magistrate Judge
                                                                      *Printed name and title*

**Exhibit 2-I**

NC 00015204

ATTACMENT D

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU**, or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-I**

NC 00015205

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-I**

NC 00015206

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-I**

NC 00015207

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-I**

NC 00015208

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>4738 Orchard Drive, Barnhart, MO 63012, further described as the entire premises, including but not limited to the house and attached garage, the detached garage and the oversized storage building that has three large white garage doors all of which is backed by woods and located behind a chain link and privacy fence located to the west of the intersection of Orchard Drive and Sonaurah Drive off of Old Highway 21 in Barnhart, MO. | Case No.    4:13MJ07227 SPM |

## APPLICATION FOR A SEARCH WARRANT

I,  _____Wayne House_____ , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

4738 Orchard Drive, Barnhart, MO 63012 (as more-fully described above),

located in the  ____EASTERN____  District of  ____MISSOURI____ , there is now concealed

see attached List - referred to as "ATTACHMENT D"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 331, 813, 841(a)(1), & 846; | --Manufacturing and Distribution, and Conspiracy to do so, of controlled substances and analogues of Schedule 1 controlled substances, Distribution of misbranded drugs; and |
| 18 USC 1956 & 1957 | --Money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WAYNE HOUSE, Special Agent
Immigration and Customs Enforcement,
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ____September 24, 2013____

_____
*Judge's signature*

City and state:  ____St. Louis, MO____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:   James C. Delworth

**Exhibit 2-I**

NC 00015209

ATTACMENT D

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. Controlled substances and controlled substance analogues, to wit: synthetic cannabinoid products and synthetic cathinone products retail packaging, bulk packaging, and raw chemical forms including but not limited to products under the retail brand names: Mad Hatter, Black Arts, Mega Kush, Dirty Dirt Devil, Devil's Dank, Night Train, Freedom, and Bunker Buster.

2. Packaging material including, but not limited to, retail labeling for the packaging, marketing, and distribution of controlled substances and controlled substance analogues.

3. Materials and supplies related to the manufacture of controlled substances and controlled substance analogues, to wit synthetic cannabinoid products and substitute cathinone products.

4. Currency or other assets representing the proceeds of the distribution of synthetic cannabinoid products and synthetic cathinone products.

5. All business records, books, notes, documents, data records and information, including but not limited to information relating to the transportation, ordering, purchasing, sale and distribution of controlled substances and controlled substance analogues and vendor and/or supplier invoices, of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU,** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-I**

NC 00015210

6. All documents regarding all loans, deeds to property and titles to vehicles in the name of **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

7. All financial records including but not limited to bank statements, wire transfer forms, deposits, checks, money orders, money transfer forms, cashier checks, any records evidencing money being transferred to, from or within a financial institution in any form, mortgage insurance documents, organization documents, notices of transfer of servicing, loan applications, credit reports, certificates of deposits register receipts, statements, credit card statements, check book registers and ledgers, sales journals, account ledgers, balance, sheets, financial reports, profit/loss statements, investment records and cash flow statements payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 ) forms, employee pay stubs, and income statements for **PSYCHEDELIC BLUR, DREAM WORLD GLASS (a/k/a GLASSWORKS), PAGGREGATE, PALMCORP., NGURU** or any variation of these names associated with the manufacture and distribution of controlled substances, controlled substance analogues, and distribution of misbranded drugs in violation of Title 21, United States Code, Sections 331, 813, 841(a)(1), 846 and the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Section 1956.

**Exhibit 2-I**

NC 00015211

8. Any and all documents, data, and records relating to the possession, dominion and control of the computer systems, storage devices, electronic storage devices, and digital storage devices, to be searched and seized;

9. Computers, electronic storage devices, digital storage devices and all records and archives contained therein to include;

   a. All data files, including but not limited to, records and graphic representations, containing matter pertaining to the manufacture or trafficking in controlled substances or controlled substance analogues, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records.

   b. Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   c. Electronic mail, chat logs, Internet Relay Chat (IRC) log files, and electronic messages, to include short message service (SMS) and multimedia messaging service (MMS), concerning the trafficking of controlled substances and controlled substance analogues through interstate or foreign commerce, including by United States mail or by computer, visual depictions, and records pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

   d. Log files and other records concerning dates and times of connection to the Internet and to websites pertaining to the manufacture and distribution of controlled

**Exhibit 2-I**

NC 00015212

substances and controlled substance analogues and the laundering of proceeds of the same.

e.  Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

f.  Call logs pertaining to the manufacture and distribution of controlled substances and controlled substance analogues and the laundering of proceeds of the same.

**Exhibit 2-I**

NC 00015213

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your affiant, Wayne House, a Special Agent with Immigration and Customs Enforcement (hereinafter "ICE"), Homeland Security Investigations (hereafter HSI), within the Department of Homeland Security, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent of ICE HSI, within the Department of Homeland Security, currently assigned to the Resident Agent in Charge St. Louis, Missouri office.  I have been a federal officer for ten (10) years and have served in ICE HSI's Kansas City and St. Louis field offices and completed a two (2) year tour of duty in a headquarters level programmatic unit.  Prior to my employment with ICE, I was employed as a police officer for five (5) years with the City of Chesterfield, Missouri, Police Department.  During my employment with ICE HSI and with the City of Chesterfield, I have had the opportunity to lead, conduct, coordinate and/or participate in investigations concerning the importation, smuggling, and trafficking of controlled substances.  I have received training focused on the importation, smuggling, and trafficking of controlled substances.

2.  This affidavit is in support of an application for search warrants for the following locations being utilized for or facilitating the manufacturing and distribution of controlled substances and controlled substance analogues, distribution of misbranded drugs and money laundering, in violation of Title 21, United States Code, Sections 331, 813, 841, 846 and Title 18, United States Code, Section 1956, by **CHARLES A. WOLFE II d/b/a PSYCHEDELIC BLUR, LLC, DREAM WORLD GLASS, LLC, MARK PALMER, ANTHONY PALMER, PAGGREGATE, LLC, PALMCORP, LLC and NGURU, LLC** and others: A) 1901 Williamstown Drive, St. Peters, MO 63376; B) 13761 St.

1

**Exhibit 2-I**

NC 00015214

Charles Rock Road, Suite 118, Bridgeton MO 63044; C) 13765 St. Charles Rock Road,

Suite 101 , Bridgeton, MO 63044; D) 13765 St. Charles Rock Road, Suite 102, Bridgeton,

MO 63044; E) 13765 St. Charles Rock Road, Suite 111 , Bridgeton, MO 63044; F) 13765

St. Charles Rock Road, Suite 115, Bridgeton, MO 63044, G) 13765 St. Charles Rock

Road, Suite 116, Bridgeton, MO 63044; H) 13765 St. Charles Rock Road, Suite 121 ,

Bridgeton, MO 63044 and I) 4738 Orchard Drive, Barnhart, MO 63012.

## LOCATIONS TO BE SEARCHED:

A.  1901 Williamstown Drive, St. Peters, MO, 63376 further described as a single family

residence that has a three quarter grey brick front and one quarter white vinyl siding with

the a brick mailbox located on the northwest corner of Williamstown Drive and Chance

Drive with a brick mailbox that displays the numbers 1901 down the front of it.  **(See**

**Attachment A "Photograph and Description of 1901 Williamstown Drive, St. Peters,**

**MO 63376.")**

This is the residence of Avelina C. Bolibol and **CHARLES A. WOLFE II.**

According to the St. Charles County Recorder of Deeds, the house is owned by Avelina

C. Bolibol, however **WOLFE** lists the address 1901 Williamstown Drive, St. Peters, MO

6336 on his Missouri Non-Driver's License Identification and has used this address in

registration at a UPS Store in Granite City, Illinois.  Additionally, mortgage payments

have been made utilizing money orders sent in a FedEx letter envelope with a return

address of **PSYCHEDELIC BLUR**, 611 S. Fort Harrison Ave, Ste. 104, Clearwater, FL

33756.  Investigation reflects that **WOLFE** is registered as the managing member of

**PSYCHEDELIC BLUR, LLC.**  The electric service at the address 1901 Williamstown

Drive, St. Peters, MO 63376 is in the name of Avelina C. Bolibol at the same address.

2

**Exhibit 2-I**

NC 00015215

The electric service at this address was established in her name on or about September 22, 2010. Although the account is in Bolibol's name almost all the contact Ameren UE has had with the residents at this address from September 22, 2010 to the present has been with and individual(s) named **CHUCK, CHUCK BOLIBOL** or **CHUCK WOFLE** Surveillance, database searches, and trash pulls also confirm that **WOLFE** resides at 1901 Williamstown.

B.   13761 St. Charles Rock Road, Suite 118, Bridgeton, MO 63044 more fully described as an industrial office space located on the northwest end of the building located at 13761 St. Rock Road, Suite 118, Bridgeton, MO 63044 with a sign located above the door that reads, "Kimco Corporation 118." The entrance to the suite has a new brass lock on the outside of the door. **(See Attachment B "Photograph and Description of 13761 St. Charles Rock Road, Suite # 118, Bridgeton MO 63044.")**

The electric service at the address 13761 St. Charles Rock Road, Suite 118, Bridgeton MO 63044 is in the name **DREAM WORLD GLASS,** a company set up by **Dean GRAVER** and Avelina Bolibol (titled owner of location A). The electric service at this address was established in the same name on October 11, 2012. While the electric service is for service at the same address, the mailing address is 2024 Ridgedale Drive, High Ridge, MO 63049, which is the home address of **GRAVER.** Although the account is in the name **DREAM WORLD GLASSWORKS, LLC,** all the contact Ameren UE has had with the patrons at this address from the setup in October 10, 2012 to the present has been with an individual named **CHUCK WOLFE or CHUCK.** The most recent contact on or about July 30, 2013 when Ameren UE talked with "**CHUCK**" updated account information and set up ebills.

3

**Exhibit 2-I**

NC 00015216

C.   13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044 more fully described as an industrial office space behind the first blue door from the south west corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under the numbers "13765" and an empty black sign hanger. Suite #101 can be accessed from the outside of the building through the first exterior blue door on the south west corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.   **(See Attachment B "Photograph and Description of 13765 St. Charles Rock Road, Suite # 101, Bridgeton MO 63044.")**

The electric service at the address 13765 St. Charles Rock Road, Suite 101, Bridgeton MO 63044 is in the name **DREAM WORLD GLASS,** a company set up by **Dean GRAVER** and Avelina Bolibol.  The electric service at this address was established in the same name on August 01, 2013.  While the electric service is for service at the same address, the mailing address is 2024 Ridgedale Drive, High Ridge, MO 63049 which is the home address of **GRAVER.**   Although the account is in the name **DREAM WORLD GLASSWORKS, LLC,** all the contact Ameren UE has had with the patrons at this address from the setup requested on July 30, 2013 to the present has been with an individual named **CHUCK WOLFE.**  The most recent contact on or about July 30, 2013 when Ameren UE talked with "CHUCK" updated account information and set up ebills.

D.   13765 St. Charles Rock Road, Suite 102, Bridgeton, MO 63044, more fully described as an industrial office space behind the second blue door from the south west corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under the numbers "13765." There is no sign hanger above the door.  Suite #102 can be accessed from the outside of the building through the second exterior blue door on the south west

4

**Exhibit 2-I**

NC 00015217

corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.   **(See Attachment B "Photograph and Description of 13765 St. Charles Rock Road, Suite # 102, Bridgeton MO 63044.")**

The electric service at the address 13765 St. Charles Rock Road, Suite 102, Bridgeton MO 63044 is in the name **DREAM WORLD GLASSWORKS,** a company set up by **Dean GRAVER** and Avelina Bolibol. The electric service at this address was established in the same name on July 30, 2013. While the electric service is for service at the same address, the mailing address is 2024 Ridgedale Drive, High Ridge, MO 63049 which is the home address of **GRAVER**. Although the account is in the name **DREAM WORLD GLASSWORKS, LLC,** all the contact Ameren UE has had with the patrons at this address from the setup requested on July 30, 2013 to the present has been with an individual named **CHUCK WOLFE**. According to the setup notes for this account, on July 26, 2013, "customer in Ste 115 has paid balance on Ste 101 & 102, will call office to put in name of **DREAMWORLD GLASS**."

E.   13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044, more fully described as an industrial office space behind the second blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under an empty sign hanger and a black surveillance camera located above the door. Suite #111 can be accessed from the outside of the building through the second exterior blue door on the south east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.   **(See Attachment B**

5

**Exhibit 2-I**                              NC 00015218

"**Photograph and Description of 13765 St. Charles Rock Road, Suite # 111, Bridgeton MO** 63044.")

The electric service at the address 13765 St. Charles Rock Road, Suite 111 , Bridgeton, MO 63044 is in the name of **PSYCHEDELIC BLUR, LLC,** a company set up by **CHARLES WOLFE**. The electric service at this address was established in the same name on June 25, 2012. All the contact Ameren UE has had with the patrons at this address from the setup requested on June 25, 2012 to the present has been with an individual named **CHUCK WOLFE**.

F.   13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044, more fully described as an industrial office space behind the sixth blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, to the left of a window that has the numbers "115" under an empty black sign hanger. Suite #115 can be accessed from the outside of the building through the seventh exterior blue door on the south east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building. **(See Attachment B "Photograph and Description of 13765 St. Charles Rock Road, Suite # 115, Bridgeton MO** 63044.")

The electric service at the address 13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044 is in the name of **DREAMWORLD GLASSWORKS**, a company set up by **DEAN GRAVER** and Avelina Bolibol. The electric service at this address was established in the same name on January 11, 2013. While the electric service is for service at the same address, the mailing address is 2024 Ridgedale Drive, High Ridge, MO 63049 which is the home address of **GRAVER**. Except for the setup, all the contact Ameren UE has had with the

6

**Exhibit 2-I**                                          NC 00015219

patrons at this address from January 2013 to the present has been with an individual named "CHUCK."

G. 13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044, more fully described as an industrial office space behind the seventh blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under a sign a that reads "ATS, Advanced Technical Sales, 116" Suite #116 can be accessed from the outside of the building through the seventh exterior blue door on the south east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building. **(See Attachment B "Photograph and Description of 13765 St. Charles Rock Road, Suite # 116, Bridgeton MO 63044.")**

The electric service at the address 13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044 is in the name of **DREAMWORLD GLASSWORKS**, a company set up by **DEAN GRAVER** and Avelina Bolibol. The electric service at this address was established in the same name on January 11, 2013. While the electric service is for service at the same address, the mailing address is 2024 Ridgedale Drive, High Ridge, MO 63049 which is the home address of **GRAVER**. Except for the setup, all the contact Ameren UE has had with the patrons at this address from January 2013 to the present has been with an individual named "CHUCK."

H. 13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044, more fully described as an industrial office space behind the second blue door from the north east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under a sign that reads "Fox Medical Equipment, 121." Suite #121 can be accessed from the outside of the building through the second exterior blue door on the north east corner of the

7

**Exhibit 2-I**                                                    NC 00015220

building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.   (**See Attachment** B **"Photograph and Description of 13765 St. Charles Rock Road, Suite # 121, Bridgeton MO 63044 ."**)

The electric service at the address 13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044 is in the name of **SAMUEL D. LEINICKE**.  The electric service at this address was established in the same name on February 6, 2013.  Although the electric service is for service at the same address, the mailing address is **SAMUEL E. LEINICKE, PAGGREGATE**, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303.  **PAGGREGATE** is a company set up by **ANTHONY PALMER**.  The only contact Ameren UE has had with the patrons at this address from February 6, 2013 to the present has been with **SAMUEL E. LEINICKE**.

I.   4738 Orchard Drive, Barnhart, MO 63012, more fully described as the entire premises including, but not limited to, the house and attached garage, the detached garage, and oversized storage building that has three large white garage doors all of which is backed by woods and located behind a chain link and privacy fence located to the west of the intersection of Orchard Drive and Sonaurah Drive off of Old Highway 21 in Barnhart MO.   (**See Attachment C "Photograph and Description of 4738 Orchard Drive, Barnhart, MO 63012"**)

The electric service at the address 4738 Orchard Drive, Barnhart, MO 63012, is in the name **MARK PALMER**.  According to the payment records AmerenUE provided the payments are made electronically through a checking account in the name of "**PAGGREGATE LLC**" from a bank with a routing transit number of 081000032 and an account that ends in "7087".  Through their investigation, your agents know that checking

8

**Exhibit 2-I**

NC 00015221

account name, routing transit number and account number match the account **MARK PALMER** opened at Bank of America in December 2012.

Records obtained from the Consolidated Public Water Supply District-1 reflect that on or about January, 2013, **PALMER d/b/a PAGGREGATE, LLC,** established the water service for the address located at 4738 Orchard Drive, Barnhart, MO 63012.  **MARK PALMER** established the service in the name of **PAGGREGATE, LLC** and had the bill sent to 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303.

3.  The items to be seized at the locations to be searched are listed in "**Attachment D, Items to be Seized**" incorporated within and attached hereto.

4.  Because this affidavit is being submitted for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause for the requested search warrant.  Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

<u>**OVERVIEW OF INVESTIGATION**</u>

5.  I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation with Internal Revenue Service Criminal Investigation, Drug Enforcement Administration, Federal Bureau of Investigation, United States Postal Inspection Service, Illinois States Attorney's Office, Effingham Police Department, St. Charles County Sherriff's Office and the United States Attorney's Office concerning the manufacturing and distribution of controlled substance and controlled substance analogues.  The investigation initially focused upon **MICHAEL J. LENTSCH Jr.** (hereinafter "**LENTSCH**"), **ANWER N. RAO** (hereinafter "**RAO**") and **GREGORY**

9

**Exhibit 2-I**

NC 00015222

SLOAN (hereinafter "**SLOAN**").   **LENTSCH** and **RAO** d/b/a **OPM Midwest, Inc.** and **TS Botanical, Inc**. manufactured and marketed  synthetic drugs under the brand name "**CLOUD 9**"through store fronts, such as the "**Tha Grind**" store fronts, located within the Southern District of Illinois and Eastern District of Missouri, and the internet as a product which is legal for sale.  **LENTSCH** and **RAO** provided their customers with laboratory reports that gave the appearance that the product they were selling was in compliance with federal and state law.  In addition, **LENTSCH** and **RAO** attempted to fraudulently circumvent the Controlled Substance Analogue Enforcement Act of 1986, Title 21, United States Code, Section 813, by placing the phrase "not for human consumption" on the rear of each package.  In December, 2012, **LENTSCH** and **RAO** expanded their operation to include the sale of "research chemicals" through the web site **www.BPBLabs.com**. According to the website, **BPBLabs.com** was formed to provide, the most prompt, reliable, and discreet service in the research chemical industry by offering the highest quality products available at the absolute best price.  However, most if not all the drugs products offered for sale on the website are known to be used in the manufacturing of synthetic drugs (i.e. synthetic herbal incense).

6.   **SLOAN** marketed and distributed the synthetic drugs that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9**"; along with other synthetic drugs through a wholesale and retail distribution network known as **NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC** .

7.   In July, 2012, a number of state and federal search warrants were executed at the residences and business locations owned and or controlled by **RAO, LENTSCH** and **SLOAN** in July 2012.  A substantial amount of synthetic drugs were seized along with

10

**Exhibit 2-I**                    NC 00015223

business records.  An analysis of business records for **NEB DISTRIBUTING** reflects that from on or about November, 2010 through July, 2012, **WOLFE,** doing business in his own name and the name **PSYCHEDELIC BLUR, LLC,** purchased and redistributed over $2,700,000.00 of synthetic drugs, (designated as herbal incense blends) obtained from **NEB Distributing, LLC.**   The vast majority of the synthetic drugs/herbal blends **WOLFE** d/b/a **PSYCHEDELIC BLUR, LLC** purchased, sold, and distributed from **SLOAN d/b/a NEB Distributing, LLC** originated from **RAO and LENTSCH d/b/a TS Botanicals, Inc.**

8. From on or about May 2011 through July 2012, **RAO** and **LENTSCH, d/b/a OPM Midwest, Inc. and TS Botanical, Inc.,** retained the services of AI Biotech located in Richmond, VA to perform an analysis of their synthetic herbal blends for the presence of synthetic cannabinoids.  According to the lab reports prepared and produced to **RAO** and **LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** in 2011 and 2012 , **RAO** and **LENTSCH** knew that their synthetic herbal blends contained one or more of the following controlled substances and/or controlled substance analogues: AM 2201, JWH 250 URB 754, 4MAM 2201, α-PVP, UR 144, α-PVP, and 5MeO-Dalt.

9. In December 2012, your agents obtained search warrants issued in the Eastern District of Missouri for the email accounts known to be used by **RAO, LENTSCH, SLOAN,** and others associated with the investigation.   According to the emails produced by the electronic communications service companies and email providers, your agents determined that **SLOAN and WOLFE** were regularly provided a copy of these same AI Biotech lab reports addressed to **RAO and LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** as they became available and, as a result, were aware that the products

11

**Exhibit 2-I**                    NC 00015224

they were purchasing and reselling contained one or more of the substances listed above. In addition, based on those same email communications your agents determined **SLOAN** and **WOLFE** actively followed changes in federal, state, and local legislation in an effort to circumvent the changes in the law as it pertained to the use and scheduling of synthetic cannabinoids.   Through the examination of these emails your agents determined that **SLOAN** and **WOLFE** also monitored law enforcement's efforts to combat the illegal synthetic drug industry.

10. Following the execution of search warrants in July, 2012, **LENTSCH, RAO** and **SLOAN** ceased to operate their manufacturing and distribution of synthetic drugs in the same manner and through the same companies.  As further detailed, investigation reflects that **CHARLES A. WOLFE II d/b/a PSYCHEDELIC BLUR, LLC, DREAM WORLD GLASS, LLC, MARK PALMER, ANTHONY PALMER, PAGGREGATE, LLC, PALMCORP, LLC** and **NGURU, LLC** and others have now become involved in the manufacture and distribution of synthetic drugs and distribution of misbranded drugs utilizing the Barnhart location to manufacture synthetic drugs, the St. Charles Rock Road locations and **WOLFE's** residence to operate a large scale synthetic drug distribution network.

<u>**FEDERAL STATUTES**</u>

11. **CONTROLLED SUBSTANCES**: A person is in violation of Title 21 U.S.C. § 841, if that person knowingly or intentionally:

    a.  Manufactures, distributes, or dispenses, or possesses with intent to manufacture, distribute, or dispense, a controlled substance; or

12

**Exhibit 2-I**

NC 00015225

    b.  Creates, distributes, or dispenses, or possesses with intent to distribute or dispense, a counterfeit substance.

12. **ANALOGUE CONTROLLED SUBSTANCES ACT**: Under Title 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

13. **DEFINITION OF CONTROLLED SUBSTANCE ANALOGUE**: Title 21, U.S.C. § 802(32)(A) defines a "controlled substance analogue" as a substance:

    a.  The chemical compound of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II; and

    b.  Which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effects on the central nervous system of a controlled substance in Schedule I or II.

14. **DISTRIBUTION/MANUFACTURE OF MISBRANDED DRUGS**: A person is in violation of Title 21, U.S.C. § 331 if that person introduces or delivers for introduction into interstate commerce any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded and the manufacture of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

15. **MONEY LAUNDERING**: A person is in violation of Title 18, U.S.C. § 1956 if the person, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity; or knowing that

**Exhibit 2-I**

NC 00015226

the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

## CONTROLLED SUBSTANCE ANALOGUES

16. I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products, many times known on the street as "Spice" or "K2." Smokable synthetic cannabinoid products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana.   Currently, there are hundreds of synthetic cannabinoid compounds.   The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011.   In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws.   Smokable synthetic cannabinoid products are commonly purchased in head shops, tobacco shops, convenience stores, adult stores and over the Internet. They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." These markings are routinely in place in an attempt to fraudulent circumvent the product being identified as a controlled substance analogue. Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

14

**Exhibit 2-I**

NC 00015227

17. Through experience I know that individuals, in an attempt to circumvent laws in place which make the possession and distribution of certain synthetic drugs illegal, seek out and purchase or produce substances which have a similar but slightly different chemical structure.  These substances will produce the same pharmacological effect on the human body when ingested.  In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986.

18. Through research, training and experience, I know that the synthetic cannabinoid 1-pentyl-3-(1-naphthoyl)indole (JWH-018) is a schedule I controlled substance, and that until July 2012 the synthetic cannabinoids: 1-Pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250), 1-Pentyl-3-(4-methyl-1-naphthoyl)indole    (JWH-122)    and    1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201) met the definition of controlled substance analogues when intended for human consumption.  On July 9, 2012, these substance, JWH-018, JWH-250, JWH-122, AM2201 became permanently scheduled as control substances pursuant to the Synthetic Drug Abuse Act of 2012 (herein "SDAPA").  SDAPA amended the Controlled Substance Act (herein "CSA") by legislatively placing "cannabimimetic agents" and 26 substances in Schedule I.  As referenced earlier, I know these substances to be considered hallucinogens and further affect the human body in a similar way to THC, the active hallucinogen found in the organic drug marijuana.

19. According to the DEA Office of Diversion Control, Drug and Chemical Evaluation Section various synthetic cannabinoids (e.g., JWH-018, etc.) laced on plant material have been encountered by law enforcement in recent years. These are promoted under the guise of herbal incense products. These products laced with synthetic cannabinoids are smoked for their psychoactive effects. In response to State and Federal control of these synthetic

15

**Exhibit 2-I**

NC 00015228

cannabinoids, a transition to new synthetic cannabinoids laced on plant material has been observed. AKB48, 5F-AKB48 and XLR -11 are three of the many synthetic cannabinoids recently encountered on the designer drug market.

20. On May 16, 2013, the Deputy Administrator of DEA issued a final order to temporarily schedule three synthetic cannabinoids under the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions of Title 21, U.S.C. § 811(h). The substances are (1-pentyl-1H-indol-3-yl)(2,2,3,3- tetramethylcyclopropyl)methanone (UR-144), [1-(5-fluoro-pentyl)-1H- indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (5-fluoro-UR-144,   XLR11)   and   N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide (APINACA, AKB48). This action is based on a finding by the Deputy Administrator that the placement of these synthetic cannabinoids and their salts, isomers and salts of isomers into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety.

21. AKB48 and 5F-AKB48 belong to a structural class with a core indazole structure. They are structurally related to other synthetic cannabinoids with a core indole structure, such as the Schedule I substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances.   AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior to their appearance on the designer drug market.   AKB48 is pharmacologically similar to Schedule I substances THC and various synthetic cannabinoids (e.g., JWH-018, AM2201 etc.). In vitro studies show that AKB48, similar to Δ9-THC and various synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist properties in functional assays, suggesting that it would have the same in vivo effects as Δ9-THC and various synthetic cannabinoids.  The binding affinity

16

**Exhibit 2-I**

NC 00015229

of AKB48 is higher than that of Δ9-THC. Based on structure-activity relationship studies, 5F-AKB48 is expected to bind to CB1 receptors as well. There are no published studies as to the safety of AKB48 or 5F-AKB48 for human use. AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior to their appearance on the designer drug market. There are no commercial or medical uses for these substances. Information on user population in the U.S. is limited, and includes information from drug user internet forums. AKB48 and 5F-AKB48 abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products. AKB48 is a schedule I controlled substances under the Federal Controlled Substances Act. If intended for human consumption, 5F-AKB48 may be treated as a "controlled substance analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813.

22. During this investigation, your agents and members of the investigative team were confronted with a new synthetic cannabinoid, AB-FUBINACA. Although AB-FUBINACA does not appear in Schedule I, your agents, through their research have determined that both AB-PINACA and AB-FUBINACA are cannabimimetic indazole-derivatives. These substances were identified as designer drugs in illegal products in Japan. According to the articles that discusses the discovery of the substances (Forensic Toxicol (2013) 31:93–100), the samples used for analysis were three products purchased via the Internet in July 2012 in Japan; one as a chemical and two as herbal products. Each of the herbal products (A and B) contained about 3g of mixed dried plants. The AB-FUBINACA was extracted and isolated out of the 3 gram sample of the herbal product B. According to Wikipdeia, AB-FUBINACA is a drug that acts as a potent agonist for the cannabinoid receptors and was originally developed by Pfizer

17

**Exhibit 2-I**                                    NC 00015230

in 2009 as an analgesic medication but was never pursued for human use.  Subsequently in 2012, AB-FUBINACA was discovered as an ingredient in synthetic cannabis blends in Japan, along with a related compound AB-PINACA.  (Even if this new substance is not determined to be a controlled substance analogue, manufacturing and distribution of this substance intended for human consumption without proper labeling is in violation of 21 U.S.C § 331.)

<u>**DETAILS OF INVESTIGATION**</u>

23. During the course of this investigation, several sources of information have been utilized, including but not limited to corporate security records, public records, business records, financial records, state and local law enforcement personnel and their reports of investigation, physical and electronic evidence seized and analyzed through the use of state and federal search warrants.  All the information contained in this affidavit is based on the personal knowledge of your affiant and the investigative sources of your affiant and the other agents working on this investigation.

24. As previously stated, investigation reflects that **CHARLES A. WOLFE II d/b/a PSYCHEDELIC BLUR, LLC, DREAM WORLD GLASS, LLC, MARK PALMER, ANTHONY PALMER, PAGGREGATE, LLC, PALMCORP, LLC** and **NGURU, LLC** and others have now become involved in the manufacture and distribution of synthetic drugs utilizing the Barnhart location to manufacture synthetic drugs and the St. Charles Rock Road locations to package and distribute the synthetic drugs.

25. **CHARLES A WOLFE** d/b/a **PSYCHEDELIC BLUR, LLC.  WOLFE** is registered as the Managing Member of **PSYCHEDELIC BLUR, LLC.**  According to records on file at the Florida Secretary of State, **PSYCHEDELIC BLUR, LLC** is a company with a principal place of business as 611 S. Fort Harrison Avenue, Suite #104, Clearwater, FL

18

**Exhibit 2-I**                                     NC 00015231

33756.  **WOLFE** as Managing Member lists his address as 3477 Nameoki Road, Suite 165, Granite City, Illinois 62040.  Your agents researched the **PSYCHEDELIC BLUR, LLC's** principal place of business and determined that the address is a UPS Store, specifically UPS Store #4344 located at 611 S. Fort Harrison Avenue, Suite #104, Clearwater, FL 33756.  Your agents obtained a copy of the United States Postal Service Application for Delivery of Mail Through Agent, Form 1583 (hereafter "Form 1583"), in reference to the address dated November 16, 2011 and determined the following: **WOLFE** advised that the name in which the applicants mail will be received for delivery to the agent was **CHUCK WOLFE**.  **WOLFE** advised that his home address was "3477 Nameoki Road #165, Granite City, OH 62040."  Your agents researched the address **WOLFE** provided to the UPS Store #4344 as his home address and determined that the address was a UPS Store, specifically UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040.  This UPS Store, specifically UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040, was used by **SLOAN** and individuals known to your agents to be involved in the operation of **NEB Distributing, LLC** and **Silver Rocket Distributing, LLC** in distributing the synthetic drug/herbal incense that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9.**  Your agents obtained a copy of the Form 1583 in reference to the address 3477 Nameoki Road #165, Granite City, IL 62040 dated September 8, 2011 and determined the following: **WOLFE** reported that the name in which the applicant's mail will be received for delivery to the agent was **CHUCK WOLFE**.  **WOLFE** reported that his home address was 1901 Williamstown Drive, O'Fallon MO 63376.  As of July 2013, **WOLFE** is still leasing delivery box #165 at UPS Store #5491.

19

**Exhibit 2-I**

**NC 00015232**

26. **MARK PALMER** d/b/a **PAGGREGATE, LLC**  According to records on file at the Missouri Secretary of State, from on or about September 6, 2012 until the present, **MARK PALMER** has served as the registered agent of **PAGGREGATE, LLC** (herein "PAGGREGATE, LLC"). **PAGGREGATE, LLC** was formed in the State of Missouri and is in good standing. **PAGGREGATE, LLC** is currently registered at 2025 Zumbehl Road, Suite 192, St. Charles MO 63303.  This address is a UPS Store located in St. Charles County, Missouri.  The street address (2025 Zumbehl Road, St. Charles MO 63303) and the organizer of **PAGGREGATE, LLC** is the same person used by **SLOAN D/B/A NEB DISTRIBUTION, LLC** AND **SILVER ROCKET DISTRIBUTION, LLC.**

27. Beginning in 2012 and continuing to the present, **MARK PALMER** and his son, **ANTHONY L. PALMER,** created a number of companies including **PAGGREGATE, LLC** in the State of Missouri and **NGURU, LLC** and **PALMCORP, LLC** in the State of Nevada.  As further detailed, investigation reflects that **MARK PALMER** and his son **ANTHONY L. PALMER** have used these companies including but not limited to **PAGGREGATE, LLC, NGURU, LLC** and **PALMCORP, LLC** to:

   i.  obtain and establish at least eight street mailing addresses at UPS Stores located in Missouri, Illinois, Tennessee and Kentucky which they used to purchase and import Schedule 1 controlled substances and non-controlled cannabinoids into the United States, to purchase and receive the supplies used in the manufacturing, packaging and distribution of synthetic marijuana (i.e. including the bags, labels, ink cartridges, and chemicals used for flavoring), to distribute and collect the payment for the synthetic

20

**Exhibit 2-I**

NC 00015233

marijuana products they manufactured and sold outside the metro St. Louis area.

ii.  open bank accounts at Bank of America and elsewhere that were used to facilitate the purchase of Schedule 1 Controlled substances and non-scheduled synthetic cannabinoids and other supplies used in the manufacturing, packaging marketing and distribution of synthetic marijuana (i.e. including the bags, labels, ink cartridges, and chemicals used for flavoring), to distribute and collect the payment for the synthetic

28. **DEAN GRAVER** d/b/a **DREAM WORLD GLASS, LLC**  According to records on file at the Florida Secretary of State, the effective date for **DREAM WORLD GLASS, LLC** is October 9, 2012.  **DREAM WORLD GLASS, LLC** is a company with a principal place of business at 611 S. Fort Harrison Avenue, Suite #212, Clearwater, FL 33756.  **DEAN GRAVER** and Avelina C. Bolibol (titled owner of 1901 Williamtown Drive, **WOLFE's** residence) are listed as the Managers/Members.  **DEAN GRAVER** used the address of 2024 Ridgedale Drive, Highridge, MO 63049.  Avelina C. Bolibol used the address of 3477 Nameoki Road, Suite 165, Granite City, Illinois 62040.  The address Bolibol used is the same addresses **WOLFE** used for **PSYCHEDELIC BLUR, LLC's.**  The registered agent for **DREAMWORD GLASS, LLC** is the same registered agent **WOLFE** used for **PSYCHEDELIC BLUR, LLC.**

29. Investigation reflects that **MARK PALMER and ANTHONY L. PALMER** d/b/a **NGURU, LLC and PALMCORP, LLC** have been receiving international packages addressed to UPS Stores in the Western District of Tennessee.  These packages were marked chemicals: "sodium tripolyphosphate sample" "pentaerythritol" and "potassium carbonate" but contained substances utilized in the manufacture of synthetic drugs.

21

**Exhibit 2-I**                              NC 00015234

30. On June 13, 2013, ATF Memphis was notified of suspicious packages which had been delivered to the UPS Store located at 6025 Stage Rd, #42, Bartlett, TN. ATF Special Agents met with the store owner regarding the items. The UPS Store owner advised an **ANTHONY PALMER**, W/M, 11/02/88, of Mt. Vernon, IL had opened a mailbox at the store on May 23, 2103. At that time **ANTHONY PALMER** advised his address was 1203 N. 18th St, Mt. Vernon, IL 62864. On June 12, 2013, two packages arrived for **ANTHONY PALMER** from China. One of the packages contained a strong chemical odor, causing the UPS Store owner to open the packaging manifest and check its contents. According to the manifest, the package contained 2.3 kilograms of Pentaerythritol. The owner notified authorities and ATF responded. ATF Special Agents inspected the packages which were addressed to **TONY PALMER, NGURU, LLC. Inc.**, at that location. According to the manifest one package contained the Pentaerythriol and the other contained .20KG of Potassium Carbonate. The packages were shipped from two separate companies in China. The ATF Laboratory in Atlanta was contacted regarding the chemicals. Pentaerythritol is a precursor in PETN, a high explosive, but is inert by itself. Potassium Carbonate and Pentaerythritol combined together do not have any uses to the knowledge of the lab.

31. ATF Agents met **ANTHONY PALMER** on June 13, 2013 at approximately 4:30pm when he arrived at the UPS Store to pick up the chemicals. **ANTHONY PALMER** was driving a 2004 white, Pontiac Grand Am, Illinois Tag #R635814. Agents identified themselves and asked to speak with **ANTHONY PALMER**, who agreed to talk with them. **ANTHONY PALMER** admitted he drove from Mt. Vernon, IL to Bartlett, TN to pick up the packages, an approximately 4 ½ hour drive each way. **ANTHONY**

22

**Exhibit 2-I**

NC 00015235

PALMER stated he takes I-64 to St. Louis then I-55 south to Memphis.  **ANTHONY PALMER** said the company he works for, **NGURU, LLC**, is based out of St. Louis.  A records check showed this company to be based in Carson City, NV and was formed in January 2013.  **ANTHONY PALMER** advised he was there to pick up the package and transport the same to St. Louis, MO.  **ANTHONY PALMER** advised he uses multiple other UPS Stores to receive shipments, but they are all outside the State of Illinois.  **ANTHONY PALMER** said the company he works for uses the chemicals to make potpourri.  When Agents asked **ANTHONY PALMER** why he drives such a great distance to obtain chemicals that are relatively inexpensive he stated, "As far as I know the companies I deal with are on the up and up, but I do not want to answer any more questions without an attorney present." Agents concluded the interview of **ANTHONY PALMER** at that time. **ANTHONY PALMER** was allowed to leave with the chemicals after signing the proper receiving paperwork at the UPS Store.

32. On June 25, 2013, your agents contacted the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134 by telephone and talked to the store manager. The store manager advised your agents that the store had received two additional international packages addressed to **TONY PALMER**.  She advised the following:

   a. June 18, 2013, UPS store #869 received International Express Mail Package EE736342346CN addressed to **TONY PALMER, NGURU, LLC INC**. 6025 Stage Road Suite #62 Bartlett Tennessee 38134, USA, from Shanghai Keeps Trading Co., Ltd., Shanghai, China.  According to the packaging, the package contained Brightener and weighed .5 kilograms.

23

**Exhibit 2-I**

NC 00015236

b. On June 19, 2013, the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134 received International Express Mail Package EE916942899CN addressed to **TONY PALMER, NGURU, LLC INC**. 6025 Stage Road Suite #62, Bartlett, Tennessee 38134, USA. The package did not list a shipper. According to the packaging, the package contained a sample and weighed .13 kilograms.

c. As is the normal course of business at the UPS Store, after each package arrived and was logged in at the UPS Store, an automatic email was sent from the UPS Store to **TONY PALMER** at the email address they file. According to the group manager the address they have on file is palmcorp@hushmail.com.

33. On July 9, 2013, your agents contacted the UPS store manager by telephone. According to the store manager, she was listening to the conversation and observing **ANTHONY PALMER** during his discussions with the ATF agents on June 13, 2013. Based on the conversation she overheard and her observations, the store manager was of the opinion that **ANTHONY PALMER** would no longer be using their UPS Store to receive packages. According to the store manager, as of July 9, 2013, neither **TONY PALMER** nor anyone else has attempted to pick up the International Express Mail Package EE916942899CN or International Express Mail Package EE736342346CN from the store.

34. Based on information contained above and other information contained throughout this affidavit, your agents prepared an affidavit and obtained a federal search warrant issued in the Western District of Tennessee for both packages.

35. On July 12, 2013, HSI Memphis, Tennessee agents executed the search warrant on the same two parcels listed above from the UPS Store #869. The two packages contained

24

**Exhibit 2-I**                                    NC 00015237

sealed foil envelopes that appeared to contain a soft powder substance by feel. Due to chemical hazard concerns, the executing agents did not open the envelopes and forwarded the parcels' contents to HSI St. Louis, Missouri for further processing per its investigation on July 12, 2013. On July 13, 2013, your affiant received the foil envelopes and further processed them for processing and analysis by the Customs and Border Protection Forensic Laboratory located in Chicago, Illinois. Again, due to chemical hazard concerns, the foil envelopes were not opened by HSI St. Louis, Missouri. The envelopes were forwarded to the Customs and Border Protection Laboratory located in Chicago the same date.

    a. On September 17, 2013, the U.S. Customs and Border Protection Laboratory in Chicago, IL provided their results. The lab analysis identified a number of chemicals in the envelopes including AB-Fubinaca and JWH-018.

36. An investigation was conducted for information relating to **MARK A. PALMER and ANTHONY L. PALMER**, their businesses **PAGGREGATE, LLC, NGURU, LLC and PALM CORP, LLC.** As a result of that investigation your agents determined the following:

    a. On March 6, 2013 at approximately 9:19 am, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Anchorage, Alaska, hereafter "CBP Anchorage", seized 3.09 Kilograms of AKB48 N-(5-fluoropentyl), a synthetic cannabinoid controlled substance analogue per DEA control # 7201, from a parcel inbound to the United States and previously detained on January 26, 2013. The parcel was addressed to **PAGGREGATE LLC** with a point of contact listed as **MARK PALMER** at 1138 Germantown Parkway, Cordova, Tennessee,

25

**Exhibit 2-I**

NC 00015238

38016 from Deqing Shilin Yngsheng Co. LTD, in China with a point of contact listed as Liu Qi per waybill #8021-1433-7352. The parcel's contents were manifested as "Sample of Antioxidant" and valued at $15.00 USD. Upon intensive examination on January 26, 2013 pursuant to CBP's border search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Anchorage discovered the parcel's contents to be a box labeled "product name: Antioxidant 1010" containing three (3) aluminum foil pouches that further contained three (3) clear PVC bags of an off-white powder. CBP Anchorage detained the parcel and sent a sample of its contents to the CBP laboratory in San Francisco, California. Upon the lab's determination of the sample as AKB48 N-(5-fluoropentyl), CBP Anchorage completed the seizure of the parcel on March 6, 2013. CBP Anchorage appraised the value of the 3.09 kilograms of AKB48 N-(5-fluoropentyl) to be $27,831.19 USD.

b. On April 23, 2013 at approximately 14:00 pm, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter "CBP Chicago", seized 3.05 Kilograms of XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance analogue per DEA control # 7011, from a parcel inbound to the United States' and previously detained on April 23, 2013. The parcel was addressed to **TONY PALMER** at 4117 Hillsboro Pike, Nashville, Apt/Suite 103 - 363, Tennessee, 37215 from Firmenich Aromatics in China. The parcel's contents were manifested as "sodium tripolyphosphate same" with and undeclared value. Upon intensive examination on April 23, 2013 pursuant to CBP's border

26

**Exhibit 2-I**

NC 00015239

search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Chicago discovered the parcel's contents to be a 3.05 Kilograms of a light powder. CBP Chicago detained the parcel and sent a sample of its contents to the CBP laboratory in Chicago, Illinois. Upon the lab's determination of the sample as XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance analogue per DEA control # 7011, CBP Chicago completed the seizure of the parcel on April 23, 2013. Pursuant to CBP Chicago policy and procedures, the contraband contained in the mailing was summarily forfeited and subsequently destroyed on May 23, 2013.

c. On April 23, 2013 at approximately 14:45 pm, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter "CBP Chicago", seized 3.05 Kilograms of XLR -11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance analogue per DEA control # 7011, from a parcel inbound to the United States and previously detained on April 23, 2013. The parcel was addressed to **TONY PALMER** at 2817 West End Ave., Apt/Suite # 126-225 Nashville, Tennessee, 37203 from Firmenich Aromatics in China. The parcel's contents were manifested as "sodium tripolyphosphate same" with and undeclared value. Upon intensive examination on April 23, 2013 pursuant to CBP's border search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Chicago discovered the parcel's contents to be a 3.05 Kilograms of a light powder. CBP Chicago detained the parcel and sent a sample of its contents to the CBP

27

**Exhibit 2-I**

NC 00015240

laboratory in Chicago, Illinois. Upon the lab's determination of the sample as XLR            -11            [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone a synthetic cannabinoid controlled substance analogue per DEA control # 7011, CBP Chicago completed the seizure of the parcel on April 23, 2013. Pursuant to CBP Chicago policy and procedures, the contraband contained in the mailing was summarily forfeited and subsequently destroyed on May 23, 2013.

37. Your agents recently received reports from the Food and Drug Administration, Office of Criminal Investigations which is conducting an investigation in conjunction with DEA's Tactical Diversion Group involving the manufacturing and distribution of synthetic cannabinoids and substitute cathinones in the District of Kansas. According to those reports, in March 2013, an Overland Park, Kansas Police Department confidential informant (herein "CI#13-4008") placed a consensually monitored telephone call to Cindy McRoberts (herein "McRoberts"). McRoberts is believed to be employed as a sales representative for Retailing Specialist. This consensually monitored phone call was made to order a sample package of synthetic cannabinoids. After establishing contact with McRoberts, CI#13-4008 inquired about what products they had currently for sale. McRoberts offered the following products: Head Trip, Full Thottle, Avalon, Night Train, and Lights Out. In addition the following new products were identified: Black Arts, Grave Digger, Devils Dank, Mad Hatter, Freedom, and Gold Leaf. McRoberts provided some prices for the different products and identified that the bigger the order the cheaper the cost per gram. McRoberts identified Lights Out as their biggest seller, Black Arts as having really good feedback, and Gold Leaf as a good value that is potent. McRoberts

28

**Exhibit 2-I**

NC 00015241

acknowledged that these are all their products and they are making them.  CI#13-4008 initiated a discussion regarding the legality of the chemicals they were using.  McRoberts said they were using new chemicals that are not listed on a pharmaceutical register. McRoberts stated the chemicals are not in a family that is listed (referring to analogues). McRoberts cautioned CI#13-4008 that is where they have to be careful.  CI#13-4008 requested a sample package and McRoberts encouraged CI#13-4008 to establish an email account at hushmail.com and send her an address for shipping.  McRoberts explained hushmail.com goes through Canada and cannot be subpoenaed by law enforcement. McRoberts told CI#13-4008 that Hushmail is more secure that Google and Yahoo! and further advised that if you think law enforcement is watching the email account CI#13-4008 is currently using don't send the information from there because you don't want to create a paper trail.  The telephone call ended with CI#13-4008  and McRoberts agreeing to speak later so she could take his/her address over the phone.  Later that same day, CI#13-4008 placed another consensual call to McRoberts.  During this phone call, McRoberts took CI#13-4008's address for the "sample package."  McRoberts confirmed that she would send out a sample package of products and that it should arrive in a few days.

38. On April 2, 2013, DEA received the "sample package" of products CI#13-4008 ordered from McRoberts during the consensually monitored telephone call described above.  The contents of the package were photographed and inventoried.  According to the photographs the "sample package" arrived in a FedEx envelope.  The "sample package" originated from **Phil. PAGGREGATE, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63330.**  The FedEx package contained five 1gram packages of a product labeled

29

**Exhibit 2-I**

NC 00015242

"Head Trip," five 1gram packages of a product labeled "Avalon," five 1gram packages of a product labeled "Grave Digger," five 1gram packages of a product labeled "Freedom," five 1gram packages of a product labeled "Lights Out," five 1gram packages of a product labeled "Devil's Dank," five 1gram packages of a product labeled "Night Train," five 1gram packages of a product labeled "Mega Kush," five 1gram packages of a product labeled "Black Arts," five 1gram packages a product labeled "Full Thottle", five 1gram packages a product labeled "Mad Hatter"

39. On April 12, 2013, the contents of the FedEx "sample packages" were transferred to the Johnson County Sheriff's Office Criminalistics Laboratory for analysis and were completed on May 13, 2013. The results of the lab analysis are as follows:

    a.  Lab Item # 2 Vegetation from "Head Trip" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48. FUR-144 is structurally similar to JWH-018, a NAPHTHOYLINDOLE.

    b.  Lab Item # 3 Vegetation from "Avalon" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

    c.  Lab Item # 4 Vegetation from "Grave Digger" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

    d.  Lab Item # 6 Vegetation from "Lights Out" confirmed the presence of FUR-144, XLR11.

    e.  Lab Item # 8 Vegetation from "Night Train" confirmed the presence of FUR-144, XLR11.

    f.  Lab Item # 9 Vegetation from "Mega Kush" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

    g.  Lab Item # 10 Vegetation from "Black Arts" confirmed the presence of FUR-144,

30

**Exhibit 2-I**

NC 00015243

XLR11 and 5-FLUOROPENTYL-AKB48. .

    h.  Lab Item # 11 Vegetation from "Full Thottle" confirmed the presence of FUR-144, XLR11.

    i.  Lab Item # 12 Vegetation from "Mad Hatter" confirmed the presence 5-FLUOROPENTYL-AKB48.

40.  Your agents obtained and analyzed records associated with **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account \*\*\*\*\*\*333741. According to these records, **WOLFE** opened the account in the name **PSYCHEDELIC BLUR LLC** at the Gulf to Bay Boulevard Banking Center located in Clearwater, Florida on or about 3/13/2012. **WOLFE** is the only authorized signer on the account. **WOLFE** signed as the Member/Manager. Although the name and address listed on the checks related to this account is **PSYCHEDELIC BLUR LLC**, 611 S Fort Harrison Ave., Suite 104, Clearwater, FL 33758-5301, on several out of state counter withdrawal slips the address is listed as 3477 Nameoki Road/Blvd., #165, Granite City, IL 62040-3709, the UPS Store utilized by **WOLFE**.

41.  The investigative team reviewed and analyzed **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account \*\*\*\*\*\*333741 for the period March 13, 2012 through May 15, 2013 which reflects:

    a.  For the period of March 13, 2012 through May 15, 2013, WOLFE had total deposits and credits of $3,475,781.07. For the period prior March 13, 2012 to July 2, 2012,[1] the period of time **WOLFE** was purchasing product from **SLOAN**

---

[1] As stated earlier, on July 2, 2012, your agents assisted in search warrants issued in St. Charles County, Missouri in reference to **SLOAN** d/b/a **NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC**.

31

**Exhibit 2-I**

NC 00015244

**d/b/a NEB Distributing, WOLFE** had deposits/credits totaling $1,402,943.60 and checks/debits totaling $1,319,279.17.

b. For the period July 17, 2012 through May 14, 2013, **WOLFE** had total deposits/credits totaling $2,072,837.47.  For that same period, **WOLFE** had total checks/debits totaling $2,137,695.01.  Of particular interest were debits in the following amounts:

    i. A check #1051, dated August 2, 2012, in the amount of $5,000.00 payable to GAMCO.  According to the memo section of the check, the check was for units 119, 116 and 102.  Your agents know GAMCO to be the name of the company that leases the space at the building located at 13761 and 13765 St. Charles Rock Road, Bridgeton, MO 63044.

    ii. Several checks that posted to the account on May 10, 2012 through July 2, 2012 totaling $70,809.00 and single debit on August 28, 2012 in the amount of $40,000.00 to purchase a Bank of America Cashier's Check, all of which were payable to **HIPPIE DAZE DISTRIBUTION**.  Your agents know **HIPPIE DAZE DISTRIBUTION** to be a fictitious name registered by G & B Novelty, LLC at 1001 Rondale Court, Dardenne, Prairie, MO 63368.  G&B Novelty, LLC is a Missouri Limited Liability Company organized by **SLOAN** and Brett K. Beeman.  Through evidence recovered during the July, 2012, search warrant of **SLOAN's** businesses, cooperating individuals and undercover purchases, your agents know that **SLOAN** and **BEEMAN** d/b/a **HIPPIE DAZE DISTRIBUTION** were manufacturing and selling synthetic narcotics at the wholesale level.

32

**Exhibit 2-I**

**NC 00015245**

iii. Several checks that posted to the account on February 27, 2013 through April 25, 2013 payable to **PAGGREGATE, LLC** in the amount of $209,315.50. As described and contained herein in support for these search warrants, your agents know **PAGGREGATE, LLC** to be a Missouri Limited Liability Corporation organized by **PALMER**.

iv. Two checks that posted to the account in April 2013 payable to **PALMCORP, LLC.** in the amount of $41,600.00. . As described and contained herein in support for these search warrants, your agents know **PALMCORP, LLC** to be a Nevada Limited Liability Corporation organized and controlled by **PALMER**.

v. Two debits in the amounts of $80,574.48 on May 14, 2013 and $89,425.52 made on May 15, 2013. Both debits reference a Legal Order. You agents inquired about the legal order and determined that on or about May 7, 2013, John Richardson, Task Force Officer, Drug Enforcement Administration obtained a seizure warrant for "ALL FUNDS ON DEPOSIT AND CREDITED TO BANK OF AMERICA ACCOUNT NUMBER ******333741 STYLED IN THE NAME OF PSYCHEDLIC BLURR, LLC UP TO THE AMOUNT OF $170,000.00" According to the affidavit, these funds represent property used, or intended to be used, in exchange for an illegal controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846 and are subject to forfeiture pursuant to 21 U.S.C. §§ 853 (a)(2) and 881(a)(6). Based on the facts presented with their affidavit, Richardson sought $170,000.00 in funds used, or intended to be used, in exchange for a controlled substance are either currently on deposit in

33

**Exhibit 2-1**

NC 00015246

**WOLFE's** account or had been on deposit in **WOLFE's** account within the last year.

42. In addition to the above, DEA agents working in conjunction and cooperation with your agents provided the following in reference to businesses they have identified, through cooperating individuals and undercover purchases, as retail distributors of synthetic narcotics:

    a. In approximately October of 2012, the Drug Enforcement Administration (DEA), St. Louis Division, began conducting an investigation related to a conspiracy to distribute controlled substance analogues in violation of Title 21, U.S.C. § § 813, 841 and 846, by Smoke Sensations and South 94 Bait and Tackle Store. In 2012 and 2013, law enforcement agents have made multiple undercover purchases of synthetic drugs from these two locations.

    b. Your agents obtained the telephone tolls for numbers known to be used by the South 94 Bait and Tackle Store, and **WOLFE** for the period of time September 2012 through July 2013 and conducted an analysis. Based on that analysis, except for a period of time beginning on or about October 25, 2012 through February 26, 2013, **WOLFE** talks with someone from South 94 Bait and Tackle Store a couple times a week.

    c. According to the bank analysis conducted by a DEA Financial Investigator in reference to Smoke Sensations' Fifth Third Bank account #******8233 and South 94 Bait & Tackle Fifth Third Bank Account #******0866, from March 2012 through April 2013, approximately 154 checks were written payable to '**PSYCHEDELIC**' for a total of $1,160,096.70. Due to the lack of bank records currently available at the time of this affidavit, your agents have not been able to trace the disposition of all the checks written from Smoke Sensations and South

34

**Exhibit 2-I**                                   NC 00015247

94 Bait & Tackle accounts to **PSYCHEDELIC'**.  However, your agents have traced 37 of the 154 checks written payable to '**PSYCHEDELIC'** as being deposited into **PSYCHEDELIC BLUR LLC**'s Bank of America account # ******333741.

d.  Deposit items into the **PSYCHEDELIC BLUR LLC's** Bank of America account ******333741 show that from September 10, 2012 through April 10, 2013, a total of 23 checks from Smoke Sensations Fifth Third Bank account #******8233. The total value of the 23 checks was $236,619.

e.  Deposit items into the **PSYCHEDELIC BLUR LLC's** account ******333741 show that from September 10, 2012  through April 10, 2013, a total of 14 checks from South 94 Bait & Tackle Fifth Third Bank account #******0866. The total value of the 14 checks was $47,673.50.

43. On September 17, 2013, a Missouri State Highway Patrol officer seized (50) 4 gram packets of "Lights Out," (96) 4 gram packets of "Grave Digger," (25) 5 gram packets of "Darkness" and (1) 4 gram packet of "Night Train" following a traffic stop of **JOHN GALVIN** at mile marker 91 on Interstate 44 in Missouri.  **GALVIN** was driving a dark blue 2003 Chrysler Town and Country minivan with MO License Plate FJ2K1V.  This vehicle has been observed by law enforcement agents in front of the office suites located at 13765 St. Charles Rock Road (locations C through H).  Additionally, this vehicle has been observed making deliveries to the Smoke Sensation Nights of Rave store, 10532 P:age Ave., Overland, MO.  After waiving his Miranda rights GALVIN stated that he had been working for **Chuck WOLFE** for approximately 1 an one half years.  **GALVIN** stated that he had just delivered two boxes of "store products", with each box containing

35

**Exhibit 2-I**                               NC 00015248

800 packages, to Bilbos Earth Store in Springfield, Missouri.  **GALVIN** said the products are "aroma products" commonly known as "K2".  **GALVIN** stated that he makes the delivery every 7 to 10 days and **WOLFE** pays him $300.00 per trip.  **GALVIN** also admitted to delivering the products in the St. Louis area including "94 Bait" and another store on Page Avenue.  **GALVIN** stated that he knew people smoked the "aroma products" he was transporting, admitting that he smokes the products himself.

44. With respect to the specific locations:

<u>**Location A: 1901 Williamstown Drive, St. Peters, MO**</u>

45. From January 2013 through April 2013, your agents conducted trash runs at **WOLFE's** residence located at 1901 Williamstown Drive, St. Peters, MO.  The following is a summary of some of the evidence collected from those trash runs as they relate to 1901 Williamstown Drive, St. Peters, MO:

| Item # | Date of Trash Run | Location | Description of Evidence |
|--------|-------------------|----------|-------------------------|
| 1 | 2/12/2013 | 1901 Williamstown Dr. St. Peters, MO | Invoices addressed to RAJ for 11/29/2012, 12/6/2012, 12/07/20__, 12/19/____ for products "D2E 4g", "SS 8G", GB 1G", "Joker 4G", "H Heads 3g", "S Snax 8G". |
| 2 | 2/12/2013 | 1901 Williamstown Dr. St. Peters, MO | Letter from ____ Bryan. (xxx) Baxter Commons Drive, Manchester, MO 63011 Addressed to Charles Wolfe @ 1901 Williamstown Dr., St. Peters, MO Mailed from Florida. |
| 3 | 2/12/2013 | 1901 Williamstown Dr. St. Peters, MO | Products & Amounts & Price Lists for 11/20, 11/21, 11/22, 12/21 for Products "OMG 10g", "WTF 4g", "SL 3g", "SL 2g", "GB 3g". |
| 4 | 2/12/2013 | 1901 Williamstown Dr. St. Peters, MO | Notes of Products and Amounts "BZ". |
| 7 | 2/26/2013 | 1901 Williamstown Dr. | Laclede Gas billed dated 01/29/2013.  Bill |

**Exhibit 2-I**

NC 00015249

| | | St. Peters, MO | was sent to Chuck Wolfe at the address 1901 Williamstown Drive, St. Peters, MO 63376. |
|---|---|---|---|
| 8 | 2/26/2013 | 1901 Williamstown Dr. St. Peters, MO | Engagement Letter and Fee Agreement with Mr. Palmer and (attorney who organized **PAGGREGATE, LLC and NEB DISTRIBUTION**). Letter dated 2/10/2013 |
| 9 | 2/26/2013 | 1901 Williamstown Dr. St. Peters, MO | 5 FedEx shipping labels from Check or Ray, Dream World Glass LLC @ 3477 Nameoki Rd, Ste 165, Granite City, IL 62040 shipped to Raji, R Advani, 369 W Army Trail Rd, Bloomington, IL 60108. 10. |
| 10 | 2/26/2013 | 1901 Williamstown Dr. St. Peters, MO | Shipping label from Psychedelic Blur, 611 S Fort Harrison Ave, Ste 104, Clearwater, FL 33756 to (xxxxxxxxx), Seabird Wholesale, (xxx) Tilton Rd, Northfield, NJ 08225. |
| 11 | 2/26/2013 | 1901 Williamstown Dr. St. Peters, MO | 2 letters from Flagstar Bank addressed to Avelina C Bolibol @ 1901 Williamstown Drive, St. Peters, MO 63376. The letters are in reference to Mortgage Loan # (xxxxxx)545 and the fact that the loan is past due. |

46. Since December 2012 through the present, your agents conducted drive bys and surveillance at **WOLFE's** residence located at 1901 Williamstown Drive, St. Peters, MO. Your agents have observed a number of vehicles including a White Nissan Titan Pickup Truck (MO License Plate # 9WJ630) and a blue Ford Transit Cargo Van (MO License Plate # 5AN573). Through a database inquiry, your agents determined the Nissan Titan is owned by **DEAN R. GRAVER**, 2024 Ridgedale Drive, Highridge, MO 63049 and the Blue Ford Transit Cargo Van is owned by **DREAM WORLD GLASS, LLC**, 13765 St. Charles Rock Road,

37

**Exhibit 2-I**

NC 00015250

Bridgeton, MO 63044.  In addition, the blue Ford Transit Cargo Van lists a lienholder as **DREAM WORLD GLASS, LLC**, 2024 Ridgedale Drive, Highridge, MO 63049.

<u>**Locations B through H: 13761 St. Charles Rock Road, Suite 118,**</u>
<u>**Bridgeton MO & 13765 St. Charles Rock Road, Suite # 101, # 102,**</u>
<u>**# 111, # 115, # 116 and # 121, Bridgeton, MO**</u>

47. Based on information developed during the **SLOAN** investigation and the aforementioned blue Ford Transit Cargo Van (MO License Plate # 5AN573) observed in front of **WOLFE's** and Bolibol's residence located at 1901 Williamstown Drive, St. Peters, MO,  your agents began conducting drive bys and surveillance at the buildings located at 13761 & 13765 St. Charles Rock Road, Bridgeton, MO 63044.  Based on these drive bys and surveillance, it became clear that the **WOLFE** and **GRAVER** were operating out of suites in the buildings located at the same address

48. Your agents contacted the City of Bridgeton to see if either **WOLFE** or **GRAVER** had registered their businesses with the City of Bridgeton.  According to the City of Bridgeton, **PSYCHEDELIC BLUR, LLC** began operating out of offices located at 13765 St. Charles Rock Road in 2012 and **DREAM WORLD GLASS, LLC** began operating out of those two buildings in January 2013.  However, neither company obtained a business license from the City of Bridgeton.  Due to the appearance of the buildings and the sensitive nature of the investigation, your agents did not contact the owner/management ("GAMCO") company that was listed as the leasing agent.

49. Your agents learned through the investigation that individuals linked to **WOLFE** through the trash runs conducted at 1901 Williamstown Drive, St. Peters, MO and the analysis of **PSYCHEDELIC BLUR LLC's** account ******333741; namely **MARK A. PALMER (hereinafter "PALMER"), SAMUEL LEINICKE (herein "LEINICKE"), and**

38

**Exhibit 2-I**                                    NC 00015251

**ANTHONY L. PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC** were operating out of the same building complexes.

50. From on or about April 2013 to September 8, 2013, your agents conducted trash runs at the trash dumpsters located at the southeast corner of the building located at **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and the northwest corner of the building located at **13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO.** Based on evidence collected from the two dumpsters and surveillance of the subjects on site, your agents determined that both dumpsters are used by **WOLFE, GRAVER, PALMER** and their associates indiscriminately. In fact, on occasion, **WOLFE, GRAVER,** and **PALMER** bring the trash from their house to **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and dispose of it there. The following is a summary of some of the evidence collected from those trash runs as they relate to **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO:**

| Item # | Date of Trash Run | Location | Description of Evidence |
|--------|-------------------|----------|-------------------------|
| 1 | 05/28/2013 | Dumpster located at north west end of 13765 | A ziplock plastic bag filled with 69, 5g packages of Avalon, Novelty Item, Lab Certified. |
| 2 | 06/09/2013 | Dumpster located at north west end of 13765 | The packaging for a DigiWeigh Digital Clock/Scale. |
| 3 | 06/09/2013 | Dumpster located at north west end of 13765 | FedEx Standard overnight envelopes addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Hobies in Milford, CT, BS Unlimited in Oklahoma City, OK, Rex @ Mojo Distributing, Gold River, CA, Fast Stop in Greenville, MS. |

39

**Exhibit 2-I**

NC 00015252

| 4 | 06/09/2013 | Dumpster located at north west end of 13765 | An envelope addressed to **PAGGREGATE**, 2025 Zumbehl Road, PO Box 192 St. Charles, MO with a UPS Store #241 tag. The tag indicates and the customer's name that is on the box is Mark Palmer. |
| 5 | 06/09/2013 | Dumpster located at north west end of 13765 | The box and packaging for a PayLo phone no contact phone MEID HEX A0000040C49BCD with the number 515.865.4992 |
| 6 | 06/21/2013 | Dumpster located at north west end of 13765 | A piece of notebook paper with the following items listed: 21 Freedom 1g, 1 Freedom 3g, 1 Freedom 10g, 2 Lights Out 10g, 49 Devil's Dank 10g |
| 7 | 06/21/2013 | Dumpster located at north west end of 13765 | An envelope address label addressed to (attorney who organized **PAGGREGATE** and **NEB DISTRIBUTING**) from the return address of **PAGGREGATE, LLC**, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303. |
| 8 | 06/21/2013 | Dumpster located at north west end of 13765 | A foil bag with the name Grave Digger 6g, Novelty Item on the front with the water mark "The Outer Edge Genuine" across the package. |
| 9 | 06/21/2013 | Dumpster located at north west end of 13765 | Several Bizarro Incense labels in 3.5g sizes in the following flavors: Lime, Strawberry. A label for a product called "Bang! Powder" |
| 10 | 06/21/2013 | Dumpster located at north west end of 13765 | A shipping envelope dated on or about May 3, 2013, addressed to **MARK PALMER** 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303 from ACC, #7 Slater, Elizabeth, NJ 07206. |
| 11 | 06/21/2013 | Dumpster located at north west end of 13765 | FedEx Standard overnight envelopes dated May 29, 2013 and June 4, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, |

40

**Exhibit 2-I**

NC 00015253

| | | | Suite 248, St. Louis, MO 63125 from Rex @ Mojo Distributing, Gold River, CA |
|---|---|---|---|
| 12 | 06/21/2013 | Dumpster located at north west end of 13765 | FedEx Standard overnight envelopes dated June 1, 2013 and June 6, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Jeff @ Air Time, Chatsworth CA 91311. |
| 13 | 07/07/2013 | Dumpster located at south end of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend that indicates the sample "Mad Hatter" was found to contain: PB-22 and 5F PB-22 |
| 14 | 07/07/2013 | Dumpster located at north of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend dated February 26, 2013 that indicates the sample "Mad Hatter" does not contain the following cannabinoid classes: Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthylmethylindenes, Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substance many of which are Schedule 1 controlled substances or are a controlled substance analogue. |
| 15 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Avalon 5G Herbal Blend that indicates the sample "Mad Hatter" was found to contain: PB-22 and 5F PB-22 |
| 16 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Golden Leaf 3g dated February 26, 2013 that indicates the sample "Golden Leaf" does not contain the following cannabinoid classes: Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthylmethylindenes, |

41

**Exhibit 2-I**

NC 00015254

| | | | |
|---|---|---|---|
| | | | Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substances many of which are Schedule 1 controlled substance or are a controlled substance analogues. |
| 17 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Grave Digger 6g dated February 26, 2013 that indicates the sample "Grave Digger" does not contain the following cannabinoid classes: Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthylmethylindenes, Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substances many of which are Schedule 1 controlled substance or are a controlled substance analogues. |
| 18 | 07/07/2013 | Dumpster located at north end of 13761 | A printed copy of an email message chain dated 2/5/2013 from Cindy houseofbliss@hushmail.com to **MARK** paggregate@hushmail.com that included an email for an order dated January 21, 2013 for 1,000 1g Devil's Dank $4,500.00 shipping of $30.00 for a total of $4,530.00. |
| 19 | 07/07/2013 | Dumpster located at north end of 13761 | A printed copy of an email message chain between **MARK** paggregate@hushmail.com and HuangAncy ancupacking@hotmail.com that begins on or about 11/15/2012 through June 20, 2013. |
| 20 | 07/07/2013 | Dumpster located at north end of 13761 | Several handwritten invoices dated February 2013 through June 2013 addressed to Chuck, MU Fan, Mr. MU Fan, Smokers Choice, Hobies, Smoke and Tackle, Rex, BFU and MoJo for the following items including but not limited to: NT 10 = Night Train 10G, NT |

42

**Exhibit 2-I**

NC 00015255

| | | | |
|---|---|---|---|
| | | | 4 = Night Train 4G, BA 4 = Black Arts 4G, LO 4 = Lights Out 4G, LO 10 =Lights Out 10G, BA 10 = Black Arts 10 G) |
| 21 | 07/07/2013 | Dumpster located at south end of 13761 | An International Express Mail Waybill dated April 26, 2013 addressed to **MARK PALMER, PALM CORPORATION, LLC,** 5543 Edmondson Pike, Suite 178, Nashville, TN 37211. The Package is from from Mr. Li, Jiuxun Trading Company., Ltd. in China and is said to contain 3.4 kg sample of potassium carbonate. The UPS Store tag for store 3012 indicates the package was received in good condition on 4/30/2013 and the customer's name that is on the box is **MARK PALMER** |
| 22 | 07/07/2013 | Dumpster located at south end of 13761 | A FedEx Large Pack dated 3/15/2013 addressed to **TONY PALMER, PALM SHIPPING CORPORATION,** 4117 Hillsboro Pike Suite# 103-363, Nashville, TN 37215 shipped from Mr. Ye, Han Xian Trading Co., Ltd Shanghai, China said to contain a .5 kg cloth bag sample used for packing. The UPS Store tag for store 2863 indicates the package was received in good condition on 3/18/2013 and the customer's name that is on the box is **MARK PALMER** |
| 23 | 07/07/2013 | Dumpster located at south end of 13761 | A FedEx Invoice dated February 6, 2013 addressed to **PAGGREGATE, LLC, MARK PALMER,** 1138 GermanTown Parkway, Suite 101 #184 Cordova, TN shipped from Liu Qi, Deqing Shilin Younsheng Co., Ltd., Zhehiang, China said to contain a3.5 kg sample of antioxidant. |
| 24 | 07/07/2013 | Dumpster located at south end of 13761 | A letter dated March 13, 2013 from the UPS |

**Exhibit 2-I**

NC 00015256

| | | | |
|---|---|---|---|
| | | | Store #4687, 718 Thompson Lane, Suite 108, Nashville, TN 37204 addressed to **MARK** at Box 130.    The letter indicates that his mailbox is due to be renewed on 04/30/2013. |
| 25 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated February 13, 2013 addressed to **MARK**, **PAGGREGATE, LLC**, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303 from 618.709.9076 Phil, **PAGGREGATE**, LLC, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303 |
| 26 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated April 18, 2013 addressed to 618.709.9076, Phil, **PAGGREGATE, LLC**, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303 from 530. 848.0615 Rex @ Mojo Distributing, Gold River, CA |
| 27 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated May 1, 2013 and July 3, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Jason @ Hobies, Milford, CT 06461. |
| 28 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated April 26, 2013, May 13, 2013 and May 16, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 818.349.8605 Jeff @ Air Time, Chatsworth CA 91311. |
| 29 | 07/07/2013 | Dumpster located at south end of 13761 | Three FedEx Standard overnight envelopes dated April 29, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Lee @ Life Styles, Waterbury, CT 06704. |
| 30 | 07/07/2013 | Dumpster located at south end of 13761 | A FedEx Standard overnight envelopes dated |

44

**Exhibit 2-I**

NC 00015257

| | | | |
|---|---|---|---|
| | | | May 15, 2013, addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Charles, Up In Flamz, Baltimore, MD 21222. |
| 31 | 07/07/2013 | Dumpster located at north end of 13761 | Printed Bizarro Lime 3.5 G Incense Labels |
| 32 | 07/07/2013 | Dumpster located at north end of 13761 | Envelopes addressed to **PAGGREGATE** 2025 Zumbehl Road, Box 192, St Charles, MO 63303 from the FastMart with a return address of 228 Hwy 82E, Greeville, MS 38701. |
| 33 | 07/07/2013 | Dumpster located at north end of 13761 | A Famers Insurance Policy addressed to **MARK PALMER**, 2432 Terminal Ave., Granite City, IL 62040 for a 2012 Chevrolet Malibu, 2003 Chevrolet Tahoe, 2011 Chevrolet Cruze and a 2003 Buick Regal |
| 34 | 07/07/2013 | Dumpster located at north end of 13761 | Letter from the City of Bridgeton dated June 28, 2013 addressed to **SAMUEL LEINICKE, PAGGREGATE,** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 in reference to a business opened at 13765 St. Charles Rock Road., Suite 121, Bridgeton, MO 63044. |
| 35 | 07/07/2013 | Dumpster located at north end of 13761 | Letter from the City of Bridgeton dated June 28, 2013 addressed to Bud A. Rice 13765 St. Charles Rock Road., Suite 120, Bridgeton, MO 63044 in reference to a business opened at 13765 St. Charles Rock Road., Suite 120, Bridgeton, MO 63044. |
| 36 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from IMPACK Corp. in Los Angeles, CA 90061, dated 4/25/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 Attn: Mark for **20, 000** 3.5" x 5.5" Custom printed Bunker Buster 5g Pouches, |

**Exhibit 2-I**

NC 00015258

| | | | |
|---|---|---|---|
| | | | **22,700** 3.5" x 5.5" Custom printed Golden Leaf 3g Pouches, and **21, 500** 3.5" x 5.5" Custom printed Vortex 4g Pouches marked paid 4/25/2013. |
| 37 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from StockBagDepot in Chino, CA 91710, dated 2/07/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 for 8,000 1 oz poly/foil stand up pouches that are clear and silver. |
| 38 | 07/07/2013 | Dumpster located at north end of 13761 | Several pieces of notebook paper that list inventory of items in different totes/boxes: (i.e. 1,050 NT 10 =1050 Night Train 10G, 1,000 NT 4 = 1000 Night Train 4G, 400 BA 4 =400 Black Arts 4G, 700 LO 4 = 700 Lights Out 4G, 1250 LO 10 =1,250 Lights Out 10G, 850 BA 10 = 850 Black Arts 10 G) |
| 39 | 07/07/2013 | Dumpster located at north end of 13761 | A printed Quickbook Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 2/12/2013 addressed to MoJo for 5,000 LO 1 @ $3.00 = $15,000.00, 1,500 LO 4 @ 8 = $12,000.00, 500 NT 4 @ 8.00 = $4,000.00 Shipping $200.00 for at total of $31,200.00 |
| 40 | 07/07/2013 | Dumpster located at north end of 13761 | A printed Quickbook Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 6/11/2013 addressed to MoJo for 5,000 GL 3 @ $5.00 = $25,000.00, 3,300 LO 1 @ $3.00 = $9,900.00, 2500 LO 4 @ 7.00 = $17,500.00 for a total of $52,400.00 |
| 41 | 07/07/2013 | Dumpster located at south end of 13761 | A letter from Primera Technology, Inc dated April 25, 2013 addressed to **MARK PALMER, PAGGREGGATE** 2025 Zumbehl Suite 192, Road, St. Charles, MO |

46

**Exhibit 2-I**

NC 00015259

| | | | |
|---|---|---|---|
| | | | 63303 in reference to the Primera Label Printers described as ideal for producing the number of full-color labels he needs, in quantities he can use when he needs them |
| 42 | 07/07/2013 | Dumpster located at south end of 13761 | Copies of the front of 69 checks dated 4/2013 through 6/2013 from :24-7 Food Mart, Airtime Distribution, Area 51 Gifts and Novelties, East Gore Discount #2, Fast Stop, Fox Conn Enterprises, Inc., Grey Industries, Hobies, Johrri Enterproises, Inc., Last Place on Earth, Lifestyles, LLC, M & J Food Stores, Inc., Mojo Distribution, Prime Time Retail, LLC, **PSYCHEDELIC BLUR, LLC**, Puff N Stuff,  Raja Nawaz, Smoke Sensantions dba Nights of Rave, LLC, South 94 Bait & Tackle Trading Post, The Den, Tidwell Corporation, Up In Flamez, and Whatever, Inc.  These checks were addressed to **PAGGREGATE, LLC** and **PALM CORP** for items described in the memo section as "Inventory, Merchandise and Products that total $928,369.00 |
| 43 | 07/09/2013 | Dumpster located at north west end of 13765 | A box with a UPS Ground Shipping Label addressed Hold for pick up: **CHUCK WOLFE**, UPS 13818, 13818 Rider Trail North, Earth City MO 63405 from Javed Ajmeri, GW Trading, Inc., 111 S. Lombardo Road, Addison, IL.  This box was 27 pounds and was #4 of 9. |
| 44 | 07/21/2013 | Dumpster located at north west end of 13765 | 5 Empty Primera Ink Cartridge Boxes (Black), 20 Empty Primera Ink Cartridge Boxes (Yellow), 10 Empty Primera Ink Cartridge Boxes (Magenta), 22     Empty |

47

**Exhibit 2-I**

NC 00015260

| | | | Primera Ink Cartridge Boxes (Cyan), empty foil packaging for the ink cartridges and labels that state "Place desired amount in a small pan or potpourri warmer, cover and simmer on low heat. Use only as directed. This product is intended to create aroma only; it is not for human consumption. This product does not contain any Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthyboylmethylindenes, Phenylacetylindoles, Benzolindoles, Cyclohexylphenols or Dibenzopyrene." |
|---|---|---|---|
| 45 | 07/24/2013 | Dumpster located at north west end of 13765 | A box with a UPS Ground Shipping Label addressed to **DEAN GROVER** 2024 Ridgedale Drive, High Ridge, MO 63049 from xxxxxx, xxxxxx GW Trading, Inc., xxx Windy Point Drive, Glendale Heights, IL 60139. This box was 33 pounds and was 1 of 2. |
| 46 | 07/28/2013 | Dumpster located at south end of 13761 | A FedEx Shipper's Declaration for Dangerous Goods dated July 22, 2013, for Consignee **MARK PALMER, PALM CORP/ PAGGREGATE, LLC,** 2025 Zumbehl Road, Suite 192, St. Charles, MO 63303 from Erin Kay, Tasty Puff, LLC 11700 Cochiti Road. SE, Ste B, Albuquerque, NM 87123 for 12L of flavouring, extracts liquid UN 1197. |
| 47 | 08/01/2013 | Dumpster located at south end of 13761 | 1 Night Train Herbal Blend label |
| 48 | 08/01/2013 | Dumpster located at south end of 13761 | 1 empty foil package labeled Black Arts 10g |

48

**Exhibit 2-I**

NC 00015261

| 49 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon denatured alcohol can with white residue around the mouth of the can |
|----|-----------|----------------------------------------|-----------------------------------------------------------------------------------|
| 50 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with white residue around the mouth of the can. |
| 51 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with loose vegetation stuck to the top of the can |
| 52 | 08/01/2013 | Dumpster located at south end of 13761 | Approximately 10grams of loose vegetation material to include vegetation stuck to several round 1.5g weight label stickers used to state content weight on retail products. |
| 53 | 08/01/2013 | Dumpster located at south end of 13761 | One cotton towel wet and soiled with apparent chemical residue by odor. |
| 54 | 08/01/2013 | Dumpster located at south end of 13761 | An address label and part of a box that at one time contained Black Arts envelopes. The box was shipped from Woknderful Packaging Co., Ltd. (Hong Kong) to **MARK** at 2025 Zumbehl Road, St. Charles MO 63303 Phone 636-284-9952 total weight 41 Kgs dated 07/06/2013 |
| 55 | 08/01/2013 | Dumpster located at south end of 13761 | 1 woven white bag approximately 24" x 36" with vegetation residue. |
| 56 | 08/01/2013 | Dumpster located at south end of 13761 | 1 zip lock bag labeled "Blue Berry" |
| 57 | 08/01/2013 | Dumpster located at south end of 13761 | A cotton towel with a chemical residue. |
| 58 | 08/01/2013 | Dumpster located at south end of 13761 | 7 pieces of foil tape |
| 59 | 08/01/2013 | Dumpster located at south end of 13761 | Several round 1.5 g white stickers |
| 60 | 08/01/2013 | Dumpster located at south end of 13761 | 3 empty Pump It plastic containers |
| 61 | 08/01/2013 | Dumpster located at south end of 13761 | 21 used plastic gloves with residue on them. |
| 62 | 08/01/2013 | Dumpster located at south end of 13761 | 3 used breathing masks |
| 63 | 09/08/2013 | Dumpster located at south end of 13761 | Seven (7) packets of synthetic marijuana products packaged for retail sale to include two (2) Night Train 4g, two (2) Mega Kush 4g, one Mega Kush 1.5g, one (1) Dirty Dirt |

49

**Exhibit 2-I**

NC 00015262

| | | | Devil 4g, and one (1) Black Arts 10g. |
|---|---|---|---|
| 64 | 09/08/2013 | Dumpster located at south end of 13761 | A discarded mailing in the name and address of **DEAN GRAVER** or Current Resident, 2024 Ridgedale Dr., High Ridge, MO 63049. |
| 65 | 09/08/2013 | Dumpster located at north west end of 13765 | Four (4) discarded notes on remnants or scraps of white lined paper that read; DDD 300-10 300-4; 300 MH 10 and on back a table reading 50 60 6, 400 BuBu 1.5, , 50 BuBu 10, 100 St 1.5, 200 MK 1.5, 100 DD 4, 100 DD 1, (illegible) UX 4, 50 CiMO (cutoff); and 2000 LO 4 |
| 66 | 09/08/2013 | Dumpster located at north west end of 13765 | Ninety-three (93) discarded/mistake labels bearing synthetic marijuana brand names Bunker Buster, Mad Hatter, Freedom, Black Arts, and Devil's Dank. |
| 67 | 09/08/2013 | Dumpster located at north west end of 13765 | Twelve (12) label spools with a total label capability of 16,125 labels, three (3) empty printer cartridge boxes taken as a sample of numerous boxes present, three (3) printer cartridge foil packs taken as a sample of numerous foil packs present |

51. In regards to items #1, #49, #50, #52, #57 and #63 listed in the chart of trash runs above, your agents submitted the same items to the St. Louis County Crime Lab for chemical analysis. The results are listed below:

    a. Item #1: The analysis of specimen Q1, described as (1) unopened foil pouch labeled "Avalon Novelty Item 5G" containing green and brown vegetation disclosed the presence of XLR-11, a schedule I controlled substance. (XLR-11 became a schedule I controlled substance on May 16, 2013.)

    b. Item #49 The analysis of specimen Q2, described as white residue from a 5 gallon can of denatured alcohol disclosed the presence of AB-FUBINACA.

**Exhibit 2-I**

NC 00015263

c.  Item #50 The analysis of specimen Q3, described as white residue from 5 gallon can of acetone disclosed the presence of AB-FUBINACA.

d.  Item #52 The analysis of specimen Q4, loose leaf material and vegetation disclosed the presence of AB-FUBINACA and 5-FLUORO PB-22. According to DEA, 5-FLUORO PB-22 has been found laced on plant material and marked under the guise of herbal incense products. It belongs to the same structural call of substances as JWH 018 and AM-2201. There are no commercial or medical uses for this substance. Although 5-FLUORO PB-22 is not currently scheduled, if intended for human consumption, 5-FLUORO PB-22 may be treated as a controlled substance analogue in Schedule 1.

e.  Item #53 The analysis of specimen Q5 described a 1 cotton towel with chemical residue disclosed the presence of 5-FLUORO PB-22.

f.  Item #63 The analysis of these items disclosed the following:

    i.  Specimen Q6 described as one (1) foil pouch, with the bottom of the pouch stapled closed, labeled "Night Train Herbal Blend 4G" containing green vegetation disclosed the presence of AB-FUBINACA and 5-FLUORO PB-22.

    ii.  Specimen Q7 described as one (1) foil pouch, with bottom of pouch stapled closed, labeled "MEGA KUSH NOVELTY ITEM 4G" containing green vegetation disclosed the presence of 5-FLUORO PB-22.

    iii.  Specimen Q8 described as one (1) foil pouch, with bottom of pouch stapled and taped closed, labeled "BLACK ARTS NUMBER 10

**Exhibit 2-I**                                        NC 00015264

NOVELTY ITEM 10G" containing   green vegetation disclosed the presence of AB-FUBINACA.

iv. Specimen Q9 described as one (1) foil pouch, with bottom of pouch stapled closed, labeled "DIRTY DIRT DEVIL NOVELTY ITEM 4G" containing green vegetation disclosed the presence of AB-FUBINACA.

v. Specimen Q10 described as one (1) unopened foil pouch labeled "MEGA KUSH NOVELTY ITEM 1.5G" containing green vegetation disclosed the presence of 5-FLUORO PB-22.

g. In regards to items #2, #6, #8, #9, #13, #14, #15, #16, #17, #18, #19, #20, #21, #22, #23, #31, #36, #37, #38, #39, #42, #46, #49, #50, #51, #52, #53, #55, #59, #61, #62, #63, #65, #66 and #67 listed in the chart of trash runs above, your agents know through their investigation that these items are commonly used by individuals involved in the manufacturing, sale and distribution of synthetic marijuana.

h. In regards to Item #20 listed in the chart of trash runs above, your agents have compared these invoices and the notes contained on these invoices to the checks drafted out of **WOLFE's PSYCHEDELIC BLUR** Bank of America account ******333741 and determined that from on or about August 2012 through June 10, 2013, **WOLFE** listed as "Chuck, MU Fan, Mr. MU Fan" on **PALMER'S** invoices has been purchasing numerous blends of synthetic marijuana from **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC.**

52

**Exhibit 2-I**

NC 00015265

i. In regards to Item #42 listed in the chart of trash runs above your agents have compared these checks against the invoices listed in item #20 and determined that for the period 4/2013 through 6/2013 **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC** has sold over $900,000.00 in synthetic marijuana over the same period of time.

52. On June 25, 2013, during a drive by of 13765 St. Charles Rock Road, Bridgeton, MO, your agents observed a white Pontiac Grand Am parked out in the middle of the parking lot. Upon further inspection it was determined that the Pontiac Grand Prix had an Illinois License Plate R635814. This is the same automobile that a law enforcement agent observed **ANTHONY PALMER** driving the day **ANTHONY PALMER** picked up the packages from the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134. Your agents confirmed that the same automobile (white Pontiac Grand Am with Illinois License Plate R635814) was registered to **ANTHONY L. PALMER** at 1203 North 18th Street, Mt Vernon, IL 62864. The automobile remained parked in the same location of the parking lot for the next several weeks.

53. In August 2013 law enforcement agents installed electronic surveillance devices that capture the public view of the offices, parking lot and surrounding area of the addresses listed above.

54. Based on the regular drive bys, surveillance and the agents' review of the electronic surveillance collected to date your agents know that **WOLFE, GRAVER, PALMER, ANTHONY PALMER, SAM LIENEKE, JOHN GALVIN** and others individuals working in cooperation with the same, operate one or more businesses out of the addresses listed above. The individuals listed above, individuals working in cooperation with the

53

**Exhibit 2-I**                                    NC 00015266

same, and their vehicles, crossover vehicles, sport utility vehicles, trucks and pull behind trailers are at one or more of the office suites listed above on a regular basis and occasionally on the weekends/holidays. The individuals listed above or individuals working in cooperation with the same, have keys to one or more of suites listed above and have free reign of the premises. The individuals listed above or individuals working in cooperation with the same, regularly move between the office suites listed above. In addition, the individuals listed above or individuals working in cooperation with the same, will enter one office suite (i.e. Suite #115) but exit through a different office suite (i.e. Suite #116). Because these office suites are connected by a corridor that runs the length of the buildings, your agents assume the individuals listed or individuals working in cooperation with the individuals listed above are moving from one suite to another through the same corridor. The individuals listed above or individuals working in cooperation with the same, regularly park one vehicle on the premises to grab another and/or will leave a vehicle on the premises overnight.

55. The individuals listed above or individuals working in cooperation with the individuals listed above can be observed unloading overnight packages and FedEx packages from a vehicle into one or more of the office suites listed above. Your agents know through the statements made by seizures made by the U.S. Customs Border Patrol, the statements of **ANTHONY PALMER**, evidence collected from the trash pulls listed above and the search warrants conducted by your agents in the Western District of Tennessee that the individuals listed above were importing controlled substances and controlled substance analogues through nominee addresses located at UPS Stores located several hundred miles away and then transporting them back to the addresses listed above.

54

**Exhibit 2-I**

NC 00015267

56. The individuals listed above or individuals working in cooperation with the individuals listed above can be observed regularly unloading several boxes at a time from a vehicle into one or more of the office suites listed above.  Your agents know through their experience that many of the supplies (i.e. vegetation, bags, labels and printer ink) used in the manufacturing and distribution of synthetic marijuana are delivered in shipments that include several boxes.  The individuals listed above or individuals working in cooperation with the individuals listed above can be observed unloading grey and blue plastic totes that your agents know through their experience are used to mix and transport synthetic marijuana.

57. In addition, your agents have observed the individuals listed above or individuals working in cooperation with same pull and drop off a large black trailer and a large dual-axle white trailer on the parking lot of the premises.  These trailers are usually towed on/off the premises by a Chevy Tahoe known to be owned by **PALMER** as described by a Missouri State Highway Patrol Source (See "**LOCATION I: 4738 Orchard Drive, Barnhart, MO**).

58. The individuals listed above or individuals working in cooperation with the individuals listed above can be observed regularly loading one or more boxes at a time from one or more of the suites listed above into a vehicle, crossover vehicles, sport utility vehicles, trucks owned and/or operated by the same.  Your agents know through their experience and this investigation that the final packaged product (1 gram, 3 gram, 5 gram and 10 gram packages of synthetic drugs/marijuana) are boxed up for delivery and hand delivered by a driver or shipped out for delivery through the use of a commercial carrier.

**LOCATION I: 4738 Orchard Drive, Barnhart, MO**

55

**Exhibit 2-I**

NC 00015268

59. On August 21, 2013 at approximately 3:30 pm, your affiant and agents from the Internal Revenue Service Criminal Investigation (IRSCI) and the DEA Tactical Diversion Squad (TDS) interviewed a DEA confidential source, (hereafter "DEA Source") at the IRSCI office in Fairview Heights, Illinois.  The source previously "cold" called the DEA as an anonymous tipster to report a synthetic marijuana manufacturing operation and street level distributor in the Mt. Olive, IL area.  DEA Source stated he/she is aware that an individual known to him/her as **HENRY WILSON** (herein referred to as "**WILSON**") is selling synthetic marijuana out of his home at 4468 Two Mile Rd., Mt. Olive, IL.  DEA Source further stated that **WILSON** is getting the synthetic marijuana from a manufacturing facility **WILSON** is working at with his mother (later identified and herein referred to as "**DENISE WILSON**") and brother (later identified and herein referred to as "**JIMMY JO WILSON**") in the southern St. Louis metropolitan area.

60. DEA Source stated he/she is aware **WILSON** is selling synthetic marijuana from the Two Mile Rd. location because DEA Source has bought it from **WILSON** there.  **WILSON** lives in a trailer at the address with his girlfriend, "Kelly", and their infant child.  The address is near Poplar and Oglesby in Mt. Olive, and the trailer is diagonally across from a lake at the intersection there.

61. DEA Source stated he/she is concerned for the child because the child crawls around the trailer with the synthetic marijuana product all around it.  **WILSON** has a cocaine problem as well.  The couple is involved with "meth" use also, which is also present around the child.  DEA Source stated other health and welfare concerns surrounding the child's living conditions in the trailer as well.  DEA Source stated it is concern for the

56

**Exhibit 2-I**

NC 00015269

child and because of his/her own addiction issues that he/she decided to come forth with the information on **WILSON**.

62. **WILSON** is selling the synthetic marijuana for approximately $10 a gram and distributes it in plastic bags similar to a traditional marijuana dealer. **WILSON** usually keeps the synthetic marijuana in his home, but has recently begun keeping it in a shed next to the home. **WILSON** has about five (5) regular customers in the Staunton/Mt. Olive area to include Shawn MCBRIDE, Terry MURPHY, and Ben LONG.

63. DEA Source stated that **WILSON** has told him/her that **WILSON** works at a synthetic marijuana manufacturing facility somewhere in the southern part of St. Louis. The operation used to be run out of a location near Alton, IL, but the owner moved it to the southern location. DEA Source was aware from **WILSON's** statements that it takes **WILSON** an hour and a half (1 ½ hours) to travel from his home in Mt. Olive to the new manufacturing location. (A Google Map search reflects that it is approximately a one hour and 20 minute drive from the Mt. Olive residence to the Barnhart location.) **WILSON's** mother, **DENISE WILSON**, and brother, **JIMMIE WILSON**, also work at the manufacturing facility. **DENISE WILSON** is the foreman of the facility. The three leave their homes between 4:30 am and 6:00 am to travel to the facility's location. **WILSON** is also involved in some way with a meth lab in the Alton, IL area.

64. **WILSON** has stated that the synthetic marijuana is produced by laying leaves (carrier material) on a table and spraying chemicals onto the leaves. The chemical is the same throughout various product brand names, but the level of chemical varies by brand. The finished product is bagged into retail packaging by the baggers employed at the facility. There is a "scrap bucket" which employees are allowed to sample from and routinely

**Exhibit 2-I**

NC 00015270

smoke on site.  Each employee is allowed to take home one (1) ounce of finished synthetic marijuana home per day after the shift.  The employees are paid cash for their work.

65. **WILSON** has stated there are also boxes of "bath salts" (cathinone products) stored at the facility.  The owner keeps the bath salts there because the chemicals used in the products are banned.  The owner distributes products containing banned chemicals through street level distributors like **WILSON** similar to traditional drug trafficking as opposed to retail smoke shop type outlets.

66. The synthetic marijuana manufactured at the southern facility location is taken to a warehouse in Earth City in St. Louis County.  Your investigators are aware that 13761 and 13765 St. Charles Rock Rd., Bridgeton , MO (locations B through H) are located within a mile of the Earth City Expressway and that this area of Bridgeton is adjacent to the Earth City area.  DEA Source did not know who owns the warehouse or manufacturing facility, just that it is a male.  DEA source knows the man lives around Alton, IL because Ben LONG once had to go there to "get his fix".  LONG once stated that the warehouse owner claimed to have lost $750 thousand in retail product because of changes in controlled substance laws

67. DEA Source stated a man named "**SAM**" runs the Earth City warehouse.  (Your agents believe "Sam" is Amuel Leinicke, who is on the utility records for Suite 121 and has also been observed driving two of Mark Palmer's vehicles)  DEA Source is aware of "**SAM**" through his/her association with the owner of the BABYLON smoke shop in South County where THA GRIND store used to be.  The BABYLON owner, has told DEA Source that synthetic marijuana sold in the BABYLON, to include brand name "Black Arts", "Lights Out", and "Devil's Dank", comes from a warehouse in Earth City.

58

**Exhibit 2-I**

NC 00015271

68. Following the interview, the investigators utilized an undercover Facebook account to research **WILSON**, and **JIMMIE WILSON**. DEA Task Force Officer (TFO) Baldridge previously researched the **WILSONs** based upon a license plate observed from surveillance conducted at the address of 4738 Orchard Dr., Barnhart, MO. The vehicle observed was a black Ford 2DR Hatchback, driven by a white male with the following license plate (Illinois P520502). A plate inquiry revealed that the license plate and automobile is registered to a black 2001 Ford 2 door hatchback in the name of Emily Doogan, 427 George Street, Alton, IL 62002. Your agents reviewed a Doogan's Facebook account which revealed her boyfriend to be **JIMMIE JOE WILSON**, who TFO Baldridge recognized as the driver of the black 2001 Ford 2DR Hatchback observed while on surveillance.

69. On or about August 20, 2013, your affiant spoke with Corporal Hoffman of the Jefferson County Sheriff's Office Municipal Enforcement Group concerning the address 4738 Orchard Drive, Barnhart, MO. Cpl. Hoffman stated that he had heard the address previously. Your affiant contacted Cpl. Hoffman again on August 22, 2013 for clarification on that statement. Cpl. Hoffman stated his unit was previously advised of Missouri Highway Patrol confidential source information concerning synthetic drug manufacturing at the address. Cpl. Hoffman advised Sgt.Ellsworth of the Missouri Highway Patrol as the appropriate contact for the information.

70. The same date, your affiant spoke with Sgt. Ellsworth to inquire about any information he may have concerning the address 4738 Orchard Drive, Barnhart, MO. Sgt. Ellsworth stated he recalled information on the address concerning synthetic drug manufacturing being provided by a previously used confidential source, hereafter "MO HiPO Source".

59

**Exhibit 2-1**                    NC 00015272

Sgt. Ellsworth advised MO HiPO Source has provided reliable information in the past. Sgt. Ellsworth advised he would review his notes on the MO HiPO Source's reported information and provide further details. On August 23, 2013, Sgt. Ellsworth reported to your affiant via email the following:

a. On July 15, 2013, MO HiPO Source reported that synthetic drugs are being manufactured at 4732 Orchard Drive, Barnhart, Missouri, 63012. MO HiPO Source stated "**MARK**" is the owner and his son "**TONY**" is also involved. " **MARK** " is an ex-Marine and a sniper and " **TONY** " is ex-Air Force. The MO HiPO source worked there and took some of the evidence (reported to be Mad Hatter) as "insurance" to prove it was an illegal substance. The drugs are being manufactured in a barn at the property that is directly behind the house and has a white roof. There is a gate that appears to be locked, but is not.

b. MO HiPO Source believes "**MARK**" drives a 2011-2012 silver Chevy Impala or Malibu and a Chevy Tahoe Z-71. " **TONY** " is believed to drive a 2011-2012 silver Mitsubshi Eclipse. They switch tags and plates on the vehicles often. MO HiPO Source advised there is a black Champion trailer on the property that contains product remnants.

c. MO HiPO Source advised there are approximately 14-15 persons involved in the manufacturing at the barn. MO HiPO Source said they will not speak to officers. The workers have been instructed to not talk to law enforcement, and that they will be provided an attorney if encountered by law enforcement. The persons involved know the products are illegal. One worker, possibly named **JOSEPH WILSON**, lives on George Street in Alton and has

60

**Exhibit 2-I**

NC 00015273

approximately $60,000.00 to $70,000.00 of synthetic marijuana product and currency in his basement of his home.

71. On August 30, 2013 your agents conducted aerial surveillance of the property located at 4738 Orchard Drive, Barnhart, MO.   The following images removed from the video footage taken on that day.



Image #1



Image #2

61

**Exhibit 2-I**

NC 00015274



Image #3



**Exhibit 2-I**

NC 00015275

72. With respect to Image # 1 and #2 from the surveillance video taken on August 30, 2013, although the house appears to be vacant, there are six vehicles (red Chevy Impala, silver/black Nissan Pathfinder Xterra, champaign Lincoln Town, red Ford F150 Extended Cab Pickup Truck, green Oldsmobile Intrigue, light color Chevy Impala, black Ford Focus hatchback) parked around the large shed located at the rear of the property.

73. With respect to Image #2 from the surveillance video taken on August 30, 2013, as stated earlier DEA TFO Baldridge identified a black Ford two door hatchback (Illinois plate #P520502) in the general location of 4738 Orchard Drive, Barnhart MO on August 14, 2013.   On August 28, 1012, TFO Baldridge observed three white males driving a champaign color Lincoln four door with Illinois License plate IL R849985 leaving the general location of 4738 Orchard Drive, Barnhart MO.  According to TFO Baldridge, the three men looked as though they had been working in a warehouse all day.  The vehicle was driven by an older white male.  A plate inquiry revealed that the license plate and automobile is registered to Anthony Brandhorst at 1205 East 6th Street, Alton, Illinois 62202.  On September 6, 2013, S/A Anderson observed a green Oldsmobile Intrigue (Illinois R916146 that matches the green vehicle depicted in Image #2 above) parked next to a red Chevrolet Cruze (Illinois A712234) your agents know to be registered in the name of **PALMER** parked at the north end of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044.   A plate inquiry revealed that the license plate and automobile is registered to Anthony Hargiss at 8966  Ingersoll Lane, Alton, IL 62002. (An analysis of the Bank of America bank account for PAGGREGATE, LLC. reflect checks payable to Anthony Brandhorst, Anthony Hargiss, **DENISE WILSON, JIMMY JOE WILSON**, and others indicative of payroll checks.)

63

**Exhibit 2-I**

NC 00015276

74. With respect to Image #3 from the surveillance video taken on August 30, 2013, your agents can see that the rear of the Nissan Pathfinder Xterra along with the Lincoln Town Car (from Image #2) have their rear compartments open that so that product can be loaded into the rear compartment. In addition, your agents can see grey plastic totes that your agents know through their experience are used to mix and transport the synthetic marijuana.

### TRAINING EXPERIENCE OF INVESTIGATIVE TEAM

75. With my experience and training, and that of other special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime. The distribution of controlled substance analogues such as synthetic cannabinoid products and substituted cathinone products is often done through small, home based or internet businesses selling products to convenience stores, adult product stores, head shops and gas stations. These products which are often purchased or manufactured at a small price are sold at prices generating very large profit margins. Some of the money generated is utilized to continue the business operations.

76. Additionally, based upon my training, experience, and participation in investigations involving importation of controlled substances and analogues through the Drug Enforcement Administration; my investigation into controlled substances, analogues, and dangerous drugs; from speaking with other Agents and Officers; and my investigation further detailed in this affidavit, I have learned the following:

　　a. Controlled substance importers and distributors often intentionally mislabel parcels to hide the fact that the package actually contains controlled substances to avoid the substances being seized;

64

**Exhibit 2-I**

NC 00015277

b. Distributors of controlled substance analogues will often mislabel wholesale or retail packaging to hide the fact that the substance will be utilized for human consumption and maintain labeling and packaging material;

c. Persons involved in importing and distributing controlled substances, in particular those who import controlled substance chemicals or controlled substance analogue chemicals typically possess items or documents showing the lab testing of the chemicals or or like substances (e.g. analogues), maintain inventories of organic material to which the controlled substances are applied, and maintain packaging materials for the controlled substances or the products manufactured from the controlled substances;

d. Persons involved in the production of smokable synthetic cannabinoid products or substituted cathinones products (which are both analogues of controlled Schedule I substances) typically illegally import analogue substances into the United States using the United States Postal Service or a similar postal carrier.   Once the analogues have entered the United States, these persons typically, in the case of smokable synthetic cannabinoid products, spray the analogue substance onto an organic material and allow it to dry or, in the case of substituted cathinones products, mix the analogue substances with other compounds to produce the desired mixture.   These persons then sell the altered organic compound for human consumption under the street names of "spice" and/or "bath salts" utilizing various product names;

e. Persons involved in setting up a home business operation for the distribution of synthetic cannabinoid products or substituted cathinones will often utilize storage

65

**Exhibit 2-I**

NC 00015278

facilities, warehousing facilities, or business locations to manufacture and store products for wholesale or retail sale until it can be distributed;

f. The trafficking of illicit controlled substances or controlled substance analogues and the products manufactured from such is a cash-intensive enterprise, similar to the trafficking of "traditional" illicit drugs such as marijuana or cocaine. Persons involved in distributing large quantities of synthetic cannabinoid products or cathinone products generate large amounts of money which may be concealed within a residence, vehicle, business, other storage facility, as well as financial institutions, within their dominion and control are easily converted to other assets such as precious metals. The proceeds are easily converted to other investment vehicles or financial instruments to include precious metals in an attempt to launder or conceal the monetary gains;

a. Persons involved in the distribution of synthetic cannabinoid products or substituted cathinones will disguise the distribution through the appearance of a legitimate business operation and maintain business records regarding the purchase of the substances, sale of the substances, distributors and other information, including but not limited to, business records and archived business conversations. I also know from my experience and training that such records and documents are kept and stored in computers, electronic and digital storage devices, and mobile devices in addition to or in lieu of hard-copy versions of this data. Similar to filing cabinets, boxes, or other physical devices for such records and documents, computers, electronic storage media and peripherals are

66

**Exhibit 2-I**

NC 00015279

commonplace and are often located inside residences. Further, documents and records can be "hidden" within such electronic storage media. Based on my knowledge, training, and experience, and the knowledge, training and experience of the investigators with expertise in computer and electronic/digital evidence, I am aware of the following search considerations and factors:

i.  Volume of evidence: Computer storage devices, including but not limited to hard disks, diskettes, tapes, CDs, DVDs, and thumb drives, can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instruments of a crime. This sorting process can take weeks or months, depending on the volume of data stored;

ii. Technical requirements: Searching computer systems for criminal evidence can be a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity

67

**Exhibit 2-I**                    NC 00015280

of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap") a controlled environment is essential to its complete and accurate analysis;

iii. Data analysis may use several different techniques to search electronic data for evidence or instrumentalities of a crime. These include, but are not limited to the following: examining file directories and subdirectories for the lists of files they contain, "opening" or reading the first few "pages" of selected files to determine their contents, scanning for deleted or hidden data, searching for key words or phrases ("string searches"). In view of the forgoing, computer related items sought to be searched include the following:

1. Hardware - Computer hardware consists of any and all computer equipment capable of being linked together in a local area network (LAN) (to include any equipment which has remote access capabilities) including all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but not limited to, any data-processing devices (such as central

68

**Exhibit 2-I**                    NC 00015281

processing units, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as hard drives, fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, flash drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communication devices (such as modems, cables, and connections); as well an any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks);

2.  Software - Computer software is digital information which can be interpreted by a computer and any related components to direct the way the work.  Software is stored in electronic, magnetic, optical, or digital form.  It commonly includes programs to run operating systems, applications (like word-processing, graphics, or spreadsheet programs), utilities, compilers, interprets, and communications programs;

3.  Documentation - Computer related documentation consists of written, recorded, printed, or electronically stored

69

**Exhibit 2-I**

NC 00015282

material which explains or illustrates how to configure or use computer hardware, software, or other related items;

4. Mobile devices - advances in mobile technology, such as "smart" phones, have made it possible for persons or representatives of businesses and criminal organizations to conduct activities on personal mobile devices, such as phones, or personal electronic tablet devices, such as an iPad, which are capable of sending electronic communications including electronic mail and electronic "text" messages. These devices also make it possible for an individual to access the Internet to operate email, websites, or store digital and electronic information;

5. Electronically Store Data - Any and all such data concerning the sales of imitation controlled substances and drug paraphernalia, laundering of monetary instruments, and engaging in monetary transactions in property derived from specified unlawful activity. Any and all identification documents and such data consisting of information stored on back-up tapes, computer hard drives, and/or any other form or manner;

6. Passwords and Data Security - Computer passwords and other data security devices are designated to restrict access to or hide computer software, documentation, or data. Data

70

**Exhibit 2-I**

NC 00015283

security devices may consist of hardware, software, or other programming codes. A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular date security devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it;

7. All documentation relating to retail sales including, but not limited to, sales invoices, Missouri sales/withholding tax returns, customer receipts, vendor/supplier invoices, cash register sales receipts, bank statements, bank/ATM card statements, credit card statements, check book and check registers, general ledgers, sales journals, payroll records (W-2 forms), employee information (W-4 forms), employment verification (I-9 forms), employee pay stubs, and income statements. All of the foregoing items of evidence in whatever form and by whatever means such items may have been created or stored on the computer to be searched, all of, which constitute evidence of violations

71

**Exhibit 2-I**

NC 00015284

of Title 21, United States Code Sections 813, 841 and 846, and Title 18, United States Code, Section 1956, found within the vehicles and premises:

g.   It is also in the experience of your affiant that drug trafficking organizations, to include traffickers of synthetic drugs, rely heavily on mobile phones and devices to conduct activities related to and in furtherance of the criminal activity. Mobile phones are used to pass communications such as instructions, negotiations, directions, and locations, both verbally and in writing via electronic message; and

h.   Advances in mobile technology, such as "smart" phones, have made it possible for persons or representatives of businesses and criminal organizations to conduct activities on personal mobile devices, such as phones, or personal electronic tablet devices, which are capable of sending electronic communications including electronic mail and electronic "text" messages. These devices also make it possible for an individual to access the Internet to operate websites or store digital and electronic information and records in furtherance of the criminal activity.

## CONCLUSION

77. As a result, based on the foregoing facts presented above and contained herein, my training and experience, and training and experience of the investigative team, your affiant believes there is probable cause to believe that evidence of a violation of Title 21, United States Code, Sections  331, 813, 841(a)(1) and 846, and Title 18, United States Code, Section 1956, will be found at the following locations: A) 1901 Williamstown Drive, St. Peters, MO 63376; B) 13761 St. Charles Rock Road, Suite 118, Bridgeton MO 63044; C) 13765 St. Charles Rock Road, Suite 101 , Bridgeton, MO 63044; D) 13765 St. Charles

72

**Exhibit 2-I**

NC 00015285

Rock Road, Suite 102, Bridgeton, MO 63044; E) 13765 St. Charles Rock Road, Suite 111 , Bridgeton, MO 63044; F) 13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044, G) 13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044; H) 13765 St. Charles Rock Road, Suite 121 , Bridgeton, MO 63044 and I) 4738 Orchard Drive, Barnhart, MO 63012.

78. The disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardized an ongoing investigation and witnesses who have provided information to the agents conducting the same; therefore it is respectfully requested that these materials be filed under seal.

**Exhibit 2-I**

NC 00015286

# ATTACHMENT A

### 1901 Williamstown Drive, St. Peters, MO, 63376



The premises known as the 1901 Williamstown Drive, St. Peters, MO, 63376 is the residence of Avelina C. Bolibol and **CHARLES A. WOLFE II,** is located on the northwest corner of Williamstown Drive and Chance Drive at the entrance of Chadwyck Subdivision, the front of the residence is grey in color and is ¾ brick front and ¼ vinyl siding, the front door and three car garage that face Williamstown Drive with a brick mailbox with the numbers 1901 down the front of it.  The rear of the residence is surrounded by a white vinyl privacy fence.

**Exhibit 2-I**

NC 00015287

# Attachment B

WOLFE d/b/a PSYCHEDELIC BLUR, LLC

WOLFE, BOLIBOL and GRAVER d/b/a DREAM WORLD GLASS, LLC

13761 St. Charles Rock Road, Suite # 118, Bridgeton MO

and

13765 St. Charles Rock Road, Suite # 101, # 102, # 111, # 115, # 116, Bridgeton, MO

PALMER, ANTHONY PALMER, SAMUEL LIENICKE d/b/a PAGGREGATE, LLC,

PALMCORP, LLC and NGURU, LLC

13765 St. Charles Rock Road, Suite # 121, Bridgeton, MO



**Exhibit 2-I**

NC 00015288

### 13761 St. Charles Rock Road, Suite #118 , Bridgeton, MO 63044

The premises known as the 13761 St. Charles Rock Road, Suite 118 , Bridgeton, MO 63044 is more specifically described as an industrial office space located on the north west end of the building located at 13761 St. Rock Road, Suite 118, Bridgeton, MO 63044 with a sign located above the door that reads "Kimco Corporation 118." The entrance to the suite has a new brass lock on the outside of the door.

### 13765 St. Charles Rock Road, Suite #101, Bridgeton, MO 63044

The premises known as the 13765 St. Charles Rock Road, Suite #101, Bridgeton, MO 63044, is more specifically described as an industrial office space behind the first blue door from the south west corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under the numbers "13765" and an empty black sign hanger. Suite #101 can be accessed from the outside of the building through the first exterior blue door on the south west corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.

### 13765 St. Charles Rock Road, Suite #102, Bridgeton, MO 63044

The premises known as the 13765 St. Charles Rock Road, Suite #102, Bridgeton, MO 63044 is more specifically described as an industrial office space behind the second blue door from the south west corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under the numbers "13765." There is no sign hanger above the door. Suite #102 can be accessed from the outside of the building through the second exterior blue door on the south west corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.

**Exhibit 2-I**

NC 00015289

<u>13765 St. Charles Rock Road, Suite #111, Bridgeton, MO 63044</u>

The premises known as the 13765 St. Charles Rock Road, Suite #111, Bridgeton, MO 63044 is more specifically described as an industrial office space behind the second blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under an empty sign hanger and a black surveillance camera located above the door. Suite #111 can be accessed from the outside of the building through the second exterior blue door on the south east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.

<u>13765 St. Charles Rock Road, Suite #115, Bridgeton, MO 63044</u>

The premises known as the 13765 St. Charles Rock Road, Suite #115, Bridgeton, MO 63044 is more specifically described as an industrial office space behind the sixth blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, to the left of a window that has the numbers "115" under an empty black sign hanger. Suite #115 can be accessed from the outside of the building through the seventh exterior blue door on the south east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.

<u>13765 St. Charles Rock Road, Suite #116, Bridgeton, MO 63044</u>

The premises known as the 13765 St. Charles Rock Road, Suite #116, Bridgeton, MO 63044 is more specifically described as an industrial office space behind the seventh blue door from the south east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under a sign a that reads "ATS, Advanced Technical Sales, 116" Suite #116 can be accessed from the outside of the building through the second exterior blue door on the south east corner of

77

**Exhibit 2-I**          **NC 00015290**

the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building

<u>13765 St. Charles Rock Road, Suite #121, Bridgeton, MO 63044</u>

The premises known as the 13765 St. Charles Rock Road, Suite #121, Bridgeton, MO 63044 is more specifically described as an industrial office space behind the blue door from the north east corner of the building located at 13765 St. Charles Rock Road, Bridgeton, MO 63044, under a sign that reads "Fox  Medical Equipment, 121." Suite #121 can be accessed from the outside of the building through the second exterior blue door on the north east corner of the building and an interior door that can be accessed from a hallway that runs north/south throughout the length of the building.

78

**Exhibit 2-I**

NC 00015291

# ATTACHMENT C

**PALMER, ANTHONY PALMER, SAMUEL LIENICKE**

**d/b/a PAGGREGATE, LLC, PALMCORP, LLC and NGURU, LLC**

**4738 Orchard Drive, Barnhart, MO 63012**



The premises known as 4738 Orchard Drive, Barnhart, MO 63012 is more specifically described as the entire premises including, but not limited to, the house and attached garage, the detached garage, and oversized storage building that has three large white garage doors all of which is backed by woods and located behind a chain link and privacy fence located to the west of the intersection of Orchard Drive and Sonaurah Drive off of Old Highway 21 in Barnhart MO.

79

**Exhibit 2-I**

NC 00015292