AO 93  Rev. 11/13) Application for Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

In the Matter of the Search of

Records and information pertaining to the email
account bearing the address of
chuckwolfe61@yahoo.com, hosted by Yahoo!
Inc., located at 701 First Avenue, Sunnyvale,
California 94089.

)
)
)
)
)
)

Case No.  4:14 MJ 7001 SPM

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the ____NORTHERN____ District of ____CALIFORNIA____
*(identify the person or describe the property to be searched and give its location):*

Records and information pertaining to the email account bearing the address of chuckwolfe61@yahoo.com, hosted by
Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California 94089.

I find the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized):*

### See Attachments A and B

**YOU ARE COMMANDED** to execute this warrant on or before ____January 23, 2014____ *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to ____Shirley P. Mensah____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
    ☐ for ____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specified date of _____

Date and time issued:     ____January 10, 2014  9·50 A.M.____                    _____
                                                                                                          *Judge's signature*

City and state:          ____St. Louis, Missouri____          Shirley P. Mensah, United States Magistrate Judge
                                                                                            *Printed name and title*

**Exhibit 5-A**

NC 00014764

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Exhibit 5-A**

NC 00014765

**ATTACHMENT A**

**Property to Be Searched**

62. This warrant applies to any and all information linked to or associated with the Yahoo! e-mail

addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period

January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc.,

stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company

and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

34

**Exhibit 5-A**                    NC 00014766

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Yahoo, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo! Inc., including any e-mails, e-mail attachments, address books, contact or buddy lists, calendar data, pictures, notepad, records, files, logs, or information that have been deleted but are still available to Yahoo! Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Yahoo! Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all e-mail folders and e-mails associated with the account, including their attachments, stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.    A list of all contacts and all contacts information saved in the account, buddy lists, shared calendars saved to the e-mail account or associated to the account,

c.    All communications between chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com and any other party.

d.    All information saved in a cloud account associated with each account or identifier listed in Attachment A within the possession, custody, or control of Yahoo! Inc.

e.    Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

**Exhibit 5-A**

NC 00014767

AO 106 (Rev. 6/09) Application for Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| Records and information pertaining to the email account bearing the address of chuckwolfe61@yahoo.com, hosted by Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California 94089. | ) ) ) ) ) ) | No. 4:14 MJ 7001 SPM |

## APPLICATION FOR A SEARCH WARRANT

I, Robert J. Anderson, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

Records and information pertaining to the email account bearing the address of chuckwolfe61@yahoo.com, hosted by Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California 94089.

located in the __NORTHERN__ District of __CALIFORNIA__, there is now concealed *(identify the person or describe the property to be seized);*

See Attachments A and B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 846, 841(a)(1), and 813 | Conspiracy/Attempt to distribute/Possess with Intent to Distribute Controlled Substances and Analogues of Controlled Substances |
| Title 18, United States Code, Section 1956 | Money Laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. §3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert J. Anderson, Special Agent,
Internal Revenue Service Criminal Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   January 10, 2014

*Judge's Signature*

City and state:   St. Louis, Missouri

Shirley P. Mensah, United States Magistrate Judge
*Printed name and title*

**Exhibit 5-A**

NC 00014768

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

Your affiant, Robert J. Anderson, a Special Agent with Internal Revenue Service Criminal Investigation, being duly sworn, depose and state the following:

1.  I am a Special Agent with Internal Revenue Service Criminal Investigation, (hereafter "IRSCI"), within the Department of Treasury, currently assigned to the Chicago Field Office's Fairview Heights, Illinois Post of Duty. I have been a Special Agent with IRSCI for the last seventeen years. During my tenure with IRSCI I have had the opportunity to lead, conduct, coordinate and participate in investigations concerning tax fraud, health care fraud, financial fraud (i.e. Ponzi Schemes) and money laundering.

2.  I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089. The location to be searched is described below and in Attachment A, attached hereto. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the **"Subject E-mail Addresses/Accounts",** as described below, including the contents of communications. I prepared this affidavit in support of an application for a search warrant because I believe the subject e-mail addresses/accounts contain evidence of violations of Title 21, U.S.C. §§ 813, 841(a)(1) and 846, involving the distribution, and conspiracy to distribute controlled substances, analogues of Schedule I controlled substances, and violations of Title 18, U.S.C. § 1956, money laundering.

3.  During the course of this investigation, several sources of information have been utilized, including but not limited to corporate security records, public records, business records, financial records, state and local law enforcement personnel and their reports of investigation, physical and electronic evidence seized and analyzed through the use of state and federal search warrants. All

1

**Exhibit 5-A**

NC 00014774



the information contained in this affidavit is based on the personal knowledge of your affiant or is

based on information that was communicated to your affiant by agents and other law enforcement

officers assisting in the investigation:

**SUBJECT E-MAIL ADDRESSES/ACCOUNTS:**

4.    Your agents are requesting Yahoo! Inc. disclose to the government records and other information

in its possession pertaining to the subscriber or customer associated with the following e-mail

addresses/accounts: chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period

January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc.

5.    Because this affidavit is being submitted for the limited purpose of securing the requested search

warrant, I have not included each and every fact known to me concerning this investigation.  I

have set forth only those facts that I believe are necessary to establish probable cause for the

requested search warrant.   Where statements of others are set forth in this affidavit, they are set

forth in substance and in part.

**BACKGROUND INFORMATION REGARDING COMPUTERS, THE INTERNET AND E-
MAIL:**

6.    The following definitions apply to this Affidavit and Attachment A to this Affidavit:

    a.    Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an

electronic, magnetic, optical, electrochemical, or other high speed data processing device

performing logical or storage functions, and includes any data storage facility or

communications facility directly related to or operating in conjunction with such device."

    b.    The Internet is a worldwide network of computer systems operated by governmental

entities, corporations, and universities.  In order to access the Internet, an individual

computer user must subscribe to an access provider, which operates a host computer

system with direct access to the Internet.  The World Wide Web ("www") is a

functionality of the Internet which allows users of the Internet to share information.

2

**Exhibit 5-A**

NC 00014775

    c.   With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods.

    d.   Computers connected to the Internet are identified by addresses. Internet addresses take on several forms, including Internet Protocol (IP) addresses, Uniform Resource Locator (URL) addresses, and domain names. Internet addresses are unique and can identify a physical location and a computer connection.

    e.   Electronic mail (or "e-mail") is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

## Yahoo!

7.   Furthermore, based on my experience, training and consultation with IRS-CI S/A John Smith, your Affiant knows the following:

    a.   Yahoo! Inc.., which is physically headquartered at 701 First Avenue, Sunnyvale, California 94089 provides free web-based Internet electronic mail ("e-mail") to the general public, and that stored electronic communications, including opened and unopened e-mail for Yahoo! Mail subscribers may be located on Yahoo!'s computer system.

    b.   Yahoo! Mail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information.

3

**Exhibit 5-A**

NC 00014776

c.  Subscribers to Yahoo! Mail may access their accounts on servers maintained and/or owned by Yahoo! Mail from any computer connected to the Internet located anywhere in the world.

d.  Any e-mail that is sent to a Yahoo! subscriber is stored in the subscriber's "mail box" on Yahoo!'s server until the subscriber deletes it, or until the subscriber's mailbox exceeds Yahoo!'s preset storage limits.  If the message is not deleted by the subscriber, the account is below the storage limit, and the subscriber accesses the account periodically, that message can remain on Yahoo!'s servers indefinitely.

e.  When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo!'s servers, and then transmitted to its end destination.  Yahoo! users have the option of saving a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! server, the e-mail can remain on the system indefinitely.  The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at Yahoo!, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

f.  A Yahoo! subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Yahoo!; and e-mails and image files stored on a Yahoo! server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Yahoo! server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence.  A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo! server.

g.  Computers located at Yahoo, Inc. contain information and other stored electronic communications belonging to hundreds of thousands of third parties unrelated to this

4

**Exhibit 5-A**                    NC 00014777

investigation.   Accordingly, this Affidavit and Application for Search Warrant seek authorization solely to search the computer accounts and/or files set forth in Attachment A.

## LOCATIONS TO BE SEARCHED:

8.   The Yahoo! Mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com, for the time period January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc., maintained by Yahoo! Inc. through its computer systems.  These locations are more fully described in "**Attachment A**," attached hereto.

## ITEMS TO BE SEIZED

9.   The items to be seized at the location to be searched are listed in "**Attachment B**" attached hereto.

## APPLICABLE LAW ON JURISDICTION

10.  This court has authority to issue a search warrant for the records sought by this affidavit even though these records are kept in another District, pursuant to Title 18, United States Code, § 2703 because, it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States that - has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(I).

11.  YAHOO! is an "electronic communications service."

12.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## FACTS SUPPORTING THIS AFFIDAVIT

13.  On August 9, 2013, pursuant to Title 18 U.S.C § 2703 (f), your affiant faxed a Preservation Letter to Yahoo! Inc. for chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com.

14.  On October 21, 2013, pursuant to Title 18 U.S.C § 2703 (f), your affiant faxed a second Preservation Letter to Yahoo! Inc. for chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com.

## FEDERAL STATUTES

5

**Exhibit 5-A**

NC 00014778

15. **CONTROLLED SUBSTANCES**: A person is in violation of Title 21 U.S.C. § 841, if that person knowingly or intentionally manufactures, distributes, or dispenses, or possesses with intent to manufacture, distribute, or dispense, a controlled substance; or creates, distributes, or dispenses, or possesses with intent to distribute or dispense, a counterfeit substance.

16. **ANALOGUE CONTROLLED SUBSTANCES ACT**: Under Title 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

17. **DEFINITION OF CONTROLLED SUBSTANCE ANALOGUE**: Title 21, U.S.C. § 802(32)(A) defines a "controlled substance analogue" as a substance:

   a. The chemical compound of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II; and

   b. Which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effects on the central nervous system of a controlled substance in Schedule I or II.

18. **MONEY LAUNDERING**:  A person is in violation of Title 18, U.S.C. § 1956 if the person, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity; or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

## CONTROLLED SUBSTANCE ANALOGUES

19. I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products, many times known on the street as "Spice" or "K2."  Smokable synthetic cannabinoid products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound

**Exhibit 5-A**

NC 00014779

chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana. Currently, there are hundreds of synthetic cannabinoid compounds. The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011. In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws. Smokable synthetic cannabinoid products are commonly purchased in head shops, tobacco shops, convenience stores, adult stores and over the Internet. They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." These markings are routinely in place in an attempt to fraudulent circumvent the product being identified as a controlled substance analogue. Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

20. Through experience I know that individuals, in an attempt to circumvent laws in place which make the possession and distribution of certain synthetic drugs illegal, seek out and purchase or produce substances which have a similar but slightly different chemical structure. These substances will produce the same pharmacological effect on the human body when ingested. In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986.

21. Through research, training and experience, I know that the synthetic cannabinoid 1-pentyl-3-(1-naphthoyl)indole (JWH-018) is a schedule I controlled substance, and that until July 2012 the synthetic cannabinoids: 1-Pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250), 1-Pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122) and 1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201) met the definition of controlled substance analogues when intended for human consumption. On July 9, 2012, these substance, JWH-018, JWH-250, JWH-122, AM2201 became permanently scheduled as control substances pursuant to the Synthetic Drug Abuse Act of 2012 (herein

7

**Exhibit 5-A**

NC 00014780

"SDAPA").  SDAPA amended the Controlled Substance Act (herein "CSA") by legislatively

placing "cannabimimetic agents" and 26 substances in Schedule I.  I know these substances to be

considered hallucinogens and further affect the human body in a similar way to THC, the active

hallucinogen found in the organic drug marijuana.

22. On May 16, 2013, the Deputy Administrator of DEA issued a final order to temporarily schedule

three synthetic cannabinoids under the Controlled Substances Act (CSA) pursuant to the

temporary scheduling provisions of Title 21, U.S.C. § 811(h). The substances are (1-pentyl-1H-

indol-3-yl)(2,2,3,3- tetramethylcyclopropyl)methanone (UR-144), [1-(5-fluoro-pentyl)-1H- indol-

3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (5-fluoro-UR-144, XLR11) and N-(1-

adamantyl)-1-pentyl-1H-indazole-3-carboxamide (APINACA, AKB48). This action is based on a

finding by the Deputy Administrator that the placement of these synthetic cannabinoids and their

salts, isomers and salts of isomers into Schedule I of the CSA is necessary to avoid an imminent

hazard to the public safety.

23. According to the DEA Office of Diversion Control, Drug and Chemical Evaluation Section,

various synthetic cannabinoids (e.g., JWH-018, etc.) laced on plant material have been

encountered by law enforcement in recent years. These are promoted under the guise of herbal

incense products. These products laced with synthetic cannabinoids are smoked for their

psychoactive effects. In response to State and Federal control of these synthetic cannabinoids, a

transition to new synthetic cannabinoids laced on plant material has been observed.  AKB48, 5F-

AKB48 and XLR -11 are three of the many synthetic cannabinoids recently encountered on the

designer drug market.

24. AKB48 and 5F-AKB48 also known as **AKB48 N-(5-fluoropentyl)** also known by the chemical

name:  N-(adamant-1-yl)-1-(5-fluropentyl)-1H-indazole-3-carboxamide) belong to a structural

class with a core indazole structure. They are structurally related to other synthetic cannabinoids

with a core indole structure, such as the Schedule I substances JWH-018 and AM2201. These

core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to

8

**Exhibit 5-A**

NC 00014781

give rise to these substances. AKB48 and 5F-AKB48 were not previously reported in the

scientific literature prior to their appearance on the designer drug market. AKB48 is

pharmacologically similar to Schedule I substances THC and various synthetic cannabinoids

(e.g., JWH-018, AM2201 etc.). In vitro studies show that AKB48, similar to Δ9-THC and various

synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist

properties in functional assays, suggesting that it would have the same in vivo effects as Δ9-THC

and various synthetic cannabinoids. The binding affinity of AKB48 is higher than that of Δ9-

THC. Based on structure-activity relationship studies, 5F-AKB48 is expected to bind to CB1

receptors as well. There are no published studies as to the safety of AKB48 or 5F-AKB48 for

human use. AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior

to their appearance on the designer drug market. There are no commercial or medical uses for

these substances. Information on user population in the U.S. is limited, and includes information

from drug user internet forums. AKB48 and 5F-AKB48 abuse is not monitored by any national

drug abuse surveys. Poison control centers continue to report adverse health effects in response to

the abuse of herbal incense products and this abuse is both a public health and safety concern.

AKB48 is a schedule I controlled substances under the Federal Controlled Substances Act. If

intended for human consumption, 5F-AKB48 may be treated as a "controlled substance

analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813.

25. XLR11 (also known as 5F-UR144 also known by the chemical name [1-(5-fluoropentyl)-1*H*-

indol-3-yl](2,2,3,3- tetramethylcyclo-propyl)methanone), JWH-018, and AM2201 belong to a

structural class of substances sharing a core indole structure. This core structure (scaffold) is

substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances.

Behavioral pharmacology studies show that 5F-UR144 and XLR11, similar to JWH-018, have

Δ9-THC-like activity in animals. In mice, these substances decrease overall activity, produce

analgesia, decreases body temperature, and produce catalepsy. Together, these four effects are

used by scientists to predict Δ9-THC-like psychoactivity in humans. In drug discrimination

**Exhibit 5-A**

NC 00014782

studies in mice, 5F-UR144 and XLR11 generalized to Δ9-THC similarly to JWH-018, i.e.

produced subjective effects similar to those of Δ9-THC. *In vitro* studies show that 5F-UR144 and

XLR11 bind to the brain cannabinoid receptor (CB1 receptor) similarly to JWH- 018 and

AM2201. There are no published studies as to the safety of 5F-UR144 or XLR11 for human use.

XLR11 was not previously reported prior to encountering on the designer drug market. There are

no commercial or medical uses for these substances.  Information on user population in the U.S.

is limited, and includes information from drug user internet forums. 5F-UR144 and XLR11 abuse

is not monitored by any national drug abuse surveys. Poison control centers continue to report

adverse health effects in response to the abuse of herbal incense products and this abuse is both a

public health and safety concern.  XLR11 is a schedule I controlled substances under the Federal

Controlled Substances Act.

26. During this investigation, your agents and members of the investigative team were confronted

with a new synthetic cannabinoid, AB-FUBINACA.  Although AB-FUBINACA does not appear

in Schedule I, your agents, through their research have determined that both AB-PINACA and

AB-FUBINACA are cannabimimetic indazole-derivatives.  These substances were identified as

designer drugs in illegal products in Japan.  According to the articles that discusses the discovery

of the substances (Forensic Toxicol (2013) 31:93–100), the samples used for analysis were three

products purchased via the Internet in July 2012 in Japan; one as a chemical and two as herbal

products.  Each of the herbal products (A and B) contained about 3g of mixed dried plants.  The

AB-FUBINACA was extracted and isolated out of the 3 gram sample of the herbal product B.

According to Wikipedia, AB-FUBINACA is a drug that acts as a potent agonist for the

cannabinoid receptors and was originally developed by Pfizer in 2009 as an analgesic medication

but was never pursued for human use.  Subsequently in 2012, AB-FUBINACA was discovered as

an ingredient in synthetic cannabis blends in Japan, along with a related compound AB-PINACA.

(Even if this new substance is not determined to be a controlled substance analogue,

**Exhibit 5-A**                    NC 00014783

manufacturing and distribution of this substance intended for human consumption without proper labeling is in violation of 21 U.S.C § 331.)

**OVERVIEW OF THE INVESTIGATION**

27. I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation with Internal Revenue Service Criminal Investigation, Drug Enforcement Administration, Federal Bureau of Investigation, United States Postal Inspection Service, Illinois States Attorney's Office, Effingham Police Department, St. Charles County Sherriff's Office and the United States Attorney's Office concerning **MICHAEL J. LENTSCH Jr.** (hereinafter "**LENTSCH**"), **ANWER N. RAO** (hereinafter "**RAO**") and **GREGORY SLOAN** (hereinafter "**SLOAN**") for manufacturing, marketing and distributing "synthetic herbal incense" in the Eastern District of Missouri, the Southern District of Illinois and elsewhere. **LENTSCH** and **RAO** d/b/a **OPM Midwest, Inc.** and **TS Botanical, Inc**. manufactured and marketed their synthetic herbal incense under the brand name "**CLOUD 9**"through store fronts called "**Tha Grind**" which were located within the Southern District of Illinois and Eastern District of Missouri. They also marketed their synthetics through the internet as a product which was legal for sale. **LENTSCH** and **RAO** provided their customers with laboratory reports that gave the appearance that the product they were selling was in compliance with federal and state law. In addition, **LENTSCH** and **RAO** attempted to circumvent the Controlled Substance Analogue Enforcement Act of 1986 by placing the phrase "not for human consumption" on the rear of each package.

28. **SLOAN** marketed and distributed the synthetic herbal incense that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9**"; along with other synthetic herbal incense blends through a wholesale and retail distribution network know as **NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC** .

29. The government expanded the investigation to include some of the individuals that continued to distribute "**CLOUD 9**" along with other synthetic herbal incense blends at the wholesale and

11

**Exhibit 5-A**

NC 00014784

retail level after the execution of a number of search warrants at the residences and business locations owned and or controlled by **RAO, LENTSCH** and **SLOAN** in July 2012. One of these individuals is **CHARLES A WOLFE II** (herein "**WOLFE**") **d/b/a PSYCHEDELIC BLUR, LLC.** From 2011 through at least August 2012, **WOLFE** was assisted by his brother and business partner **ROBERT WOLFE.**

## DETAILS OF THE INVESTIGATION

### CHARLES A WOLFE II d/b/a PSYCHEDELIC BLUR, LLC

30. Based on database searches, surveillance, trash pulls, and Ameren UE company records, your agents know that **WOLFE** resides at the residence located at 1901 Williamstown Drive, St. Peters, MO 63376, Missouri. **WOLFE** lists the address 1901 Williamstown Drive, St. Peters, MO 63376 as his residence on his Missouri Non-Driver's License Identification. **WOLFE** is registered as the Managing Member of **PSYCHEDELIC BLUR, LLC.** According to records on file at the Florida Secretary of State, **PSYCHEDELIC BLUR, LLC** is a company with a principal place of business as 611 S. Fort Harrison Avenue, Suite #104, Clearwater, FL 33756. WOLFE as Managing Member lists his address as 3477 Nameoki Road, Suite 165, Granite City, Illinois 62040. The registered agent of **PSYCHEDELIC BLUR, LLC** is Tim M. Dandar, Esquire, 2240 Belleair Road, Suite 190, Clearwater, Florida 33764. Your agents researched the **PSYCHEDELIC BLUR, LLC's** principal place of business and determined that the address is a UPS Store, specifically UPS Store #4344 located at 611 S. Fort Harrison Avenue, Suite #104, Clearwater, FL 33756. Your agents obtained a copy of the United States Postal Service Application for Delivery of Mail Through Agent, Form 1583 (hereafter "Form 1583"), in reference to the address dated November 16, 2011 and determined the following: **WOLFE** advised that the name in which the applicants mail will be received for delivery to the agent was **CHUCK WOLFE. WOLFE** advised that his home address was "3477 Nameoki Road #165, Granite City, OH 62040." **WOLFE** provided a Missouri Non Driver's License #K035325011 that listed his address as 350 S. St. Charles Street, Florissant, MO and an AAA card

12

**Exhibit 5-A**

NC 00014785

#4293658756702763 in the name of **CHUCK WOLFE** as forms of identification.  In addition, **WOLFE** provided the e-mail address psychedelicblurr@gmail.com.

31. Your agents researched the address **WOLFE** provided to the UPS Store #4344 as his home address and determined that the address was a UPS Store, specifically UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040.  Your agents obtained a copy of the Form 1583 in reference to the address 3477 Nameoki Road #165, Granite City, IL 62040 dated September 8, 2011 and determined the following: **WOLFE** reported that the name in which the applicant's mail will be received for delivery to the agent was **CHUCK WOLFE**.  **WOLFE** reported that his home address was 1901 Williamstown Drive, O`Fallon MO 63376.  His telephone number was 314.761.3311 and the name of his business was 4G Central.

32. UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040, was used by **SLOAN** and individuals known to your agents to be involved in the operation of **NEB Distributing, LLC** and **Silver Rocket Distributing, LLC** in distributing the synthetic herbal incense that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9.**"  These individuals included, among others, **SLOAN** himself (Box #171) with an office address as **NEB Distributing,** 5529 Dial Drive, Granite City, IL 62040.

33. In July 2012, your agents participated in search warrants issued in St. Charles County, Missouri in reference to **SLOAN d/b/a NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC.**  From the records obtained and examined, your agents determined that from on or about November 2010 through July 2012, **WOLFE,** doing business in his own name and the name **PSYCHEDELIC BLUR, LLC,** purchased and redistributed approximately **$2,700,000.00** of synthetic herbal incense blends from **NEB Distributing, LLC.**  The vast majority of the synthetic herbal blends **WOLFE d/b/a PSYCHEDELIC BLUR, LLC** purchased, sold, and distributed from **SLOAN d/b/a NEB Distributing, LLC** originated from **RAO and LENTSCH d/b/a TS Botanicals, Inc.**  From on or about May 2011 through July 2012, **RAO** and **LENTSCH, d/b/a OPM Midwest, Inc. and TS Botanical, Inc.,** retained the services of AI

13

**Exhibit 5-A**                    NC 00014786

Biotech located in Richmond, VA to perform an analysis of their synthetic herbal blends for the presence of synthetic cannabinoids.

34. According to the lab reports prepared and produced to **RAO** and **LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** in 2011, **RAO** and **LENTSCH** knew that their synthetic herbal blends contained one or more of the following substances: **AM 2201, JWH-250,** and **URB 754.**

35. According to the lab reports prepared and produced by AI Biotech to **RAO** and **LENTSCH d/b/a OPM Midwest, Inc**. and TS Botanical, Inc. in 2012, **RAO** and **LENTSCH** knew that their synthetic herbal blends contained one or more of the following substances: **4MAM-2201, URB 754, α-PVP, AM-2201, UR 144,** and **5MeO-Dalt**.

36. In December 2012, your agents obtained search warrants issued in the Eastern District of Missouri for the e-mail accounts known to be used by **RAO, LENTSCH, SLOAN,** and others associated with the investigation.  According to the e-mails produced by the electronic communications service companies and e-mail providers, your agents determined that **RAO** and **LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** regularly provided a copy of these same AI Biotech lab reports addressed to **SLOAN** and **WOLFE** as they became available.

37. During your affiant's review of the evidence produced as a of result search warrants issued in the Eastern District of Missouri for the e-mail accounts known to be used by **RAO, LENTSCH, SLOAN,** and others associated with the investigation in December 2012, your affiant determined **WOLFE** utilized the e-mail address chuckwolfe61@yahoo.com and **ROBERT WOLFE** utilized the e-mail address rkwolfe1971@yahoo.com.  In addition, your affiant determined **SLOAN** and **WOLFE** actively followed changes in federal, state, and local legislation in an effort to circumvent the changes in the law as it pertained to the use and scheduling of synthetic cannabinoids.  For example, on or about June 22, 2011, **SLOAN** sent an e-mail to **WOLFE** with the subject line "Illinois ban."  In the e-mail, **SLOAN** advised "no changes on this thing to us. 2201 still legal and this was the latest legislation 05-28-2011."  Later that same day, **SLOAN** e-

**Exhibit 5-A**

NC 00014787

mailed **WOLFE** the link to the Illinois General Assembly Web Site and the status of HB 3042. According to the synopsis contained in the link, the bill (HB 3042) amended the Illinois Controlled Substances Act, adding 3 synthetic cannabinoids to the list of Schedule I substances, effective 07/22/2011.

38. Through the examination of these e-mails your agents determined that **SLOAN** and **WOLFE** also monitored law enforcement's efforts to combat the illegal synthetic drug industry. For example, on August 21, 2011, **WOLFE** forwarded an article that appeared in the Northwest Arkansas News with the headline that read "Man Arrested After Officers Raid Fayetteville Business." The article states that the man was arrested on a drug charge after officers served search warrants on two Fayetteville businesses allegedly selling K2, or synthetic marijuana.

39. In addition, **WOLFE** and **ROBERT WOLFE** used these e-mail addresses to accept orders of the different synthetic drugs they were distributing throughout the conspiracy, to order synthetic drugs products from their suppliers in order to fill orders for their customers, and to communicate with other members of the conspiracy.

**Financial records of WOLFE and PSYCHEDELIC BLUR, LLC**

40. Your agents obtained and analyzed records associated with **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account ******333741. The business contact phone number is 727-272-2649 and contact e-mail address is chuckwolfe61@yahoo.com. Bank of America classified **PSYCHEDELIC BLUR LLC's** business under wholesale.

41. The investigative team reviewed and analyzed **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account ******333741 for the period March 13, 2012 through May 15, 2013 and prepared the following analysis to report the activity in the account:

    a. For the period of March 13, 2012 through May 15, 2013, WOLFE had total deposits and credits of **$3,475,781.07**. For the period prior March 13, 2012 to July 2, 2012, the period of time **WOLFE** was purchasing product from **SLOAN d/b/a NEB Distributing,**

15

**Exhibit 5-A**          NC 00014788

WOLFE had deposits/credits totaling **$1,402,943.60** and checks/debits totaling **$1,319,279.17**.

b. For the period July 17, 2012 through May 14, 2013, **WOLFE** had total deposits/credits totaling **$2,072,837.47**. For that same period, **WOLFE** had total checks/debits totaling **$2,137,695.01**.

**Search warrants involving WOLFE**

42. In July 2012, search warrants were executed at the offices, warehouses, and residence of **WOLFE's** supplier, business associate, and friend, **SLOAN d/b/a NEB DISTRIBUTING LLC.** In May 2013, agents with a seizure warrant issued in the Western District of Tennessee seized $170,000.00 from the business accounts **WOLFE** controlled at Bank of America.

43. In addition to the above, DEA agents working in conjunction and cooperation with your agents provided the following in reference to businesses they have identified, through cooperating individuals and undercover purchases, as retail distributors of synthetic narcotics:

a. In approximately October of 2012, the Drug Enforcement Administration (DEA), St. Louis Division, began conducting an investigation related to a conspiracy to distribute controlled substance analogues in violation of Title 21, U.S.C. § § 813, 841 and 846, by **SMOKE SENSATIONS and SOUTH 94, PAM TABATT (hereafter referred to as TABATT), PAUL W. BERRA JR.** (hereto referred to as **BERRA JR.**), and **RICHARD GROSS** (hereto referred to as **Gross**). Through the course of the investigation to date, investigators have determined from a minimum date of October 2012 and continuing through present, **TABATT, BERRA JR., and GROSS** have been involved in a conspiracy to distribute Schedule 1 controlled substances and analogues of Schedule I controlled substances through **SMOKE SENSATION, SOUTH 94, and STRICTLY WHOLESALE**

b. Your agents obtained the telephone tolls for numbers known to be used by the **SOUTH 94 BAIT AND TACKLE STORE, KAREN TIMMERMEIER, SHAUN BRUNO** and

16

**Exhibit 5-A**

NC 00014789

WOLFE for the period of time September 2012 through July 2013 and conducted an analysis. Based on that analysis, except for a period of time beginning on or about October 25, 2012 through February 26, 2013, **WOLFE** talks with someone from the **SOUTH 94 BAIT AND TACKLE** a couple times a week and talks with **KAREN TIMMERMEIER** almost on a weekly basis. **KAREN TIMMERMEIER** is **TABATT's** sister and is employed by the **SMOKE SENSATIONS** and **SOUTH 94 BAIT AND TACKLE STORE.**

c.  According to the bank analysis conducted by Leonard Lupa, DEA Financial Investigator, activity for **SMOKE SENSATIONS'** Fifth Third Bank account #******8233 and **SOUTH 94 BAIT & TACKLE** Fifth Third Bank Account #******0866, from March 2012 through April 2013, shows approximately 154 checks were written payable to 'PSYCHEDELIC' for a total of **$1,160,096.70.** Due to the lack of bank records currently available at the time of this affidavit, your agents have not been able to trace the disposition of all the checks written from **SMOKE SENSATIONS AND SOUTH 94 BAIT & TACKLE** accounts to PSYCHEDELIC'. However, your agents have traced 37 of the 154 checks written payable to '**PSYCHEDELIC'** as being deposited into **PSYCHEDELIC BLUR LLC's** Bank of America account # ******333741.

d.  Deposit items into the **PSYCHEDELIC BLUR LLC's** Bank of America account ******333741 show that from September 10, 2012 through April 10, 2013, a total of 23 checks from **SMOKE SENSATIONS** Fifth Third Bank account #******8233. The total value of the 23 checks was $236,619.

e.  Deposit items into the **PSYCHEDELIC BLUR LLC's** account ******333741 show that from September 10, 2012 through April 10, 2013, a total of 14 checks from **SOUTH 94 BAIT & TACKLE** Fifth Third Bank account #******0866. The total value of the 14 checks was $47,673.50.

17

**Exhibit 5-A**

NC 00014790

**TRASH RUNS**

44. Based on evidence developed during the **SLOAN** investigation and observation of the blue Ford Transit Cargo Van (MO License Plate # 5AN573 registered to Dream World Glass, LLC at 13765 St. Charles Rock Road, Bridgeton MO) in front of **WOLFE's** residence located at 1901 Williamstown Drive, St. Peters, MO, your agents began conducting drive bys and surveillance at the buildings located at 13761 & 13765 St. Charles Rock Road, Bridgeton, MO 63044. Based on these drive bys and surveillance, agents learned **WOLFE, ROBERT WOLFE** and **DEAN GRAVER** (herein "**GRAVER**") were operating their business out of suites in the buildings located at that address. **GRAVER** is **WOLFE's** brother-in-law. **GRAVER** and **WOLFE's** wife (Avelina C. Bolibol) formed **DREAM WORLD GLASS, LLC.** According to records on file at the Florida Secretary of State, the effective date for **DREAM WORLD GLASS, LLC** is October 9, 2012. **DREAM WORLD GLASS, LLC** is a company with a principal place of business at 611 S. Fort Harrison Avenue, Suite #212, Clearwater, FL 3375. **GRAVER** used the address of 2024 Ridgedale Drive, Highridge, MO 63049. Avelina C. Bolibol used the address of 3477 Nameoki Road, Suite 165, Granite City, Illinois 62040. The address Bolibol used is the same addresses **WOLFE** used for **PSYCHEDELIC BLUR, LLC's.** The registered agent for **DREAMWORD GLASS, LLC** is the same registered agent **WOLFE** used for **PSYCHEDELIC BLUR, LLC.**

45. From on or about April 2013 to September 8, 2013, your agents conducting trash runs at the trash dumpsters located at the southeast corner of the building located at **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and the northwest corner of the building located at **13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO.** Based on evidence collected from the two dumpsters and surveillance of the subjects on site, your agents determined that both dumpsters are used by **WOLFE, GRAVER, PALMER** and their associates indiscriminately. In fact, on occasion, **WOLFE, GRAVER, and PALMER** brought the trash from their house to

18

**Exhibit 5-A**

NC 00014791

**13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and disposed of it there.  The following is a summary of some of the evidence collected from those trash runs as they relate to **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO:**

| Item # | Date of Trash Run | Location | Description of Evidence |
|---|---|---|---|
| 1 | 05/28/2013 | Dumpster located at north west end of 13765 | A zip lock plastic bag filled with 69, 5g packages of Avalon, Novelty Item, Lab Certified.  A sample was analyzed by St Louis County Crime Lab and found to contain XLR-11. |
| 2 | 06/09/2013 | Dumpster located at north west end of 13765 | FedEx Standard overnight envelopes addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Hobies in Milford, CT, BS Unlimited in Oklahoma City, OK, Rex @ Mojo Distributing, Gold River, CA, Fast Stop in Greenville, MS. |
| 3 | 06/09/2013 | Dumpster located at north west end of 13765 | An envelope addressed to **PAGGREGATE**, 2025 Zumbehl Road, PO Box 192 St. Charles, MO with a UPS Store #241 tag.   The tag indicates and the customer's name that is on the box is Mark Palmer. |
| 4 | 06/21/2013 | Dumpster located at north west end of 13765 | A piece of notebook paper with the following items listed: 21 Freedom 1g, 1 Freedom 3g, 1 Freedom 10g, 2 Lights Out 10g, 49 Devil's Dank 10g |
| 5 | 06/21/2013 | Dumpster located at north west end of 13765 | A foil bag with the name Grave Digger 6g, Novelty Item on the front with the water mark "The Outer Edge Genuine" across the package. |
| 6 | 06/21/2013 | Dumpster located at north west end of 13765 | Several Bizarro Incense labels in 3.5g sizes in the following flavors: Lime, Strawberry.  A |

**Exhibit 5-A**

NC 00014792

| | | | label for a product called "Bang! Powder" |
|---|---|---|---|
| | | | |
| 7 | 07/07/2013 | Dumpster located at south end of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend that indicates the sample "Mad Hatter" was found to contain: **PB-22 and 5F PB-22** |
| 8 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend dated February 26, 2013 that indicates the sample "Mad Hatter" does not contain the following cannabinoid classes: Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthylmethylindenes, Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substance many of which are Schedule I controlled substances or are controlled substance analogue. |
| 9 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Avalon 5G Herbal Blend that indicates the sample "Mad Hatter" was found to contain: **PB-22 and 5F PB-22** |
| 10 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Golden Leaf 3g dated February 26, 2013 that indicates the sample "Golden Leaf" does not contain the following cannabinoid classes: Napthoylindoles, Napthylmethylindoles, Naphthoylpyrroles, Naphthylmethylindenes, Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substances many of which are Schedule 1 controlled substance or are a controlled substance analogues. |
| 11 | 07/07/2013 | Dumpster located at north end of 13761 | A printed copy of an e-mail message chain dated 2/5/2013 from Cindy houseofbliss@hushmail.com to **MARK** |

20

**Exhibit 5-A**

NC 00014793

| | | | |
|---|---|---|---|
| | | | paggregate@hushmail.com that included an e-mail for an order dated January 21, 2013 for 1,000 1g Devil's Dank $4,500.00 shipping of $30.00 for a total of $4,530.00. |
| 12 | 07/07/2013 | Dumpster located at north end of 13761 | Several handwritten invoices dated February 2013 through June 2013 addressed to Chuck, MU Fan, Mr. MU Fan, Smokers Choice, Hobies, Smoke and Tackle, Rex, BFU and MoJo for the following items including but not limited to: NT 10 = Night Train 10G, NT 4 = Night Train 4G, BA 4 = Black Arts 4G, LO 4 = Lights Out 4G, LO 10 =Lights Out 10G, BA 10 = Black Arts 10 G) |
| 13 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated May 1, 2013 and July 3, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Jason @ Hobies, Milford, CT 06461. |
| 14 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated April 26, 2013, May 13, 2013 and May 16, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 818.349.8605 Jeff @ Air Time, Chatsworth CA 91311. |
| 15 | 07/07/2013 | Dumpster located at south end of 13761 | Three FedEx Standard overnight envelopes dated April 29, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Lee @ Life Styles, Waterbury, CT 06704. |
| 16 | 07/07/2013 | Dumpster located at south end of 13761 | A FedEx Standard overnight envelope dated May 15, 2013, addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Charles, Up In Flamz, Baltimore, MD 21222. |
| 17 | 07/07/2013 | Dumpster located at north end of 13761 | Printed Bizarro Lime 3.5 G Incense Labels |

21

**Exhibit 5-A**

NC 00014794

| 18 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from IMPACK Corp. in Los Angeles, CA 90061, dated 4/25/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 Attn: Mark for **20, 000** 3.5" x 5.5" Custom printed Bunker Buster 5g Pouches, **22,700** 3.5" x 5.5" Custom printed Golden Leaf 3g Pouches, and **21, 500** 3.5" x 5.5" Custom printed Vortex 4g Pouches marked paid 4/25/2013. |
| --- | --- | --- | --- |
| 19 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from StockBagDepot in Chino, CA 91710, dated 2/07/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 for 8,000 1 oz poly/foil stand up pouches that are clear and silver. |
| 20 | 07/07/2013 | Dumpster located at north end of 13761 | Several pieces of notebook paper that list inventory of items in different totes/boxes: (i.e. 1,050 NT 10 =1050 Night Train 10G, 1,000 NT 4 = 1000 Night Train 4G, 400 BA 4 =400 Black Arts 4G, 700 LO 4 = 700 Lights Out 4G, 1250 LO 10 =1,250 Lights Out 10G, 850 BA 10 = 850 Black Arts 10 G) |
| 21 | 07/07/2013 | Dumpster located at north end of 13761 | A printed Quickbook Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 2/12/2013 addressed to MoJo for 5,000 LO 1 @ $3.00 = $15,000.00, 1,500 LO 4 @ 8 = $12,000.00, 500 NT 4 @ 8.00 = $4,000.00 Shipping $200.00 for a total of $31,200.00 |
| 22 | 07/07/2013 | Dumpster located at north end of 13761 | A printed QuickBooks Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 6/11/2013 addressed to MoJo for 5,000 GL 3 @ $5.00 = $25,000.00, 3,300 LO 1 @ $3.00 = $9,900.00, 2500 LO 4 @ 7.00 = $17,500.00 for a total of |

**Exhibit 5-A**

NC 00014795

| | | | |
|---|---|---|---|
| | | | $52,400.00 |
| 23 | 07/07/2013 | Dumpster located at south end of 13761 | Copies of the front of 69 checks dated 4/2013 through 6/2013 from :24-7 Food Mart, Airtime Distribution, Area 51 Gifts and Novelties, East Gore Discount #2, Fast Stop, Fox Conn Enterprises, Inc., Grey Industries, Hobies, Johrri Enterprises, Inc., Last Place on Earth, Lifestyles, LLC, M & J Food Stores, Inc., Mojo Distribution, Prime Time Retail, LLC, **PSYCHEDELIC BLUR, LLC**, Puff N Stuff, Raja Nawaz **Smoke Sensations dba Nights of Rave, LLC**, **South 94 Bait & Tackle Trading Post**, The Den, Tidwell Corporation, Up In Flamez, and Whatever, Inc.  These checks were addressed to **PAGGREGATE, LLC** and **PALM CORP** for items described in the memo section as "Inventory, Merchandise and Products that total **$928,369.00** |
| 24 | 08/01/2013 | Dumpster located at south end of 13761 | 1 Night Train Herbal Blend label |
| 25 | 08/01/2013 | Dumpster located at south end of 13761 | 1 empty foil package labeled Black Arts 10g |
| 26 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon denatured alcohol can with white residue around the mouth of the can.  A sample of the residue was analyzed by St Louis County Crime Lab found to contain **AB-FUBINACA**. |
| 27 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with white residue around the mouth of the can.  A sample of the residue was analyzed by St Louis County Crime Lab and found to contain **AB-FUBINACA**. |
| 28 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with loose vegetation stuck to the top of the can |
| 29 | 08/01/2013 | Dumpster located at south end of 13761 | Approximately 10grams of loose vegetation material to include vegetation stuck to several round 1.5g weight label stickers used to state |

**Exhibit 5-A**

NC 00014796

| | | | |
|---|---|---|---|
| | | | content weight on retail products. A sample of the residue was analyzed by St Louis County Crime Lab and found to contain **AB-FUBINACA** and **5-FLUORO PB-22.** According to DEA's website dated June 2013, **5-FLUORO PB-22** has been found laced on plant material and marked under the guise of herbal incense products. It belongs to the same structural call of substances as JWH 018 and AM-2201. There are no commercial or medical uses for this substance. Although **5-FLUORO PB-22** is not currently scheduled, if intended for human consumption, **5-FLUORO PB-22** may be treated as a controlled substance analogue in Schedule 1. |
| 30 | 08/01/2013 | Dumpster located at south end of 13761 | One cotton towel wet and soiled with apparent chemical residue by odor. A sample of the cotton towel was analyzed by St Louis County Crime Lab Residue and found to contain **5-FLUORO PB-22.** |
| 31 | 08/01/2013 | Dumpster located at south end of 13761 | 1 woven white bag approximately 24" x 36" with vegetation residue. |
| 32 | 08/01/2013 | Dumpster located at south end of 13761 | A cotton towel with a chemical residue. |
| 33 | 08/01/2013 | Dumpster located at south end of 13761 | 21 used plastic gloves with residue on them. |
| 34 | 08/01/2013 | Dumpster located at south end of 13761 | 3 used breathing masks |
| 35 | 09/08/2013 | Dumpster located at south end of 13761 | Seven (7) packets of synthetic marijuana products packaged for retail sale to include two (2) Night Train 4g, two (2) Mega Kush 4g, one Mega Kush 1.5g, one (1) Dirty Dirt Devil 4g, and one (1) Black Arts 10g. A sample of each blend was analyzed by St Louis County Crime Lab and found to contain one of the following or a combination of the following: **AB-FUBINACA and 5-FLUORO PB-22** |
| 36 | 09/08/2013 | Dumpster located at | Four (4) discarded notes on remnants or scraps |

**Exhibit 5-A**

NC 00014797

| | | north west end of 13765 | of white lined paper that read; DDD 300-10 300-4; 300 MH 10 and on back a table reading 50 60 6, 400 BuBu 1.5, , 50 BuBu 10, 100 St 1.5, 200 MK 1.5, 100 DD 4, 100 DD 1, (illegible) UX 4, 50 CiMO (cutoff); and 2000 LO 4 |
|---|---|---|---|

46. In regards to items #4, #5, #6, #7, #8, #9, #10, #11, #12, #17, #18, #19, #20, #21, #23, #24, #25, #26, #27, #28, #29, #30, #31, #33, #34, #35, #36 listed in the chart of trash runs above, your agents know through their investigation that these items are commonly used by individuals involved in the manufacturing, sale and distribution of synthetic marijuana.

47. In regards to Item #12 listed in the chart of trash runs above, your agents have compared these invoices and the notes contained on these invoices to the checks drafted out of **WOLFE's PSYCHEDELIC BLUR** Bank of America account ******333741 and determined that from on or about August 2012 through June 10, 2013, **WOLFE** listed as "Chuck, MU Fan, Mr. MU Fan" on PALMER'S invoices has been purchasing numerous blends of synthetic marijuana from **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC.**

48. In regards to Item #23 listed in the chart of trash runs above your agents have compared these checks against the invoices listed in item #20 and determined that for the period 4/2013 through 6/2013 **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC** has sold over **$900,000.00** in synthetic marijuana over the same period of time.

**TRAFFIC STOPS**

49. On September 17, 2013, a Missouri State Highway Patrol officer seized (50) 4 gram packets of "Lights Out," (96) 4 gram packets of "Grave Digger," (25) 5 gram packets of "Darkness" and (1) 4 gram packet of "Night Train" following a traffic stop of **JOHN GALVIN** at mile marker 91 on Interstate 44 in Missouri. **GALVIN** was driving a dark blue 2003 Chrysler Town and Country minivan with MO License Plate FJ2K1V. This vehicle has been observed by law enforcement

**Exhibit 5-A**

NC 00014798

agents in front of the office suites located at 13765 St. Charles Rock Road (locations C through H). Additionally, this vehicle has been observed making deliveries to the Smoke Sensation Nights of Rave store, located at 10532 Page Ave., Overland, MO. After waiving his Miranda rights GALVIN stated that he had been working for **WOLFE** for approximately 1 an one half years. **GALVIN** stated that he had just delivered two boxes of "store products", with each box containing 800 packages, to Bilbos Earth Store in Springfield, Missouri. **GALVIN** said the products are "aroma products" commonly known as "K2". **GALVIN** stated that he makes the delivery every 7 to 10 days and **WOLFE** pays him $300.00 per trip. **GALVIN** also admitted to delivering the products in the St. Louis area including "94 Bait" and another store on Page Avenue. **GALVIN** stated that he knew people smoked the "aroma products" he was transporting and admitted that he smokes the products himself.

50. Based in part on the evidence listed above, on September 25, 2013 agents from Immigration and Customs Enforcement Homeland Security Investigations, within the Department of Homeland Security, United States Postal Inspection Service and Internal Revenue Criminal Investigation obtained and executed a total of thirteen (13) federal search warrants issued in the Eastern District of Missouri for the following locations: 13765 St. Charles Rock Road, Suite 101, Bridgeton MO 63044; 13765 St. Charles Rock Road, Suite 102, Bridgeton MO 63044; 13765 St. Charles Rock Road, Suite 111 , Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 115 , Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044; and 4738 Orchard Drive, Barnhart, MO 63012. Except for the location at 4738 Orchard Drive, Barnhart, MO, 63012, your agents have determined **WOLFE** has a connection to every one of the remaining locations searched on September 25, 2013.

51. As a result of the search warrants, agents recovered the following items in support of the of this search warrant application and affidavit:

**Exhibit 5-A**

NC 00014799

a.  Approximately 800 kilograms of retail synthetic drugs products and precursor chemicals with a conservative wholesale street value of exceeding $6 million.

b.  Several hundred kilograms of carrier material, packaging, chemicals, solvent solutions and equipment used in the manufacturing of the synthetic drugs.

c.  Several computers, tablet computers and smart phones.

d.  Approximately $117,000.00 in U.S. Currency.

e.  An original copy of a State of Missouri Search Warrant, Issued in the 42 Circuit Court of St. Louis County for the business known as Majik Mart Liquor Store 12779 New Halls Ferry, Florissant, MO 63136 and inventory which indicated the officers seized boxes containing miscellaneous synthetic marijuana packets underneath front counter, three boxes containing miscellaneous synthetic marijuana packets in back storage area, U.S. currency.

f.  In addition to the e-mail messages recovered in the trash outlined above and the evidence listed above during the execution of the search warrants, agents recovered printed versions of e-mails at the following locations:

**E-mails recovered at 13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044**

| From | To | Date | Content |
|------|-----|------|---------|
| <phoenixherbals1@gmail.com> | <chuckwolfe61@yahoo.com> | 09.12.2012 | Subject: Phoenix Invoice and Price Sheet<br><br>Hey Chuck here is the new price sheet with the letter and such.  Thank you for taking the time to speak with me today and hope these labs with the letter are helpful.  I know we had spoken of decreasing the price of the 3 gram bag and d what you said makes perfect sense.  But our pricing already has the 1 gram at 2.75 which we gave you a break on at 2.50.  But at the 500 bag mark we cannot alter the 7.50 price point.  I'm sure in the future as things continue to |

**Exhibit 5-A**

NC 00014800

| | | | |
|---|---|---|---|
| | | | pick up we can come to some sort of new agreement but for now we'll have to stick with this.  Please let me know if this works for you at your earliest convenience and thank you!<br><br>Sincerely,<br>Travis |

**E-Mails recovered at 13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044**

| From | To | Date | Content |
|---|---|---|---|
| <rkwolfe1971@yahoo.com> | <stranddist@yahoo.com> | 05.17.2012 | Subject: Liquor & Wine Place<br><br>Raj,<br><br>Attached you will find copies of the three invoices for Liquor & Wine Place in McHenry.  The address is 2202 W. IL Route 120, McHenry, IL 60051.  The invoice marked 5-16 is the one to be delivered, the other two were previously delivered.  The gentleman who is at the store is Haresh.  If you have any problems let me know.  Invoices<br>5-2 =$2,130<br>5-8=$4,200<br>5-16=1,485<br>Total $7815<br>He will most likely write a check but he does often pay in cash.  Charles was in with the doctors all day today and looks as if starting after memorial day, he will start chemo.<br>Thanks Bob |
| <wtsab@gmail.com com> | <rkwolfe1971@yahoo.com> | 05.23.2012 | Subject: Tobacco Box<br><br>50 PRIMO 3G$14.00<br>20 PRIMO 1G $6.50<br>20 COLO 3Gp $12.00<br>10 HIPPI DAZE KUSH 3G $12.00 |

28

**Exhibit 5-A**

NC 00014801

| | | | He has a $120.00 Credit<br>Thanks Bob----Tom |
|---|---|---|---|
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.27.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe<br>Subject:  Order<br>From: Greg Sloannebgreg@gmail.com<br>To:chuckwolfe61@yahoo.com<br><br>Chuck here is another order from somebody. This is not from Jen.  This is from Marcy<br><br>St. John Liquor<br>Attn: Maurice or John<br>3314 Brown Road<br>St. Louis, MO 63114<br><br>GoGo – 50 @ $12.00 each<br>Total order $600.00<br>Ground COD |
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.27.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe<br>Subject:  Order for Jen<br>From: Jen<br>To:chuckwolfe61@yahoo.com<br><br>Hi Chuck<br><br>Please sent 500 Go out to the following COD @ 10.00 each piece<br><br>Singh at Village Mart<br>2720 W. Kearny Street<br>Springfield, MO 65803<br><br>Please sent 200 out to the following COD @ 10.00 each piece<br><br>Nina at Fenton Park Market<br>1060 Old Highway 141<br>Fenton, MO 63026<br><br>Thanks Jen Executive Sales Manager |
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.28.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe<br>Subject:  Order for Jen<br>From: Jen Jameson |

29

**Exhibit 5-A**

NC 00014802

| | | | |
|---|---|---|---|
| | | | To:chuckwolfe61@yahoo.com <br><br> Please send out today an order for 100 go @ 10.00 each for <br><br> Sky haven <br> 311 Highway 50 <br> Warrensburgh, MO 64093. <br><br><br> Thanks Jen Jameson <br> Executive Sales Manager <br> Cloud 9 |
| <cloud9jen@gmail.com> | <rkwolfe1971@yahoo.com> | 07.02.2012 | Subject:  Question and Order <br><br> Robert, <br> Singh at Cillage mart would like 300 go go at 10.00 each sent to him today.  He would like it send and he sends us a check.  Chuck said this would be fine and I do not have to do COD on all of them.  Can you verify?  Also Singh would like us to fax him an invoice from the last order to 417.862.5655. Thank you Jen Jameson, Executive Sales Manager, Cloud 9. |
| <rlord22@clear.net> | <chuckwolfe61@yahoo.com> | 02.20.2013 | Good Morning from Raymond <br><br> NEW ORDER for IOWA <br><br> 2000 1.5 BIZ 900 BB, 900 STRAW, 200 ORIG <br><br> 2000 3.Z BIZ 900 BB, 900 STRAW, 200 ORIG <br><br> 2000 10G 900 BB, 900 STRAW, 200 ORIG <br><br> 1000 1.5 ORGAZ: 500 PINE, 500 VANILLA <br><br> 1000 3.5 500 PINE, 500 VANILLA |

**E-mails recovered at 13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044**

30

**Exhibit 5-A**

NC 00014803

| From | To | Date | Content |
|------|-----|------|---------|
| Sherri<bskbeeman@charter.net> | <chuckwolfe61@yahoo.com> | 03.18.2013 | Subject:  Order<br><br>20 spoons (cheap ones)<br>20 chillims (cheap ones)<br>5 dircho spoons<br>50 diamond cut pipes<br>Metal Chamber pipes both sizes 5 each<br>Any metal type pipes 5 of each<br>China grinders 12<br>Wood grinders<br>America made 2 each color<br>Spoon necklaces 5<br>Vaporizers<br>Bats Cing kind and glass if you have<br>Flume bats and Slides<br>Color bowls<br>Plain glass bowls |

## TRAINING EXPERIENCE OF INVESTIGATIVE TEAM

52.  In my training and experience, I have learned that Yahoo! Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Yahoo! Inc. allows subscribers to obtain e-mail accounts at the domain name www.yahoo.com, like the e-mail accounts listed in Attachment A.  Subscribers obtain an account by registering with Yahoo! Inc. During the registration process, Yahoo! Inc. asks subscribers to provide basic personal information.  Therefore, the computers of Yahoo! Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! Inc. subscribers) and information concerning subscribers and their use of Yahoo! Inc. services, such as account access information, e-mail transaction information, and account application information.

53.  A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail.  If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo! Inc. but may not include all of these categories of data.

31

**Exhibit 5-A**

NC 00014804

54. A Yahoo! Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo! Inc..

55. In general, e-mail providers like Yahoo! Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

56. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Yahoo! Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

57. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

58. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

32

**Exhibit 5-A**

NC 00014805

59. With my experience and training, and that of other special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime. The distribution of controlled substance analogues such as synthetic cannabinoid products and substituted cathinone products is often done through small, home based or internet businesses selling products to convenience stores, adult product stores, head shops and gas stations. These products which are often purchased or manufactured at a small price and are sold at prices generating very large profit margins. Some of the money generated is utilized to continue the business operations.

60. Based on all the foregoing facts, my training and experience, and training and experience of the investigative team, your affiant submits that there is probable cause to believe that evidence of a violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 1956 will be found in the e-mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

61. The disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardized an ongoing investigation and witnesses who have provided information to The Internal Revenue Service Criminal Investigations Division, Immigration and Customs Enforcement, Homeland Security Investigations, the Drug Enforcement Administration, and other state and local authorities and therefore it is requested that these materials be filed under seal.

**Exhibit 5-A**

NC 00014806

## ATTACHMENT A

### Property to Be Searched

62. This warrant applies to any and all information linked to or associated with the Yahoo! e-mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc., stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

**Exhibit 5-A**

NC 00014807

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Yahoo, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo! Inc., including any e-mails, e-mail attachments, address books, contact or buddy lists, calendar data, pictures, notepad, records, files, logs, or information that have been deleted but are still available to Yahoo! Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Yahoo! Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mail folders and e-mails associated with the account, including their attachments, stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      A list of all contacts and all contacts information saved in the account, buddy lists, shared calendars saved to the e-mail account or associated to the account,

c.      All communications between chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com and any other party.

d.      All information saved in a cloud account associated with each account or identifier listed in Attachment A within the possession, custody, or control of Yahoo! Inc.

e.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

35

**Exhibit 5-A**                    NC 00014808

AO 93 (Rev. 11/13) Application for Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

In the Matter of the Search of

| | |
|---|---|
| Records and information pertaining to the email account bearing the address of rkwolfe1971@yahoo.com, hosted by Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California 94089. | )<br>)<br>)<br>)<br>)<br>)    Case No.  4:14 MJ 7002 SPM |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____NORTHERN_____ District of _____CALIFORNIA_____
*(identify the person or describe the property to be searched and give its location):*

Records and information pertaining to the email account bearing the address of rkwolfe1971@yahoo.com, hosted by Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California  94089.

I find the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

### See Attachments A and B

**YOU ARE COMMANDED** to execute this warrant on or before _____January 23, 2014_____ *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Shirley P. Mensah_____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specified date of _____.

Date and time issued:      January 10, 2014 , 9:52 A.M.

Judge's signature

City and state:          St. Louis, Missouri          Shirley P. Mensah, United States Magistrate Judge
*Printed name and title*

**Exhibit 5-B**

NC 00014769

## ATTACHMENT A

### *Property to Be Searched*

62. This warrant applies to any and all information linked to or associated with the Yahoo! e-mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc., stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

34

**Exhibit 5-B**

NC 00014770

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by Yahoo, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo! Inc., including any e-mails, e-mail attachments, address books, contact or buddy lists, calendar data, pictures, notepad, records, files, logs, or information that have been deleted but are still available to Yahoo! Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Yahoo! Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mail folders and e-mails associated with the account, including their attachments, stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      A list of all contacts and all contacts information saved in the account, buddy lists, shared calendars saved to the e-mail account or associated to the account,

c.      All communications between chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com and any other party.

d.      All information saved in a cloud account associated with each account or identifier listed in Attachment A within the possession, custody, or control of Yahoo! Inc.

e.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

35

**Exhibit 5-B**

NC 00014771

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

In re the Matter of the Search of   )
             )
Records and information pertaining to the email )  No. 4:14 MJ 7002 SPM
account bearing the address of   )  **FILED UNDER SEAL**
rkwolfe1971@yahoo.com, hosted by Yahoo! )
Inc., located at 701 First Avenue, Sunnyvale, )
California  94089.       )

## O R D E R

   On motion of the United States of America, it is hereby ordered that the search warrant and affidavit and this Order issued thereto be sealed until July 10, 2014 except for the limited purposes of providing same to defense counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

   This Order is based upon the sealed motion of the government establishing that: (a) the government has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical.

                _____
               UNITED STATES MAGISTRATE JUDGE

Dated: This ___10th___ day of January 2014

**Exhibit 5-B**

NC 00014772

AO   06 (Rev. 6/09) Application for Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

In the Matter of the Search of )
Records and information pertaining to the email )
account bearing the address of )    No.  4:14 MJ 7002 SPM
rkwolfe1971@yahoo.com, hosted by Yahoo! Inc., )
located at 701 First Avenue, Sunnyvale, California )
94089. )

## APPLICATION FOR A SEARCH WARRANT

I, Robert J. Anderson, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

Records and information pertaining to the email account bearing the address of rkwolfe1971@yahoo.com, hosted by Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California  94089.

located in the __NORTHERN__ District of ___CALIFORNIA___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments A and B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 846, 841(a)(1), and 813 | Conspiracy/Attempt to distribute/Possess with Intent to Distribute Controlled Substances and Analogues of Controlled Substances |
| Title 18, United States Code, Section 1956 | Money Laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. §3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert J. Anderson, Special Agent,
Internal Revenue Service Criminal Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __January 10, 2014__

*Judge's Signature*

City and state: __St. Louis, Missouri__

Shirley P. Mensah, United States Magistrate Judge
*Printed name and title*

**Exhibit 5-B**

NC 00014773

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Your affiant, Robert J. Anderson, a Special Agent with Internal Revenue Service Criminal Investigation, being duly sworn, depose and state the following:

1.  I am a Special Agent with Internal Revenue Service Criminal Investigation, (hereafter "IRSCI"), within the Department of Treasury, currently assigned to the Chicago Field Office's Fairview Heights, Illinois Post of Duty.  I have been a Special Agent with IRSCI for the last seventeen years.  During my tenure with IRSCI I have had the opportunity to lead, conduct, coordinate and participate in investigations concerning tax fraud, health care fraud, financial fraud (i.e. Ponzi Schemes) and money laundering.

2.  I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.  The location to be searched is described below and in Attachment A, attached hereto.  This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo! Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the **"Subject E-mail Addresses/Accounts",** as described below, including the contents of communications.  I prepared this affidavit in support of an application for a search warrant because I believe the subject e-mail addresses/accounts contain evidence of violations of Title 21, U.S.C. §§ 813, 841(a)(1) and 846, involving the distribution, and conspiracy to distribute controlled substances, analogues of Schedule I controlled substances, and violations of Title 18, U.S.C. § 1956, money laundering.

3.  During the course of this investigation, several sources of information have been utilized, including but not limited to corporate security records, public records, business records, financial records, state and local law enforcement personnel and their reports of investigation, physical and electronic evidence seized and analyzed through the use of state and federal search warrants.  All

1

**Exhibit 5-B**

NC 00014774

the information contained in this affidavit is based on the personal knowledge of your affiant or is

based on information that was communicated to your affiant by agents and other law enforcement

officers assisting in the investigation:

**SUBJECT E-MAIL ADDRESSES/ACCOUNTS:**

4.   Your agents are requesting Yahoo! Inc. disclose to the government records and other information

in its possession pertaining to the subscriber or customer associated with the following e-mail

addresses/accounts: chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period

January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc.

5.   Because this affidavit is being submitted for the limited purpose of securing the requested search

warrant, I have not included each and every fact known to me concerning this investigation.  I

have set forth only those facts that I believe are necessary to establish probable cause for the

requested search warrant.   Where statements of others are set forth in this affidavit, they are set

forth in substance and in part.

**BACKGROUND INFORMATION REGARDING COMPUTERS, THE INTERNET AND E-MAIL:**

6.   The following definitions apply to this Affidavit and Attachment A to this Affidavit:

    a.   Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an

       electronic, magnetic, optical, electrochemical, or other high speed data processing device

       performing logical or storage functions, and includes any data storage facility or

       communications facility directly related to or operating in conjunction with such device."

    b.   The Internet is a worldwide network of computer systems operated by governmental

       entities, corporations, and universities.  In order to access the Internet, an individual

       computer user must subscribe to an access provider, which operates a host computer

       system with direct access to the Internet.  The World Wide Web ("www") is a

       functionality of the Internet which allows users of the Internet to share information.

2

**Exhibit 5-B**

NC 00014775

c.   With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world.  This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods.

d.   Computers connected to the Internet are identified by addresses.  Internet addresses take on several forms, including Internet Protocol (IP) addresses, Uniform Resource Locator (URL) addresses, and domain names.  Internet addresses are unique and can identify a physical location and a computer connection.

e.   Electronic mail (or "e-mail") is a popular form of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users.  An e-mail server may allow users to post and read messages and to communicate via electronic means.

**Yahoo!**

7.   Furthermore, based on my experience, training and consultation with IRS-CI S/A John Smith, your Affiant knows the following:

a.   Yahoo! Inc.., which is physically headquartered at 701 First Avenue, Sunnyvale, California 94089 provides free web-based Internet electronic mail ("e-mail") to the general public, and that stored electronic communications, including opened and unopened e-mail for Yahoo! Mail subscribers may be located on Yahoo!'s computer system.

b.   Yahoo! Mail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts.   These records include account access information, e-mail transaction information, and account application information.

3

**Exhibit 5-B**

NC 00014776

c.  Subscribers to Yahoo! Mail may access their accounts on servers maintained and/or owned by Yahoo! Mail from any computer connected to the Internet located anywhere in the world.

d.  Any e-mail that is sent to a Yahoo! subscriber is stored in the subscriber's "mail box" on Yahoo!'s server until the subscriber deletes it, or until the subscriber's mailbox exceeds Yahoo!'s preset storage limits.  If the message is not deleted by the subscriber, the account is below the storage limit, and the subscriber accesses the account periodically, that message can remain on Yahoo!'s servers indefinitely.

e.  When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo!'s servers, and then transmitted to its end destination.  Yahoo! users have the option of saving a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo! server, the e-mail can remain on the system indefinitely.  The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at Yahoo!, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations.

f.  A Yahoo! subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Yahoo!; and e-mails and image files stored on a Yahoo! server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Yahoo! server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence.  A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo! server.

g.  Computers located at Yahoo, Inc. contain information and other stored electronic communications belonging to hundreds of thousands of third parties unrelated to this

4

**Exhibit 5-B**

NC 00014777

investigation.   Accordingly, this Affidavit and Application for Search Warrant seek authorization solely to search the computer accounts and/or files set forth in Attachment A.

## LOCATIONS TO BE SEARCHED:

8.  The Yahoo! Mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com, for the time period January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc., maintained by Yahoo! Inc. through its computer systems. These locations are more fully described in "**Attachment A**," attached hereto.

## ITEMS TO BE SEIZED

9.  The items to be seized at the location to be searched are listed in "**Attachment B**" attached hereto.

## APPLICABLE LAW ON JURISDICTION

10. This court has authority to issue a search warrant for the records sought by this affidavit even though these records are kept in another District, pursuant to Title 18, United States Code, § 2703 because, it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

11. YAHOO! is an "electronic communications service."

12. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## FACTS SUPPORTING THIS AFFIDAVIT

13. On August 9, 2013, pursuant to Title 18 U.S.C § 2703 (f), your affiant faxed a Preservation Letter to Yahoo! Inc. for chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com.

14. On October 21, 2013, pursuant to Title 18 U.S.C § 2703 (f), your affiant faxed a second Preservation Letter to Yahoo! Inc. for chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com.

## FEDERAL STATUTES

5

**Exhibit 5-B**

NC 00014778

15. **CONTROLLED SUBSTANCES**: A person is in violation of Title 21 U.S.C. § 841, if that person knowingly or intentionally manufactures, distributes, or dispenses, or possesses with intent to manufacture, distribute, or dispense, a controlled substance; or creates, distributes, or dispenses, or possesses with intent to distribute or dispense, a counterfeit substance.

16. **ANALOGUE CONTROLLED SUBSTANCES ACT**: Under Title 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

17. **DEFINITION OF CONTROLLED SUBSTANCE ANALOGUE**: Title 21, U.S.C. § 802(32)(A) defines a "controlled substance analogue" as a substance:

    a. The chemical compound of which is substantially similar to the chemical structure of a controlled substance in Schedule I or II; and

    b. Which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effects on the central nervous system of a controlled substance in Schedule I or II.

18. **MONEY LAUNDERING**:  A person is in violation of Title 18, U.S.C. § 1956 if the person, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity; or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

## CONTROLLED SUBSTANCE ANALOGUES

19. I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products, many times known on the street as "Spice" or "K2." Smokable synthetic cannabinoid products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound

6

**Exhibit 5-B**

NC 00014779

chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana. Currently, there are hundreds of synthetic cannabinoid compounds. The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011. In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws. Smokable synthetic cannabinoid products are commonly purchased in head shops, tobacco shops, convenience stores, adult stores and over the Internet. They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." These markings are routinely in place in an attempt to fraudulent circumvent the product being identified as a controlled substance analogue. Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

20. Through experience I know that individuals, in an attempt to circumvent laws in place which make the possession and distribution of certain synthetic drugs illegal, seek out and purchase or produce substances which have a similar but slightly different chemical structure. These substances will produce the same pharmacological effect on the human body when ingested. In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986.

21. Through research, training and experience, I know that the synthetic cannabinoid 1-pentyl-3-(1-naphthoyl)indole (JWH-018) is a schedule I controlled substance, and that until July 2012 the synthetic cannabinoids: 1-Pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250), 1-Pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122) and 1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201) met the definition of controlled substance analogues when intended for human consumption. On July 9, 2012, these substance, JWH-018, JWH-250, JWH-122, AM2201 became permanently scheduled as control substances pursuant to the Synthetic Drug Abuse Act of 2012 (herein

7

**Exhibit 5-B**

NC 00014780

"SDAPA"). SDAPA amended the Controlled Substance Act (herein "CSA") by legislatively placing "cannabimimetic agents" and 26 substances in Schedule I. I know these substances to be considered hallucinogens and further affect the human body in a similar way to THC, the active hallucinogen found in the organic drug marijuana.

22. On May 16, 2013, the Deputy Administrator of DEA issued a final order to temporarily schedule three synthetic cannabinoids under the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions of Title 21, U.S.C. § 811(h). The substances are (1-pentyl-1H-indol-3-yl)(2,2,3,3- tetramethylcyclopropyl)methanone (UR-144), [1-(5-fluoro-pentyl)-1H- indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (5-fluoro-UR-144, XLR11) and N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide (APINACA, AKB48). This action is based on a finding by the Deputy Administrator that the placement of these synthetic cannabinoids and their salts, isomers and salts of isomers into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety.

23. According to the DEA Office of Diversion Control, Drug and Chemical Evaluation Section, various synthetic cannabinoids (e.g., JWH-018, etc.) laced on plant material have been encountered by law enforcement in recent years. These are promoted under the guise of herbal incense products. These products laced with synthetic cannabinoids are smoked for their psychoactive effects. In response to State and Federal control of these synthetic cannabinoids, a transition to new synthetic cannabinoids laced on plant material has been observed. AKB48, 5F-AKB48 and XLR -11 are three of the many synthetic cannabinoids recently encountered on the designer drug market.

24. AKB48 and 5F-AKB48 also known as **AKB48 N-(5-fluoropentyl)** also known by the chemical name: N-(adamant-1-yl)-1-(5-fluropentyl)-1H-indazole-3-carboxamide) belong to a structural class with a core indazole structure. They are structurally related to other synthetic cannabinoids with a core indole structure, such as the Schedule I substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to

8

**Exhibit 5-B**

NC 00014781

give rise to these substances.  AKB48 and 5F-AKB48 were not previously reported in the

scientific literature prior to their appearance on the designer drug market.  AKB48 is

pharmacologically similar to Schedule I substances THC and various synthetic cannabinoids

(e.g., JWH-018, AM2201 etc.). In vitro studies show that AKB48, similar to $\Delta$9-THC and various

synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist

properties in functional assays, suggesting that it would have the same in vivo effects as $\Delta$9-THC

and various synthetic cannabinoids.  The binding affinity of AKB48 is higher than that of $\Delta$9-

THC. Based on structure-activity relationship studies, 5F-AKB48 is expected to bind to CB1

receptors as well.  There are no published studies as to the safety of AKB48 or 5F-AKB48 for

human use.  AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior

to their appearance on the designer drug market.  There are no commercial or medical uses for

these substances.  Information on user population in the U.S. is limited, and includes information

from drug user internet forums. AKB48 and 5F-AKB48 abuse is not monitored by any national

drug abuse surveys. Poison control centers continue to report adverse health effects in response to

the abuse of herbal incense products and this abuse is both a public health and safety concern.

AKB48 is a schedule I controlled substances under the Federal Controlled Substances Act. If

intended for human consumption, 5F-AKB48 may be treated as a "controlled substance

analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813.

25. XLR11 (also known as 5F-UR144 also known by the chemical name [1-(5-fluoropentyl)-1$H$-

indol-3-yl](2,2,3,3- tetramethylcyclo-propyl)methanone), JWH-018, and AM2201 belong to a

structural class of substances sharing a core indole structure. This core structure (scaffold) is

substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances.

Behavioral pharmacology studies show that 5F-UR144 and XLR11, similar to JWH-018, have

$\Delta$9-THC-like activity in animals.  In mice, these substances decrease overall activity, produce

analgesia, decreases body temperature, and produce catalepsy. Together, these four effects are

used by scientists to predict $\Delta$9-THC-like psychoactivity in humans.  In drug discrimination

9

**Exhibit 5-B**

NC 00014782

studies in mice, 5F-UR144 and XLR11 generalized to Δ9-THC similarly to JWH-018, i.e. produced subjective effects similar to those of Δ9-THC. *In vitro* studies show that 5F-UR144 and XLR11 bind to the brain cannabinoid receptor (CB1 receptor) similarly to JWH- 018 and AM2201. There are no published studies as to the safety of 5F-UR144 or XLR11 for human use. XLR11 was not previously reported prior to encountering on the designer drug market. There are no commercial or medical uses for these substances.  Information on user population in the U.S. is limited, and includes information from drug user internet forums. 5F-UR144 and XLR11 abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products and this abuse is both a public health and safety concern.  XLR11 is a schedule I controlled substances under the Federal Controlled Substances Act.

26. During this investigation, your agents and members of the investigative team were confronted with a new synthetic cannabinoid, AB-FUBINACA.  Although AB-FUBINACA does not appear in Schedule I, your agents, through their research have determined that both AB-PINACA and AB-FUBINACA are cannabimimetic indazole-derivatives.  These substances were identified as designer drugs in illegal products in Japan.  According to the articles that discusses the discovery of the substances (Forensic Toxicol (2013) 31:93–100), the samples used for analysis were three products purchased via the Internet in July 2012 in Japan; one as a chemical and two as herbal products.  Each of the herbal products (A and B) contained about 3g of mixed dried plants.  The AB-FUBINACA was extracted and isolated out of the 3 gram sample of the herbal product B. According to Wikipedia, AB-FUBINACA is a drug that acts as a potent agonist for the cannabinoid receptors and was originally developed by Pfizer in 2009 as an analgesic medication but was never pursued for human use.  Subsequently in 2012, AB-FUBINACA was discovered as an ingredient in synthetic cannabis blends in Japan, along with a related compound AB-PINACA. (Even if this new substance is not determined to be a controlled substance analogue,

10

**Exhibit 5-B**

NC 00014783

manufacturing and distribution of this substance intended for human consumption without proper labeling is in violation of 21 U.S.C § 331.)

## OVERVIEW OF THE INVESTIGATION

27. I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation with Internal Revenue Service Criminal Investigation, Drug Enforcement Administration, Federal Bureau of Investigation, United States Postal Inspection Service, Illinois States Attorney's Office, Effingham Police Department, St. Charles County Sherriff's Office and the United States Attorney's Office concerning **MICHAEL J. LENTSCH Jr.** (hereinafter "**LENTSCH**"), **ANWER N. RAO** (hereinafter "**RAO**") and **GREGORY SLOAN** (hereinafter "**SLOAN**") for manufacturing, marketing and distributing "synthetic herbal incense" in the Eastern District of Missouri, the Southern District of Illinois and elsewhere. **LENTSCH** and **RAO d/b/a OPM Midwest, Inc.** and **TS Botanical, Inc**. manufactured and marketed their synthetic herbal incense under the brand name "**CLOUD 9**"through store fronts called "**Tha Grind**" which were located within the Southern District of Illinois and Eastern District of Missouri. They also marketed their synthetics through the internet as a product which was legal for sale. **LENTSCH** and **RAO** provided their customers with laboratory reports that gave the appearance that the product they were selling was in compliance with federal and state law. In addition, **LENTSCH** and **RAO** attempted to circumvent the Controlled Substance Analogue Enforcement Act of 1986 by placing the phrase "not for human consumption" on the rear of each package.

28. **SLOAN** marketed and distributed the synthetic herbal incense that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9**"; along with other synthetic herbal incense blends through a wholesale and retail distribution network know as **NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC** .

29. The government expanded the investigation to include some of the individuals that continued to distribute "**CLOUD 9**" along with other synthetic herbal incense blends at the wholesale and

11

**Exhibit 5-B**

NC 00014784

retail level after the execution of a number of search warrants at the residences and business

locations owned and or controlled by **RAO, LENTSCH** and **SLOAN** in July 2012. One of these

individuals is **CHARLES A WOLFE II** (herein "**WOLFE**") **d/b/a PSYCHEDELIC BLUR,**

**LLC.** From 2011 through at least August 2012, **WOLFE** was assisted by his brother and

business partner **ROBERT WOLFE.**

<u>**DETAILS OF THE INVESTIGATION**</u>

**CHARLES A WOLFE II** d/b/a **PSYCHEDELIC BLUR, LLC**

30.   Based on database searches, surveillance, trash pulls, and Ameren UE company records, your

agents know that **WOLFE** resides at the residence located at 1901 Williamstown Drive, St.

Peters, MO 63376, Missouri. **WOLFE** lists the address 1901 Williamstown Drive, St. Peters,

MO 63376 as his residence on his Missouri Non-Driver's License Identification. **WOLFE** is

registered as the Managing Member of **PSYCHEDELIC BLUR, LLC.** According to records on

file at the Florida Secretary of State, **PSYCHEDELIC BLUR, LLC** is a company with a

principal place of business as 611 S. Fort Harrison Avenue, Suite #104, Clearwater, FL 33756.

WOLFE as Managing Member lists his address as 3477 Nameoki Road, Suite 165, Granite City,

Illinois 62040. The registered agent of **PSYCHEDELIC BLUR, LLC** is Tim M. Dandar,

Esquire, 2240 Belleair Road, Suite 190, Clearwater, Florida 33764. Your agents researched the

**PSYCHEDELIC BLUR, LLC's** principal place of business and determined that the address is a

UPS Store, specifically UPS Store #4344 located at 611 S. Fort Harrison Avenue, Suite #104,

Clearwater, FL 33756. Your agents obtained a copy of the United States Postal Service

Application for Delivery of Mail Through Agent, Form 1583 (hereafter "Form 1583"), in

reference to the address dated November 16, 2011 and determined the following: **WOLFE**

advised that the name in which the applicants mail will be received for delivery to the agent was

**CHUCK WOLFE. WOLFE** advised that his home address was "3477 Nameoki Road #165,

Granite City, OH 62040." **WOLFE** provided a Missouri Non Driver's License #K035325011

that listed his address as 350 S. St. Charles Street, Florissant, MO and an AAA card

12

**Exhibit 5-B**

NC 00014785

#4293658756702763 in the name of **CHUCK WOLFE** as forms of identification. In addition, **WOLFE** provided the e-mail address psychedelicblurr@gmail.com.

31. Your agents researched the address **WOLFE** provided to the UPS Store #4344 as his home address and determined that the address was a UPS Store, specifically UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040. Your agents obtained a copy of the Form 1583 in reference to the address 3477 Nameoki Road #165, Granite City, IL 62040 dated September 8, 2011 and determined the following: **WOLFE** reported that the name in which the applicant's mail will be received for delivery to the agent was **CHUCK WOLFE**. **WOLFE** reported that his home address was 1901 Williamstown Drive, O'Fallon MO 63376. His telephone number was 314.761.3311 and the name of his business was 4G Central.

32. UPS Store #5491 located at 3477 Nameoki Road, Granite City, IL 62040, was used by **SLOAN** and individuals known to your agents to be involved in the operation of **NEB Distributing, LLC** and **Silver Rocket Distributing, LLC** in distributing the synthetic herbal incense that **LENTSCH** and **RAO** manufactured under the brand name "**CLOUD 9.**" These individuals included, among others, **SLOAN** himself (Box #171) with an office address as **NEB Distributing,** 5529 Dial Drive, Granite City, IL 62040.

33. In July 2012, your agents participated in search warrants issued in St. Charles County, Missouri in reference to **SLOAN d/b/a NEB DISTRIBUTING, LLC** and the **SILVER ROCKET GROUP, LLC.** From the records obtained and examined, your agents determined that from on or about November 2010 through July 2012, **WOLFE,** doing business in his own name and the name **PSYCHEDELIC BLUR, LLC,** purchased and redistributed approximately **$2,700,000.00** of synthetic herbal incense blends from **NEB Distributing, LLC.** The vast majority of the synthetic herbal blends **WOLFE d/b/a PSYCHEDELIC BLUR, LLC** purchased, sold, and distributed from **SLOAN d/b/a NEB Distributing, LLC** originated from **RAO and LENTSCH d/b/a TS Botanicals, Inc.** From on or about May 2011 through July 2012, **RAO** and **LENTSCH, d/b/a OPM Midwest, Inc. and TS Botanical, Inc.,** retained the services of AI

13

**Exhibit 5-B**

NC 00014786

Biotech located in Richmond, VA to perform an analysis of their synthetic herbal blends for the presence of synthetic cannabinoids.

34. According to the lab reports prepared and produced to **RAO** and **LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** in 2011, **RAO** and **LENTSCH** knew that their synthetic herbal blends contained one or more of the following substances: **AM 2201, JWH-250,** and **URB 754.**

35. According to the lab reports prepared and produced by AI Biotech to **RAO** and **LENTSCH d/b/a OPM Midwest, Inc**. and TS Botanical, Inc. in 2012, **RAO** and **LENTSCH** knew that their synthetic herbal blends contained one or more of the following substances: **4MAM-2201, URB 754, α-PVP, AM-2201, UR 144,** and **5MeO-Dalt**.

36. In December 2012, your agents obtained search warrants issued in the Eastern District of Missouri for the e-mail accounts known to be used by **RAO, LENTSCH, SLOAN,** and others associated with the investigation. According to the e-mails produced by the electronic communications service companies and e-mail providers, your agents determined that **RAO** and **LENTSCH d/b/a OPM Midwest, Inc. and TS Botanical, Inc.** regularly provided a copy of these same AI Biotech lab reports addressed to **SLOAN** and **WOLFE** as they became available.

37. During your affiant's review of the evidence produced as a of result search warrants issued in the Eastern District of Missouri for the e-mail accounts known to be used by **RAO, LENTSCH, SLOAN,** and others associated with the investigation in December 2012, your affiant determined **WOLFE** utilized the e-mail address chuckwolfe61@yahoo.com and **ROBERT WOLFE** utilized the e-mail address rkwolfe1971@yahoo.com. In addition, your affiant determined **SLOAN** and **WOLFE** actively followed changes in federal, state, and local legislation in an effort to circumvent the changes in the law as it pertained to the use and scheduling of synthetic cannabinoids. For example, on or about June 22, 2011, **SLOAN** sent an e-mail to **WOLFE** with the subject line "Illinois ban." In the e-mail, **SLOAN** advised "no changes on this thing to us. 2201 still legal and this was the latest legislation 05-28-2011." Later that same day, **SLOAN** e-

14

**Exhibit 5-B**

NC 00014787

mailed **WOLFE** the link to the Illinois General Assembly Web Site and the status of HB 3042. According to the synopsis contained in the link, the bill (HB 3042) amended the Illinois Controlled Substances Act, adding 3 synthetic cannabinoids to the list of Schedule I substances, effective 07/22/2011.

38. Through the examination of these e-mails your agents determined that **SLOAN** and **WOLFE** also monitored law enforcement's efforts to combat the illegal synthetic drug industry. For example, on August 21, 2011, **WOLFE** forwarded an article that appeared in the Northwest Arkansas News with the headline that read "Man Arrested After Officers Raid Fayetteville Business." The article states that the man was arrested on a drug charge after officers served search warrants on two Fayetteville businesses allegedly selling K2, or synthetic marijuana.

39. In addition, **WOLFE** and **ROBERT WOLFE** used these e-mail addresses to accept orders of the different synthetic drugs they were distributing throughout the conspiracy, to order synthetic drugs products from their suppliers in order to fill orders for their customers, and to communicate with other members of the conspiracy.

## Financial records of WOLFE and PSYCHEDELIC BLUR, LLC

40. Your agents obtained and analyzed records associated with **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account ******333741. The business contact phone number is 727-272-2649 and contact e-mail address is chuckwolfe61@yahoo.com. Bank of America classified **PSYCHEDELIC BLUR LLC's** business under wholesale.

41. The investigative team reviewed and analyzed **WOLFE's PSYCHEDELIC BLUR, LLC's** Bank of America account ******333741 for the period March 13, 2012 through May 15, 2013 and prepared the following analysis to report the activity in the account:

    a. For the period of March 13, 2012 through May 15, 2013, WOLFE had total deposits and credits of **$3,475,781.07**. For the period prior March 13, 2012 to July 2, 2012, the period of time **WOLFE** was purchasing product from **SLOAN d/b/a NEB Distributing**,

15

**Exhibit 5-B**

NC 00014788

WOLFE had deposits/credits totaling **$1,402,943.60** and checks/debits totaling **$1,319,279.17**.

    b. For the period July 17, 2012 through May 14, 2013, **WOLFE** had total deposits/credits totaling **$2,072,837.47**. For that same period, **WOLFE** had total checks/debits totaling **$2,137,695.01**.

**Search warrants involving WOLFE**

42. In July 2012, search warrants were executed at the offices, warehouses, and residence of **WOLFE's** supplier, business associate, and friend, **SLOAN d/b/a NEB DISTRIBUTING LLC.** In May 2013, agents with a seizure warrant issued in the Western District of Tennessee seized $170,000.00 from the business accounts **WOLFE** controlled at Bank of America.

43. In addition to the above, DEA agents working in conjunction and cooperation with your agents provided the following in reference to businesses they have identified, through cooperating individuals and undercover purchases, as retail distributors of synthetic narcotics:

    a. In approximately October of 2012, the Drug Enforcement Administration (DEA), St. Louis Division, began conducting an investigation related to a conspiracy to distribute controlled substance analogues in violation of Title 21, U.S.C. § § 813, 841 and 846, by **SMOKE SENSATIONS and SOUTH 94, PAM TABATT (hereafter referred to as TABATT), PAUL W. BERRA JR. (hereto referred to as BERRA JR.), and RICHARD GROSS (hereto referred to as Gross)**. Through the course of the investigation to date, investigators have determined from a minimum date of October 2012 and continuing through present, **TABATT, BERRA JR., and GROSS** have been involved in a conspiracy to distribute Schedule 1 controlled substances and analogues of Schedule I controlled substances through **SMOKE SENSATION, SOUTH 94, and STRICTLY WHOLESALE**

    b. Your agents obtained the telephone tolls for numbers known to be used by the **SOUTH 94 BAIT AND TACKLE STORE, KAREN TIMMERMEIER, SHAUN BRUNO** and

16

**Exhibit 5-B**

NC 00014789

WOLFE for the period of time September 2012 through July 2013 and conducted an analysis. Based on that analysis, except for a period of time beginning on or about October 25, 2012 through February 26, 2013, **WOLFE** talks with someone from the **SOUTH 94 BAIT AND TACKLE** a couple times a week and talks with **KAREN TIMMERMEIER** almost on a weekly basis. **KAREN TIMMERMEIER** is **TABATT's** sister and is employed by the **SMOKE SENSATIONS** and **SOUTH 94 BAIT AND TACKLE STORE.**

c.   According to the bank analysis conducted by Leonard Lupa, DEA Financial Investigator, activity for **SMOKE SENSATIONS'** Fifth Third Bank account #******8233 and **SOUTH 94 BAIT & TACKLE** Fifth Third Bank Account #******0866, from March 2012 through April 2013, shows approximately 154 checks were written payable to 'PSYCHEDELIC' for a total of **$1,160,096.70.** Due to the lack of bank records currently available at the time of this affidavit, your agents have not been able to trace the disposition of all the checks written from **SMOKE SENSATIONS AND SOUTH 94 BAIT & TACKLE** accounts to PSYCHEDELIC'. However, your agents have traced 37 of the 154 checks written payable to '**PSYCHEDELIC'** as being deposited into **PSYCHEDELIC BLUR LLC's** Bank of America account # ******333741.

d.   Deposit items into the **PSYCHEDELIC BLUR LLC's** Bank of America account ******333741 show that from September 10, 2012 through April 10, 2013, a total of 23 checks from **SMOKE SENSATIONS** Fifth Third Bank account #******8233. The total value of the 23 checks was $236,619.

e.   Deposit items into the **PSYCHEDELIC BLUR LLC's** account ******333741 show that from September 10, 2012 through April 10, 2013, a total of 14 checks from **SOUTH 94 BAIT & TACKLE** Fifth Third Bank account #******0866. The total value of the 14 checks was $47,673.50.

17

**Exhibit 5-B**

NC 00014790

**TRASH RUNS**

44. Based on evidence developed during the **SLOAN** investigation and observation of the blue Ford Transit Cargo Van (MO License Plate # 5AN573 registered to Dream World Glass, LLC at 13765 St. Charles Rock Road, Bridgeton MO) in front of **WOLFE's** residence located at 1901 Williamstown Drive, St. Peters, MO, your agents began conducting drive bys and surveillance at the buildings located at 13761 & 13765 St. Charles Rock Road, Bridgeton, MO 63044.  Based on these drive bys and surveillance, agents learned **WOLFE, ROBERT WOLFE** and **DEAN GRAVER** (herein "GRAVER") were operating their business out of suites in the buildings located at that address.  **GRAVER** is **WOLFE's** brother-in-law.  **GRAVER** and **WOLFE's** wife (Avelina C. Bolibol) formed **DREAM WORLD GLASS, LLC.**  According to records on file at the Florida Secretary of State, the effective date for **DREAM WORLD GLASS, LLC** is October 9, 2012.  **DREAM WORLD GLASS, LLC** is a company with a principal place of business at 611 S. Fort Harrison Avenue, Suite #212, Clearwater, FL 3375.  **GRAVER** used the address of 2024 Ridgedale Drive, Highridge, MO 63049. Avelina C. Bolibol used the address of 3477 Nameoki Road, Suite 165, Granite City, Illinois 62040.  The address Bolibol used is the same addresses **WOLFE** used for **PSYCHEDELIC BLUR, LLC's.**  The registered agent for **DREAMWORD GLASS, LLC** is the same registered agent **WOLFE** used for **PSYCHEDELIC BLUR, LLC.**

45. From on or about April 2013 to September 8, 2013, your agents conducting trash runs at the trash dumpsters located at the southeast corner of the building located at **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and the northwest corner of the building located at **13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO.**  Based on evidence collected from the two dumpsters and surveillance of the subjects on site, your agents determined that both dumpsters are used by **WOLFE, GRAVER, PALMER** and their associates indiscriminately.  In fact, on occasion, **WOLFE, GRAVER,** and **PALMER** brought the trash from their house to

18

**Exhibit 5-B**

NC 00014791

**13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO** and disposed of it there.  The following is a summary of some of the evidence collected from those trash runs as they relate to **13761 ST. CHARLES ROCK ROAD, BRIDGETON, MO AND 13765 ST. CHARLES ROCK ROAD, BRIDGETON, MO:**

| Item # | Date of Trash Run | Location | Description of Evidence |
|---|---|---|---|
| 1 | 05/28/2013 | Dumpster located at north west end of 13765 | A zip lock plastic bag filled with 69, 5g packages of Avalon, Novelty Item, Lab Certified.  A sample was analyzed by St Louis County Crime Lab and found to contain XLR-11. |
| 2 | 06/09/2013 | Dumpster located at north west end of 13765 | FedEx Standard overnight envelopes addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Hobies in Milford, CT, BS Unlimited in Oklahoma City, OK, Rex @ Mojo Distributing, Gold River, CA, Fast Stop in Greenville, MS. |
| 3 | 06/09/2013 | Dumpster located at north west end of 13765 | An envelope addressed to **PAGGREGATE**, 2025 Zumbehl Road, PO Box 192 St. Charles, MO with a UPS Store #241 tag.   The tag indicates and the customer's name that is on the box is Mark Palmer. |
| 4 | 06/21/2013 | Dumpster located at north west end of 13765 | A piece of notebook paper with the following items listed: 21 Freedom 1g, 1 Freedom 3g, 1 Freedom 10g, 2 Lights Out 10g, 49 Devil's Dank 10g |
| 5 | 06/21/2013 | Dumpster located at north west end of 13765 | A foil bag with the name Grave Digger 6g, Novelty Item on the front with the water mark "The Outer Edge Genuine" across the package. |
| 6 | 06/21/2013 | Dumpster located at north west end of 13765 | Several Bizarro Incense labels in 3.5g sizes in the following flavors: Lime, Strawberry.  A |

19

**Exhibit 5-B**

NC 00014792

| | | | |
|---|---|---|---|
| | | | label for a product called "Bang! Powder" |
| | | | |
| 7 | 07/07/2013 | Dumpster located at south end of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend that indicates the sample "Mad Hatter" was found to contain: **PB-22 and 5F PB-22** |
| 8 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Mad Hatter 3g Herbal Blend dated February 26, 2013 that indicates the sample "Mad Hatter" does not contain the following cannabinoid classes:        Napthoylindoles, Napthylmethylindoles,        Naphthoylpyrroles, Naphthylmethylindenes,     Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substance many of which are Schedule I controlled substances or are controlled substance analogue. |
| 9 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Avalon 5G Herbal Blend that indicates the sample "Mad Hatter" was found to contain: **PB-22 and 5F PB-22** |
| 10 | 07/07/2013 | Dumpster located at north end of 13761 | A copy of the second page of an AI Biotech Lab Report for Golden Leaf 3g dated February 26, 2013 that indicates the sample "Golden Leaf" does not contain the following cannabinoid classes:            Napthoylindoles, Napthylmethylindoles,        Naphthoylpyrroles, Naphthylmethylindenes,     Phenylacetylindoles and Cyclohexylphenols including a list of 36 different substances many of which are Schedule 1 controlled substance or are a controlled substance analogues. |
| 11 | 07/07/2013 | Dumpster located at north end of 13761 | A printed copy of an e-mail message chain dated    2/5/2013    from    Cindy houseofbliss@hushmail.com    to    **MARK** |

20

**Exhibit 5-B**

NC 00014793

| | | | |
|---|---|---|---|
| | | | paggregate@hushmail.com that included an e-mail for an order dated January 21, 2013 for 1,000 1g Devil's Dank $4,500.00 shipping of $30.00 for a total of $4,530.00. |
| 12 | 07/07/2013 | Dumpster located at north end of 13761 | Several handwritten invoices dated February 2013 through June 2013 addressed to Chuck, MU Fan, Mr. MU Fan, Smokers Choice, Hobies, Smoke and Tackle, Rex, BFU and MoJo for the following items including but not limited to: NT 10 = Night Train 10G, NT 4 = Night Train 4G, BA 4 = Black Arts 4G, LO 4 = Lights Out 4G, LO 10 =Lights Out 10G, BA 10 = Black Arts 10 G) |
| 13 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated May 1, 2013 and July 3, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from Jason @ Hobies, Milford, CT 06461. |
| 14 | 07/07/2013 | Dumpster located at south end of 13761 | FedEx Standard overnight envelopes dated April 26, 2013, May 13, 2013 and May 16, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 818.349.8605 Jeff @ Air Time, Chatsworth CA 91311. |
| 15 | 07/07/2013 | Dumpster located at south end of 13761 | Three FedEx Standard overnight envelopes dated April 29, 2013 addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Lee @ Life Styles, Waterbury, CT 06704. |
| 16 | 07/07/2013 | Dumpster located at south end of 13761 | A FedEx Standard overnight envelope dated May 15, 2013, addressed to **PALMCORP** at 2518 Lemay Ferry Road, Suite 248, St. Louis, MO 63125 from 000.000.0000 Charles, Up In Flamz, Baltimore, MD 21222. |
| 17 | 07/07/2013 | Dumpster located at north end of 13761 | Printed Bizarro Lime 3.5 G Incense Labels |

21

**Exhibit 5-B**

NC 00014794

| 18 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from IMPACK Corp. in Los Angeles, CA 90061, dated 4/25/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 Attn: Mark for **20, 000** 3.5" x 5.5" Custom printed Bunker Buster 5g Pouches, **22,700** 3.5" x 5.5" Custom printed Golden Leaf 3g Pouches, and **21, 500** 3.5" x 5.5" Custom printed Vortex 4g Pouches marked paid 4/25/2013. |
| 19 | 07/07/2013 | Dumpster located at north end of 13761 | A packing slip from StockBagDepot in Chino, CA 91710, dated 2/07/2013 addressed to **PAGGREGATE, LLC** 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 for 8,000 1 oz poly/foil stand up pouches that are clear and silver. |
| 20 | 07/07/2013 | Dumpster located at north end of 13761 | Several pieces of notebook paper that list inventory of items in different totes/boxes: (i.e. 1,050 NT 10 =1050 Night Train 10G, 1,000 NT 4 = 1000 Night Train 4G, 400 BA 4 =400 Black Arts 4G, 700 LO 4 = 700 Lights Out 4G, 1250 LO 10 =1,250 Lights Out 10G, 850 BA 10 = 850 Black Arts 10 G) |
| 21 | 07/07/2013 | Dumpster located at north end of 13761 | A printed Quickbook Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 2/12/2013 addressed to MoJo for 5,000 LO 1 @ $3.00 = $15,000.00, 1,500 LO 4 @ 8 = $12,000.00, 500 NT 4 @ 8.00 = $4,000.00 Shipping $200.00 for a total of $31,200.00 |
| 22 | 07/07/2013 | Dumpster located at north end of 13761 | A printed QuickBooks Invoice from **PAGGREGATE**, 2025 Zumbehl Suite 192, Road, St. Charles, MO 63303 dated 6/11/2013 addressed to MoJo for 5,000 GL 3 @ $5.00 = $25,000.00, 3,300 LO 1 @ $3.00 = $9,900.00, 2500 LO 4 @ 7.00 = $17,500.00 for a total of |

22

**Exhibit 5-B**

NC 00014795

| | | | |
|---|---|---|---|
| | | | $52,400.00 |
| 23 | 07/07/2013 | Dumpster located at south end of 13761 | Copies of the front of 69 checks dated 4/2013 through 6/2013 from :24-7 Food Mart, Airtime Distribution, Area 51 Gifts and Novelties, East Gore Discount #2, Fast Stop, Fox Conn Enterprises, Inc., Grey Industries, Hobies, Johrri Enterprises, Inc., Last Place on Earth, Lifestyles, LLC, M & J Food Stores, Inc., Mojo Distribution, Prime Time Retail, LLC, **PSYCHEDELIC BLUR, LLC**, Puff N Stuff, Raja Nawaz **Smoke Sensations dba Nights of Rave, LLC, South 94 Bait & Tackle Trading Post**, The Den, Tidwell Corporation, Up In Flamez, and Whatever, Inc. These checks were addressed to **PAGGREGATE, LLC** and **PALM CORP** for items described in the memo section as "Inventory, Merchandise and Products that total **$928,369.00** |
| 24 | 08/01/2013 | Dumpster located at south end of 13761 | 1 Night Train Herbal Blend label |
| 25 | 08/01/2013 | Dumpster located at south end of 13761 | 1 empty foil package labeled Black Arts 10g |
| 26 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon denatured alcohol can with white residue around the mouth of the can. A sample of the residue was analyzed by St Louis County Crime Lab found to contain **AB-FUBINACA**. |
| 27 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with white residue around the mouth of the can. A sample of the residue was analyzed by St Louis County Crime Lab and found to contain **AB-FUBINACA**. |
| 28 | 08/01/2013 | Dumpster located at south end of 13761 | One 5 gallon acetone can with loose vegetation stuck to the top of the can |
| 29 | 08/01/2013 | Dumpster located at south end of 13761 | Approximately 10grams of loose vegetation material to include vegetation stuck to several round 1.5g weight label stickers used to state |

23

**Exhibit 5-B**

NC 00014796

| | | | content weight on retail products. A sample of the residue was analyzed by St Louis County Crime Lab and found to contain **AB-FUBINACA** and **5-FLUORO PB-22**. According to DEA's website dated June 2013, **5-FLUORO PB-22** has been found laced on plant material and marked under the guise of herbal incense products. It belongs to the same structural call of substances as JWH 018 and AM-2201. There are no commercial or medical uses for this substance. Although **5-FLUORO PB-22** is not currently scheduled, if intended for human consumption, **5-FLUORO PB-22** may be treated as a controlled substance analogue in Schedule 1. |
|---|---|---|---|
| 30 | 08/01/2013 | Dumpster located at south end of 13761 | One cotton towel wet and soiled with apparent chemical residue by odor. A sample of the cotton towel was analyzed by St Louis County Crime Lab Residue and found to contain **5-FLUORO PB-22.** |
| 31 | 08/01/2013 | Dumpster located at south end of 13761 | 1 woven white bag approximately 24" x 36" with vegetation residue. |
| 32 | 08/01/2013 | Dumpster located at south end of 13761 | A cotton towel with a chemical residue. |
| 33 | 08/01/2013 | Dumpster located at south end of 13761 | 21 used plastic gloves with residue on them. |
| 34 | 08/01/2013 | Dumpster located at south end of 13761 | 3 used breathing masks |
| 35 | 09/08/2013 | Dumpster located at south end of 13761 | Seven (7) packets of synthetic marijuana products packaged for retail sale to include two (2) Night Train 4g, two (2) Mega Kush 4g, one Mega Kush 1.5g, one (1) Dirty Dirt Devil 4g, and one (1) Black Arts 10g. A sample of each blend was analyzed by St Louis County Crime Lab and found to contain one of the following or a combination of the following: **AB-FUBINACA and 5-FLUORO PB-22** |
| 36 | 09/08/2013 | Dumpster located at | Four (4) discarded notes on remnants or scraps |

24

**Exhibit 5-B**

NC 00014797

| | | north west end of 13765 | of white lined paper that read; DDD 300-10 300-4; 300 MH 10 and on back a table reading 50 60 6, 400 BuBu 1.5, , 50 BuBu 10, 100 St 1.5, 200 MK 1.5, 100 DD 4, 100 DD 1, (illegible) UX 4, 50 CiMO (cutoff); and 2000 LO 4 |
|---|---|---|---|

46. In regards to items #4, #5, #6, #7, #8, #9, #10, #11, #12, #17, #18, #19, #20, #21, #23, #24, #25, #26, #27, #28, #29, #30, #31, #33, #34, #35, #36 listed in the chart of trash runs above, your agents know through their investigation that these items are commonly used by individuals involved in the manufacturing, sale and distribution of synthetic marijuana.

47. In regards to Item #12 listed in the chart of trash runs above, your agents have compared these invoices and the notes contained on these invoices to the checks drafted out of **WOLFE's PSYCHEDELIC BLUR** Bank of America account ******333741 and determined that from on or about August 2012 through June 10, 2013, **WOLFE** listed as "Chuck, MU Fan, Mr. MU Fan" on **PALMER'S** invoices has been purchasing numerous blends of synthetic marijuana from **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC.**

48. In regards to Item #23 listed in the chart of trash runs above your agents have compared these checks against the invoices listed in item #20 and determined that for the period 4/2013 through 6/2013 **PALMER d/b/a PAGGREGATE, LLC, NGURU, LLC and PALMCORP, LLC** has sold over **$900,000.00** in synthetic marijuana over the same period of time.

**TRAFFIC STOPS**

49. On September 17, 2013, a Missouri State Highway Patrol officer seized (50) 4 gram packets of "Lights Out," (96) 4 gram packets of "Grave Digger," (25) 5 gram packets of "Darkness" and (1) 4 gram packet of "Night Train" following a traffic stop of **JOHN GALVIN** at mile marker 91 on Interstate 44 in Missouri. **GALVIN** was driving a dark blue 2003 Chrysler Town and Country minivan with MO License Plate FJ2K1V. This vehicle has been observed by law enforcement

**Exhibit 5-B**

NC 00014798

agents in front of the office suites located at 13765 St. Charles Rock Road (locations C through H). Additionally, this vehicle has been observed making deliveries to the Smoke Sensation Nights of Rave store, located at 10532 Page Ave., Overland, MO. After waiving his Miranda rights GALVIN stated that he had been working for **WOLFE** for approximately 1 an one half years. **GALVIN** stated that he had just delivered two boxes of "store products", with each box containing 800 packages, to Bilbos Earth Store in Springfield, Missouri. **GALVIN** said the products are "aroma products" commonly known as "K2". **GALVIN** stated that he makes the delivery every 7 to 10 days and **WOLFE** pays him $300.00 per trip. **GALVIN** also admitted to delivering the products in the St. Louis area including "94 Bait" and another store on Page Avenue. **GALVIN** stated that he knew people smoked the "aroma products" he was transporting and admitted that he smokes the products himself.

50. Based in part on the evidence listed above, on September 25, 2013 agents from Immigration and Customs Enforcement Homeland Security Investigations, within the Department of Homeland Security, United States Postal Inspection Service and Internal Revenue Criminal Investigation obtained and executed a total of thirteen (13) federal search warrants issued in the Eastern District of Missouri for the following locations: 13765 St. Charles Rock Road, Suite 101, Bridgeton MO 63044; 13765 St. Charles Rock Road, Suite 102, Bridgeton MO 63044; 13765 St. Charles Rock Road, Suite 111 , Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 115 , Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 116, Bridgeton, MO 63044; 13765 St. Charles Rock Road, Suite 121, Bridgeton, MO 63044; and 4738 Orchard Drive, Barnhart, MO 63012. Except for the location at 4738 Orchard Drive, Barnhart, MO, 63012, your agents have determined **WOLFE** has a connection to every one of the remaining locations searched on September 25, 2013.

51. As a result of the search warrants, agents recovered the following items in support of the of this search warrant application and affidavit:

26

**Exhibit 5-B**

NC 00014799

a. Approximately 800 kilograms of retail synthetic drugs products and precursor chemicals with a conservative wholesale street value of exceeding $6 million.

b. Several hundred kilograms of carrier material, packaging, chemicals, solvent solutions and equipment used in the manufacturing of the synthetic drugs.

c. Several computers, tablet computers and smart phones.

d. Approximately $117,000.00 in U.S. Currency.

e. An original copy of a State of Missouri Search Warrant, Issued in the 42 Circuit Court of St. Louis County for the business known as Majik Mart Liquor Store 12779 New Halls Ferry, Florissant, MO 63136 and inventory which indicated the officers seized boxes containing miscellaneous synthetic marijuana packets underneath front counter, three boxes containing miscellaneous synthetic marijuana packets in back storage area, U.S. currency.

f. In addition to the e-mail messages recovered in the trash outlined above and the evidence listed above during the execution of the search warrants, agents recovered printed versions of e-mails at the following locations:

**E-mails recovered at 13765 St. Charles Rock Road, Suite 101, Bridgeton, MO 63044**

| From | To | Date | Content |
|------|----|------|---------|
| <phoenixherbals1@gmail.com> | <chuckwolfe61@yahoo.com> | 09.12.2012 | Subject: Phoenix Invoice and Price Sheet<br><br>Hey Chuck here is the new price sheet with the letter and such.  Thank you for taking the time to speak with me today and hope these labs with the letter are helpful.  I know we had spoken of decreasing the price of the 3 gram bag and d what you said makes perfect sense.  But our pricing already has the 1 gram at 2.75 which we gave you a break on at 2.50.  But at the 500 bag mark we cannot alter the 7.50 price point.  I'm sure in the future as things continue to |

27

**Exhibit 5-B**

NC 00014800

|  |  |  | pick up we can come to some sort of new agreement but for now we'll have to stick with this.  Please let me know if this works for you at your earliest convenience and thank you!<br><br>Sincerely,<br>Travis |
| --- | --- | --- | --- |

**E-Mails recovered at 13765 St. Charles Rock Road, Suite 111, Bridgeton, MO 63044**

| From | To | Date | Content |
| --- | --- | --- | --- |
| <rkwolfe1971@yahoo.com> | <stranddist@yahoo.com> | 05.17.2012 | Subject: Liquor & Wine Place<br><br>Raj,<br><br>Attached you will find copies of the three invoices for Liquor & Wine Place in McHenry.  The address is 2202 W. IL Route 120, McHenry, IL 60051.  The invoice marked 5-16 is the one to be delivered, the other two were previously delivered.  The gentleman who is at the store is Haresh.  If you have any problems let me know.  Invoices<br>5-2 =$2,130<br>5-8=$4,200<br>5-16=1,485<br>Total $7815<br>He will most likely write a check but he does often pay in cash.  Charles was in with the doctors all day today and looks as if starting after memorial day, he will start chemo.<br>Thanks Bob |
| <wtsab@gmail.com com> | <rkwolfe1971@yahoo.com> | 05.23.2012 | Subject: Tobacco Box<br><br>50 PRIMO 3G$14.00<br>20 PRIMO 1G $6.50<br>20 COLO 3Gp $12.00<br>10 HIPPI DAZE KUSH 3G $12.00 |

28

**Exhibit 5-B**

NC 00014801

| | | | |
|---|---|---|---|
| | | | He has a $120.00 Credit Thanks Bob----Tom |
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.27.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe Subject:  Order From: Greg Sloannebgreg@gmail.com To:chuckwolfe61@yahoo.com<br><br>Chuck here is another order from somebody. This is not from Jen.  This is from Marcy<br><br>St. John Liquor Attn: Maurice or John 3314 Brown Road St. Louis, MO 63114<br><br>GoGo – 50 @ $12.00 each Total order $600.00 Ground COD |
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.27.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe Subject:  Order for Jen From: Jen To:chuckwolfe61@yahoo.com<br><br>Hi Chuck<br><br>Please sent 500 Go out to the following COD @ 10.00 each piece<br><br>Singh at Village Mart 2720 W. Kearny Street Springfield, MO 65803<br><br>Please sent 200 out to the following COD @ 10.00 each piece<br><br>Nina at Fenton Park Market 1060 Old Highway 141 Fenton, MO 63026<br><br>Thanks Jen Executive Sales Manager |
| <chuckwolfe61@yahoo.com> | <rkwolfe1971@yahoo.com> | 06.28.2012 | This was an e-mail forwarded by Wolfe to Robert Wolfe Subject:  Order for Jen From: Jen Jameson |

29

**Exhibit 5-B**

NC 00014802

| | | | |
|---|---|---|---|
| | | | To:chuckwolfe61@yahoo.com<br><br>Please send out today an order for 100 go @ 10.00 each for<br><br>Sky haven<br>311 Highway 50<br>Warrensburgh, MO 64093.<br><br><br>Thanks Jen Jameson<br>Executive Sales Manager<br>Cloud 9 |
| <cloud9jen@gmail.com> | <rkwolfe1971@yahoo.com> | 07.02.2012 | Subject:  Question and Order<br><br>Robert,<br>Singh at Cillage mart would like 300 go go at 10.00 each sent to him today.  He would like it send and he sends us a check.  Chuck said this would be fine and I do not have to do COD on all of them.  Can you verify?  Also Singh would like us to fax him an invoice from the last order to 417.862.5655.  Thank you Jen Jameson, Executive Sales Manager, Cloud 9. |
| <rlord22@clear.net> | <chuckwolfe61@yahoo.com> | 02.20.2013 | Good Morning from Raymond<br><br>NEW ORDER for IOWA<br><br>2000 1.5 BIZ 900 BB, 900 STRAW, 200 ORIG<br><br>2000 3.Z BIZ 900 BB, 900 STRAW, 200 ORIG<br><br>2000 10G 900 BB, 900 STRAW, 200 ORIG<br><br>1000 1.5 ORGAZ: 500 PINE, 500 VANILLA<br><br>1000 3.5 500 PINE, 500 VANILLA |

**E-mails recovered at 13765 St. Charles Rock Road, Suite 115, Bridgeton, MO 63044**

**Exhibit 5-B**

NC 00014803

| From | To | Date | Content |
|------|-----|------|---------|
| Sherri<bskbeeman@charter.net> | <chuckwolfe61@yahoo.com> | 03.18.2013 | Subject:  Order<br><br>20 spoons (cheap ones)<br>20 chillims (cheap ones)<br>5 dircho spoons<br>50 diamond cut pipes<br>Metal Chamber pipes both sizes 5 each<br>Any metal type pipes 5 of each<br>China grinders 12<br>Wood grinders<br>America made 2 each color<br>Spoon necklaces 5<br>Vaporizers<br>Bats Cing kind and glass if you have<br>Flume bats and Slides<br>Color bowls<br>Plain glass bowls |

## TRAINING EXPERIENCE OF INVESTIGATIVE TEAM

52.  In my training and experience, I have learned that Yahoo! Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Yahoo! Inc. allows subscribers to obtain e-mail accounts at the domain name www.yahoo.com, like the e-mail accounts listed in Attachment A.  Subscribers obtain an account by registering with Yahoo! Inc. During the registration process, Yahoo! Inc. asks subscribers to provide basic personal information.  Therefore, the computers of Yahoo! Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Yahoo! Inc. subscribers) and information concerning subscribers and their use of Yahoo! Inc. services, such as account access information, e-mail transaction information, and account application information.

53.  A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail.  If an e-mail user writes a draft message but does not send it, that message may also be saved by Yahoo! Inc. but may not include all of these categories of data.

31

**Exhibit 5-B**

NC 00014804

54. A Yahoo! Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Yahoo! Inc..

55. In general, e-mail providers like Yahoo! Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

56. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Yahoo! Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

57. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

58. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

32

**Exhibit 5-B**

NC 00014805

59. With my experience and training, and that of other special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime.  The distribution of controlled substance analogues such as synthetic cannabinoid products and substituted cathinone products is often done through small, home based or internet businesses selling products to convenience stores, adult product stores, head shops and gas stations. These products which are often purchased or manufactured at a small price and are sold at prices generating very large profit margins.  Some of the money generated is utilized to continue the business operations.

60. Based on all the foregoing facts, my training and experience, and training and experience of the investigative team,  your affiant submits that there is probable cause to believe that evidence of a violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 1956 will be found in the e-mail addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

61. The disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardized an ongoing investigation and witnesses who have provided information to The Internal Revenue Service Criminal Investigations Division, Immigration and Customs Enforcement, Homeland Security Investigations, the Drug Enforcement Administration, and other state and local authorities and therefore it is requested that these materials be filed under seal.

33

**Exhibit 5-B**

NC 00014806

## ATTACHMENT A

### Property to Be Searched

62. This warrant applies to any and all information linked to or associated with the Yahoo! e-mail
    addresses/accounts chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com for the time period
    January 1, 2010 through and including the date this search warrant is received by Yahoo! Inc.,
    stored at the premises owned, maintained, controlled, and/or operated by Yahoo! Inc. a company
    and e-mail provider headquartered at 701 First Avenue, Sunnyvale, California 94089.

**Exhibit 5-B**

NC 00014807

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Yahoo, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Yahoo! Inc., including any e-mails, e-mail attachments, address books, contact or buddy lists, calendar data, pictures, notepad, records, files, logs, or information that have been deleted but are still available to Yahoo! Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Yahoo! Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mail folders and e-mails associated with the account, including their attachments, stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      A list of all contacts and all contacts information saved in the account, buddy lists, shared calendars saved to the e-mail account or associated to the account,

c.      All communications between chuckwolfe61@yahoo.com and rkwolfe1971@yahoo.com and any other party.

d.      All information saved in a cloud account associated with each account or identifier listed in Attachment A within the possession, custody, or control of Yahoo! Inc.

e.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

**Exhibit 5-B**

NC 00014808