AO 93 (Rev. 01/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
## for the
# WESTERN DISTRICT OF KENTUCKY

In the Matter of the Search of )
Two Packages Located at the UPS Store )
#5369, 3175 South 2nd Street, Louisville, Kentucky )    Case No.    3:14MJ- 196
)
)
)

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or any attorney for the government requests the search of the following person or property located in the Western District of Kentucky:

Two packages located at the UPS Store #5369, 3175 South 2nd Street, Louisville, Kentucky 40208, more particularly described as:

International Express Mail Package EE929751116CN, addressed to Tony Palmer, Mystic Wholesale LLC, 3175 South 2nd Street, Suite #361, Louisville, Kentucky 40208, and

Federal Express Package 803501809310, addressed to Tony Palmer, Mystic Warehouse LLC, 3175 South 2nd Street, Louisville, Kentucky 40208.

The person or property to be searched, described above, is believed to conceal controlled substances and evidence of conspiracy to possess and distribute controlled substances.

I find that the application and affidavit establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant before    April 28, 2014
(not to exceed 14 days)

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ❑    at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or any officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned United States Magistrate Judge.

❑    I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (check appropriate box)    ❑    for _____ days (not to exceed 30).
❑    until, the facts justifying, the later specific date of

Date and time issued: 4/14/14 @ 1325 hrs    _____

City and State: Louisville, Kentucky    DAVE WHALIN
UNITED STATES MAGISTRATE JUDGE
(AUSA initials)

**Exhibit 7**    **NC 00008023**

AO 106 (Rev. 01/09) Application for a Search Warrant

**FILED**

VANESSA L. ARMSTRONG, CLERK

## UNITED STATES DISTRICT COURT
for the
## WESTERN DISTRICT OF KENTUCKY

APR 1 4 2014

**U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY**

| | |
|---|---|
| In the Matter of the Search of )<br>Two Packages Located at the UPS Store )<br>#5369, 3175 South 2nd Street, Louisville, Kentucky )<br>)<br>) | Case No.   $3:14MJ-196$ |

### APPLICATION FOR A SEARCH WARRANT

I, James V. O'Hanlon, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of Kentucky:

Two packages located at the UPS Store #5369, 3175 South 2nd Street, Louisville, Kentucky 40208, more particularly described as:

> International Express Mail Package EE929751116CN, addressed to Tony Palmer, Mystic Wholesale LLC, 3175 South 2nd Street, Suite #361, Louisville, Kentucky 40208, and

> Federal Express Package 803501809310, addressed to Tony Palmer, Mystic Warehouse LLC, 3175 South 2nd Street, Louisville, Kentucky 40208.

The person or property to be searched, described above, is believed to conceal controlled substances and evidence of conspiracy to possess and distribute controlled substances.

The basis for the search under Fed. R. Crim P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☑ contraband, fruits of a crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and the application is based on the facts set forth in the attached affidavit.

James V. O'Hanlon
United States Postal Inspector

*Sworn to before me and signed in my presence.*

Date:   April 14, 2014

City and State:   Louisville, Kentucky

DAVE WHALIN
UNITED STATES MAGISTRATE JUDGE

*(AUSA initials)*

**Exhibit 7**

NC 00008025

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, James V. O'Hanlon, being duly sworn, depose and say:

1.      I, James V. O'Hanlon, am a United States Postal Inspector.  I am currently assigned to the United States Postal Inspection Service, Chicago Division, in St. Louis, Missouri. I have been employed as a Postal Inspector for approximately 24 years.

2.      As part of my duties as a United States Postal Inspector, I investigate the use of the U.S. Mails and private carriers to illegally transport controlled substances and drug trafficking instrumentalities, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.  I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses.  Through my education and experience, and that of other agents, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mails.

3.      I make this affidavit in support of an application for a search warrant for the following two packages located at the UPS Store #5369, 3175 South 2nd Street, Louisville, Kentucky, 40208, more fully described as:

> a.      **INTERNATIONAL EXPRESS MAIL PACKAGE EE929751116CN ADDRESSED TO TONY PALMER, MYSTIC WHOLESALE LLC, 3175 SOUTH 2ND STREET, SUITE # 361,  LOUISVILLE, KY 40208, and**
>
> b.      **FEDERAL   EXPRESS   PACKAGE   803501809310 ADDRESSED   TO   TONY   PALMER,   MYSTIC VAREHOUSE  LLC  3175  SOUTH  2ND  STREET SUITE # 361, LOUISVILLE, KY 40208.**

4.      The search warrants are to be served at a UPS store and will be served during normal business hours.

1

Exhibit 7                NC 00008026

## I.     ITEMS TO BE SEIZED:

5.     The items to be seized at the location to be searched are listed in "**Attachment A**" incorporated within and attached hereto.

6.     Because this affidavit is being submitted for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause for the requested search warrant. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

## II.    FEDERAL STATUTES

7.     **CONTROLLED SUBSTANCES**: A person is in violation of Title 21 U.S.C. Section 841, if that person knowingly or intentionally:

a.     Manufactures, distributes, or dispenses, or possesses with intent to manufacture, distribute, or dispense, a controlled substance; or

b.     Creates, distributes, or dispenses, or possesses with intent to distribute or dispense, a counterfeit substance.

8.     **ANALOGUE CONTROLLED SUBSTANCES ACT**: Under Title 21 U.S.C. § 813, a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

9.     **DEFINITION OF CONTROLLED SUBSTANCE ANALOGUE**: Title 21, U.S.C. § 802(32)(A) defines a "controlled substance analogue" as a substance:

a.     The chemical compound of which is substantially similar to the chemical structure of a controlled substance in Schedules I or II; and

2

**Exhibit 7**                                              NC 00008027

b.     Which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effects on the central nervous system of a controlled substance in Schedules I; or with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

10.     **DISTRIBUTION/MANUFACTURE OF MISBRANDED DRUGS**: A person is in violation of Title 21, U.S.C. § 331 if that person introduces or delivers for introduction into interstate commerce any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded and the manufacture of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

11.     **MONEY LAUNDERING**:  A person is in violation of Title 18, U.S.C. § 1956 if the person, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity; or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

12.     **SMUGGLING**:  A person is in violation of Title 18, U.S.C. § 545 if the person, knowingly and willfully, with intent to defraud clandestinely introduces into the United States any merchandise by passing through the customhouse with a false or fraudulent invoice.

3

**Exhibit 7**                    NC 00008028

13.    **IMPORTATION OF CONTROLLED SUBSTANCES**:    A person is in violation of Title 21, U.S.C. § 952 if the person imports into the United States from any place outside of the United States any Schedule I or II controlled substance.

III.    **CONTROLLED SUBSTANCE ANALOGUES**

14.    I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products. These products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana.    The synthetic compound is usually shipped to clandestine manufacturers through commercial carriers such as UPS. The compounds are then liquidized through the use of denatured alcohol, acetone or other such products and then sprayed on the herb like substance. Currently, there are hundreds of synthetic cannabinoid compounds. The herbs are then bagged and are commonly sold under in head shops, tobacco shops, convenience stores, adult stores and over the Internet.

15.    They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." Although intended for human consumption, these markings are routinely in place in an attempt to fraudulently circumvent the product being identified as a controlled substance analogue.  Additionally, the packages contain no labelling regarding the names and quantities of each active ingredient, directions for use or warnings against use by children or unsafe dosage, methods and duration of administration.    Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

4

**Exhibit 7**                    **NC 00008029**

16.    The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011.    In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws. These substances will produce the same pharmacological effect on the human body when ingested. In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986.

## IV.    DETAILS OF INVESTIGATION

17.    Through this investigation your agents have determined that **MARK PALMER**, **ANTHONY PALMER, PAGGREGATE, LLC, PALMCORP, LLC** and **NGURU, LLC** and others have now become involved in the manufacturing and distribution of synthetic drugs which utilized a location in Barnhart, Missouri to manufacture synthetic drugs and office suites located on St. Charles Rock Road, Bridgeton, Missouri to package and distribute the same.    The synthetic drugs would be manufactured using chemicals shipped to one of these entities at various UPS stores around the country.

18.    Beginning in 2012 and continuing to the present, **MARK PALMER** and his son, **ANTHONY L. PALMER,** created a number of companies including **PAGGREGATE, LLC** in the State of Missouri and **NGURU, LLC** and **PALMCORP, LLC** in the State of Nevada.  As further detailed, investigation reflects that **MARK PALMER** and his son **ANTHONY L. PALMER** have used these companies including but not limited to **PAGGREGATE, LLC, NGURU, LLC** and **PALMCORP, LLC** to:

5

**Exhibit 7**                    NC 00008030

    a.  obtain and establish addresses at UPS Stores located in Missouri, Illinois, Tennessee, Kentucky and elsewhere which they used to purchase and import Schedule I controlled substances and non-controlled cannabinoids into the United States, to purchase and receive the supplies used in the manufacturing, packaging and distribution of synthetic marijuana (i.e. including the bags, labels, ink cartridges, and chemicals used for flavoring), to distribute and collect the payment for the synthetic marijuana products they manufactured and sold outside the metro St. Louis area.

    b.  open bank accounts at Bank of America and elsewhere that were used to facilitate the purchase of Schedule I Controlled substances and non-scheduled synthetic cannabinoids and other supplies used in the manufacturing, packaging marketing and distribution of synthetic marijuana (i.e. including the bags, labels, ink cartridges, and chemicals used for flavoring), to distribute and collect the payment for the synthetic marijuana products they manufactured and sold outside the metro St. Louis area.

19.  According to records on file at the Missouri Secretary of State, from on or about September 6, 2012 until the present, **MARK PALMER** has served as the registered agent of **PAGGREGATE, LLC** (herein "**PAGGREGATE, LLC**"). **PAGGREGATE, LLC** is currently registered at 2025 Zumbehl Road, Suite 192, St. Charles MO 63303. This address is a UPS Store located in St. Charles County, Missouri.

### A. PRIOR BORDER SEIZURES OF SYNTHETIC SHIPMENTS

20.  Your agents queried Department of Homeland Security databases for information related to **MARK A. PALMER and ANTHONY L. PALMER,** their businesses **PAGGREGATE, LLC, NGURU, LLC and PALM CORP, LLC**, addresses used by them

6

**Exhibit 7**        **NC 00008031**

and/or their businesses, the names of their associates and their addresses.  As a result of that query your agents determined the following:

a.      On March 6, 2013, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Anchorage, Alaska, hereafter "CBP Anchorage", seized 3.09 Kilograms of AKB48 N-(5-fluoropentyl), a synthetic cannabinoid controlled substance analogue according to DEA from a parcel inbound to the United States and previously detained on January 26, 2013.  The parcel was addressed to **PAGGREGATE LLC** with a point of contact listed as **MARK PALMER** at 1138 Germantown Parkway, Cordova, Tennessee, 38016 from Deqing Shilin Yngsheng Co. LTD, in China with a point of contact listed as Liu Qi per waybill #8021-1433-7352.  The parcel's contents were manifested as "Sample of Antioxidant" and valued at $15.00 USD.  Pursuant to border search authority the parcel was opened and found to contain a box labeled "product name: Antioxidant 1010" containing three (3) aluminum foil pouches that further contained three (3) clear PVC bags of an off-white powder.  Subsequent lab analysis determined the powder to be AKB48 N-(5-fluoropentyl).  CBP Anchorage appraised the value of the 3.09 kilograms of AKB48 N-(5-fluoropentyl) to be $27,831.19 USD.

b.      On April 23, 2013, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter "CBP Chicago", seized 3.05 kilograms of XLR-11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl) methanone, a synthetic cannabinoid controlled substance analogue according to DEA at the time of the seizure and subsequently temporarily scheduled on May 16, 2013, from a parcel inbound to the United States.  The parcel was addressed to **TONY PALMER** at 4117 Hillsboro Pike, Nashville, Apt/Suite 103 - 363, Tennessee, 37215 from Firmenich Aromatics in China.  The parcel's contents were manifested as "sodium tripolyphosphate same" with an undeclared

7

**Exhibit 7**          NC 00008032

value. Pursuant to border search authority the package was opened and found to contain 3.05 kilograms of a light powder. Subsequent laboratory analysis determined the product to be XLR-11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl) methanone.

c.     On April 23, 2013, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Chicago, Illinois, hereafter "CBP Chicago", seized 3.05 Kilograms of XLR-11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl) methanone, a synthetic cannabinoid controlled substance analogue according to DEA at the time of the seizure and subsequently temporarily scheduled on May 16, 2013, from a second parcel inbound to the United States. The second parcel was addressed to **TONY PALMER** at 2817 West End Ave., Apt/Suite # 126-225 Nashville, Tennessee, 37203 from Firmenich Aromatics in China. The parcel's contents were manifested as "sodium tripolyphosphate same" with an undeclared value. Pursuant to border search authority the parcel was opened and found to contain 3.05 kilograms of a light powder. Subsequent laboratory analysis revealed the substance to be XLR-11 [1-(5-Fluoro-pentyl)1Hindol-3-yl](2,2,3,3-tetramethylcyclopropyl) methanone.

## B.     UNDERCOVER RECEIPT OF SYNTHETIC DRUGS

21.     In March, 2013, an Overland Park, Kansas Police Department confidential informant (herein "CI#13-4008") placed a consensually monitored telephone call to a subject to order a sample package of synthetic cannabinoids. The subject agreed to ship a "sample package." On April 2, 2013, DEA received the "sample package" of products in a Fed Ex package from **Phil, PAGGREGATE, 2025 Zumbehl Road, Suite 192, St. Charles, MO 63330.** The FedEx package contained five 1gram packages of a product labeled "Head Trip," five 1gram packages of a product labeled "Avalon," five 1gram packages of a product labeled "Grave Digger," five 1gram packages of a product labeled "Freedom," five 1gram packages of a

8

**Exhibit 7**          **NC 00008033**

product labeled "Lights Out," five 1gram packages of a product labeled "Devil's Dank," five 1gram packages of a product labeled "Night Train," five 1gram packages of a product labeled "Mega Kush," five 1gram packages of a product labeled "Black Arts," five 1gram packages of a product labeled "Full Throttle", five 1gram packages of a product labeled "Mad Hatter."

22.     On April 12, 2013, the contents of the FedEx "sample packages" were transferred to the Johnson County Sheriff's Office Criminalistics Laboratory for analysis and were completed on May 13, 2013. The results of the lab analysis are as follows:

a.     Lab Item # 2 Vegetation from "Head Trip" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.[1]

b.     Lab Item # 3 Vegetation from "Avalon" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

c.     Lab Item # 4 Vegetation from "Grave Digger" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

d.     Lab Item # 6 Vegetation from "Lights Out" confirmed the presence of FUR-144, XLR11.

e.     Lab Item # 8 Vegetation from "Night Train" confirmed the presence of FUR-144, XLR11.

f.     Lab Item # 9 Vegetation from "Mega Kush" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

g.     Lab Item # 10 Vegetation from "Black Arts" confirmed the presence of FUR-144, XLR11 and 5-FLUOROPENTYL-AKB48.

---

[1] XLR-11 and AKB48 were considered controlled substance analogues by DEA at the time of the seizure. Both substances were temporarily scheduled by DEA on May 15, 2013. FUR-144 is considered by DEA to be a controlled substance analogue.

9

**Exhibit 7**          **NC 00008034**

h.    Lab Item # 11 Vegetation from "Full Throttle" confirmed the presence of FUR-144, XLR11.

i.    Lab Item # 12 Vegetation from "Mad Hatter" confirmed the presence of 5-FLUOROPENTYL-AKB48.

## C.    SYNTHETIC SHIPMENTS

23.    On June 13, 2013, ATF Memphis was notified of suspicious packages which had been delivered to the UPS Store located at 6025 Stage Rd, #42, Bartlett, TN. ATF Special Agents met with the store owner regarding the items. The UPS Store owner advised an **ANTHONY PALMER**, of Mt. Vernon, IL had opened a mailbox at the store on May 23, 2103. At that time **ANTHONY PALMER** advised his address was 1203 N. 18th St, Mt. Vernon, IL 62864. On June 12, 2013, two packages arrived for **ANTHONY PALMER** from China. One of the packages contained a strong chemical odor, causing the UPS Store owner to open the packaging manifest and check its contents. According to the manifest, the package contained 2.3 kilograms of Pentaerythritol. The owner notified authorities and ATF responded. ATF Special Agents inspected the packages which were addressed to **TONY PALMER, NGURU, LLC. Inc.**, at that location. According to the manifest one package contained the Pentaerythriol and the other contained .20KG of Potassium Carbonate. The packages were shipped from two separate companies in China. The ATF Laboratory in Atlanta was contacted regarding the chemicals. Pentaerythritol is a precursor in PETN, a high explosive, but is inert by itself. Potassium Carbonate and Pentaerythritol combined together do not have any uses to the knowledge of the lab.

24.    ATF Agents met **ANTHONY PALMER** on June 13, 2013 when he arrived at the UPS Store to pick up the chemicals. Agents identified themselves and asked to speak with

10

**Exhibit 7**                    NC 00008035

**ANTHONY PALMER**, who agreed to talk with them.  **ANTHONY PALMER** admitted he drove from Mt. Vernon, IL to Bartlett, TN to pick up the packages, an approximately 4 ½ hour drive each way.  **ANTHONY PALMER** stated he takes I-64 to St. Louis then I-55 south to Memphis.  **ANTHONY PALMER** said the company he works for, **NGURU, LLC**, is based out of St. Louis.  **ANTHONY PALMER** advised he was there to pick up the package and transport the same to St. Louis, MO.  **ANTHONY PALMER** advised he uses multiple other UPS Stores to receive shipments, but they are all outside the State of Illinois.  **ANTHONY PALMER** said the company he works for uses the chemicals to make potpourri.  When Agents asked **ANTHONY PALMER** why he drives such a great distance to obtain chemicals that are relatively inexpensive he stated, "As far as I know the companies I deal with are on the up and up, but I do not want to answer any more questions without an attorney present."  Agents concluded the interview of **ANTHONY PALMER** at that time.  **ANTHONY PALMER** was allowed to leave with the chemicals after signing the proper receiving paperwork at the UPS Store.

25.     On June 25, 2013, your agents contacted the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134 by telephone and talked to the store manager. The store manager advised your agents that the store had received two additional international packages addressed to **TONY PALMER**.  She advised the following:

a.     On June 18, 2013, UPS store #869 received International Express Mail Package EE736342346CN addressed to **TONY PALMER, NGURU, LLC INC**. 6025 Stage Road Suite #62 Bartlett Tennessee 38134, USA, from Shanghai Keeps Trading Co., Ltd., Shanghai, China.  According to the packaging, the package contained Brightener and weighed .5 kilograms.

11

**Exhibit 7**                      **NC 00008036**

b.      On June 19, 2013, the UPS Store #869, located at 6025 Stage Road, Suite #42, Bartlett, Tennessee 38134 received International Express Mail Package EE916942899CN addressed to **TONY PALMER, NGURU, LLC INC**. 6025 Stage Road Suite #62, Bartlett, Tennessee 38134, USA. The package did not list a shipper. According to the packaging, the package contained a sample and weighed .13 kilograms.

c.      As is the normal course of business at the UPS Store, after each package arrived and was logged in at the UPS Store, an automatic email was sent from the UPS Store to **TONY PALMER** at the email address they file. According to the group manager the address they have on file is palmcorp@hushmail.com.

26.    On July 12, 2013, HSI Memphis, Tennessee agents executed federal search warrants on the two parcels from the UPS Store #869. The two packages contained sealed foil envelopes that appeared to contain a soft powder substance by feel. Due to chemical hazard concerns, the executing agents did not open the envelopes and forwarded the parcels' contents to HSI St. Louis, Missouri for further processing. On July 13, 2013, the foil envelopes were sent for processing and analysis to the Customs and Border Protection Forensic Laboratory located in Chicago, Illinois. Again, due to chemical hazard concerns, the foil envelopes were not opened by HSI St. Louis, Missouri. The envelopes were forwarded to the Customs and Border Protection Laboratory located in Chicago the same date.

27.    On September 17, 2013, the U.S. Customs and Border Protection Laboratory in Chicago, IL provided their results. The lab analysis identified a number of chemicals in the envelopes including AB-Fubinaca and JWH-018.[2]

---

[2] JWH-018 was temporarily scheduled on March 1, 2011 and permanently scheduled on July 9, 2012.

12

**Exhibit 7**

**NC 00008037**

### D.   SEARCH OF CLANDESTINE MANUFACTURING FACILITY

28.   On September 25 2013, your agents executed a federal search warrant at 4738 Orchard Drive, Barnhart, MO. The electric service was in the name of **MARK PALMER** and the water service was in the name of **PALMER d/b/a PAGGRERGATE, LLC**. Upon executing the search warrant, the agents discovered a synthetic drug manufacturing facility. Among the items observed was a large quantity of herbal substance on a blue tarp that had apparently been sprayed with chemicals and was drying. There were approximately 25 five gallon drums of acetone which is an agent utilized in liquidizing the chemical sprayed on the herbal substance. There were a number of tables containing finished product with scales and baggies with names including Avalon, Mad Hatter and Bizzaro. Each station was set up for the weighing, packaging and labeling of the synthetic products. There were many boxes filled with already processed packages of synthetic drugs.

### E.   SEARCH OF SYNTHETIC DISTRIBUTION OFFICES

29.   On September 25, 2013, federal search warrants were executed at 13761 St. Charles Rock Road, Suite 118, Bridgeton, Missouri and 13765 St. Charles Rock Road, Suites 101, 102, 111, 115, 116 and 121, Bridgeton, Missouri. Based on information developed during the investigation your agents had conducted drive bys and surveillance at these locations and determined that Mark **PALMER** and others were operating out of suites in the buildings located at the same address. Among the items seized from this location were thousands of packets of synthetic drugs with names including Avalon and Bizarro as well as approximately 17 pounds of suspected precursor material. A trailer parked outside the buildings was also searched and found to contain manufacturing items including tarps, spent cans of acetone, opened packets of retail synthetic drugs and unlabeled bags of synthetic drugs.

13

**Exhibit 7**                                          NC 00008038

30.     In the review of document evidence seized from the office located at 13765 St. Charles Rock Rd., #121 on September 25, 2013, your agents determined Mark Palmer and/or Anthony Palmer leased boxes at the following UPS Stores to receive packages

a.     UPS Store #241, 2025 Zumbehl Road, St. Charles, MO 63303

b.     UPS Store #0267, 9051 Watson Road, St. Louis, MO 63126

c.     UPS Store #0336, 2518 Lemay Ferry Road, St. Louis, MO 63125

d.     UPS Store #0614, 1138 N Germantown Parkway, Cordova, TN 38016

e.     UPS Store#0892, 4728 Spottswood Ave., Memphis, TN 38117

f.     UPS Store #2785, 73 White Bridge Road, Nashville, TN 37205

g.     UPS Store #2855, 111 S. Highland Street, Memphis, TN 38111

h.     UPS Store #2863, 4117 Hillsboro Pike, Nashville, TN 37215

i.     UPS Store #2975, 2817 West End Ave., Nashville, TN 37203

j.     UPS Store #3012, 5543 Edmondson Pike, Nashville, TN 37211

k.     UPS Store #3420, 1355 Bardstown Road, Louisville, KY 40204

l.     UPS Store #5369, 3175 S 2nd Street, Louisville, KY 40208

m.     UPS Store #5491, 3477 Nameoki Road, Granite City, IL 62040

TARGET LOCATION: UPS STORE #5369

## F.     TARGET LOCATION: UPS STORE #5369

31.     Investigation of these stores revealed that on or about July 16, 2013 ANTHONY PALMER leased mailbox number 361, UPS Store #5369, 3175 South 2nd Street, Louisville, Kentucky. ANTHONY PALMER listed his address as 1203 N 18th Street, Mt. Vernon, IL 62864 with a telephone number of 618.316.3544 and an E-mail address of apalmer8807@gmail.com.

14

Exhibit 7                              NC 00008039

32.    On February 13, 2014, your agents contacted the UPS STORE #5369 and spoke to the Store Manager. The store manager advised your agents that the store has received two additional international packages addressed to **TONY PALMER** that were not been picked up. She advised the following:

a.    On or about September 24, 2013, UPS Store #5369 received International Express Mail Package EE929751116CN addressed to Tony Palmer, Mystic Wholesale LLC, 3175 South 2ND Street, Suite # 361, Louisville, KY 40208. According to the packaging, the package contained Calcium Carbonate. The package weighs approximately 7.2 pounds..

b.    On or about September 30, 2013, UPS Store #5369 received Federal Express Package 803501809310 addressed to Tony Palmer, Mystic Varehouse LLC, 3175 South 2ND Street Suite # 361, Louisville, KY 40208.    According to the packaging, the package contained Metal Cleaning Powder with a value of $8.00 US. The package weighs approximately 0.4 pounds. As is the normal course of business, the UPS Store emailed **TONY PALMER** at apalmer8807@gmail.com and notified him that the package above had been delivered to the store.

c.    In the normal course of business at the UPS Store, after each package (other than US Postal Service mailings) arrived and was logged in at the UPS Store, an automatic email was sent from the UPS Store to **TONY PALMER** at the email address they have on file. The store manager advised that U.S. Postal service mailings at the location do not generate automatic emails to the customer because they frequently do not require a signature. According to the store manager, the email address they have on file for **TONY PALMER** is apalmer8807@gmail.com.

15

**Exhibit 7**           NC 00008040

d.     On or about October 22, 2013, UPS Store 5369 sent ANTHONY PALMER a letter notifying him that his mailbox is due to be renewed on October 16, 2013 and asked him to come in to renew his mailbox.

33.     As of April 9, 2014, ANTHONY PALMER has not made arrangements to renew his mailbox and has not picked up these two packages which are the target of the requested search warrants.

## V.     TRAINING EXPERIENCE OF INVESTIGATIVE TEAM

34.     With my experience and training, and that of other special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime.  The distribution of controlled substance analogues such as synthetic cannabinoid products and synthetic cathinone products is often done through small, home based or internet businesses selling products to convenience stores, adult product stores, head shops and gas stations. These products which are often purchased or manufactured at a small price are sold at prices generating very large profit margins.  Some of the money generated is utilized to continue the business operations.

35.     Additionally, based upon my training, experience, and participation in investigations involving importation of controlled substances and analogues and other dangerous drugs; from speaking with other Agents and Officers; and the investigation further detailed in this affidavit, I have learned the following:

a.     persons involved in the production of smokable synthetic cannabinoid products or substituted cathinones products (which are both analogues of controlled Schedule I substances) typically illegally import analogue substances into the United States using the United States Postal Service or a similar postal carrier.  Once the analogues have entered the United

16

Exhibit 7

NC 00008041

States, these persons typically, in the case of smokable synthetic cannabinoid products, spray the analogue substance onto an organic material and allow it to dry or, in the case of substituted cathinones products, mix the analogue substances with other compounds to produce the desired mixture. These persons then sell the altered organic compound for human consumption under the street names of "spice" and/or "bath salts" utilizing various product names;

        b.     that controlled substance importers and distributors often intentionally mislabel parcels to hide the fact that the package actually contains controlled substances to avoid the substances being seized;

        c.     that distributors of controlled substance analogues will often mislabel packages to hide the fact that the substance will be utilized for human consumption and maintain labeling and packaging material;

## VI.   AFFIANT'S CONCLUSIONS

36.    Based on all the foregoing facts, and my training and experience, and training and experience of the investigative team, your affiant submits that there is probable cause to believe that evidence of a violation of Title 21, United States Code, Sections 331, 841(a)(1), 813, 846, and 952; and Title 18, United States Code, Sections 545 and 1956, will be found in, the two packages located at the UPS Store #5369, 3175 South 2nd Street, Louisville, Kentucky, 40208, more fully described as:

        a.     **INTERNATIONAL EXPRESS MAIL PACKAGE EE929751116CN ADDRESSED TO TONY PALMER, MYSTIC WHOLESALE LLC, 3175 SOUTH 2ND STREET, SUITE # 361, LOUISVILLE, KY 40208, and**

        b.     **FEDERAL EXPRESS PACKAGE 803501809310 ADDRESSED TO TONY PALMER, MYSTIC VAREHOUSE LLC 3175 SOUTH 2ND STREET SUITE # 361, LOUISVILLE, KY 40208.**

17

**Exhibit 7**             **NC 00008042**

37.    Due to the nature, complexity and the geographic scope of the investigation, and the fact that the owners of this property in this case have all but abandoned the same, the government respectfully requests the courts permission to delay notice for a period of time necessary to allow the government time to gather additional evidence in other districts.

38.    Since the ongoing investigation is being conducted in the Eastern District of Missouri, and the subjects themselves work in and operate out of the Eastern District of Missouri it is respectfully requested that after the agents return the search warrant to the appropriate court of jurisdiction, the court provide the agents permission to remove any and all evidence obtained from the execution of this search warrant from the Western District of Kentucky to the Eastern District of Missouri in order to be processed by a laboratory of their choosing, maintained as evidence and used in the ongoing investigation and or prosecution.

39.    The disclosure of the contents of the Application, Affidavit, and Search Warrant could compromise and jeopardize an ongoing investigation and witnesses who have provided information to the agents conducting the same; therefore it is respectfully requested that these materials be filed under seal.


James V. O'Hanlon
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me and signed in my presence.

Date:  4/14/14

Judge's signature

Dave Whalin
U.S. Magistrate Judge

City and State:
Louisville, Ky

18

Exhibit 7

NC 00008043

## Attachment A

### Items to be Seized

a. INTERNATIONAL EXPRESS MAIL PACKAGE EE929751116CN ADDRESSED TO TONY PALMER, MYSTIC WHOLESALE LLC, 3175 SOUTH 2ND STREET, SUITE # 361, LOUISVILLE, KY 40208, and

b. FEDERAL EXPRESS PACKAGE 803501809310 ADDRESSED TO TONY PALMER, MYSTIC VAREHOUSE LLC 3175 SOUTH 2ND STREET SUITE # 361, LOUISVILLE, KY 40208 and

All contents contained therein, including but not limited to:

Controlled substances and/or controlled substance analogues;

Substances, including herbal substances, utilized in the manufacturing of synthetic cannibinoids and/or cathinones;

Labels, invoices and other documentation indicating origin, destination and/or contents.

19

**Exhibit 7**          **NC 00008044**