# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH A**[1]

I know that in recent years, individuals have begun to manufacture and traffic in smokable synthetic cannabinoid products, many times known on the street as "Spice" or "K2." Smokable synthetic cannabinoid products are a mixture of an organic "carrier" medium, such as the herb-like substance Damiana, which is then typically sprayed or mixed with a synthetic compound chemically similar to THC (tetrahydrocannabinol), the psychoactive ingredient in marijuana. Currently, there are hundreds of synthetic cannabinoid compounds. The five most common of these compounds, JWH-018; JWH-073; JWH-200; CP-47, 497 C8 homologue; and 47, 497 cannabicyclohexanol, were "emergency scheduled" by the DEA in March 2011. In response, clandestine manufacturers and traffickers began distributing smokable synthetic cannabinoid products containing slightly varied synthetic cannabinoid compounds in an attempt to circumvent newly enacted federal and state laws. Smokable synthetic cannabinoid products are commonly purchased in head shops, tobacco shops, convenience stores, adult stores and over the Internet. They are often marketed as incense, potpourri or "fake weed" and almost always carry the markings "not for human consumption." These markings are routinely in place in an attempt to fraudulent circumvent the product being identified as a controlled substance analogue. Users of these products have reported effects similar to marijuana, but many times greater to include but not limited to paranoia, panic attacks, increased heart rate and increased blood pressure.

---

[1] Exhibit 2-I, ¶ 16, Affidavit in support of search warrant 4:13MJ07227 SPM.

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH B[2]**

Through experience I know that individuals, in an attempt to circumvent laws in place which make the possession and distribution of certain synthetic drugs illegal, seek out and purchase or produce substances which have a similar but slightly different chemical structure. These substances will produce the same pharmacological effect on the human body when ingested. In response to this production, Congress enacted the Controlled Substance Analogue Enforcement Act of 1986.

**PARAGRAPH C[3]**

Through research, training and experience, I know that the synthetic cannabinoid 1-pentyl-3-(1-naphthoyl)indole (JWH-018) is a schedule I controlled substance, and that until July 2012 the synthetic cannabinoids: 1-Pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250), 1-Pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122) and 1-(5-Fluoropentyl)-3-(1-naphthoyl)indole (AM2201) met the definition of controlled substance analogues when intended for human consumption. On July 9, 2012, these substance, JWH-018, JWH-250, JWH-122, AM2201 became permanently scheduled as control substances pursuant to the Synthetic Drug Abuse Act of 2012 (herein "SDAPA"). SDAPA amended the Controlled Substance Act (herein "CSA") by legislatively placing "cannabimimetic agents" and 26 substances in Schedule I. As referenced earlier, I know these substances to be considered hallucinogens and further affect the human body in a similar way to THC, the active hallucinogen found in the organic drug marijuana.

---

[2] Exhibit 2-I, ¶ 17, Affidavit in support of search warrant 4:13MJ07227 SPM.
[3] Exhibit 2-I, ¶ 18, Affidavit in support of search warrant 4:13MJ07227 SPM.

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH D[4]**

According to the DEA Office of Diversion Control, Drug and Chemical Evaluation Section various synthetic cannabinoids (e.g., JWH-018, etc.) laced on plant material have been encountered by law enforcement in recent years. These are promoted under the guise of herbal incense products. These products laced with synthetic cannabinoids are smoked for their psychoactive effects. In response to State and Federal control of these synthetic cannabinoids, a transition to new synthetic cannabinoids laced on plant material has been observed. AKB48, 5F-AKB48 and XLR -11 are three of the many synthetic cannabinoids recently encountered on the designer drug market.

**PARAGRAPH E[5]**

On May 16, 2013, the Deputy Administrator of DEA issued a final order to temporarily schedule three synthetic cannabinoids under the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions of Title 21, U.S.C. § 811(h). The substances are (1-pentyl-1H-indol-3-yl)(2,2,3,3- tetramethylcyclopropyl)methanone (UR-144), [1-(5-fluoro-pentyl)-1H- indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (5-fluoro-UR-144, XLR11) and N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide (APINACA, AKB48). This action is based on a finding by the Deputy Administrator that the placement of these synthetic cannabinoids and their salts, isomers and salts of isomers into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety.

---

[4] Exhibit 2-I, ¶ 19, Affidavit in support of search warrant 4:13MJ07227 SPM.
[5] Exhibit 2-I, ¶ 20, Affidavit in support of search warrant 4:13MJ07227 SPM.

3

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH F[6]**

AKB48 and 5F-AKB48 belong to a structural class with a core indazole structure. They are structurally related to other synthetic cannabinoids with a core indole structure, such as the Schedule I substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances. AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior to their appearance on the designer drug market. AKB48 is pharmacologically similar to Schedule I substances THC and various synthetic cannabinoids (e.g., JWH-018, AM2201 etc.). In vitro studies show that AKB48, similar to $\Delta$9-THC and various synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist properties in functional assays, suggesting that it would have the same in vivo effects as $\Delta$9-THC and various synthetic cannabinoids. The binding affinity of AKB48 is higher than that of $\Delta$9-THC. Based on structure-activity relationship studies, 5F-AKB48 is expected to bind to CB1 receptors as well. There are no published studies as to the safety of AKB48 or 5F-AKB48 for human use. AKB48 and 5F-AKB48 were not previously reported in the scientific literature prior to their appearance on the designer drug market. There are no commercial or medical uses for these substances. Information on user population in the U.S. is limited, and includes information from drug user internet forums. AKB48 and 5F-AKB48 abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products. AKB48 is a schedule I controlled substances under the Federal Controlled Substances Act. If intended for human consumption, 5F-AKB48 may be treated as a "controlled substance analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813.

---

[6] Exhibit 2-I, ¶ 21, Affidavit in support of search warrant 4:13MJ07227 SPM.

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH G[7]**

During this investigation, your agents and members of the investigative team were confronted with a new synthetic cannabinoid, AB-FUBINACA. Although AB-FUBINACA does not appear in Schedule I, your agents, through their research have determined that both AB-PINACA and AB-FUBINACA are cannabimimetic indazole-derivatives. These substances were identified as designer drugs in illegal products in Japan. According to the articles that discusses the discovery of the substances (Forensic Toxicol (2013) 31:93–100), the samples used for analysis were three products purchased via the Internet in July 2012 in Japan; one as a chemical and two as herbal products. Each of the herbal products (A and B) contained about 3g of mixed dried plants. The AB-FUBINACA was extracted and isolated out of the 3 gram sample of the herbal product B. According to Wikipdeia, AB-FUBINACA is a drug that acts as a potent agonist for the cannabinoid receptors and was originally developed by Pfizer in 2009 as an analgesic medication but was never pursued for human use. Subsequently in 2012, AB-FUBINACA was discovered as an ingredient in synthetic cannabis blends in Japan, along with a related compound AB-PINACA. (Even if this new substance is not determined to be a controlled substance analogue, manufacturing and distribution of this substance intended for human consumption without proper labeling is in violation of 21 U.S.C § 331.)

---

[7] Exhibit 2-I, ¶ 22, Affidavit in support of search warrant 4:13MJ07227 SPM.

# EXHIBIT 11

TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH H**[8]

XLR11 (also known as 5F-UR144 also known by the chemical name [1-(5-fluoropentyl)-1*H*-indol-3-yl](2,2,3,3- tetramethylcyclo-propyl)methanone), JWH-018, and AM2201 belong to a structural class of substances sharing a core indole structure. This core structure (scaffold) is substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances. Behavioral pharmacology studies show that 5F-UR144 and XLR11, similar to JWH-018, have Δ9-THC-like activity in animals. In mice, these substances decrease overall activity, produce analgesia, decreases body temperature, and produce catalepsy. Together, these four effects are used by scientists to predict Δ9-THC-like psychoactivity in humans. In drug discrimination studies in mice, 5F-UR144 and XLR11 generalized to Δ9-THC similarly to JWH-018, i.e. produced subjective effects similar to those of Δ9-THC. *In vitro* studies show that 5F-UR144 and XLR11 bind to the brain cannabinoid receptor (CB1 receptor) similarly to JWH- 018 and AM2201. There are no published studies as to the safety of 5F-UR144 or XLR11 for human use. XLR11 was not previously reported prior to encountering on the designer drug market. There are no commercial or medical uses for these substances. Information on user population in the U.S. is limited, and includes information from drug user internet forums. 5F-UR144 and XLR11 abuse is not monitored by any national drug abuse surveys. Poison control centers continue to report adverse health effects in response to the abuse of herbal incense products and this abuse is both a public health and safety concern. XLR11 is a schedule I controlled substances under the Federal Controlled Substances Act.

---

[8] Exhibit 5-A ¶ 25 of Affidavit in support of search warrant 4:14MJ07002 SPM.

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

**PARAGRAPH I[9]**

  14. PB-22 and 5F-PB-22 are two synthetic cannabinoids recently encountered on the designer drug market. PB-22 and 5F-PB-22, JWH018 and AM2201 belong to a structural class of substances sharing a core indole structure. This core structure (scaffold) is substituted at the 1- and -3 positions to give rise to these substances. Behavioral pharmacology studies show that JWH-018 has activity in animals similar to that of $\Delta 9$ – THC but with higher affinity and efficacy than $\Delta 9$ – THC, suggesting that it would have the same effects as $\Delta 9$ – THC *in vivo*. Based on the structure-activity relationship studies, PB-22 and 5F-PB-22 are expected to have similar effects. PB-22 and 5F-PB-22 were not previously reported prior to their appearance on the designer drug market and there are no commercial or medical uses for these substances. Medical examiners and postmortem toxicology reports demonstrate the involvement of 5F-PB-22 in the death of at least five individuals. Prior to February 10, 2014, PB-22 and 5F-PB-22, if intended for human consumption, may have be treated as a "controlled substance analogue" under the CSA pursuant to 21 U.S.C §§802(32)(A) and 813. On February 10, 2014, the Deputy Administrator of DEA issued a final order to temporarily schedule PB-22 and 5F-PB-22 under the Controlled Substances Act (CSA) pursuant to the temporary scheduling provisions of Title 21 U.S.C. §811(h).

---

[9] Exhibit 9, ¶ 14, Affidavit in support of search warrant 4:14MJ07119 SPM.

# EXHIBIT 11

## TABLE OF PARAGRAPHS A THROUGH J REFERENCED IN EXHIBIT 10

## PARAGRAPH J[10]

36. An investigation was conducted for information relating to MARK A. PALMER and ANTHONY L. PALMER, their businesses PAGGREGATE, LLC, NGURU, LLC and PALM CORP, LLC. As a result of that investigation your agents determined the following:

   a. On March 6, 2013 at approximately 9:19 am, Department of Homeland Security (DHS), Customs and Border Protection (CBP) in Anchorage, Alaska, hereafter "CBP Anchorage", seized 3.09 Kilograms of AKB48 N-(5-fluoropentyl), a synthetic cannabinoid controlled substance analogue per DEA control # 7201, from a parcel inbound to the United States and previously detained on January 26, 2013. The parcel was addressed to PAGGREGATE LLC with a point of contact listed as MARK PALMER at 1138 Germantown Parkway, Cordova, Tennessee, 38016 from Deqing Shilin Yngsheng Co. LTD, in China with a point of contact listed as Liu Qi per waybill #8021-1433-7352. The parcel's contents were manifested as "Sample of Antioxidant" and valued at $15.00 USD. Upon intensive examination on January 26, 2013 pursuant to CBP's border search authority derived from 19 CFR 162.6 and 19 USC 1467, CBP Anchorage discovered the parcel's contents to be a box labeled "product name: Antioxidant 1010" containing three (3) aluminum foil pouches that further contained three (3) clear PVC bags of an off-white powder. CBP Anchorage detained the parcel and sent a sample of its contents to the CBP laboratory in San Francisco, California. Upon the lab's determination of the sample as AKB48 N-(5-fluoropentyl), CBP Anchorage completed the seizure of the parcel on March 6, 2013. CBP Anchorage appraised the value of the 3.09 kilograms of AKB48 N-(5-fluoropentyl) to be $27,831.19 USD.

---

[10] Exhibit 2-I, ¶ 36(a), Affidavit in support of search warrant 4:13MJ07227 SPM.