UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MARK PALMER, et. al., | ) ) | No. 4:14CR00175 AGF (DDN) |
| and | ) ) | |
| GREG SLOAN, et al., | ) ) | No. 4:14CR00152 RWS (NCC) |
| Defendants. | ) ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION
### FOR FRANKS HEARING

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and James C. Delworth, James C. Delworth, Jennifer A. Winfield and Erin O. Granger, Assistant United States Attorneys for said District, and states the following in response and opposition to Defendants Robert Wolfe, Chuck Wolfe, Joseph Gabrick, Mark Palmer and Samuel Leinecke's (hereinafter "Defendants") Motion for a Franks Hearing.

Defendants have filed a motion and memorandum requesting a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Defendants in support of their motion for a Franks hearing make two allegations: a) The affiants do not have the requisite background to make statements regarding whether substances meet the definition of controlled substance analogues; and b) Certain statements set out in the affidavit concerning controlled substance analogues are

1

misleading. As subsequently discussed in detail, these allegations are misplaced. Regardless, defendants fail to identify, let alone assert, that any statements contained in the affidavits were deliberately or recklessly false or that the affidavits omitted truthful statements. Accordingly, a showing has not been made to support a Franks hearing in this case.

It is well established that "[T]o obtain relief under Franks, 'a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement, or omitted a truthful statement from his warrant affidavit.'" United States v. Mashek, 606 F.3d 922, 928 (8th Cir. 2010); see also United States v. McIntyre, 646 F.3d 1107, 1113-14 (8th Cir. 2011) (quoting Mashek). Furthermore, before a defendant may receive such a hearing, the reviewing magistrate judge must determine that the allegedly false statement was necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154 (1978); United States v. Mashek, 606 F.3d 922, 928 (8th Cir. 2010) (citing United States v. Reinhollz, 245 F.3d 765, 774 (8th Cir. 2001)); United States v. Jansen, 470 F.3d 762, 765-66 (8th Cir. 2006); United States v. Sandoval-Rodriguez, 452 F.3d 984, 988 (8th Cir. 2006). "Allegations of negligence or innocent mistake will not suffice to demonstrate a recklessness or deliberate falsehood." Mashek, 660 F.3d at 928 (citing Franks, 438 U.S. at 171). "In determining if 'an affiant's statements were made with reckless disregard for the truth,' the test 'is whether, after viewing all the evidence, that affiant must have entertained serious doubts as to the truth of his statement or had obvious reasons to doubt the accuracy of the information he reported.'" McIntyre, 646 F.3d at 1114 (quoting United States v. Butler, 594 F.3d 955, 961 (8th Cir. 2010). "A showing of deliberate or reckless falsehood is not lightly met." Id.

Defendants have not met their burden with regard to either prong of Franks. With respect to the first allegation, defendants do not contend that the affiant's background

2

information is false or in reckless disregard of the truth which is necessary to support a <u>Franks</u> hearing.  Defendants simply state that they do not have the requisite scientific background in chemistry and pharmacology to support the statements in the affidavits concerning whether substances would meet the statutory requirement to be considered controlled substance analogues.  Significantly, defendants never state that the underlying statements regarding the chemicals are false.  In other words, defendants never assert that any of the substances are not scheduled substances or do not meet the statutory definition of controlled substance analogues under Title 21, United States Code, Section 802(32)(A).

The statements in the affidavits challenged by the defendants generally appear in a section of the affidavits entitled "Controlled Substance Analogues" which provides an overview to the Court regarding cases of first impression involving synthetic substances.  As indicated in the affidavits, drug traffickers were and are constantly shifting among synthetic cannabinoids and cathinones with slightly different molecular structures in order to avoid scheduling measures yet still distribute a substance providing the user with the same type of "high."  Additionally, the Controlled Substance Analogue section provides background with respect to efforts to schedule, through Congressional action as in the Synthetic Drug Abuse Act of 2012 or emergency scheduling efforts by DEA, various substances as they have been identified by law enforcement.  The affidavit references a number of synthetic cannabinoids such as JWH-018, JWH-122, AM2201, XLR11, AKB48, PB-22 and 5F-PB-22, all of which have been scheduled.

The affidavits then go on to identify a substances 5F-AKB48 which would constitute a controlled substance analogue under Title 21, United States Code, Section 802(32)(A).  The affidavits cite a second substance AB-FUBINACA, now a scheduled controlled substance, as

also meeting the definition but add that even it did not meet the definition, its distribution without proper labelling violates Title 21, United States code, Section 331 (misbranding).

The "Controlled Substance Analogues" section of the affidavits prefaces its discussion of scheduling and controlled substance analogue determinations with "[t]hrough research, training and experience, I know that...." (i.e. Orchard Drive affidavit, paragraph 18)   The discussions regarding a determination of whether a substance meets the definitional requirements of a controlled substance analogue reference are clearly based upon research.  The paragraphs addressing this issue reference "in vitro studies," "were not previously reported in the scientific literature," "your agents, through their research," and a citation to "Forensic Toxicol (2013) 31:93-100)." (i.e. Orchard Drive affidavit, paragraphs 21 and 22)   This is acknowledged to some extent in the affidavit by defendant's expert Dr. Kesselring who states "...by conducting internet searches, I found text of documents that closely matched the text of the affidavit…." (Defendant's Exhibit 12, paragraph 11).  The fact that the affiants did not have a scientific background is irrelevant in light of the fact that the information was obtained through research and was accurate.

Defendants' expert states that in order to determine whether a substance meets the definition of 'controlled substance analogue' set forth in the statute requires a person to have "a significant level of training and expertise in organic chemistry and molecular structure identification in order to render such a highly subjective expert comparison." (Defendants' Exhibit 12, paragraph 4; see also paragraphs 12 and 21).   The definition is part of a criminal statute and constitutes an element for ultimate determination by a jury.  The statute was necessarily meant to be applied in a common sense manner by jurors who would not have the training and expertise which the defense argues is necessary.   McFadden v. U.S. 576 U.S. ---,

135 S.Ct. 2298 (2015);   United States v. Ramos, 814 F.3d 910 (8th Cir. 2016)   Similarly, the material set forth in the affidavit relies upon scientific information but does not require that either the affiant who prepared the affidavit or the judge who reviews the affidavit have a requisite level of expertise in organic chemistry and molecular structure identification before rendering a judgment.

The affiants' statements are clearly based upon research which does not necessitate a scientific background.  A search warrant in a murder investigation does not require that the affiant have a background in pathology to indicate that the cause of death was blunt force trauma.  Similarly, a search warrant for a computer in a child pornography investigation does not require that the affiant have a background in computer forensics.  It is only necessary that the information be truthful.   Significantly, the defense does not challenge that either 5F-AKB48 or AB-FUBINACA are controlled substance analogues, the issue underlying affiant's statements.  The backgrounds of the affiant at best would go to the weight and not to the validity of the information contained in the indictment.

With respect to defendants' second allegation, they fail to demonstrate that any of the information contained in the affidavit is false or in reckless disregard to the truth.  As subsequently discussed, the only alleged statement the expert claims is false is with respect to an assumption the expert makes regarding the intent of the affiant and not to a statement actually set forth in the affidavit.

Defendants only identify a few statements in the affidavits as misleading. The affidavit by Defendants' expert Dr. Kesselring challenges five particular portions of the affidavits, although they are re-stated several times in both the defense motion and Dr. Kesselring's

affidavit in reference to the same challenged language contained in different affidavits. The five challenged portions of the affidavit are as follows:

        a.    Dr. Kesselring's affidavit, paragraphs 5, 6, 9, 10, 14, 17, 19:

In paragraph 5, Dr. Kesselring cites the definitions of five structural classes of "Cannibimimetic Agents" as set forth in Title 21, United States Code, Section 812(c)(d)(2)(A). Dr. Kesselring then references in subsequent paragraphs whether certain substances do or do not fall within one of the recognized classes of Cannabimimetic Agents under the statute. This definitional statute is wholly irrelevant to the search warrants in this case. Section 812 seeks to broaden the scope of substances that can be considered scheduled and not to limit the application of the definition of Controlled Substance Analogues. The affidavits reference either Schedule Substances or Controlled Substance Analogues and do not seek to include any of the chemicals within the expanded scheduling umbrella of falling with the recognized classes of Cannabimimetic Agents set forth in Section 812. Thus, this definition and statute are not set out in or referenced in any of the affidavits. The search warrants seek court authorization to seize, among other items, controlled substances or controlled analogues which meet the definition under Title 21, United States Code, Section 802(32)(A). Whether these substances also fall within the recognized classes of Cannabimimetic Agents is not relevant to the issue of probable cause.

Dr. Kesselring in paragraphs 14 with similar language in paragraphs 17 and 19 in relevant part states "…Affidavit states that AKB48 and 5F-AKB48 "are structurally related to other synthetic cannabinoids with a core indole structure, such as Schedule I substances JWH-018 and AM2201. These core structures (scaffolds) are substituted at the 1- and 3-positions. This statement is, at minimum, misleading because JWH-018 and AM2201 fall

6

within a specific recognized structural class of Cannabinmimetic Agents under Title 21, U.S.C. Section 812 and the materials AKB48 and 5F-AKB48 which have indazole cores, do not fall within any of the defined structural classes of Cannabimimetic Agents." Dr. Kesselring's conclusions are misplaced as he seeks to apply a statutory section that is not relevant. The affidavit is based upon the alleged distribution of controlled substances and controlled substance analogues that meet the definition under Title 21, United States Code, Section 802(32)(A). Again, whether or not these substances do or do not fall with the recognized structural class of Cannabinmimetic Agents is not relevant to these affidavits. In other words, a substance can still be considered a controlled substance analogue without being within a recognized structural class of Cannabinmimetic Agents.

      b.    Dr. Kesselring's affidavit, paragraph 7: This paragraph, in relevant part, provides:

> Moreover, the term 'structurally related' used in Paragraph 21 of the Orchard Drive Affidavit is not a term that is defined, nor does it have precise scientific meaning. **If the Affidavit intends to suggest** that the 'structural relationship' it claims AKB48 and 5F-AKB48 to have with other synthetic cannabinoids such as Schedule I substances JWH-018 and AM2201 renders AKB48 and 5F-AKB48 to be controlled substance analogues of JWH-018 and AM2201 within the definition of analogue under Title 21 U.S. C. Section 802(32)(A)i), **then that assertion** of Paragraph 21 of the Affidavit is false. (emphasis and underlining added) To conclude that AKB48 and 5F-AKB48 are controlled substance analogues of JWH-018 and AM2201 on that basis would be to say that "structurally related" is sufficient to meet the Section 802(32)(A)(i) criteria of "substantially similar to...." (emphasis added)

Dr. Kesselring makes an assumption regarding what the affiant intended and then proves that assumption false. None of the affidavits state that either AKB48 or 5F-AKB48 are considered controlled substance analogues of JWH-018 or AM2201. In fact, AKB48 was temporarily scheduled on May 16, 2013. All of the challenged affidavits were signed after that

date.  It would illogical to argue or to make the assumption that the agents were claiming that AKB48 met the definitions of a controlled substance analogue when it was already scheduled and therefore controlled.  AKB48 and 5F-AKB48 share substantially similar chemical structure such that 5F-AKB48 meets the chemical structure prong of the definition for purposes of considering 5F-AKB48 an analogue of the scheduled controlled substance AKB48.  This is not challenged by Defendants.

        c.    Dr. Kesselring's Affidavit, paragraphs 8 and 21:  This paragraph in relevant part provides that "[e]ven if claims about the in vitro pharmacologic activity of AKB48 were found to be true, there is no evidence presented in to support a conclusion that 5F-AKB48 would have similar pharmacologic activity to THC or any synthetic cannabinoid."

Dr. Kesselring does not state that the information is false.  The affidavit states "In vitro studies show that AKB48, similar to Δ9-THC and various synthetic cannabinoids, binds to the brain cannabinoid CB1 receptors and displays agonist properties in functional assay, suggesting that it would have the same in vivo effects as Δ9-THC and various synthetic cannabinoids.  The binding affinity of AKB48 is higher than that of Δ9-THC.  Based on structure-activity relationship studies, 5F-AKB48 is expected to bind to CB1 receptors as well."  Dr. Kesselring merely states that there is no evidence to support the conclusion.  It is a reasonable inference that if the scheduled chemical AKB48 has a certain pharmacological effect, that 5F-AKB48 which is substantially similar in chemical structure is likely to have a similar pharmacological effect.  The rate of introduction of new synthetic chemicals does not allow for in depth pharmacological studies but logical inferences can be drawn for purposes of establishing probable cause.

    d. Dr. Kesselring's Affidavit paragraph 10:   The affidavit indicates that AKB48 is a synthetic cannabinoid controlled substance analogue per DEA control #7201.  The affidavit should have referenced DEA control # 7048 which involves AKD48 instead of DEA control #7201 which involves AM2201.  Regardless, once again defendants fail to establish that 5F-AKB48 is not a controlled substance analogue of AKB48, just that in their opinion there is not sufficient scientific support in the affidavit.

    e. Dr. Kesselring's Affidavit paragraphs 11, 15:   These paragraphs in relevant part provide:  "R 1 and R2 have no independent significance without a related structural illustration of the corresponding substitution positions of each terms.  The affidavit contains no material that establishes where R1 and R2 are found on any corresponding illustration, or the significance of those positions to the conclusion the affidavit reaches."

  In paragraph 21 of the Orchard Drive Affidavit referenced by Dr. Kesselring, the affidavit states in relevant part:  "They are structurally related to other synthetic cannabinoids with a core indole structure, such as the Schedule I substances JWH-018 and AM2201.  These core structures (scaffolds) are substituted at the 1- and 3-positions (R1 and R2, respectively) to give rise to these substances." (see also paragraphs 24 and 25 of the Yahoo E-Mail affidavit and paragraphs 13 and 14 of the Winding Stair Affidavit)  The affidavits, while at times use the short hand version R1 and R2 define these terms in other paragraphs with R1 referring to the 1-position and R2 to the 3-position with respect to their molecular structure.

  Defendants' failure to demonstrate that the affidavit deliberately or recklessly included a false statement in the affidavits forecloses a <u>Franks</u> hearing.  However, assuming for purposes of argument, not only the assertion by the defendants that the challenged statements are misleading or unsubstantiated but that they are in fact false, the statements do not impact a probable cause

finding. The challenged paragraphs, utilizing the description from Dr. Kesselring's affidavit, are as follows:

1. Orchard Drive Affidavit (Defense Exhibit 2-I): Defendant challenges paragraphs 21, 22 and a segment of paragraph 36(a). (See Dr. Kesselring's affidavit, paragraphs 6-10)  This affidavit is 78 pages and contains 78 numbered paragraphs.

2. Yahoo E-mail Affidavit (Defense Exhibit 5-B): Defendant challenges paragraphs 24, 25 and 26.  (See Dr. Kesselring's affidavit, paragraphs 14-17)  This affidavit is 35 pages and contains 62 numbered paragraphs.

3. Winding Stair Affidavit (Defense Exhibit 9): Defendant challenges paragraphs 13 and 14.  (See Dr. Kesselring's affidavit, paragraphs 19-21)  This affidavit is 30 pages and contains 47 numbered paragraphs.

Although set out separately, the challenges are to the same set of statements but repeated for each affidavit. Extracting these challenged paragraphs containing these statements from the affidavit would have a de minimums impact that would not be noticeable. None of these paragraphs deal with the facts underlying the investigation but merely to the scientific basis for concluding that two of the many chemicals are controlled substance analogues. Most of the synthetic drugs referenced in the affidavit were scheduled.  Thus the deletion of references to two chemicals that could be considered controlled substance analogues is insignificant to the consideration of probable cause.

In conclusion, defendants fail to establish that any of the statement in the affidavit are recklessly false or if deleted would change the probable cause basis for the issuance of the search warrants.  Accordingly, defendants' motion should be denied.

WHEREFORE, the Government, requests this Court to dismiss defendants' motion for a <u>Franks</u> hearing.

        Respectfully submitted,

        RICHARD G. CALLAHAN
        United States Attorney


        *s/ James C. Delworth*
        JAMES C. DELWORTH, #29702MO
        JENNIFER A. WINFIELD, #53350MO
        ERIN O. GRANGER, #53593MO
        Assistant United States Attorneys
        111 South 10th Street, Room 20.333
        St. Louis, MO 63102
        (314) 539-2200


## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2016, the foregoing motion was filed electronically with the Clerk of the Court and a copy was emailed to the following:

    Attorneys of Record for defendants.

        *s/ James C. Delworth*
        JAMES C. DELWORTH, #29072MO
        Assistant United States Attorney