UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
    VS.                             ) No. 4:14-CR-175(AGF)
MARK PALMER, SAMUEL LEINICKE,       )
CHARLES WOLFE and ROBERT WOLFE,     )
                                    )
                    Defendants.     )
_____)


MOTION TO SUPPRESS/EVIDENTIARY HEARING
BEFORE THE HONORABLE DAVID D. NOCE
MAY 27, 2016
ST. LOUIS, MISSOURI

FOR THE PLAINTIFF:

    JAMES C. DELWORTH
    ERIN O. GRANGER
    OFFICE OF U.S. ATTORNEY
    111 South Tenth Street, Suite 2000
    St. Louis, MO  63102
    (314) 539-2200

FOR THE DEFENDANTS:

    SHELBY M. COWLEY
    THE LAW OFFICES OF SHELBY M. COWLEY
    1717 Park Avenue
    St. Louis, MO  63104
    (314) 266-7581
    (Defendant Mark Palmer)

    R. TYSON MUTRUX
    MUTRUX LAW FIRM
    1717 Park Avenue
    St. Louis, M 63104
    (314) 270-2273
    (Defendant Mark Palmer)

    JASON A. KORNER
    LAW OFFICE OF JASON A. KORNER
    7911 Forsyth Boulevard, Suite 300
    St. Louis, MO  63105

(314) 409-2659
(Defendant Samuel Leinicke)

J. WILLIAM LUCCO
CHRISTOPHER P. THRELKELD
LUCCO & BROWN
224 St. Louis Street
P.O. Box 539
Edwardsville, IL  62025
(618) 656-2321
(Defendant Charles Wolfe)

ZACHARY J. BOROWIAK
THE BOROWIAK LAW FIRM, LLC
225 S. Meramec, Suite 1100
St. Louis, MO 63105
(314) 537-2351
(Defendant Robert Wolfe)


    Proceedings recorded by mechanical stenography;
transcript produced by computer.
_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
111 South Tenth Street, Third Floor
St. Louis, MO  63102
(314) 244-7449

```
 1              (PROCEEDINGS BEGAN AT 9:00 AM.)

 2          THE COURT:  All right.  In the case of the

 3   United States against Mark Palmer, Samuel Leinicke,

 4   Charles Wolfe and Robert Wolfe, Case No. 4:14-CR-175, we have

 5   a hearing this morning where -- I guess the conclusion of the

 6   pretrial evidentiary presentation in this matter.

 7          Ms. Granger and Mr. Delworth are here for the

 8   United States.  Let's see.  Who's here for Mr. Palmer?

 9          MS. COWLEY:  Good morning, Your Honor.  Shelby Cowley

10   and Tyson Mutrux for Mr. Palmer.

11          MR. MUTRUX:  Good morning, Your Honor.

12          THE COURT:  All right.  And -- Oh, all right.

13          MR. KORNER:  Jason Korner for Samuel Leinicke.

14          THE COURT:  Okay.  Is Mr. Palmer here?

15          MS. COWLEY:  No, Your Honor, he's not.

16          THE COURT:  But he is free on bond.

17          MS. COWLEY:  Yes.

18          THE COURT:  All right.  He -- He -- He could have

19   been here.

20          Okay.  Is Mr. Leinicke here?

21          MR. KORNER:  No, Your Honor.  We spoke about it.

22   He's in Iowa.  Without evidence being heard this morning, he

23   made the decision not to come down.

24          THE COURT:  All right.  That is fine.

25          Let's see.  Who's here for Mr. Wolfe, Charles Wolfe?
```

```
 1              MR. LUCCO:  Bill Lucco, Your Honor, here with

 2    Chris Threlkeld, and Mr. Wolfe is present.

 3              THE COURT:  Okay.  All right.  Thank you.

 4              MR. THRELKELD:  Good morning, Your Honor.

 5              THE COURT:  All right.  Thank you.

 6              And for Robert Wolfe?

 7              MR. BOROWIAK:  Your Honor, Zach Borowiak here for

 8    Robert Wolfe.

 9              THE COURT:  Okay.  And he is not present.

10              MR. BOROWIAK:  He is not present, Your Honor.

11              THE COURT:  Okay.  All right.  And he is free on

12    bond.

13              MR. BOROWIAK:  Correct, Your Honor.

14              THE COURT:  All right.  Let me look at or ask

15    Mr. Delworth:  Do you have a presentation to make this morning

16    with respect to documents?

17              MR. DELWORTH:  Your Honor, I can proceed.  I guess it

18    was the Government's motion for a *Franks* hearing, so I was --

19    so I was getting -- They've got the burden, initial burden of

20    proof.  So I was going to just basically respond to what they

21    had to present.

22              THE COURT:  Well, that's fine.  But they -- Correct

23    me if I'm wrong, and if I'm wrong, I apologize.  I was

24    expecting a presentation of a number of search warrant

25    documents.
```

1          MR. DELWORTH:  Oh.

2          THE COURT:  There was a discussion of 31, I think, or

3     30.

4          MR. DELWORTH:  Yes, Your Honor.  I can -- I -- I --

5     I'll -- I'll have that present in the court.  I've -- They've

6     already been filed.  I've got those upstairs.  I can -- I will

7     make copies --

8          THE COURT:  Okay.

9          MR. DELWORTH:  -- and present all of that -- that --

10    that to the Court.

11         THE COURT:  Okay.  They've been filed.  Is that what

12    you said?

13         MR. DELWORTH:  Well, they've -- I mean yeah.  I mean

14    when we obtained them in the original case, but I will present

15    all of those, all of the 31 that have been challenged to the

16    Court.

17         THE COURT:  Okay.

18         MR. DELWORTH:  Okay.

19         THE COURT:  I thought that's why we were here.

20         MR. DELWORTH:  Oh, okay.

21         THE COURT:  Now just one second.

22         MR. DELWORTH:  Well, Your Honor, ---

23         THE COURT:  Just one second.

24         MR. DELWORTH:  Okay, sorry.

25         THE COURT:  Just one second.  I thought we were here,

1   and you were going to present -- There wasn't going to be a

2   need for officers to testify, identifying the search warrant

3   documents that were issued and executed and upon which the

4   Defendants had some arguments to be made about the accuracy,

5   the -- whatever the -- I'm going to say truthfulness because,

6   to my recollection, they're not being argued.  The affidavits

7   are not being argued to be falsehoods but are argued to be

8   constitutionally being filled out and signed under oath by the

9   officers with reckless disregard for whether or not the

10  information was accurate.  That's my understanding of the

11  presentation this morning, and we're here for the hearing.

12          Yes, sir.

13          MR. DELWORTH:  Okay.  I'm sorry.

14          THE COURT:  And by "hearing," I believe it was an

15  idea, you know, expectation that I would listen to

16  presentations since -- from the -- from counsel about the

17  matter.

18          MR. DELWORTH:  Just for clarification, Your Honor, I

19  guess the defense have filed a Motion to Suppress the search

20  warrants.  As exhibits to that, they have -- they attached the

21  search warrants and affidavits.  So they are of file -- they

22  are on file with the Court.  I mean I've got ---

23          THE COURT:  All 31.  I've looked at the -- at the

24  motions.  I've looked at the arguments, --

25          MR. DELWORTH:  Yes.

1          THE COURT:  -- the briefing.

2          MR. DELWORTH:  Right.

3          THE COURT:  I have not gone through 31 --

4          MR. DELWORTH:  Right.

5          THE COURT:  -- search warrants on my monitor.

6          MR. DELWORTH:  Right.  They -- They were all attached

7     as exhibits in terms of -- I mean I've got the exhibits here,

8     but they were all attached as exhibits to the Defendants'

9     Motion to Suppress Evidence.

10          THE COURT:  Okay.  I'm not disputing that.

11          MR. DELWORTH:  Oh, okay.  So ---

12          THE COURT:  All right.  So you're going to adopt, as

13    the Government's presentation on those matters, those search

14    warrants, those documents, those items of evidence that were

15    attached to the motions.

16          MR. DELWORTH:  Yes.

17          THE COURT:  Okay.

18          MR. DELWORTH:  Yes, Your Honor.

19          The way that the motions have been structured, there

20    was a Motion to Suppress the Evidence based upon the fact that

21    the affidavits did not have sufficient probable cause to

22    support the search warrants.  That was kind of bootstrapped

23    upon an argument being made for a *Franks* hearing and

24    indicating that should the Court grant the *Franks* hearing --

25    should the Court grant the *Franks* hearing and provide relief

1    under *Franks* to delete the challenged sections, those

2    deletions, in addition to some of the challenged arguments set

3    forth in the motion, would render the affidavits without

4    sufficient probable cause.  As the Court, obviously, is aware,

5    the basis of probable cause is reviewed on the four corners of

6    the indictment or the affidavit, rather.  There are 31

7    affidavits.  I mean I -- I think that they -- they stand.  I

8    -- The defense made certain challenges on them which I've

9    addressed in my motion to -- put in my response to the Motion

10   to -- to Suppress, so I think that they're adequately

11   addressed there.  I'll be happy to answer any questions that

12   the Court may have.  Other than that, I'm basically here in

13   response to the assertions that have been made with respect to

14   the *Franks* hearing.

15         THE COURT:  Okay.  All right.  Thank you.

16         MR. DELWORTH:  Thank you.

17         THE COURT:  All right.  Let's see.  Ms. Cowley, you

18   may present your position.

19         MS. COWLEY:  Thank you, Your Honor.

20         Mr. Lucco is actually going to speak first for all of

21   the Defendants.

22         THE COURT:  Okay.  That's fine.

23         MR. LUCCO:  May it please the Court, counsel.

24         Yeah; perhaps I'll add to the clarification of

25   Mr. Delworth and then add a little more clarification as to

1   how we would like to proceed, Your Honor.

2          THE COURT:  All right.

3          MR. LUCCO:  We understand we're here today for our

4   motion for you to at a later time conduct a *Franks* hearing.

5   We believe that we have ---

6          THE COURT:  We're here for a suppression hearing.

7   And I'm going to take these affi -- the documents into

8   consideration on the arguments, and I'm also hear for the

9   arguments made for the *Franks* arguments.  Now you may proceed.

10         MR. LUCCO:  That was not our understanding, but,

11  nevertheless, I will so proceed as we have it today.  I'm

12  going to present for the Defendants the portion of the

13  argument that shows the state ---

14         THE COURT:  Okay.  Well, let me ask you:  Are you

15  arguing that there's no probable -- Putting aside the *Franks*

16  arguments, are you saying there's no probable cause for the

17  issuance of those search warrants on behalf of all of the

18  Defendants remaining in the case?

19         MR. LUCCO:  I'm not sure I understand that question.

20  I'm sorry.  If you -- When you say "putting aside the *Franks*

21  arguments," ---

22         THE COURT:  Let's assume -- Let's assume that the

23  items in the affidavits that you believe should be extracted

24  or the Court should consider without considering those

25  portions of the affidavits that you believe are

1    constitutionally -- should be removed from the Court's

2    consideration of the propriety of the issuance of the search

3    warrant, with respect to the issuance of each of those 31

4    search warrants, is it your argument that there's no probable

5    cause, putting aside those arguments?  So, therefore,

6    considering those ---

7              MR. LUCCO:  It is, Your Honor.  It is.  But more

8    importantly, ---

9              THE COURT:  No.  Wait a second.  It is what?

10             MR. LUCCO:  We agree.  There's no probable -- It is

11   our argument there's no probable cause.

12             THE COURT:  Okay.  On what basis?

13             MR. LUCCO:  Well, first of all, our -- our position

14   today is:  We have made the substantial preliminary showing.

15             THE COURT:  That's not the question I'm asking you.

16             MR. LUCCO:  Okay.  Well, that's the question --

17   That's why I thought we were here, Your Honor.

18             THE COURT:  We're here, number one -- I'll go back

19   and review the records, but it's my recollection at the

20   arraignment of each of the Defendants, each Defendant took up

21   the Court's suggestion that an oral Motion to Suppress

22   Evidence be made generally.  We're here for that.

23             We're here for the Government's oral motion for the

24   Court to make a determination of the admissibility or not of

25   the arguably suppressible evidence.  We're here today for the

1   presentation.  The arguments have been made.  I have read the

2   briefs regarding the -- the entitlement to challenge those

3   affidavits based -- based upon *Franks*.  I understand the

4   arguments.

5        MR. LUCCO:  I'm not sure.  Have you -- Are you

6   granting us the *Franks* hearing?  Because we would --

7        THE COURT:  I am ---

8        MR. LUCCO:  -- we would call witnesses and prove our

9   allegations at such a hearing.  I'm sorry.  I certainly

10  misunderstood.  I can't speak for ---

11       THE COURT:  Well, we're going to have to reset it

12  because you misunderstood what we were here for today.

13       MR. LUCCO:  And if I'm wrong and my counsel ---

14       THE COURT:  It was my understanding -- It was my

15  understanding at a time when you all were represented by

16  counsel, I think it was Mr. Crowe said that the declaration of

17  Doctor -- What's his name?

18       MR. LUCCO:  Kesselring.

19       THE COURT:  Kesselring; made the presentation on

20  behalf of the parties that the affidavits were issued and

21  signed with reckless disregard for the truth.  Is that a fair

22  statement?

23       MR. LUCCO:  That is.

24       THE COURT:  What more would you add to that argument?

25  To that presentation?

1          MR. LUCCO:  Well, I would -- I would highlight from

2     the brief why we think that is reckless.  I would counter the

3     Government's response why they believe it is not.

4          THE COURT:  And that's why we're here today.  That's

5     my understanding of why we're here today; also, including

6     whether or not there's probable cause absent the arguments on

7     -- based upon *Franks against Delaware*.

8          MR. LUCCO:  I think I'm understanding better now,

9     Your Honor, where you're driving at.  I'm going to -- So I'm

10    going to say:  Our intention today is I'm going to make a

11    presentation about what we believe the evidence shows on the

12    face of the affidavit and in conjunction with Dr. Kesselring's

13    declaration that the Government's presentation to the

14    Magistrates was reckless disregard for the truth.

15         Mr. Borowiak is going to make the second part, if you

16    will, and he'll state to the Court the implication of that on

17    probable cause so that we can eventually have a full

18    evidentiary hearing on the matter.

19         Now if I may, ---

20         THE COURT:  I'm going to take a recess at this time.

21    We'll return at 9:45.  I want you all to be sure that all of

22    this is presented to the Court, and I'll be here for as long

23    as it takes, but we'll be in recess until 9:45.

24         CLERK:  All rise.  Court is now in recess.

25         (Court recessed from 9:20 AM until 9:45 AM.)

1          THE CLERK:  All rise.  This Honorable Court is again

2    in session.  You may be seated.

3          THE COURT:  All right.  Mr. Lucco, you may begin.

4          MR. LUCCO:  Thank you, Your Honor.

5          As I said earlier, I want to address the nature of

6    the allegations set forth in the affidavit which we believe,

7    when weighed against the declaration of Dr. Kesselring,

8    demonstrate a reckless disregard for the truth, and when the

9    consequences of those are considered, as will be commented

10   upon by Mr. Borowiak, we're entitled to a *Franks* hearing.

11         I suggest to the Court:  If –- If –- If a Magistrate

12   was handed a document like many of these affidavits are that

13   are 70, 90 pages in length that have lots of scientific

14   language in them, chemical compound formulas in them, that if

15   the Court was also handed at the same time, that Magistrate, a

16   document that alerted the Court that there would be a person

17   versed in the field of Chemistry that is reflected in the

18   analysis between controlled substances and controlled

19   substance analogues, and that document alerted the Magistrate

20   as follows, telling them:  You will find, Your Honor, that the

21   statement is, at a minimum, misleading; that the assertion is

22   false; that no scientific evidence is presented to support the

23   assertion, nor is there a reference to a study that

24   substantiates.  There's no evidence presented to support the

25   conclusion.  The conclusion is one that is not scientifically

1    justified.  This, too, is, at a minimum, misleading.  There's

2    no basis to support the assertion.  The assertion is

3    incorrect.  It appears to be a careless replication of text

4    from uncited source that omits material needed to understand

5    it.  It provides no basis.

6           And you saw that those kinds of statements, alerts,

7    if you will, were carried over regarding the other affidavits

8    as well, in general, many of those are repeated, you would

9    find in others that the expert would tell you in his note that

10   this just highlights the confusion presented by the affidavit;

11   that it makes conclusions based on unnamed, undisclosed

12   studies; that these are unsubstantiated claims; that the

13   affidavit extends those claims without evidence; that the

14   affidavit projects those claims again without evidence; that

15   these are presented without scientific justification and on

16   and on without repetition or with much repetition due to the

17   repetitious nature of the allegations asserted over and over

18   in the many affidavits.

19          I think if -- if a Magistrate knew that, they

20   wouldn't be granting that search warrant.  They'd certainly be

21   saying:  Let's have a hearing.  I'm getting some serious

22   allegations here regarding errors, misstatements, misleading

23   statements, lacking foundation, no such scientific

24   justification, false.  I'm hearing enough here that makes me

25   think we ought to have a hearing on this matter because we

1  know the threshold test is:  Have we come up with a

2  substantial preliminary showing?  It's only at that next

3  hearing that we would demonstrate by proof this is true.

4          So I could go back and go through each one of those

5  characterized statements that are criticisms regarding the

6  foundational basis of these affidavits, but you can read those

7  and the Court has read those in Dr. Kesselring's declaration

8  already.  But they go to the heart of the basis for having a

9  search warrant, thinking there's criminal activity connected

10  to either controlled substances or controlled substance

11  analogues either temporarily or permanently scheduled.

12          Now there's also the assertion -- And I think the

13  Court needs to think in that neutral Magistrate role in this.

14  You're being presented with this pound of documents but now

15  you happen to have the crib sheet that alerts you to problems.

16  You'd be mindful that the affiant in these cases says over and

17  over, "I know that."

18          So there's another instructive point by

19  Dr. Kesselring, and he makes the point that much of the

20  scientific jargon put out in these paragraphs -- and he gives

21  the -- he gives to the Court the numbered paragraphs -- cannot

22  be known by someone who isn't well educated in Organic

23  Chemistry, Biochemistry, Medicinal Pharmacology, a variety of

24  subjects and fields in which he himself is such an expert, as

25  set forth in his affidavit.

1          Now the Government responds to that in an effort to

2     say, "Well, just because all this -- these criticisms exist,

3     that you're really trying to say that the affiant,

4     Mr. Anderson or Mr. House or whomever, has to be an expert or

5     Your Honor has to be an expert to understand these things."

6          We are not saying that; absolutely not saying that.

7     But the person who says he knows must demonstrate he knows.

8     And if that knowledge is not of his own expertise and training

9     and research, then it must be directed to the source of that

10    knowledge so the Magistrate can determine whether that source

11    is, indeed, a reliable source.  That's all we're saying.  That

12    when you step forward as an affiant and say, "Here,

13    Your Honor, I know these 93 paragraphs," well, how do you know

14    that, sir?

15         The Government responds by saying, "Well, this has

16    clearly been researched."  They say that a number of times.

17    "It's clearly been researched."  Well, has it been?

18         The -- The three things I think I can highlight from

19    our motion is the only cited research is from *Wikipedia* where

20    they say literally, "According to *Wikipedia*," so forth.  That

21    I don't think this Court or any court is going to take as

22    reliable scientific source.

23         There's much language in the paragraphs that is

24    complicated science, and it talks about R1 and R3 positions.

25    I'm going to use that loosely because Your Honor will see

1  those in a number of the paragraphs of alleged falsehoods;

2  that what Dr. Kesselring has essentially said was, "This --

3  The only way I can understand this is I can see" -- he doesn't

4  use this term; I'm using this term -- "that these were cut and

5  pasted from other texts; that somebody went somewhere."  It's

6  not attributed.  We don't know where that "somewhere" is and

7  cut-and-pasted comments about some of these compounds.

8          But to further bolster Dr. Kesselring's point that

9  you need a level of understanding that is not shown in these

10  affidavits, they cut and pasted in a very inartful way that

11  included representations to positions in the compounds; that

12  when you -- when you understand, as Kesselring did, what the

13  cut-and-pasted text says, you realize it's missing the

14  illustration or the other documentation necessary to

15  understand the cut-and-pasted text.

16          The point being that the neutral Magistrate,

17  regardless of his or her level of scientific expertise, is

18  being presented with a -- with a document, with an assertion

19  that really has all the trappings of -- of "I know that."  And

20  then you regurgitate this scientific jargon, and it looks

21  good.  But as Kesselring says, it doesn't mean anything.  And

22  you can't even know it doesn't really mean something or mean

23  nothing because they haven't presented what you need to even

24  understand that paragraph.

25          So they -- Over and over Kesselring criticizes them

1    for making conclusions that are not substantiated by

2    scientific evidence or any evidence that they put forth, nor

3    are cited to any attributed articles at all.  So you have

4    *Wikipedia*.  You have a rather amateurist cut-and-paste job

5    that is throughout on this particular position, and these

6    matters are without attribution to cited reliable research or

7    training.

8           So I counted up at one time 18 assertions just going

9    through what is called the -- It's Exhibit NI, that affidavit

10   by Agent House.  I counted up 18 of these points that

11   Dr. Kesselring described in the manner I initially read.

12          Those are repeated throughout.  They're repeated in

13   many forms and in some other paragraphs in Mr. Anderson --

14   Agent Anderson's affidavit which is Exhibit 5 and, again, in

15   Agent House's later June, 2014, affidavit which is Exhibit 9,

16   I believe.

17          So we picked out three affidavits to focus on.  We

18   did that because we believe at this stage, Your Honor, we

19   simply have -- we have the threshold of substantial showing,

20   preliminary showing.  It's anticipated that if the Court

21   agrees that the accusations of recklessness are sufficiently

22   severe, that they need to be tested at a hearing, that we

23   would get that hearing, and at that point we would demonstrate

24   these things clearly to the Court.

25          So I must say in an interest of being short here, not

1    making -- going over, obviously, matters the Court has read, I

2    believe that when you cite these things -- Maybe Kesselring

3    has not used magic words.  Maybe he's not said, "This is

4    falsehood; this is a lie; this is reckless," but when you look

5    at the litany of these where he uses terms over and over as

6    "at a minimum, misleading," he says at one point "false," at

7    one -- at many times, "incorrect," that the overall

8    presentation to the Magistrate is reckless in nature, and it

9    includes many misleading, incorrect, and I would suggest to

10   the Court reckless statements that -- on which the -- the

11   affidavit -- I'm sorry -- the warrants would be founded.

12   These were foundational parts of the affidavit.  They go to

13   the controlled substance analogue aspect of this, to the heart

14   of it, which is what the heart of this case is about.  It has

15   peripheral size.  I understand that.  But we're here because

16   of the controlled substance analogue matters, and these go to

17   the heart of that.

18           The person did not show the training; nothing in the

19   affidavit about their experience and training; cited to

20   anything that would have given them the personal ability to

21   know these things.  It's quite fine for them to have recited

22   to other sources but they don't.  It's almost as if they act

23   like they have this information; they know this information.

24   That simply cannot be.

25           So, Your Honor, for those reasons, I think we've

1   established preliminary -- a preliminary showing of

2   recklessness on the part of these affidavits.  And

3   Mr. Borowiak is going to comment on the implication of those

4   on the -- on the probable cause.

5              THE COURT:  All right.

6              MR. LUCCO:  Thank you.

7              THE COURT:  Thank you.  Thank you very much.

8              Mr. Borowiak, go ahead.

9              MR. BOROWIAK:  Yes, Your Honor.  Thank you very much.

10             Your Honor, Mr. Lucco laid out the -- the reasons for

11  *Franks* relief.  And the second half of the analysis has to do

12  with:  If the language in question is, in fact, found to be

13  reckless and it's ultimately removed from the affidavits in

14  question, does probable cause remain within those affidavits?

15             The foundational language, which is attacked here, is

16  very important because a great deal of what the Government is

17  contending and what is mentioned within the four corners of

18  the affidavits that were presented to the Magistrates, the

19  overwhelming majority has to do with controlled substance

20  analogues.  Because it's an analogue, this substance has to be

21  spun through that additional step of the 802(32)(A) analysis.

22  Is it chemically similar?  And does it have the chemically --

23  or a similar effect on the human body?

24             If the Government cannot establish in its affidavits

25  that those items are, in fact, similar, then you're removing

1   any live criminality to those -- to those substances.  And

2   they are, in fact, then just that; substances without any

3   criminality attached to them.

4          It's -- It's easy in a drug case having to do with

5   cocaine or methamphetamine to -- to, in fact, say, "Okay, it's

6   a controlled substance because it's scheduled."  But in this

7   case, because you have a grand overwhelming number of

8   substances that are, in fact, alleged to be controlled

9   substance analogues, they have to be spun through that

10  additional analysis.

11         Now if that is removed, as I said, that's one reason

12  why the affidavits would fail to show probable cause to the

13  Court.

14         Another reason is that, Your Honor, we're attacking,

15  I believe it was, 24 search warrants here.  And the way that

16  they're structured is that you have Exhibit 1 which, I

17  believe, is in June of 2013 and then your last one, which was

18  attached to the *Franks* motion, which is Exhibit 9 was in June

19  of -- excuse me -- executed in June of 2014.

20         Each affidavit in between piggybacks upon the

21  findings of the search warrant that was executed before it.

22  So if the first affidavit fails for probable cause and the

23  next affidavit is used in order to show the Court that there's

24  additional criminal conduct or a light of criminal conduct

25  there, well, that -- that information then shall be removed as

22

1    well.  So there's this cascading waterfall effect that follows

2    through each one of the affidavits that we're challenging.

3            In addition, Your Honor, one of the points that we

4    make in our Motion to Suppress is that once this reckless

5    language is removed, what you're left with is discussions and

6    interactions between individuals and businesses.

7            Now what we have, there's basically discussions as to

8    people who may be involved in other cases, their interactions,

9    interactions between our clients, interactions between

10   third-parties.  They're painted with this brush of having, you

11   know, dealing in synthetic drugs, dealing in synthetic

12   narcotics.  But, again, there's this vague understanding as to

13   what synthetic narcotics are we talking about.  It creates a

14   real ambiguity.  And one of the interesting things in this

15   case, and as each one of these affidavits proceed, is that the

16   types of what can be under the umbrella of synthetic narcotics

17   or synthetic drugs is actually three kinds of substances.  Are

18   we talking about controlled substance analogues that have to

19   be analyzed under the 802(32)(A) analysis?  Are they

20   substances that have been emergency scheduled?  Or are they

21   substances that are particularly listed just as scheduled

22   substances within the Controlled Substances Act?

23           And that is not clear.  There's an ambiguity that's

24   created there, Your Honor, which leaves nothing but, you know,

25   interactions between individuals that are colored in any light

1  of criminality.  And if they're not colored in that light, the

2  Magistrate would not be led to believe that you would find

3  evidence of criminal conduct or contraband in any of the

4  places that are meant to be searched.

5          In a -- In a civil context, Your Honor, if -- you

6  know, the phrase is, you know:  Ambiguity is construed against

7  the drafter.  Obviously, this is a criminal case.  So what's

8  the remedy?  What remedy do you have when something like this

9  comes up?

10          The Court is allowed to take a step, when examining

11  the information provided to it in the affidavits within the

12  four corners of the document, to use the totality of the

13  circumstances provided to it and of that would include the

14  knowledge and reliability of the affiant.  And I would propose

15  to the Court that once the affiant is shown to be reckless,

16  any other assertions that the affiant may make should be seen

17  in a different kind of light; that he's speaking in these

18  broad terms of, you know, individuals talking to one another

19  for the purpose of, you know, dealing or trafficking in

20  synthetic drugs, but then, again, he can't exactly say what it

21  is.  And if you can't say what it is, you can't say what

22  statute is actually being violated.  And if you can't

23  establish that, you can't say that there's any illegal

24  activity going on.

25          So, Your Honor, for those reasons and the cascading

1  effect that occurs once you start picking apart each one of

2  these, you'll see that the affidavits -- again, Exhibit 1 and

3  going all the way through Exhibit 9 -- start to fall apart.

4  And once you start picking apart earlier parts of these

5  affidavits, the latter ones begin to fall apart.  And that's

6  why, Your Honor, there's no probable cause remaining after the

7  *Franks* determination is made and the language is found to be

8  reckless.

9          THE COURT:  All right.  Then the question I have is

10  one I had posed earlier:  Putting aside the *Franks* argument,

11  do you have a basis for arguing or are you arguing also that

12  there's no probable cause, even accepting the information in

13  the affidavits that you're challenging now?

14          MR. BOROWIAK:  Your Honor, it's -- it's our position

15  today that based ---

16          THE COURT:  This is today.  This is the time --

17          MR. BOROWIAK:  Okay.

18          THE COURT:  -- when the Court receives the

19  evidentiary information it needs and the argument it needs to

20  establish whether or not the items seized in the execution of

21  the search warrants -- And by saying that, also, I assume

22  there's no issue with the execution of the search warrants.

23  What has been challenged is the issuance of the search

24  warrants; that that evidence should be suppressed.  So the

25  arguments are the scientific arguments, and they're

1    substantial.  I'm only wanting to know:  Do you have any other

2    argument that the affidavits do not establish probable cause?

3            MR. BOROWIAK:  Your Honor, I -- at this time I have

4    nothing to present to the Court with that matter.  However,

5    Your Honor, we are not, as the defense counsel in a group, are

6    not prepared to argue that -- that specific point today,

7    Your Honor, because it was our understanding that we were

8    arguing the *Franks* motion.

9            THE COURT:  Rule 12(g) -- I think it is Rule 12(g) --

10   says if you don't put it in before the District Court before

11   trial, it's waived, can be held to be waived when you -- if

12   the matter goes to trial.

13           MR. BOROWIAK:  Your Honor, may I have a moment to

14   confer with --

15           THE COURT:  Sure.

16           MR. BOROWIAK:  -- Government counsel?

17           (Pause)

18           THE COURT:  And I do want to correct the record.  It

19   wasn't 12 -- Rule 12(g).  It's Rule 12(c) about the Court

20   setting deadlines, extending or resetting deadlines upon -- as

21   the Court determines; consequences of not making a timely

22   motion under Rule 12(b)(3) which includes Motions to Suppress.

23           Okay.  I just want to know -- I mean everyone has had

24   a long time, I think, to file Motions to Suppress.  And I just

25   want to know if there's anything else.  I want the record to

1   be clear about whether or not there's anything other than the

2   arguments that have been made this morning and that are in the

3   pending motions.

4            MR. BOROWIAK:  Your Honor, to the point that the

5   Court is making it if there's any additional information that

6   we would be arguing for a specific Motion to Suppress,

7   Your Honor, we –– as I said earlier –– And I understand, you

8   know, the Court's position on it, you know, because, you know,

9   as I said after conferring with counsel, you know, we at this

10  time are not ready to get into the –– the issue of whether or

11  not the affidavits on their own would have any –– any issues

12  that could be challenged as a suppression issue.  And,

13  therefore, Your Honor, we would be asking this Court for

14  additional time to be able to come back and argue those

15  specific points that we could be making.

16            Through looking at the affidavits, there may be some

17  –– some points that we would like to make with the Court, but

18  as that –– our preparation for today was for the specific

19  *Franks* motion and this subsequent Motion to Suppress that we

20  had previously filed with the *Franks* motion, we would be

21  asking the Court for more time to –––

22            THE COURT:  Well, you're going to have to show me

23  good cause, and you're going to have to put together a motion.

24  I'm not going to grant you time to supplement the motions that

25  have been filed.  This case was filed in 2014.  Counsel have

```
 1    been in the case for a long time.  The Court has reset the
 2    deadlines for good cause because there's a lot of evidence, a
 3    lot of information, 31 search warrants as I understand.  You
 4    referred to 29.  I think you referred to 29.
 5              MR. BOROWIAK:  I think it was 24, Your Honor.
 6              THE COURT:  Pardon?
 7              MR. BOROWIAK:  24, Your Honor.
 8              THE COURT:  24.
 9              MR. BOROWIAK:  Yes.
10              THE COURT:  There are 24 search warrants that you're
11    contesting?
12              MR. BOROWIAK:  Yes.  And they are in our exhibit -- I
13    believe it's Exhibit 10 that was filed with the *Franks* motion.
14    It -- It lists in a graph each one of those --
15              THE COURT:  Okay.
16              MR. BOROWIAK:  -- search warrants.
17              THE COURT:  Now Mr. Delworth refers to 31 search
18    warrants.  So are you not contesting seven search warrants?
19              MR. BOROWIAK:  Your Honor, the search warrants that
20    we're just contesting are those that are outlined in our
21    Exhibit 10.
22              THE COURT:  Because I'm going to provide
23    Judge Fleissig with a Report And Recommendation.  It may be
24    long and extensive, but then I'll be done with the case.  So
25    now is the time and has been for almost two years to present
```

1    the Court with Motions to Suppress.

2         MR. BOROWIAK:  Your Honor, may I have one more moment

3    to confer with my co-counsel?

4         THE COURT:  Sure.

5         MR. BOROWIAK:  Thank you.

6         (Pause)

7         MR. BOROWIAK:  Your Honor, thank you for your

8    patience.

9         Your Honor, we have -- at this time we have no other

10   suppression issues to bring before this Court.  That being

11   said, Your Honor, if the Court were to, in fact, grant a

12   *Franks* motion and a hearing would be held, if anything was

13   discovered at that time, defense counsels and Defendants would

14   like to reserve the right to bring anything that may come up

15   through those materials.

16        THE COURT:  Now -- All right.  You keep talking about

17   a *Franks* hearing.  The Court -- And I want to be sure that we

18   all understand what's transpiring today.  The information --

19   and it's been repeatedly said, even today; what I'm about to

20   say has been affirmed -- that the argument based upon *Franks*

21   is the -- the entitlement -- You have no other scientific

22   evidence to offer other than the declaration of

23   Dr. Kesselring.  Is that a fair statement?

24        MR. BOROWIAK:  Yes, Your Honor, just the affidavit

25   provided by, --

1          THE COURT:  Okay.

2          MR. BOROWIAK:  -- yes, Dr. Kesselring.

3          THE COURT:  Okay.  And I have not studied his

4    declaration enough to -- and compared it with the affidavit

5    and to be near to making any kind of a conclusion.  But if I

6    were to determine that the affidavits are legally sufficient

7    under the Fourth Amendment and recommend that the Motion to

8    Suppress -- Motions to Suppress be denied, this is -- you have

9    nothing else to offer --

10         MR. BOROWIAK:  That is ---

11         THE COURT:  -- in the way of showing entitlement to a

12   *Franks* hearing.

13         MR. BOROWIAK:  That is correct, Your Honor.

14         THE COURT:  Okay.  All right.  Now what about the

15   other seven search warrants?

16         MR. BOROWIAK:  Your Honor, I am not -- I'm unclear as

17   to why the Government says there are 31 and we say there are

18   24.  I think the rest of us are as well.  Do you mind if I

19   inquire of Jim Delworth --

20         THE COURT:  No; surely.  Surely.

21         MS. COWLEY:  -- as to why they have an additional

22   seven?

23         THE COURT:  I don't want Judge Fleissig to be

24   surprised perhaps at a trial or at some future argument that

25   evidence acquired through the execution of the search

 1    warrant -- Let's just say No. 27 outside the 24 --

 2             MS. COWLEY:  Yes.

 3             THE COURT:  -- is going to be offered against

 4    Defendant So-And-So, and suddenly the argument is made, "Well,

 5    that evidence should be suppressed because, you know, for

 6    whatever reason."

 7             MR. BOROWIAK:  Understood, Your Honor.

 8             THE COURT:  Okay.

 9             MR. BOROWIAK:  Just one moment.  Thank you.

10             (Pause)

11             THE COURT:  Okay.  Maybe I should have, also,

12    Mr. Delworth up there and -- because it's not unusual for the

13    Government and the parties to say, "Well, certain items are

14    not being challenged," or, "We're not going to offer this

15    evidence at trial," or whatever which would limit the scope of

16    the Court's decision-making needs.  So ---

17             MR. BOROWIAK:  Your Honor, after speaking with

18    defense counsels and Mr. Delworth, it is our position that the

19    only warrants that we are challenging are those 24 that are

20    referenced in our Exhibit 10.

21             THE COURT:  Okay.

22             MR. BOROWIAK:  With regards to other warrants, we

23    understand that there may have been other warrants executed in

24    the universe of the four indictments that this case is -- that

25    this case is a part of it, but we are not challenging those

1    other items in the scope of these motions.

2            THE COURT:  Okay.  All right.

3            And let me ask you, Mr. Delworth:  You're aware of

4    the 24 search warrant files that Mr. Borowiak has referred to.

5    Is that correct?

6            MR. DELWORTH:  Yes.  They were all attached as

7    exhibits to the defense motion.

8            THE COURT:  Okay.  Do you intend to offer, if the

9    case were to go to trial, to any of these Defendants in this

10   case evidence acquired from any of the other search warrants?

11           MR. DELWORTH:  I'd have to check the -- the 12(b)

12   notice.  I think the -- I think the 24 encompasses this case

13   is my -- is my best understanding.  I probably have to check

14   my 12(b) notice to be absolutely sure in terms of that answer.

15           THE COURT:  Okay.  I -- Just I want to know, you

16   know, --

17           MR. DELWORTH:  Sure.

18           THE COURT:  -- what we're talking about today so that

19   I can address the issues regarding whether or not evidence of

20   the Government ought to be suppressed or not.

21           MR. DELWORTH:  Sure.

22           THE COURT:  All right.  Do you have a response to

23   what Mr. Lucco and Mr. Borowiak have said?

24           MR. DELWORTH:  Yes, Your Honor.

25           As the Court is aware -- I ask its indulgence -- in

1    terms of *Franks v. Delaware*, the Supreme Court indicated it's

2    really a two-prong test.  And in order to obtain relief under

3    *Franks*, there has to be a demonstration that a law enforcement

4    official deliberately or recklessly included a false statement

5    or omitted a truthful statement from the warrant affidavit.

6           Secondly, in order to get a *Franks* hearing, the --

7    there has to be a finding by the Court, a determination, that

8    the allegedly false statement was necessary to a finding of

9    probable cause.

10          It would be the Government's position that they have

11   not met either prong of *Franks*.

12          With respect to Mr. Lucco, he kept indicating

13   "recklessness," and I think summed it up by saying, "We've

14   shown a preliminary showing of recklessness."  Number one, I

15   want to address that these affidavits were in no way reckless.

16   The affiants were in no way reckless.  But just on that

17   statement alone, that's not what the standard is.  It's that

18   -- that the affidavit is somehow reckless.  It said reckless

19   -- "recklessly included a false statement."  And during

20   Mr. Lucco's recitation, at no point did he indicate a false

21   statement.  He made a lot of generalizations about whether

22   there were scientific justifications or whether the

23   information can properly be digested without citations;

24   whether they have the specific scientific knowledge.  All of

25   that is irrelevant to a *Franks* hearing.  It's -- The focus is

1   whether there is a false -- whether there's a false statement

2   or not.

3           And, Your Honor, in terms of that, what I would like

4   to do is:  I've just marked these as Government's Exhibits 1,

5   2, and 3, although the Court already has these, if I -- if I

6   may approach.

7           THE COURT:  All right.

8           MR. DELWORTH:  These are the three affidavits that

9   are referenced in Dr. Kesselring's affidavit, Government

10  Exhibit 1 being what the defense has described as the "Orchard

11  Drive affidavit."  And it is an affidavit that actually

12  encompasses a number of locations; some locations on

13  St. Charles Rock Road; a number of different office suites; a

14  Williamstown Drive as well as Orchard Drive.  So Orchard Drive

15  is just one of a number of search warrants supported by this

16  affidavit.

17          But as the Government has -- has indicated in its

18  response and gone through, what the Government has done is

19  basically highlighted what it has turned over to you.  And by

20  the way, these are -- Government's Exhibits 1, 2, and 3, the

21  affidavits, are already part of the Defendants' motion.  I've

22  provided defense counsel with these and highlighted.  But if I

23  -- if I may direct the Court's attention, Government's

24  Exhibit 1, it's basically what's highlighted on Pages 16, 17

25  and also on Page 25.

1          Throughout Dr. Kesselring's -- That's essentially

2    what Dr. Kesselring attaches.  Now with the exception of Page

3    25 I'll get to in a minute, this is all within a section of

4    the affidavit that is entitled "Controlled Substance

5    Analogues."  And basically these are what I consider "case of

6    first impression" from the Court, and we wanted in the

7    affidavit to provide some type of background to the Court in

8    terms of dealing with controlled substance analogues and what

9    they are and the difficulty with them.

10          The controlled substance analogues, specifically in

11   the synthetic drug context, has really hit the United States.

12   We try to play catch-ups.  So there's been a series of not

13   only a -- a statutory mandate but also scheduling to try to

14   keep pace with some of these drugs.

15          The majority of the drugs that are talked about and

16   the focus of the search warrant, such as JWH-018, AM2201 and

17   drugs such as that, at the time of this affidavit are already

18   scheduled.  They're either scheduled through the Controlled

19   Substance Act or they're emergency scheduled.  So you're

20   really only talking about really two drugs that are controlled

21   substance analogues, but it gives some history in terms of

22   what you're dealing with in controlled substance analogues.

23          Now Dr. Kesselring, most of his affidavit is spent

24   saying, well, he doesn't agree that there -- There should be

25   citations.  There should be -- He's viewing it from a

1    scientific -- from a scientific standpoint.  But in terms of

2    Dr. Kesselring's -- In terms of -- Excuse me; let me get my

3    paper.

4          In terms of Dr. Kesselring's actual assertions,

5    there's only one time that he actually says something is

6    false.  And that is an assumption that he actually makes;

7    whereby in Paragraph 7 of his affidavit, he indicates that --

8    I'm quoting -- "Moreover, the term 'structurally related' used

9    in Paragraph 21 in the Orchard Drive affidavit is not a term

10   that is defined, nor does it have precise scientific meaning."

11   And let me just address even that statement.

12         Basically a "controlled substance analogue" is a

13   definition found in Section 801 as cited here in Title 21, and

14   it defines what a "controlled substance analogue" is.  There

15   has to be two findings.  It's basically substantially similar

16   in chemical make-up and, number two, it's substantially

17   similar from a pharmacological effect or held out to be

18   substantially similar from a pharmacological effect.  Those

19   are not scientific terms.  Those are set forth in the statute.

20   That is to be determined by a -- by a jury in a finding at

21   trial.  So when he mentions that they don't have any precise

22   scientific meaning, he is correct.  It's part of a statute

23   that is to be utilized by the -- by the -- by the Court.

24         He goes on to say, "If the affidavit intends to

25   suggest that the 'structural relationship' it claims AKB48 and

1    5F-AKB48 to have with other synthetic cannabinoids such as

2    Schedule I substances JWH-018 and AM2201," it goes on to say,

3    "then that assertion is false."  So in other words, he's

4    saying if the affidavit intends to suggest.  So he's basically

5    reading it and saying, "Well, if this is what they mean, then

6    that is false."  But that's not what -- what it says, nor is

7    it what is suggested, that AKB48 or 5F-AKB48 are meant to

8    necessarily be controlled substance analogues of JWH-018 and

9    AM2201.  In fact, those are the two primary substances that

10   are discussed with respect to Orchard Drive.

11         AKB48 at the time was scheduled.  You have at the

12   time that this affidavit was -- was done.  So what you're

13   dealing with is 5F-AKB48 which is a controlled substance

14   analogue.  At no time does Dr. Kesselring in any part of his

15   affidavit ever say that it is false; that what we're claiming

16   could be considered a controlled substance analogue is not a

17   controlled substance analogue.  He just says he doesn't like

18   this -- he doesn't like the basis for the conclusion that --

19   whether there's sufficient scientific support.  He never says

20   that those conclusions regarding whether they could be

21   considered controlled substance analogues for the purpose of

22   this statute is in any way -- is in any way incorrect.

23         He also -- He indicates that, well, we should have a

24   lot more citations to studies and things like that because

25   there is reference that *in vitro* studies show AKB48 similar to

1    Delta 9-THC.  He is correct.  I mean there the -- I think that

2    there was an indication that the only citation was the

3    *Wikipedia*.  There is that citation in *Wikipedia*, but there's

4    also *1, 2 Forensic Toxicology* in -- in 2013.  There is mention

5    of scientific literature.  That's on Page 17, by the way,

6    *Forensic Toxicology*.  So from Dr. Kesselring, maybe there

7    isn't enough citation or background for him, but the key point

8    is:  At no point does he say that -- does he say that that

9    conclusion is false.

10          During -- He also -- Dr. Kesselring, I want to point

11   out, through a lot of it makes a -- makes a mistake where he

12   basically reads into the affidavit or the findings an

13   additional element that's not found.

14          In terms of what we're dealing with with controlled

15   substance analogues, it's -- the definition is under Title 21,

16   United States Code, Section 802(32)(A).  That's the definition

17   that cites -- That specific statute is actually cited in our

18   affidavit.

19          Dr. Kesselring points out; he says, "Well, do these

20   substances that we're referring to in the affidavit constitute

21   Cannibimimetic" -- C-A-N-N-I-B-I-M-I-M-E-T-I-C -- "Agents as

22   set forth in Title 21, United States Code, Section

23   812(d)(d)(2)(A)?"  He's basically saying, well, the substances

24   we're citing don't meet that statutory definition.  It doesn't

25   need to.  We never cite it in the affidavit; never use it as a

1   basis throughout this affidavit.  He spends a lot of time

2   discussing whether any of these substances could fit those

3   classes of -- recognized classes of Cannibimimetic Agents.

4   That was just an attempt by Congress under that to kind of

5   expand this class because you're dealing with all these

6   synthetic drugs and how are we going to deal with them in

7   terms of scheduling, and they have this additional provision;

8   one that doesn't apply here.

9        So Dr. Kesselring spends a lot of time saying, "Well,

10  they don't meet these classes."  They don't have to.  It's --

11  It's -- It's simply irrelevant.

12       Dr. Kesselring -- Basically what they're claiming

13  their basis for is he'll claim that argument that -- that

14  claim that *in vitro* pharmacological activity or AKB48 were

15  found to be true, and there's no evidence presented in -- to

16  support a conclusion that 5F-AKB48 would have similar

17  pharmacological activity.  Well, he never states that that's

18  false.  Again, he keeps saying that -- that, "Well, how -- you

19  know, what is your basis -- basis for showing that," which is

20  -- which is a far different standard.

21       In a lot of these synthetic drugs, there are new ones

22  that are appearing on the market all the time.  There's

23  hundreds of synthetic drugs.  What you're talking about in

24  terms of pharmacological impact is you can't -- in order to

25  take one of these new drugs into a pharmacological study, it

1    may take years.  In the meantime they're out on the streets.

2    People are getting high on them.

3           What the affidavit indicates is that in some cases

4    you can make a -- basically a discerned judgment based upon

5    the structure and make-up of the chemical that it's going to

6    have this sort of pharmacological effect, and you're allowed,

7    I think in the affidavit, as indicated, to make that

8    inference.

9           Well, we're talking about the affidavit.  All of this

10   is just set forth in terms of background.  And we're only

11   talking about basically two out of a whole class of substances

12   that are encompassed within that affidavit, the majority of

13   which are actually -- such as JWH-018, XLR11, AM2201, are --

14   have all been in some manner scheduled either through

15   emergency scheduling or -- or under the Act at this time.

16          What I also wanted to do with respect to this is --

17   And that's the sections on Page 16 and 17 in the affidavit.

18   Page 25 of that affidavit indicates AKB48.  It's a synthetic

19   cannabinoid controlled substance analogue per DEA Control No.

20   1701.

21          Dr. Kesselring correctly points out that 7201 is the

22   one for AM2201.  It should have referenced DEA Control No.

23   7048 which involves AKB48.  But, again -- again, he doesn't

24   state that it's not a controlled substance analogue.  He's

25   just, "Well, you've got this control -- You -- You've simply

1    got this control number wrong."

2           I also with respect to the second prong of this, when

3    I'm dealing with the Orchard Drive affidavit, want to indicate

4    in terms of the second prong in *Franks* is:  Even -- Even if

5    you are assuming that what they're saying is correct -- we in

6    no way accept that; we challenge every portion of it -- is:

7    Okay; well, what happens if you delete that?

8           If you delete this, you can even delete the whole

9    section on controlled substance analogue.  It's just meant to

10   give the Court some background in terms of what we're dealing

11   with and the scheduling efforts that were being taken for it.

12   You don't even have to have this in the affidavit.  None of

13   this is an attack on the details of the investigation which in

14   terms of the Orchard Farm affidavit probably consist of close

15   to 50 pages or so in terms of actual factual background, none

16   of which -- none of which is actually being challenged.

17          The Government Exhibit 2, which I believe is the

18   Yahoo affidavit, basically Dr. Kesselring is challenging the

19   same segments as in the Orchard Drive.  Obviously, in these --

20   in these affidavits, again, in the Yahoo one, it was under

21   control substance analogue where there is virtually identical

22   information providing, you know, the introduction to synthetic

23   controlled drugs, efforts that were made to schedule it.  We

24   have set forth the definition of "controlled substance

25   analogues" and how -- tried to address in terms of new drugs,

1    how they would fit within the category of -- of controlled

2    substance analogues and meet that definition.

3            Mr. Lucco indicated, well, Dr. Kesselring attacked

4    that we referred to, the R1 and R2 positions, and how reckless

5    that was because we can't do it with an illustration.  Well,

6    what we did was indicate that they're substituted at the 1-

7    and 3-positions which actually has meaning in terms of

8    chemical -- in terms of chemical parlance where the 1 and 3

9    are.  Again, not that this is false but, well, you could have

10   given an illustration of it.  An illustration wasn't -- may

11   have been more helpful, but it was defined in there; that

12   their R1, meaning the 1-position, R3 meaning the 3-position in

13   terms of an atomic structure of -- of chemical.  So, once

14   again, not something that's false.

15           Dr. Kesselring -- let's see -- indicates that, well,

16   we -- it's clearly reckless because XLR11 and UR144 are named

17   as separate substances because in Paragraph 25 of the Yahoo

18   indictment we mention, but if you read the beginning of the

19   Yahoo indictment, the beginning paragraph says, "XLR11, (also

20   known as 5F-UR144, also known by the chemical name)."  So we

21   defined that it's also known as this, but then we referred to

22   it as XLR11 and UR144 which is sometimes the way that it's --

23   in other words, we're addressing the same type of -- same type

24   of chemical.

25           Once again, in the Yahoo, I've highlighted in yellow

1    the extent to which this is being challenged as -- as in

2    somehow -- somehow misleading, again, which we state that it's

3    not.

4         Finally, Government Exhibit 3, which is the Winding

5    Staircase, without -- without going through, again, they're

6    essentially the very same -- same arguments, the one argument

7    they make is that -- He refers to core indole and core

8    indazole structures.  The difference between core indole

9    structures in Chemistry and indazole is that in an indole, you

10   have a claim where there's a carbonate -- carbon atom.  In an

11   indazole, that's a substitute for a nitrogen atom.

12        As a matter of fact, now we're seeing in synthetic

13   drugs where we're seeing chemicals that -- two different

14   chemicals; one having an indole core, another indazole core.

15   They're both synthetic cannabinoids.  They're both -- They're

16   -- They're both -- They're both related.  So there's a lot

17   made that has really actually no significance in the case.

18        Finally, in that affidavit they -- we indicate

19   that -- that based on the structure activity relationship

20   studies, PB-22 and 5F-PB-22 are expected to have similar

21   effects.

22        Again, obviously, Dr. Kesselring, as a chemist, would

23   like there to be a couple years of study in order to make it,

24   but we don't have a couple years' worth of study.  What we can

25   do is take a look from a legal standpoint and say:  They have

1    basically the same type of structure.  We, based upon our

2    knowledge of Chemistry and how similar chemical structures

3    act, we would anticipate that this would have -- be expected

4    to have -- have to have similar effects.

5         In totality, Your Honor, the -- what Dr. Kesselring

6    saw, number one, nothing in there is false; nothing.

7         Second, the fact that Dr. Kesselring would like more

8    sources or feels that there should have been a better

9    explanation, that's not the standard for a *Franks* hearing.

10   That's his review of it based as a -- somebody scienced in

11   Chemistry.

12        Secondly, in terms of the second prong, you could

13   take this whole section out and it wouldn't -- it wouldn't

14   impact the search warrants.  It would have the same effect.

15   As a matter of fact, Mr. Borowiak in his statements said,

16   "Well, if you take all of that out, then you really have only

17   people engaged in just -- in just, you know, person-to-person

18   or business conversations."  Obviously, the Court will review

19   the affidavit.  I think it speaks for itself, but it's

20   anything but -- but normal business relationships.  But he

21   says, "Well, what you have to do is this finding of controlled

22   substance analogue."

23        This is based upon a finding of scheduled controlled

24   substances and also controlled substance analogues.  In the

25   Orchard Drive affidavit, Page 26, it makes reference to a

1    seizure that was tested to be XLR11 as does Page 27 in the

2    affidavit, as does Page 51 of the -- of the affidavit, all

3    involving seizures or warnings then of scheduled controlled

4    substances.  You're dealing with both.  Schedule controlled

5    substances, what these groups did, as explained in the

6    affidavit, was they tried to be -- they tried to stay a step

7    ahead of the schedule.  They didn't always do it because a lot

8    of the substances were scheduled at the time but tried to move

9    on to these -- to these controlled substance analogues.

10            Finally, Your Honor, with respect to Mr. Borowiak's

11   statements and the argument in this case, the defense Motion

12   to Suppress -- to Suppress Evidence indicates basically a

13   two-step process; is that it's continued basically upon the

14   Court finding a *Franks* hearing and contingent, in essence,

15   upon the Court then granting some type of *Franks* relief

16   because the -- Just one moment, Your Honor.

17            THE COURT:  All right.

18            MR. DELWORTH:  Oh, I'm sorry.  I have it right here.

19            The Motion to Suppress evidence, in the

20   "Introduction," if you read -- if you follow through, it

21   basically reiterates the fact that they believe that there

22   were reckless statements on behalf of the affiants that were

23   false, inaccurate or misleading, and the affiants were not

24   qualified.  And they indicate, "When *Franks* relief is granted,

25   statements removed from the supporting affidavits, the Court

1    awarding that relief should then revisit the original search

2    warrant affidavits to determine whether it -- whether there's

3    still sufficient basis to support a probable cause finding."

4            So there is basically nothing in here that says that

5    the affidavits on their face are bad outside of their *Franks*

6    claim.  The -- The affidavits are -- are legitimate.

7    Basically the linchpin of this case for them is the *Franks*

8    hearing; that they need a *Franks* hearing to get *Franks* relief

9    to say then, "Go ahead and review the affidavits."  But the

10   affidavits by themselves clearly have -- have sufficient

11   probable cause.

12           Judge, I know I've spent some time, but just -- just

13   finally in conclusion -- conclusion and summary:  What our

14   response shows, I've taken detail by detail of

15   Dr. Kesselring's affidavit.  I've cited it, the various

16   paragraphs and what he attacks in the affidavit, and I've

17   shown that none of his claims are demonstrated to be in any

18   way false or -- or untruthful.  The only thing that

19   Dr. Kesselring can say is false is an assumption that he

20   makes, not an assertion set forth in the affidavit itself.

21   The affidavits clearly have sufficient support for a probable

22   cause finding.  There is no -- There is no misleading or false

23   information involved.  But even if you were to somehow even

24   take that out, it is not going to impact the probable cause

25   determination for these affidavits.  Thank you.

```
 1              THE COURT:  All right.  Mr. Lucco, do you have any

 2    reply?

 3              MR. LUCCO:  Very briefly, Your Honor.

 4              It's noted at this point:  Other than counsel's

 5    argument, they have -- they have submitted nothing of a

 6    scientific nature to rebut Dr. Kesselring.  I would expect

 7    that if we have a *Franks* hearing, that we may have some of

 8    that.  I'm not certain.

 9              But Mr. Delworth makes -- makes a nice argument.

10    What he says is, as an example, in the Orchard Drive

11    affidavit, that, in essence, Mister -- Dr. Kesselring makes

12    his own assumption and then proves why under that assumption

13    it's false.  But let me read to you what Paragraph 21 of the

14    Orchard Drive affidavit actually says.

15              "AKB48 and 5F-AKB48 belong to a structural class with

16    a core indazole structure."  Okay?

17              I think the neutral Magistrate believes that the

18    agent who presents that and says, "I know this," knows that.

19    There's no indication anywhere from his training and

20    experience or anything else that he cites how he could know

21    that.  Now let me go on.

22              "They are structurally related to other synthetic

23    cannabinoids with a core indole structure, such as the

24    Schedule I substances JWH-018 and AM2201."  Just listen to

25    that a second and then ask yourself when he says -- Why would
```

1   he assume that there -- they're suggesting they're related to

2   JWH-018 and AM2201?  That's what he just said in the sentence.

3   The affidavit just said they are structurally related.

4          Now one of the criticisms that Dr. Kesselring has of

5   that is that the term "structurally related" is essentially

6   meaningless.  It's not the same as what the statute requires.

7   It's one of these -- I call it sort of an -- It's unfair, but

8   the words coming to my mind, it's a "sleight of hand" kind of

9   expression.  They're supposed to be substantially structurally

10  similar, so a substantially-similar structure.  That's not

11  exactly, he points out, the same as structurally related.

12         But he goes on to take apart other aspects of

13  Paragraph 21.  I don't believe because Mr. Delworth can make

14  arguments about this, without himself citing -- And I thought

15  it was interesting that he gave a very brief chemistry

16  lecture.  I didn't learn anything.  I'm too stupid to learn

17  anything from it, but I suspect had the affiants in this case

18  cited to how many DEA chemists must there be that testify for

19  Congress that come up with all of these findings that either

20  stay ahead of the curve, fall behind the curve, whatever, who

21  are experts on these chemical compounds, why do we have an ICE

22  agent or an IRS agent and a Postal agent and none of them can

23  cite to in their affidavit or simply say to the -- to the

24  Judge, "When I say I know that these belong to a structural

25  class with a core indazole structure, when I as a -- as an

1  agent tell you that, Judge, here's how I know that:  Because

2  the DEA's Report 2263 instructs me on that."

3          They could have simply said why -- where they had a

4  source that educated them on that because as Dr. Kesselring

5  says, absent that level of education from somewhere, from some

6  noted text, that, you know, maybe would survive *Daubert* kind

7  of considerations, we'd of -- we'd of -- you as a Magistrate

8  could have had comfort in thinking:  This is likely truthful;

9  it has foundation.

10          There is almost a great effort to develop very

11  massive affidavits with massive chemical references without

12  any reference to the knowledge of that Chemistry.  And the

13  point is:  When the Magistrate reads it, when I read it, I see

14  it's very compelling if you don't understand it.  We've

15  brought to the table today some understanding of it by way of

16  an affidavit, a declaration, if you will.  I think it's

17  sufficient with all -- And I'm sorry to say it is nine pages

18  in length, Dr. Kesselring's affidavit.  I don't think there

19  will be any way -- I didn't even hit the highlights of the

20  substance of this -- that the Court will be able to analyze

21  this -- I'm sorry -- as you've already indicated without

22  having to read Dr. Kesselring's declaration because he's a

23  scientist.

24          THE COURT:  Well, of course, I'm going to read his

25  declaration carefully, and I have already -- I have already

1   perused it.  So you can assume the Court will do --

2            MR. LUCCO:  It's just ---

3            THE COURT:  -- what's necessary to give all parties a

4   fair determination of this matter.

5            MR. LUCCO:  And because of that, Your Honor, there's

6   no point in me reciting from that.  I just wanted to hit the

7   highlights.  But I think when you -- when you do, there will

8   be an overwhelming sense of what was missing and how it -- and

9   you would think how could it have been done and the reckless

10  nature of the characterizations they made.

11           At this point our burden is to show a substantial

12  preliminary showing so that we can have a hearing and we could

13  expect -- explore what was the basis for this knowledge,

14  whether we see it in here, whether you actually had it from

15  some source.  We can explore that, and the Court could then

16  make that determination, Judge.

17           THE COURT:  Okay.

18           MR. LUCCO:  Thank you.

19           THE COURT:  All right.

20           MR. BOROWIAK:  Your Honor, I will be brief with my

21  response.

22           THE COURT:  All right.

23           MR. BOROWIAK:  Judge, one of the things that

24  Mr. Delworth mentioned, and I know the Government mentioned in

25  its response to the Defendants' Joint Motion to Suppress, is

1    that the substances we're dealing with are, in fact,

2    controlled substances.  And I can tell the Court that as we

3    stand here today in May of 2016, that the great majority of

4    the substances that are inside of those affidavits that we

5    presented are either emergency controlled or scheduled

6    substances.  But dates are very important when you review

7    these -- these affidavits because at times they are, in fact,

8    analogues.  They are made, you know -- They are, in fact,

9    considered to be analogues or, you know, they may be emergency

10   scheduled.

11          For example, Mr. Delworth pointed out in the

12   Government's Exhibit 2 or -- excuse me -- Government's Exhibit

13   1, the Orchard Drive affidavit, that it provided the reference

14   to AKB48 and XLR11.  The first reference to AKB48, which was

15   seized in March of 2013, was not emergency scheduled until May

16   of 2013.  The same thing with XLR11, Your Honor.  That XLR11

17   was seized in April of 2013 but was not actually listed,

18   emergency scheduled until May of 2013.

19          Additionally, Your Honor, there are references to

20   other substances all throughout the affidavits, such as PB-22

21   and AB-FUBINACA and AB-PINACA, and those, in fact, were not

22   emergency scheduled until January of 2014.

23          So when the Court reviews the affidavits, it's very

24   important to keep in mind those dates.  And that's why when I

25   was up here earlier, I had mentioned that what we're dealing

1   with, they are moving targets of three different

2   classifications.  It's also one of the things we pointed out

3   in our motion for a bill of particulars.

4           But it's basically:  Is it a controlled substance --

5   considered a controlled substance analogue, which requires the

6   802(32)(A) analysis, or is it an emergency scheduled or is it

7   actually scheduled in the Controlled Substances Act?

8           The scientific language that Mr. Lucco was discussing

9   is so important just because without it, you can't say that

10  the substances at issue that they're considering to be

11  analogues fulfill the requirements of 802(32)(A).  And without

12  that, you know, you have the rest of the investigation where

13  they're talking to potentially a confidential informant or

14  showing money being exchanged between groups and individuals.

15  But without that ability to say it is a controlled substance

16  of some sort or a violation of the law, that nefarious conduct

17  that they're attempting to point to doesn't exist.  In

18  essence, there's no nefarious light on the conduct being

19  described.  And that, in essence, is why after the language is

20  removed pursuant to *Franks*, the affidavits themselves fail.

21           THE COURT:  Okay.

22           MR. DELWORTH:  If I may.

23           THE COURT:  Very briefly.

24           MR. DELWORTH:  Yes.  Mr. Borowiak indicated that

25  XLR11 and AKB -- AKB48 in terms of when they were emergency

1    scheduled or scheduled in 2013.  The affidavit itself refers

2    to their seizure prior to that.  This affidavit was for

3    September of 2013.  So we make references to earlier seizures

4    of these drugs, but by the time this affidavit is filed, these

5    have all been either scheduled or emergency scheduled.  So at

6    the time of this affidavit, you don't have to go back and

7    determine are they controlled substances at all because

8    they've already been -- they've already been scheduled; maybe

9    not at the time initially seized but at the time that this

10   affidavit referring to those earlier seizures had been issued,

11   yes, they -- yes, they have.  I just want to make that one

12   correction.  Thank you.

13            THE COURT:  All right.  Any dispute with that?

14            MR. BOROWIAK:  No, Your Honor.

15            THE COURT:  All right.  All right.  Thank you, all,

16   very much.  I have -- I have received as exhibits in today's

17   hearing Government Exhibits 1, 2 and 3 which I believe they

18   were given to the Court as what Dr. Kesselring referred to.

19            MR. DELWORTH:  Yes.  They've already been -- They're

20   already with the Court as part of Defendants' exhibits.  What

21   you have, there's been a modification.  What I've done is I've

22   stickered and highlighted the -- what Dr. Kesselring, in his

23   affidavit, what he challenges in each of those respective

24   affidavits.

25            THE COURT:  Okay.  All right.  The -- But there still

1   are 28 more --

2           MR. DELWORTH:  Which ---

3           THE COURT:  -- affidavits.

4           MR. DELWORTH:  Yes.  Well, ---

5           THE COURT:  Or search warrant cases.

6           MR. DELWORTH:  Search warrants but some of the

7   affidavits, like Orchard Drive, encompass about seven or eight

8   search warrants.  And all of those -- And all of those,

9   everything is part of the defense's exhibits to the motion.

10          THE COURT:  All right.  Well, let me ask you and ---

11          MR. DELWORTH:  Dr. Kesselring just challenged those

12  three specific affidavits.  So that's -- that's why I utilized

13  those.

14          THE COURT:  All right.  I -- You know, without having

15  to read all 31 to -- to know whether or not this is accurate,

16  let's just say Exhibit 1, today's Exhibit 1, Government

17  Exhibit 1, the affidavit of Wayne House, what I think you're

18  saying is that this document was used as a basis for, which is

19  not unusual, a basis for more than one search warrant.

20          MR. DELWORTH:  Yes, Your Honor.

21          THE COURT:  And which -- Can you tell me which?

22          MR. DELWORTH:  It's actually in the page -- If you, I

23  think, page a couple in, it will indicate that, "This search

24  warrant is in support of," and it will have -- there's

25  listings -- there's a Williams -- I think it's a Williamsburg

1  address, and then the other ones, besides Orchard Drive, are

2  going to be various suite numbers on St. Charles Rock Road.

3          THE COURT:  I see 1901 Williamstown Drive.

4          MR. DELWORTH:  Right.

5          THE COURT:  I see 13761 St. Charles Rock Road, 13765

6  St. Charles Rock Road, different suites.  Well, what I'm going

7  to do, and I'll want counsel to agree to it before you leave:

8  Do you have copies of the warrants with the case numbers?

9          MR. DELWORTH:  Yes, Your Honor.  I can provide --

10  It's upstairs, but I can -- I've got all that.  I can provide

11  it as part -- It's in the Government's -- It's in the defense

12  exhibits.  I'm sorry.  I just copied the relevant portion of

13  the affidavit.  It's -- They were filed -- Defendants'

14  exhibits basically included the searches, seizure warrant with

15  the -- with the case numbers.  And what Mr. Lucco has handed

16  to me as a Government Exhibit 10 of their -- yeah, excuse me;

17  I said "Government" -- Defense Exhibit 10, as part of the

18  defense motions, they have a chart indicating the exhibit, the

19  warrant number and the location searched.  If I may hand this

20  to the Court, --

21          THE COURT:  All right.

22          MR. DELWORTH:  -- I think it would be easier.  If you

23  saw it, I think it would be self-explanatory.

24          THE COURT:  Okay.

25          MR. LUCCO:  And, Your Honor, it is part of the -- of

```
 1   our motion.

 2           THE COURT:  Okay.  Can I have this?

 3           MR. LUCCO:  Sure, Your Honor.

 4           THE COURT:  All right.  Thank you.  I appreciate

 5   that.  Now there's a -- Well, there's one handwritten change.

 6   Well, there are a couple of handwritten changes.  I'll look

 7   for it in the ---

 8           MR. LUCCO:  We'll make you a clean copy.

 9           THE COURT:  Well, if it's ---

10           MR. BOROWIAK:  I think I probably have one.

11           THE COURT:  Okay.  All right.

12           MR. LUCCO:  Are you done, Jim?

13           MR. DELWORTH:  Yeah.

14           MR. LUCCO:  The only thing I wanted to comment,

15   Your Honor, when Jim introduced that exhibit, which is the

16   House affidavit, and he has the three tabs on it, and -- and

17   those tabs have some highlighting.  I did not know he was

18   going to represent that was the only criticisms, the only

19   paragraphs that Dr. Kesselring criticizes, because I would

20   take exception to that.  In particular, Dr. Kesselring,

21   Paragraph 11 of his affidavit, takes exception to all the

22   paragraphs 16 through 21.  So those he doesn't -- He's marked

23   21 but not 16, 17, 18, 19 and 20.  I just point that out.  I

24   didn't want to be deemed to have -- agreeing those are the

25   only sections Dr. Kesselring was challenging.
```

```
 1              THE COURT:  Okay.

 2              MR. DELWORTH:  Yeah.  Well, he challenges on those as

 3    basically the expertise of the affiant with respect to setting

 4    forth the information in those.  But what I've highlighted are

 5    the specific indications of what he believes were misleading,

 6    but he does do a general attack of all the paragraphs within

 7    that in terms of the affiant's experience.  Thank you.

 8              THE COURT:  Okay.  All right.  Do you have a clean

 9    copy here of that exhibit and that document?

10              MR. LUCCO:  Hold on.  I think I do.

11              MR. DELWORTH:  Judge, I've actually got a clean copy

12    of that.  Here's -- Okay.  It was in a binder, so.

13              THE COURT:  Okay.  I will mark this.  It is

14    identified on its face as being received or taken from the

15    Court CM/ECF system, and it bears the legend case number,

16    4:14-CR-175, Document No. 227-10, filed March 9, 2016; nine

17    pages in length.  And that document itself bears the caption

18    "Exhibit 10, Summary Comparison Of Search Warrant Affidavits."

19    I'll -- I'll just further mark it as Defense Joint Exhibit A

20    for the record.  All right.

21              All right.

22              MR. DELWORTH:  Judge, may I have just one -- one --

23    another clarification?

24              THE COURT:  Yes.

25              MR. DELWORTH:  This was -- The defense motion, such
```

1   as Charles Wolfe is charged in two separate -- two separate

2   indictments, was -- was this hearing to encompass the other

3   case, too, involving the same motions and the attack of the

4   same search warrants with respect to Mr. Wolfe?

5           I know that was -- was actually referred to Judge --

6   Judge Collins, --

7           THE COURT:  Right.

8           MR. DELWORTH:  -- the Magistrate Judge.

9           THE COURT:  Right.  No.  The only -- Each of the

10  three Magistrates or the Magistrates to whom the cases were

11  referred initially do their own, and they make take a lead

12  from somebody else who does --

13          MR. DELWORTH:  Okay.

14          THE COURT:  -- who reaches the issues first; they may

15  not.  I don't know.

16          MR. DELWORTH:  Okay.  So we need to take that up with

17  Judge Collins.  I just wanted clarification.

18          THE COURT:  Yeah.  If that's not -- If I'm -- my

19  recollection is corrected otherwise, then counsel will be

20  advised.

21          MR. DELWORTH:  Thank you.

22          THE COURT:  All right.  Thank you very much.  Yes,

23  sir.

24          MR. BOROWIAK:  Yes, sir, Your Honor, before we

25  adjourn.

1      THE COURT:  Yes.

2      MR. BOROWIAK:  I think one of the things that were

3  discussed last week at our brief meeting, we had brought up

4  the point that we had filed four Motions to Suppress; one

5  pursuant to McFadden, one pursuant to Johnson -- or excuse me;

6  Motions to Dismiss.  Thank you, Your Honor.

7      We had asked the Court or mentioned to the Court at

8  the hearing and asked for leave to file supplemental briefing

9  on those motions that we previously filed.  At this point we

10  would just like to make that motion and ask the Court for

11  leave to file supplemental briefing with regards to those

12  previously-filed Motions to Dismiss.

13      THE COURT:  Okay.  Why -- Why do you need more

14  briefing?

15      MR. BOROWIAK:  And it was partly because they

16  referenced McFadden and Johnson, Your Honor, and there have

17  been some developments in the case law on those matters.

18      THE COURT:  Okay.

19      MS. GRANGER:  The only thing I would point out,

20  Your Honor, they -- when we filed our response, there were

21  actually several replies to our response.  So I would just ask

22  what time period you're looking at because I believe you all

23  filed a reply to the response in December.  Are you talking

24  about developments since then?

25      I would just ask that it be confined to that then

 1   because I think they've had an opportunity to reply to our

 2   response.  So I'm unsure of what additional you have.

 3          MR. BOROWIAK:  That's -- That's what it would be,

 4   developments since that time, Your Honor.

 5          THE COURT:  You're talking about two cases that have

 6   been decided since the last filing?

 7          MR. BOROWIAK:  Yes.  Yes.  We're talking about

 8   McFadden and Johnson and then developments on them since we

 9   filed our replies to the Government's reply to our initial

10   motion.

11          THE COURT:  Okay.  You can have a week from today --

12          MR. BOROWIAK:  Okay.

13          THE COURT:  -- to file something.  Keep it at ten

14   pages or less, and the Government will have a similar calendar

15   week to respond.

16          MS. GRANGER:  Thank you, Your Honor.

17          MR. BOROWIAK:  And, Your Honor, there's one more

18   thing.  I apologize.

19          THE COURT:  Yes, sir.

20          MR. BOROWIAK:  I believe Mr. Threlkeld and

21   Mr. Delworth discussed the option for the defense counsels to

22   file replies to the Government's replies to our *Franks* motion

23   and our Motion to Suppress.  We would just be asking the Court

24   for time to file a reply in order to file a reply to the

25   Government's reply.

1        THE COURT:  Why?  What more would you possibly add?

2        MR. BOROWIAK:  Your Honor, we had initially planned

3   to file a reply.  However, you know, as we were working with

4   the group and we had lost another attorney whose client had

5   pled previously, we've sort of reorganized and restructured

6   ourselves as to what we're doing, and we just require one more

7   week to reply to the actual motions that the Government had

8   filed.

9        THE COURT:  You're talking about your motion, their

10  response.

11       MR. BOROWIAK:  Right.  And then our response to their

12  response, Your Honor.

13       THE COURT:  Your reply, their surreply, I suppose.

14       MR. BOROWIAK:  Right.

15       THE COURT:  And now -- I think I've -- I think it's

16  adequately briefed.

17       MR. BOROWIAK:  Okay.  Thank you, Your Honor.

18       THE COURT:  Thank you very much.  We'll be in recess.

19       (Hearing adjourned at 11:15 AM.)

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

        I, Deborah A. Kriegshauser, Federal Official Realtime

Court Reporter, in and for the United States District Court

for the Eastern District of Missouri, do hereby certify that

pursuant to Section 753, Title 28, United States Code, that

the foregoing is a true and correct transcript of the

stenographically-reported proceedings held in the

above-entitled matter and that the transcript page format is

in conformance with the regulations of the Judicial Conference

of the United States.

        Dated this 8th day of June, 2016.


                        /s/ Deborah A. Kriegshauser
                        _____
                        DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                        FEDERAL OFFICIAL COURT REPORTER