UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14CR00175 AGF (DDN) |
| ) | |
| MARK PALMER, ) | |
| SAMUEL LEINICKE, ) | |
| CHARLES WOLFE, a/k/a "Chuck Wolfe," and ) | |
| ROBERT WOLFE. ) | |
| Defendants. ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF TO DISMISS THE INDICTMENT

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and James C. Delworth, Jennifer Winfield, and Erin Granger, Assistant United States Attorneys for said District, respectfully submits this response to Defendants' Joint Supplemental Brief to Dismiss Indictment as Unconstitutionally Void for Vagueness and Joint Supplemental Brief to Dismiss Count I of the Indictment.

**Procedural History**

On May 21, 2014, a federal grand jury returned an indictment charging all four[1] defendants with conspiracy to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption as provided in Title 21, United States Code § 813, all in violation of 21 U.S.C. §§841(a)(1) and 846, and conspiracy to introduce misbranded drugs into interstate commerce in

---

[1] Anthony Palmer and Joseph Gabrick were also charged in this indictment.   On October 5, 2015, Anthony Palmer filed a waiver of motions.   On May 26, 2016, Gabrick waived motions and entered a guilty plea.

1

violation of 21 U.S.C. §§ 331(a), 333(a)(2) and 371.   Defendants Mark Palmer, Charles Wolfe, and Robert Wolfe were also charged with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1957 and 1956(h).   Mark Palmer was further charged with conspiracy to import Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of 21 U.S.C. §§ 952, 960(a)(1), 960(b)(3), and 963 and conspiracy to facilitate the transportation of merchandise knowing the merchandise has been imported with false documents, in violation of 18 § U.S.C. 545.

On October 8, 2015, Defendants filed a joint motion to dismiss the indictment as unconstitutionally void for vagueness (Doc #181), a motion to dismiss count one of the indictment on the grounds that it fails to state an offense and that 21 U.S.C. §§ 813 and 802 (32)(A) are unconstitutionally vague (Doc #182), a motion for bill of particulars (Doc #184), and a motion to dismiss count one with memorandum in support (Doc #185).   On November 16, 2015, the Government filed its omnibus response to Defendants' motions.   (Doc #192).   Following, Defendants filed replies to the Government's response (Docs. #197, 198, 199, 200).

On March 8, 2016, Defendants filed a Motion for a <u>Franks</u> Hearing (Doc. #224) and a Motion to Suppress Evidence (Doc #225).   An evidentiary hearing was held on May 27, 2016.   At the conclusion of the hearing, Defendants requested an opportunity to present the court with additional briefing on their motion to dismiss.   Counsel for Defendants advised the court they would include recent case developments following the opinions rendered in <u>United States v. McFadden</u>, 135 S. Ct. 2298, 2302 (2015) and <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015).   On June 3, 2015, Defendants filed their supplemental briefs (Docs #259, 260).   In their supplemental briefing however, defendants are unable to cite any case in which the Analogue Act has been found to be unconstitutional.

2

**United States v. McFadden and subsequent cases do not support a dismissal of Defendants' cases**

Most recently, the constitutionality of the Analogue Act was addressed in McFadden v. United States, 135 S.Ct. 2298 (2015).  In McFadden, the Supreme Court held that the Analogue Act is not unconstitutionally vague.  The Court explained that 21 USC §841(a)(1) requires the Government to establish that the defendant knew he was dealing with "a controlled substance." Id. at 2302.  Further, the Court concluded that when the substance involved is an analogue, the knowledge requirement is met if the defendant knew that the substance was controlled under the Controlled Substance Act or the Analogue Act, even if the defendant did not know the substance's identity.  Alternatively, the Government may prove knowledge if the evidence illustrates that that the defendant knew the specific features of the substance that make it a "controlled substance analogue."  Id.  Notably, the Supreme Court rejected defendant's position that knowledge of "a controlled substance" can *only* be established by knowledge of the characteristics that make a substance an "analogue" under the Act.  Id. at 2306-07.  A defendant's concealment of activities, evasive or furtive behavior, or knowledge that a substance produces a high similar to that produced by listed substances can be used by the government to demonstrate knowledge that the substance is controlled. Id. at 2304, n. 1.

Defendants cannot cite one case decided after McFadden to demonstrate that the Analogue Act has been held unconstitutional.  To the contrary, courts have continued to hold that the Analogue Act is not unconstitutional.  See United States v. Carlson, 810 F.3d 544 (8th Cir. 2016); United States v. Hawkins, 2016 WL 1390005 (W.D. Mo 2016).  For example, following McFadden, the Eighth Circuit decided United States v. Carlson.  In Carlson, the defendant argued that the Analogue Act was unconstitutional and the jury instructions were erroneous.  The instructions required the jury that in order to find the defendant guilty beyond a reasonable doubt,

3

the Government must have proven that the defendant knew that the substance at issue was a controlled substance.  Id. at 549.  The proof required must be that, "(1) the defendant knew that the substance had a chemical structure that was substantially similar to a controlled substance in Schedule I or II of the CSA, and (2) the defendant knew that the substance either actually had, or the defendant represented or intended it to have, an effect on the central nervous system that is substantially similar to or greater than a controlled substance in Schedule I or II of the CSA."  Id.

The Carlson court echoed that the Analogue Act is not unconstitutionally vague because the "statute's 'knowingly or intentionally' scienter requirement alleviates vagueness concerns by 'narrow[ing] the scope of its prohibition, and limit[ing] prosecutorial discretion." Id. at 551-52, quoting McFadden, 135 S. Ct. at 2307.

### The indictment is sufficient because it contains the elements of the offense charged and fairly informs the defendants of the charges against them

Although McFadden discussed the scienter that is required to prove an individual's guilt, defendants argue that McFadden renders the indictment deficient.  The defendants have previously raised an issue concerning the sufficiency of the indictment.  (Doc #181)

Defendants argue that the Indictment in this case must be examined in light of McFadden. Defendants assert that the indictment fails because each essential element is not pled. Specifically, Defendants claim that the Indictment must contain language that the Defendants knew they were dealing with controlled substances, and because the indictment fails to allege the proper *mens rea*, it must be dismissed.

In their attempt to cast doubt on the sufficiency of the indictment, the Defendants look to United States v. Martinez, 800 F3d 1293 (11th Cir. 2015).  The Defendants' reliance on Martinez however, is misplaced.   In Martinez, the defendant was charged with a violation under 18 U.S.C. § 875(c) for knowingly transmitting a threatening communication.   The court held that

4

the indictment was facially defective because it failed to allege an essential element of § 875. Martinez, 800 F.3d at 1295.

Federal Rules of Criminal Procedure Rule 7(c)(1) requires, in pertinent part, that a criminal indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged" and "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." An indictment satisfies the guarantees of the Fifth and Sixth Amendments "if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). "Generally, an indictment is sufficient if it alleges an offense in the words of the statute, assuming those words 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute an offence. [*sic*]'"

The charge in count one of the indictment tracks the statutory language in 21 U.S.C. §846 and 841(a)(1) and includes reference to the knowing and intentional mental state that is required to be proven at trial. Moreover, the indictment specifically references 21 U.S.C. § 813, which requires in an analogue case proof that the substance was intended for human consumption. Unlike the case before the court, the indictment in Martinez did not track the statute and contain the essential elements.

### United States v. Johnson does not render the Analogue Act unconstitutional because the Analogue Act is not vague

Defendants argue that the Analogue Act presents a vagueness problem similar to that in Johnson v. United States, 135 S.Ct. 2551 (2015), where the Supreme Court found the residual clause of the Armed Career Criminal Act unconstitutional. Defendants previously raised Johnson

in its Joint Motion to Dismiss Indictment as Unconstitutionally Void for Vagueness.   (Doc #181, pp. 3-8).

Defendants renewed comparison to Johnson is inapposite because neither of the "two features of the residual clause [that] conspire to make it unconstitutionally vague," see 135 S. Ct. at 2557, are present in this prosecution.   One of the reasons that the Supreme Court found the residual clause unconstitutional in Johnson was that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime.   It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."   135 S. Ct. at 2557.   The Analogue Act however, creates no such grave uncertainty.   The Analogue Act *does not* tie conviction to some judicially imagined ordinary cases of crime or even drug distribution; to the contrary, it *does* tie the assessment of risk to "real-world facts or statutory elements."   Moreover, the recent heightened scienter requirements established by McFadden are fatal to Defendants' vagueness challenges.

Contrary to the Defendants' claims, Johnson does not render the Analogue Act vague because of legal terms specified in the statute.   Noteworthy in Johnson, the Court expressly stated that its ruling does not render certain legal terms vague.   Specifically, Johnson states that,

> The Government and the dissent next point out that dozens of federal and state criminal laws use terms like "substantial risk," "grave risk," and "unreasonable risk," suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt.  *Not at all*. … As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; *the law is full of instances where a man's fate depends on his estimating rightly ... some matter of degree*.

Id. at 2561 (emphasis added) (citations and quotations omitted).

Defendants also cite Welch v. United States, 136 U.S. S. Ct 1257 (2016) and claim that Welch supports the argument that the categorical approach applies to the Analogue Act because

6

the Analogue Act designates substances which are uncertain and non-inclusive.  Defendants however, misunderstand the explicit language of the Analogue Act.  The <u>Welch</u> Court voiced concerns over the categorical approach because,

> Under the categorical approach, 'a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'  For purposes of the residual clause, then, courts were to determine whether a crime involved a 'serious potential risk of physical injury' by considering not the defendant's actual conduct but an 'idealized ordinary case of the crime.'
>
> The residual clause failed not because it adopted a 'serious potential risk' standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense. In the <u>Johnson</u> Court's view, the 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows.  'Invoking so shapeless a provision to condemn someone to prison for 15 years to life,' the Court held, 'does not comport with the Constitution's guarantee of due process.' (citations omitted)

<u>Id</u>. at 1262.

Defendants argue that the vagueness of the Analogue Act is further demonstrated by the initial inclusion of certain substances as cannabimimetic agents[2], rather than hallucinogenic substances.  Defendants note that UR-144, XLR-11, and AKB48 were originally placed in the Schedule I under the category "cannabimimetic agents."  On March 22, 2016, the Federal Register Proposed Rules included the following provision,

---

[2] On July 9, 2012, the Synthetic Drug Abuse Prevention Act ("SDAPA") was signed into law and permanently scheduled certain synthetic compounds, including JWH-018.  In addition, SDAPA also scheduled an entire class of "cannabimimetic agents," obviating the need for further Agency action regarding scheduling of these substances.  The definition of "cannabimimetic agent" is defined in 21 U.S.C. § 812(c)(d)(2)(A).  Following SDAPA, specific action was taken with UR-144, XLR-11, and AKB48.  On April 12, 2013, the notice of intent to temporarily schedule UR-144, XLR-11, and AKB48 was published.  78 FR 21858.  On May 16, 2013, the final order to temporarily schedule these compounds was published.  78 FR 28735.  This scheduling was effective for two years.  On May 15, 2015, that scheduling order was extended for one year.  80 FR 27854.  Following, on May 11, 2016, UR-144, XLR-11, and AKB48 were permanently scheduled.  81 FR 29142.  Prior to the scheduling, these compounds were considered analogues of JWH-018.  As such, they were considered controlled substances under 21 U.S.C. 841 when intended for human consumption.

> In the NPRM, the DEA inadvertently proposed the addition of these substances in schedule I under 21 CFR 1308.11(g), cannabimimetic agents, by adding paragraphs (g)(16) through (18).   These substances should have been proposed to be added in schedule I under 21 CFR 1308.11(d), hallucinogenic substances.   This rulemaking therefore corrects the NPRM by proposing the placement of these substances in 21 CFR 1308.11(d) by adding paragraphs (d)(48) through (50).   Because the DEA is proposing to classify these substances as schedule I hallucinogenic substances, then by operation of 21 U.S.C. 802(14), this classification will include any optical, positional, or geometric isomers.
> See 81 FR 15190.

The alteration of such a classification does not alter, in any way, the analogue status of UR-144, XLR-11, and AKB48.   In order for a substance to be classified as a controlled substance analogue, the substance must meet the elements under 21 U.S.C. § 802 (32)(A).   First, the substance must have a chemical structure which is substantially similar to the chemical structure of a controlled substance in schedule I or II.   Second, the substance must have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; **or** a person represents or intends the substance to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

The requirements under 21 U.S.C. § 802 (32)(A) remain the same and have not changed with the correction in the federal register.   Whether or not a substance is a hallucinogenic or cannabimimetic agent, does not, in any way, alter its status as a controlled substances analogue.   As addressed in McFadden, the Government does not need to prove that a defendant knew the particular identity of the substance.   McFadden,

8

135 S. Ct. at 2305.   Instead, the Government must prove that the defendant knew that the substance he was dealing with was some controlled substance.  Id.   Alternatively, the Government may also prove knowledge by either showing the defendant knew the substance had a chemical structure similar to a controlled substance, and had similar effects to a controlled substance or the defendant represented it to have those effects.

Defendants argue that if DEA does not have the ability to properly classify drugs, there is no way for a citizen to know which substances may or may not fall under the Analogue Act.   As explained in United States v. Klecker, 348 F.3d 69, 72 (4th Cir. 2003), "a reasonable layperson could…have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, [that] the chemical structure of two substances were substantially similar."   Defendants' argument runs counter to the Analogue Act's core purpose: to criminalize analogue drugs without requiring prior notice or scheduling.   United States v. Washam, 312 F.3d 926, 933 (8th Cir. 2002).

## VI.    CONCLUSION

Based on the foregoing, the Government requests that the Court deny the defendants' motions to dismiss.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*s/ Erin Granger*
ERIN GRANGER, #53593MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

9

## **CERTIFICATE OF SERVICE**

   I hereby certify that on June 10, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


                 *s/ Erin Granger*
                 ERIN GRANGER, #53593MO
                 Assistant United States Attorney