## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CR 175 AGF / DDN |
| | ) | |
| MARK PALMER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND RECOMMENDATION
## ON MOTIONS TO DISMISS AND FOR BILL OF PARTICULARS

Before the court are several joint pretrial motions of defendants Mark Palmer, Anthony Palmer, Samuel Leinicke, Charles Wolfe, and Robert Wolfe seeking the dismissal of the indictment (ECF Nos. 181, 182, and 185), and for a bill of particulars (ECF No. 184). The pretrial motions of the parties were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).

The indictment alleges in Count 1 a conspiracy to traffic in controlled substances and controlled substance analogues, in violation of 21 U.S.C. §§ 813 and 846; in Count 2 a conspiracy to introduce and to receive misbranded drugs in interstate commerce, in violation of 18 U.S.C. § 371, and 21 U.S.C. §§ 331, 333, and 352; in Count 3 a conspiracy to launder money, in violation of 18 U.S.C. §§ 1956 and 1957; in Count 4 a conspiracy to import controlled substances and controlled substance analogues, in violation of 21 U.S.C. §§ 952, 960, and 963; and in Count 5 a conspiracy to traffic in smuggled goods, in violation of 18 U.S.C. §§ 371 and 545.

### Motions to Dismiss

Defendants' motions to dismiss make the following arguments:

(a) Count 1 of the indictment is unconstitutionally vague. (ECF No. 181.)

(b) The indictment fails to state an offense, the underlying statutes are unconstitutionally vague, or that certain alleged substances should be stricken from the indictment. (ECF No. 182.)

(c) Count 1 fails to allege the defendants knew the characteristics of the subject substances made them controlled substance analogues. (ECF No. 185.)

Essential Elements of Charged Offenses (ECF Nos. 182, 185)

Generally, to be constitutionally sufficient on its face, the indictment must contain all the essential elements of each offense charged; it must fairly inform each defendant of the charge against which he must defend; and it must allege sufficient information to allow each defendant to plead a conviction or an acquittal as a bar to a future prosecution. U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c)(1); Hamling v. United States, 418 U.S. 87, 117 (l974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001).

Count 1

Defendants argue that Count 1 does not allege all the essential elements of the offense charged. The offense charged is a conspiracy, prohibited by 21 U.S.C. § 846, to violate the Analogue Act, 21 U.S.C. § 813. The essential elements of a § 846 conspiracy are that each defendant (1) knowingly (2) agreed with another (3) to "commit any offense defined in this subchapter" (subchapter I, chapter 13, Title 21, U.S.C.). United States v. Moore, 639 F3d 443, 446-47 (8th Cir. 2011); United States v. Anderson, 2014 WL 11394981 at *1 (E.D. Mo. Sept. 5, 2014); United States v. McMillin, 2015 WL 778866 at *10 (W.D. Mo. Feb. 24, 2015).

Count 1 alleges in part, "the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate . . . to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813." (ECF No. 1, Indictment at 1-2.) Further, Count 1 alleges (a) the period in which the conspiracy existed (from sometime in 2012 to the date of the

2

indictment, June 5, 2014); (b) the identities of the co-conspirators (all six named defendants); and (c) specific facts describing the "Manner and Means of the Conspiracy." (Id. at 1-4.)  Count 1, thus alleges all the essential elements of the charged conspiracy to violate 21 U.S.C. § 813.

More specifically, the Count 1 conspiracy is described as to its manner and means as including, in relevant part,

> B.  MANNER AND MEANS OF THE CONSPIRACY
>
> 2.  It was further part of the drug-trafficking conspiracy that the imported chemicals would often have misleading labels, manifests or declarations regarding contents, in order to avoid detection by law enforcement officers.
>
> * * *
>
> 7.  It was further part of the drug-trafficking conspiracy that the defendants MARK PALMER, ANTHONY PALMER and SAMUEL LEINICKE would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.
>
> 8.  It was further part of the drug-trafficking conspiracy that defendants MARK PALMER, ANTHONY PALMER, SAMUEL LEINICKE, and others would package the synthetic drugs, consisting of controlled substances and controlled substance analogues, into foil packets, in one, one and a half, three, four, five and ten gram quantities, for sale.
>
> 9.  The synthetic products would be consumed primarily by smoking or snorting the substance in order to obtain a "high."
>
> * * *
>
> 11.  It was further part of the drug-trafficking conspiracy that [named synthetic drugs] and other packaged synthetic drugs would be intended for human consumption although they carried "a not for human consumption" label in an attempt to thwart drug-trafficking laws.

(Id. at 3-4.)

Paragraph B6 of the indictment identifies the "controlled substance analogues" alleged to be involved in the defendants' conspiracy:

> a)  (1-Pentyl-3-(1-naphthoyl) indole, also known as "JWH-018;"

      b)      2-Pyrrolidinovalerophenone, also known as "alpha-PVP;"

      c)      N-(1-Adamantyl)-1-pentyl-1-1H-indazole-3-carboxamide, also known as "AKB48" and "APINACA;"

      d)      (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl) methanone, also known as "UR-144;"

      e)      [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropy)methanone, also known as "XLR11" and "5-Flouro-UR-144;"

      f)      Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate, also known as "5F-PB-22."

(Id. at 2-3.)

Defendants argue that Count 1 fails to allege that they knew they were dealing with controlled substance analogues, as they argue is required by McFadden v. United States, 135 S. Ct. 2298, 2302 (2015). McFadden does not support defendant's position, because it did not involve a conspiracy charge, but rather a charge of actual trafficking. 135 S.Ct. at 2305.

For an actual controlled substance analogue trafficking charge under §§ 841(a)(1) and 813, McFadden holds that the government must prove that the defendant "knew that the substance with which [defendant] was dealing was 'a controlled substance,' even in prosecutions involving an analogue." Id. The Court then described the alternative ways in which the government might prove this knowledge of the defendant in a trafficking case. First, "that knowledge requirement is met if the defendant knew that the substance was controlled under the [Controlled Substances Act] or the Analogue Act, even if he did not know its identity." Id. And second, "[t]he knowledge requirement is also met if the defendant knew the specific features of the substance that make it a 'controlled substance analogue.'" Id. (citing 21 U.S.C. § 803(32)(A)).

The McFadden Court restated the knowledge requirement's alternatives thus: (1) the "defendant knew that the substance with which he was dealing is some controlled

4

substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance," id. at 2305, and (2) "the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue . . . , [b]ecause ignorance of the law is typically no defense to criminal prosecution.'" Id.

Count 1 includes allegations that would sustain the McFadden knowledge requirement.  Besides the knowing entry into the charged conspiracy, Count 1 alleges the defendant(s) knew the alleged substance(s) (a) was intended for human consumption (ECF No. 1 Indictment at ¶¶ A, B11); (b) had chemical structure(s) substantially similar to that of a controlled substance (id. at ¶ B6); and (c) either (i) have substantially similar effect on the user's central nervous system as would a controlled substance (id. at ¶ B7), or (ii) were intended by defendant(s) to have such an effect (id. at ¶ B9).

With the elements of the § 846 conspiracy alleged, along with the additional specific factual description of the alleged illegal activity, Count 1 is legally sufficient on its face.

Count 2

Count 2 alleges all the essential elements of the alleged violation of 18 U.S.C. § 371:  (1) one or more defendants (2) knowingly agreed to commit crimes against the laws of the United States, and (3) at least one overt act was committed in furtherance of the agreement.  See 18 U.S.C. § 371; United States v. Christ, 2015 WL 542554, at *4 (W.D. Mo. Feb. 10, 2015).

Further, Count 2 alleges (a) the period in which the alleged conspiracy existed (same as Count 1); (b) the identities of the co-conspirators (all six defendants); (c) the violations of federal criminal laws which were the objects of the alleged conspiracy, i.e., introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); receiving and delivering for pay misbranded drugs in interstate commerce,  in violation of 21 U.S.C. §§ 331(c) and 333(a)(2); and committing acts that resulted in the subject drugs being misbranded, in violation of 21 U.S.C. §§ 331(k) and

333(a)(2); (d) the specific facts describing the "Manner and Means of the Conspiracy," including the incorporation of paragraphs 1-15 of Count 1 and in four more paragraphs; and (e) six overt acts.

## Count 3

Count 3 alleges all the essential elements of the alleged money laundering conspiracy: defendant(s) (1) conspired (2) to conduct a financial transaction, (3) involving the proceeds of unlawful activity, (4) affecting interstate commerce, (5) knowing the subject proceeds involved unlawful activity valued at greater than $10,000, and (6) knowing the financial transaction was designed to conceal the nature, source, location, ownership, or control of the proceeds. See 18 U.S.C. §§ 1956(h) and 1957; United States v. Henry, 325 F.3d 93, 103 (2d Cir. 2003); cf. Eighth Circuit Manual of Model Jury Instructions (Criminal) (2014) § 6.18.1957.

Further, Count 3 alleges (a) the period in which the alleged conspiracy existed; (b) the identities of the co-conspirators; (c) the violations of federal criminal laws which were the objects of the alleged conspiracy, i.e., conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 813; and (d) 14 enumerated paragraphs alleging the specific facts describing the "Manner and Means of the Conspiracy."

## Count 4

Count 4 of the indictment alleges the essential elements of the alleged unlawful controlled substances and controlled substance analogues importation conspiracy: defendants (1) agreed (2) knowingly (3) to import into the United States controlled substances and controlled substance analogues intended for human consumption, as provided in 21 U.S.C. § 813. See 21 U.S.C. §§ 952, 960, 963.

## Count 5

Count 5 alleges the essential elements of the alleged trafficking-after-importation conspiracy: (1) defendants (2) agreed to traffic in or facilitate the transportation of

6

merchandise after its importation, (3) knowing it had been imported into the United States in violation of law because it was merchandise that was imported with a false, forged, or fraudulent invoice or other document or paper, and (4) at least one overt act committed in furtherance of the agreement.  See 18 U.S.C. §§ 545, 371.

Further, Count 5 alleges (a) the period in which the alleged conspiracy existed; (b) the identities of the co-conspirators; (c) the violations of federal criminal laws which were the objects of the alleged conspiracy, i.e., trafficking in transportation of merchandise known to have been imported into the United States with false, forged, or fraudulent papers; and (d) two enumerated paragraphs alleging specific overt acts committed by the defendants.

The allegations of each count of the indictment are legally sufficient on their face.

Constitutionality of the Analogue Act (ECF Nos. 181, 182)

Defendants argue that the indictment is unconstitutionally void for vagueness. (ECF No. 181 at 1), because the Analogue Act, 18 U.S.C. § 813, is unconstitutionally vague.  Count 1 alleges that six defendants conspired to distribute and to possess with the intent to distribute "Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption," in violation of 21 U.S.C. §§ 841(a)(1) and 813.  Counts 3 and 4 and the Forfeiture Allegation allege activity that is criminal in nature due in part to the application of § 813.

The Supreme Court recently described the relevant principles for determining whether a statute is constitutionally infirm for vagueness:

> The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.  The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process."

Johnson v. United States, 135 S. Ct. 2551, 2556-57 (2015) (citations omitted) (ruling the residual clause of the federal Armed Career Criminal Act (ACCA) void for vagueness). More succinctly, as defendants point out:

> "In determining whether a statute is unconstitutionally vague on the facts at hand," the Court applies a two-part test:  1) "the statute must provide adequate notice of the proscribed conduct"; and 2) "the statute must not lend itself to arbitrary enforcement."

(ECF No. 181 at 3) (quoting United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002) (ruling the Analogue Act not void for vagueness)); see also Grayned v. City of Rockford 408 U.S. 104, 108 (1972) (ruling a state antinoise statute not unconstitutionally void on its face for vagueness); United States v. Bamberg, 478 F.3d 934, 937-38 (8th Cir. 2007) (ruling the Analogue Act not unconstitutionally vague).

Defendants argue that the application of the principles underlying the Fifth Amendment's prohibition of vague statutes by the Eighth Circuit in Washam, supra, and in United States v. McKinney, 79 F.3d 105 (8th Cir. 1996) (ruling the Analogue Statute not unconstitutionally vague), judgment vacated on other ground, McKinney v. United States, 520 U.S. 1226 (1997), cannot be reconciled with the ruling of the Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015).  The court disagrees.

In Johnson, the Supreme Court ruled that the "residual clause" definition of "violent felony" in the ACCA as a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague.  In reaching this conclusion, the Court used "the categorical approach" whereby "a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  135 S. Ct. at 2557 (quoting Begay v. United States, 553 U.S. 137, 141 (2008) (involving the ACCA)).  In applying this general, categorical approach, the Court asked whether in the abstract the subject offense involved conduct that presented a risk of physical injury.  Because the enumerated offenses included burglary and extortion, which of themselves do not normally cause

8

physical injury, but rather such might arise after the making of the extortionate demand and after the burglar broke in, the Court believed "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." Id.

In Washam, the Eighth Circuit analyzed the question of whether the Analogue Act's definition of "controlled substance analogue," 21 U.S.C. § 802(32)(A), was unconstitutionally vague. In doing so, it stated the general principles the Supreme Court in Johnson later stated, i.e. that to avoid the constitutional prohibition "the statute must provide adequate notice of the proscribed conduct" and "the statute must not lend itself to arbitrary enforcement," quoting Kolender v. Lawson, 461 U.S. 352, 357-58 (1983). Washam, 312 F.3d at 929. Stating the standard another way, the Washam court stated, "[a] penal statute is void if it does not sufficiently define a criminal offense so that ordinary people can understand what conduct is prohibited. This inquiry looks at what a person of 'common intelligence' would 'reasonably' understand the statute to proscribe, not what the particular defendant understood the statute to mean." Id. at 929-30 (citations omitted).

In Washam the court ruled against the defendant on the adequate notice standard on two grounds. First, it held that the record established that defendant *actually knew* her conduct was illegal. Id. at 930. The "actual knowledge of defendant" finding is of limited constitutional utility for cases where the defendant is *not* shown to have known that his or her action was criminal. On this point, the instant indictment alleges in paragraphs B1, B7 and B11, that the named defendants acted in a way that indicated actual knowledge that their actions violated the law.

The second ground relied on by the court in Washam that the Analogue Act was not void for vagueness is that Congress, in its proposed rules enforcing the Analogue Act, provided specific notice that the charged conduct was illegal:

> When Congress commented that GBL was a chemical analogue to GHB, it also mentioned that 1,4-Butanediol was the same sort of analogue.

9

> If taken for human consumption, GBL and other chemicals, including 1,4-butanediol, are swiftly converted into GHB by the body. Abuse of these and other GHB-like substances is a significant law enforcement and public health problem. GBL and 1,4-butanediol are structurally and pharmacologically similar to GHB and are often substituted for GHB. Under certain circumstances they may satisfy the definition of a controlled substance analogue.
>
> Placement of Gamma-Butyrolactone in List I of the Controlled Substances Act (21 U.S.C. § 802(34)), 65 Fed. Reg. 21645 (April 24, 2000) (codified at 21 C.F.R. § 1310). This piece of explicit notice, in addition to the fact that 1,4-Butanediol turns into GHB in the body and has the same effect as GHB, aids us in concluding that there is sufficient notice that 1,4-Butanediol is a chemical analogue of GHB. See Fisher [(United States v. Fisher, 289 F.3d 1329, at 1336 (11th Cir. 2002)].

Id. at 931.

> The Eighth Circuit restated the second constitutional prong:
>
> Congress must provide minimal requirements to guide law enforcement in order to prevent police officers, prosecutors, and juries from pursuing their "personal predilections." Indeed, the United States Supreme Court has noted:
>
>> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.
>
> United States v. Reese, 92 U.S. 214, 221 (1875).

Id. at 931-32.

The Court of Appeals concluded that the Analogue Act was not subject to arbitrary enforcement, because the statute requires two enforcement steps: (1) a determination that the subject "chemical is substantially similar in chemical structure to a listed chemical," citing 21 U.S.C. § 802(32)(A)(i), and (2) a determination that the suspect "chemical either has the same effect as the listed chemical on the human body, or it is intended to have such an effect," citing 21 U.S.C. § 802(32)(A)(ii), (iii). Id. at 932.

10

On this ground in Washam, defendant's argument that innocent cooking ingredient MSG would be just as prosecutable due to its chemical makeup being similar to GHB did not pass muster because MSG does not have an effect on the human body similar to GHB. Id.

In conclusion, the Washam court stated,

> One of Congress' purposes for passing the Analogue Statute was to prohibit innovative drugs that are not yet listed as controlled substances. However, Congress did not limit the Analogue Statute's application to newly designed drugs. The language of the statute shows that Congress intended to proscribe all drugs that are similar in chemical structure and effect to illegal drugs. We are confident that Congress intended to prohibit use of dangerous substances such as 1,4-Butanediol when it passed the Analogue Statute.

Id. at 933.

Applying the "the categorical approach," this court does not find that the definition of "controlled substance analogue" in the Analogue Act involves an unconstitutionally vague category of prohibited actions that can be defined only after a "wide-ranging inquiry." Section 813 was added to the Controlled Substances Act in 1986 and provides, "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813, PL 99-570 (Oct. 27, 1986). The term "controlled substance analogue" is statutorily defined as follows:

> (32)(A)    Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance--
>
> > (i)    the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> >
> > (ii)    which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> >
> > (iii)    with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or

11

>hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

>* * *

>(C)  Such term does not include--
>   (i)   a controlled substance;

21 U.S.C. § 802(32).

Defendants specifically argue that the application of the Analogue Act's substantial similarity requirement in 21 U.S.C. § 802(32)(A)(i) (that a suspected analogue drug substance's chemical structure be "substantially similar" to a known controlled substance) to some drug substances may be vague, ambiguous, or arbitrary, even if it is easily applied to other drug substances. (ECF No. 181 at 4.) This argument was rejected by the Eighth Circuit in McKinney, 79 F.3d at 108. In that case the court concluded that the "substantially similar" phrase was not unconstitutionally vague.

>In our case, a reasonable layperson could, for example, have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar. At trial, two experts testified that aminorex and phenethylamine were analogues under the statute, and one expert apparently drew diagrams of phenethylamine and methamphetamine for the jury's comparison. We have examined the charts that appellant has submitted and believe that they would have put a reasonable person on notice that the substances in question were substantially similar within the meaning of the statute.

Id.

Further, the allegations in Count 1 of the instant indictment fall easily within the definitions of 21 U.S.C. § 802(32)(ii) and (iii), whereby the subject substance is a "controlled substance analogue" if it has or which an individual person "intends [it] to have[,] a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." These

definitions are not "indeterminate categories" that call for the "wide-ranging inquiry" by the public that was constitutionally rejected by the Supreme Court in Johnson. These are categories that are concretely defined by "the stimulant, depressant, hallucinogenic effect on the central nervous system of a controlled substance."

Defendants argue that, if a "person could reasonably believe that if a substance does not have the effect of a stimulant, depressant, or hallucinogen, then the substance is not an analogue." (ECF No. 181 at 6.) This argument might defend against the government's evidence at trial with respect to the definition of "controlled substance analogue" in § 802(32)(iii), but not to that § 802(32)(ii) that does not depend upon the defendant's specific intent.

The government argues that McFadden v. United States, 135 S. Ct. 2298 (2015), supports its position that §§ 813 and § 802(32) are not constitutionally vague. The Court in McFadden only briefly touched on the vagueness issue, to state generally that its construction of the scienter element of the Analogue Act alleviates vagueness concerns. 135 S. Ct. at 2307; see also United States v. Carlson, 810 F.3d 544, 550-51 (8th Cir. 2016), petition for cert. filed, 84 U.S.L.W. 3529 (U.S. Mar. 9, 2016) (No. 15-1136).

Defendants argue that the Supreme Court's recent ruling in Welch v. United States, 136 S. Ct. 1257 (2016), clarifies its ruling in Johnson by criticizing the "categorical approach" as a method for judicial assessment for whether any statute was unconstitutionally vague. (ECF No. 259 at 2.) Defendants point out the language of the Court that "[t]he vagueness of the residual clause rests in large part on its operation under the categorical approach. The categorical approach is the framework the Court has applied in deciding whether an offense qualifies as a violent felony under the Armed Career Criminal Act." Welch, 136 S. Ct. at 1262.

This court does not discern in Welch a disdain for the "the categorical approach." The Court in Welch also stated, "[i]n the Johnson Court's view, the 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." Id. This court reads Welch as an

13

acknowledgement that under that standard the need to engage in an indeterminate wide-ranging inquiry rendered the residual clause of the ACCA unconstitutionally vague.

The undersigned agrees with the following comment on the constitutionality of the Analogue Act:

> The Act provides substantial guidance, even though it may be difficult to apply in some cases. To convict someone for violating 21 U.S.C. § 841(a)(1) and § 813 by distributing a controlled substance analogue, the government must be prepared to prove knowing distribution of a substance intended for human consumption. The key concepts in the Controlled Substance Analogue Act--substantial similarity of chemical structure and substantial similarity of stimulant, depressant, or hallucinogenic effects--provide significant guidance for both law enforcement and citizens who seek to comply with the law. Those concepts may not provide absolute certainty in every case in which a person seeks to experiment in reaching the outermost boundaries of lawful conduct, but that is not the standard for due process. On its face, the statute gives fair notice to persons of average intelligence of the conduct proscribed. Whether that notice is sufficient must be determined in context, as applied to the facts of a specific case, including the details of the particular compounds in question, in their actual, intended, or claimed effects, and the defendant's conduct regarding those compounds.

United States v. Niemoeller, 2003 WL 1563863, at *4 (S.D. Ind. 2003).

For these reasons, neither 21 U.S.C. § 813 nor § 802(32) are unconstitutionally void for vagueness.

Defendants also argue (ECF No. 182) that the Analogue Act, 21 U.S.C. §§ 802(32) and 813, is unable to be considered separately from 21 U.S.C. § 812(c)(Schedule 1)(d)(2)(A), which defines the term "cannabimimetic agents" as "any substance that is a cannabinoid receptor type 1 (CB1 receptor) agonist as demonstrated by binding studies and functional assays within any of the following structural classes: [describing five structural classes]," including 15 chemically described substances. 21 U.S.C.A. § 812(c)(Schedule 1)(d)(2)(A), Pub. L. 112-144, Title XI, § 1152, 126 Stat. 1130 (the Synthetic Drug Abuse Prevention Act) (eff. July 9, 2012).

Defendants argue that four of the analogues, alleged in the indictment's paragraph B6, are specifically listed among the 15 chemically described substances of §

812(c)(Schedule 1)(d)(2)(A), Defendants argue that, being specifically statutorily listed, they should be analyzed as sharing the same specific structural class as a cannabimimetic agent and they ought not be charged in the indictment under the broader definition of controlled substance analogues ("substantially similar" in chemical structure, see § 802(32)(A)). For this reason, defendants want Count 1 dismissed or at least the four subject substances, APINACA, XLR-11, 5F-PB-22, and UR-144, stricken from the indictment. (ECF No. 182 at 5.)

The undersigned is persuaded by the government's argument that the purposes of 21 U.S.C.A.§ 812(c)(Schedule 1)(d)(2)(A) differ from and do not contradict § 802(32)(A). Merely because the alleged analogues do not share a specific "structural class" for one purpose does not mean they do not have a "substantially similar" chemical structure of a controlled substance. (ECF No. 266.)

The motions to dismiss should be denied.

## Motion for Bill of Particulars

Defendants move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).

> A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite.

United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir. 2002); see also United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009). Pretrial discovery of evidentiary details, however, is not the intended purpose of a bill of particulars. United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). The court has broad discretion in granting or denying a bill of particulars. United States v. Sileven, 985 F.2d 962, 966 (8th Cir. 1993).

Defendants argue that the indictment alleges they dealt with controlled substance analogues, "including but not limited to" six chemically described substances. (ECF No.

15

1 ¶ B6.)   Defendants correctly state that the government's pretrial disclosure of information in this case is very large and that, in the four similar, related indictments (Nos. 4:14 CR 150, 4:14 CR 152, 4:14 CR 187, and the instant case) some twenty asserted controlled substance analogues have been disclosed but without specification of which would be evidenced against them at trial.

The undersigned agrees that, in a chemically-involved case such as this, which will likely involve the testimony of expert witnesses for both sides, to avoid unfair surprise at trial, defendants ought to know whether any other substances will be evidenced at trial that would qualify as being in the indefinite "including-but-not-limited-to" allegation.   Therefore, the government must disclose to the defense any such substances.

Defendants argue they are entitled to know which of the six alleged analogues, see ECF No. 1 at ¶ B6, will be evidenced specifically against them individually.  In the context of the conspiracy nature of Count 1, the court considers the indictment as alleging that the conspiracy involved all six of the described controlled substance analogues.  By this request, defendants seek evidentiary detail that is not the proper function of a bill of particulars.

Defendants seek the identities of the scheduled controlled substances of which each of the at least six substances are controlled substance analogues.  Again, given the very chemistry-technical nature of the case, the undersigned agrees with defendants that to fairly prepare to meet the government's technical-expert evidence at trial, they ought to be informed as to what controlled substance(s) the alleged substances are analogues.  The government argues that the court has not yet set a deadline for expert disclosures in this case.  For this reason, it argues it is premature to require disclosure of its expert opinions about "which controlled substances are comparable to the charged analogues," but it "anticipates that in accordance with the Court's trial orders, it will provide defendants with notice, through the preliminary declarations of DEA experts, of the comparable controlled substances for all analogues charged in the indictment."  (ECF No. 192 at 21.) The undersigned agrees that this information ought to be provided to the defendants

reasonably in advance of trial to allow the defendants a fair opportunity to defend against the allegations in the indictment. This disclosure will be taken up at an appropriate pretrial status hearing.

Defendants also seek the dates on which the alleged analogue substances were "'emergency' scheduled" as controlled substances, and the dates on which each of the alleged analogues was unlawfully possessed or distributed. This information is pretrial evidentiary detail that a bill of particulars is not intended for.

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants for a bill of particulars (ECF No. 184) is sustained in that within 14 days the government must disclose to the defendants the chemical or other identity of any controlled substance analogue, not already specifically alleged in the instant indictment, about which it intends to offer evidence at trial. The disclosure of the respective controlled substance(s) to which each of the alleged analogues will be evidenced at trial as "substantially similar" will be taken up at an appropriate pretrial status hearing. In all other respects, the motion for a bill of particulars is denied.

**IT IS HEREBY RECOMMENDED** that the motions of the defendants to dismiss the indictment (ECF Nos. 181, 182, and 185) be denied.

The parties have until August 4, 2016 to file documentary objections to this Order and Recommendation. Failure to file timely, documentary objections may waive the right to appeal issues of fact.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 19, 2016.