UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   )     No. 4:14CR00175 AGF (DDN)
MARK PALMER,                       )
SAMUEL LEINICKE,                   )
CHARLES WOLFE, a/k/a "Chuck Wolfe,"  )
and ROBERT WOLFE.                  )
                                   )
            Defendants.            )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and James C. Delworth, Jennifer Winfield, and Erin Granger, Assistant United States Attorneys for said District, and files its Response to Defendant's Objections to Order and Recommendation on Motions to Dismiss and for Bill of Particulars of the United States Magistrate Judge.

**I.      PROCEDURAL BACKGROUND**

On October 8, 2015, Defendants[1] filed a joint motion to dismiss the indictment as unconstitutionally void for vagueness (Doc #181), a motion to dismiss count one of the indictment on the grounds that it fails to state an offense and that 21 U.S.C. §§ 813 and 802 (32)(A) are unconstitutionally vague (Doc #182), a motion for bill of particulars (Doc #184), and

---

[1] Anthony Palmer was also charged in this indictment.   On October 5, 2015, Anthony Palmer filed a waiver of motions.   Joseph Gabrick was also charged in this indictment.   On May 26, 2016, Joseph Gabrick filed a waiver of motions and entered a guilty plea.

a motion to dismiss count one with memorandum in support (Doc #185).   The United States filed its omnibus response in opposition (Doc #192).   On March 8, 2016, Defendants filed a motion for a hearing pursuant to Franks v. Delaware and a motion to suppress evidence (Docs #224 and #225).   The Government filed its response on May 17, 2016 (Docs #242 and 243). On May 27, 2016, United States Magistrate Judge David D. Noce held an evidentiary hearing on the motion for Franks hearing and motion to suppress.   Following, Defendants requested, and were given permission, to file supplemental briefing on their motion to dismiss.   Defendants filed their memoranda on June 3, 2016 (Docs #259 and 260).   On June 10, 2016, the Government filed its response (Doc #266).

On July 19, 2016, the Magistrate Judge issued its Order and Recommendation on Motions to Dismiss and Bill of Particulars.   In its order, Magistrate Judge David D. Noce recommended that Defendants' motions to dismiss the indictment be denied.   Magistrate Judge Noce ordered the Government to disclose to the defendants the identity of all the controlled substance analogues not listed in the indictment that the Government intended to offer as evidence at trial.   Magistrate Judge Noce however, denied Defendants' other request for bill of particulars.   The Government complied with this order and disclosed the identity of these controlled substance analogues on August 3, 2016 (Doc #277).   On August 18, 2016, Defendants filed an Objection to the Report and Recommendations (Doc #282).

II.   **LEGAL ANALYSIS**

This Court should adopt the recommendations of the Magistrate Judge.   In response to Defendant's objections, the government relies on the record developed before and laid out by the Magistrate Judge in his Report and Recommendation.   The Government incorporates its response to Defendants' Motions to Dismiss and for Bill of Particulars and supplements its

2

response as follows:

A. **The Magistrate Judge correctly found that Count I of the Indictment contains all of the elements of the offense**

Defendants argue that Count One should be dismissed because the indictment does not contain the knowledge element required under McFadden v. United States, 135 S. Ct. 2298 (2015). Defendants maintain that the indictment fails to allege that the defendants had knowledge that the substances they possessed were scheduled or analogues of scheduled drugs. The Magistrate Court was correct in determining that Count One of the indictment included allegations which sustain the McFadden requirement.

Recently, the Eighth Circuit decided United States v Carlson, 810 F.3d 544 (8th Cir. 2016). In Carlson, the court addressed the holding of McFadden and its impact on the Analogue Act. McFadden requires the Government prove that the defendant have some knowledge that he was distributing a controlled substance analogue. The court noted that under McFadden, the government may prove a defendant knowingly distributed a controlled substance analogue in two ways. First, the government may show that the defendant knew that the substance he was dealing with was controlled, *i.e.* listed on the federal drug schedules or treated as such through the Analogue Act. Second, the government could prove knowledge by demonstrating that the defendant knew that the analogue he was dealing with had a chemical substance that was substantially similar to a controlled substance, and that analogue had similar effects to a controlled substance or was represented to have those same effects. Id. at 550. This requirement of knowledge is a question for the trier of fact and one that must be proven by the Government at trial.

In applying the requirement of knowledge under the Analogue Act, the Carlson court

noted that the Analogue Act is not unconstitutionally vague "because the statute's 'knowingly or intentionally' scienter requirement alleviates vagueness concerns by 'narrow[ing] the scope of its prohibition, and limit[ing] prosecutorial discretion.'"   Id. at 550-51 (quoting McFadden, 135 S. Ct. at 2307.

Count One of the Indictment complies with McFadden because the Government has charged the defendants with "*knowingly* and unlawfully" conspiring with each other and other persons to distribute and possess with the intent to distribute Schedule I controlled substances and controlled substance analogues intended for human consumption.   Doc #2, emphasis added. Additionally, the indictment sets out a manner and means of the conspiracy section which also addresses knowledge.   Specifically, paragraph 7 provides that,

> It was further part of the drug-trafficking conspiracy that the defendants MARK PALMER, ANTHONY PALMER and SAMUEL LEINICKE would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

Additionally, paragraph 11 states,

> It was further part of the drug-trafficking consprracy that "Avalon," "Bizarro," "Black Arts," "Bunker Buster," "Devil's Dank," "Dirty Dirt Devil," "Freedom," "Full Throttle," "Grave Digger," "Golden Leaf," "Head Trip," "Lights Out," "Mad Hatter," "Vortex," and other packaged synthetic drugs would be intended for human consumption although they carried "a not for human consumption" label in an attempt to thwart drug-trafficking laws.

To the extent the Defendants are suggesting a pleading defect in the Indictment, it should be noted that "[a]n indictment adequately states an offense if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."   United States v. Mann, 701 F.3d 274, 288 (8th

4

Cir. 2012) (internal quotations omitted).   "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."   Id. at 288.   "An indictment is normally sufficient if its language tracks the statutory language."   United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008); see also Hamling v. United States, 418 U.S. 87, 118–19 (1974).   It is also true however, that an "indictment need not use the specific words of the statute, so long as 'by fair implication' it alleges an offense recognized by law."   United States v. Villarreal, 707 F.3d 942, 957 (8th Cir. 2013) (internal quotation omitted).   Count One of the Indictment complies with pleading requirements.   The Indictment includes the elements of the offense and fairly informs the defendant of the charges.   Additionally, the Indictment provides details of the case against the defendants and their conduct of knowingly violating controlled substance laws.

Defendants argument appears to be a request to dismiss the Indictment based on allegations that there is insufficient evidence to support the charges against them.   It is improper however, to seek the pre-trial dismissal of the Indictment based on allegations of insufficient evidence, or based on the submission by defendants of disputed facts, via affidavit or testimony, at the pretrial motions hearing.   See United States v. Louper-Morris, 2009 WL 5030771 at *6-7 (D. Minn. Dec. 14, 2009) aff'd 672 F.3d 539 (8th Cir. 2012) (denying defendant's pretrial motion to dismiss the indictment, which defendant based on disputed facts submitted to the Magistrate Judge via affidavit at the pretrial motions hearing; ruling that "[a]t the [pre-trial motions] stage of the case, defendants' attempt to challenge the Indictment based on disputed facts is inappropriate."); see also Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989) ("[o]nly a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment, gives rise to the constitutional right not to be

5

tried"); Costello v. United States, 350 U.S. 359, 363–64 (1956) ("Petitioner urges that this Court ... establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence.   No persuasive reasons are advanced for establishing such a rule.   It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules.") ("Insufficient evidence is not a basis for dismissal of a facially valid indictment").

Thus, to the extent that any of Defendants arguments seeking to dismiss the indictment require the Court to inquire into the Grand Jury or resolve issues that will be resolved by the jury, those arguments should be rejected and the motion to dismiss be denied.   There is "no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case... the government has no duty to reveal all of its proof before trial."   United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995).   Accordingly, the defendants' objections should be overruled.

B. **The Magistrate Judge properly found that the Indictment is not unconstitutionally void for vagueness under United States v. Johnson, 135 S. Ct. 2551 (2015)**

Defendants argue that the Analogue Act is unconstitutional because it is void for vagueness.   Specifically, Defendants argue that the term "substantially similar" is ambiguous and vague.   The Magistrate Court was correct in concluding that Count One of the Indictment is not void for vagueness.

"There is a two-part test to determine whether a statute is void for vagueness.   The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement."   United States v. Bamberg, 478 F.3d 934, 937-38 (8th Cir. 2007) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).   In evaluating a statute under the "void

6

for vagueness" doctrine, the Court's starting point should be the "presumptive validity of the statute."  United States v. Ghane, 673 F.3d 771, 777 (8th Cir. 2012).   Where a vagueness argument "swims against… case law's current" courts should "construe, not condemn, Congress' enactments."  Skilling v. United States, 130 S.Ct. 2896, 2928 (2010).   The void for vagueness "inquiry looks at what a person of 'common intelligence' would 'reasonably' understand the statute to proscribe, not what the particular defendant understood the statute to mean."  United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002).

A mere "difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness.... Impossible standards of specificity are not required."  Jordan v. De George, 341 U.S. 223, 231 (1951).   Rather, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."   United States v. Williams, 553 U.S. 285, 306 (2008).

Previously, courts in the Eighth Circuit have been faced with constitutional vagueness challenges to the Analogue Act.   The Eighth Circuit has consistently found the Analogue Act to be constitutional and not void for vagueness.   See, e.g., United States v. Berger, 553 F.3d 1107, 1110 (8th Cir. 2009) ("the statute is not unconstitutionally vague"); Washam, 312 F.3d at 926; United States v. Orchard, 332 F.3d 1133, 1138 (8th Cir. 2003) ("the statute is not void for vagueness").   Support for the Eighth Circuit exists almost uniformly among other circuits. Other courts of appeals "considering this issue have unanimously held that the CSA's Analogue Provision is not unconstitutionally vague."  United States v. Turcotte, 405 F.3d 515, 531 (7th

Cir. 2005); United States v. Ansaldi, 372 F.3d 118, 122 (2nd Cir. 2004); United States v. Roberts, 363 F.3d 118, 125 (2nd Cir. 2004); United States v. Raymer, 941 F.2d 1031, 1045-46 (10th Cir. 1991); United States v. Fisher, 289 F.3d 1329 (11th Cir. 2002); United States v. Roberts, 363 F.3d 118, 127 (2nd Cir. 2004); United States v. Klecker, 348 F.3d 69, 71-72 (4th Cir. 2003) United States v. Desurra, 865 F.2d 651, 653 (5th Cir. 1989); United States v. Hofstatter, 8 F.3d 316, 321 (6th Cir. 1993; and United States v. Fisher, 289 F.3d 1329, 1339 (11th Cir. 2002), cert. denied, 537 U.S. 1112 (2003).

Despite the existing case law, Defendants contend that the holding in United States v. Johnson requires this Court to conclude that the Analogue Act is unconstitutional.   As a result, they maintain that Count One of the Indictment must be dismissed.

Defendants' comparison to Johnson is inapposite because neither of the "two features of the residual clause [that] conspire to make it unconstitutionally vague," See Johnson 135 S. Ct. at 2557, are present in this prosecution.   The first reason the Supreme Court found the residual clause unconstitutional in Johnson was that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime.   It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."   Id. at 2557. The Analogue Act however creates no grave uncertainty.   The Analogue Act *does not* tie conviction to some judicially imagined ordinary cases of crime or even drug distribution; to the contrary, it *does* tie the assessment of risk to "real-world facts or statutory elements."   Indeed, the Controlled Substance Act defines the term "controlled substance analogue" to be a substance: the Act defines a controlled substance analogue as a substance:

    (i)      the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

8

    (ii)     which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

    (iii)    with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect  on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

Defendants claim that the "categorical approach" as applied to the Analogue Act creates vagueness and ambiguity.   Specifically, Defendants argue that both (ii) and (iii) as outlined above, contain categories which create ambiguities.   Defendants argue that although (i) and (ii) discuss a stimulant, depressant, or hallucinogenic effect, there are seven categories of controlled substances which do not fit into those three categories.   In support of their argument, Defendants cite to a manual drafted by the American Prosecutors' Research Institute.   See http://www.ndaajustice.org/pdf/drug _evaluation_classification_dec.pdf.   This manual however, was drafted to educate individuals about impaired drivers and the use of a Drug Recognition Expert (DRE) who can recognize impairment of a driver who has ingested drugs.   This literature does not define substances in specificity as found under 21 U.S.C. § 802 which contains the definitions used federal statutes.   Moreover, Defendant ignores the complete language of 21 U.S.C. § 802(32) and the requirements which must be met in order for a substance to qualify as a controlled substance analogue.

9

In the manual, the Institute advances that there are seven categories of drugs.   The manual notes that drugs can be categorized or classified according to effects.   Id. at 6.   These classifications for drugs include depressants, stimulants, hallucinogens, PCP, narcotic analgesics, inhalants, and cannabis.   This manual does not address the Scheduling of these substances or provide detailed definitions of the substances.   Additionally, this manual is not intended to be a comprehensive guide to federal narcotics laws.

In order to determine whether conduct involving a controlled substance violates federal law, we are governed by Title 21 of the United States Code.   Among the subchapters of Title 21, Section 812 lists the Schedules of Controlled Substances which is important when making a determination on whether prong (i) of 21 U.S.C. § 802(32) is met.   21 U.S.C. § 812 lists all of the Schedules for controlled substances and designates which controlled substances fall into each Schedule.   Included among these controlled substances is phencyclidine, which is commonly known as PCP.   Under 21 U.S.C. 812, PCP is a Schedule II drug.   Thus, the fact that it is listed under a different category in Defendants' literature is of no importance.   It is a schedule II drug and as such, if a substance is substantially similar to the chemical structure of PCP and has a stimulant, depressant, or hallucinogenic effect on the central nervous system or is proposed to have such an effect, then it may qualify as a controlled substance analogue.   Alternatively, if a substance's chemical structure is substantially similar to Paraldehyde which is a Schedule IV substance, it would not meet the definition of a controlled substance analogue because it is does not meet prong (i) of 21 U.S.C. § 802(32) which requires, "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II."

Contrary to Defendants' assertion, an analogue of marihuana may be prosecuted under 21 U.S.C. § 802(32).   Marihuana is a Schedule I controlled substance.   If a substance is

10

substantially similar to the chemical structure of marihuana and has a stimulant, depressant, or hallucinogenic effect on the central nervous system or is proposed to have such an effect, then it may qualify as a controlled substance analogue of marihuana.   It is of no consequence that the American Prosecutor's Institute's manual categorizes marihuana in a separate category from stimulants.   Under 21 U.S.C. § 802 (32), we look at whether the substance has a stimulant, depressant, or hallucinogenic effect on the central nervous system similar to marihuana.

The Government avers there are no ambiguities in the Analogue Act's definition of a controlled substance analogue.   In order for a substance to qualify as an analogue, the substance **must** meet the first criteria established in (i) and one of the two categories outlined in (ii) and (iii).   Thus, if a substance is not substantially similar to the chemical structure of a controlled substance in schedule I or II and does not have a stimulant, depressant, or hallucinogenic effect on the central nervous system or is not proposed to have such an effect, then it is not a controlled substance analogue.   There is no ambiguity in this language.

Defendants face prosecution because real-world facts brought their conduct within the statutory elements of the Analogue Act.   The Government requests that this Court adopt the recommendation and reasoning presented by Magistrate Judge Noce.   Magistrate Judge Noce was correct in concluding that the general principles advanced by Johnson are not novel. Indeed, as Magistrate Judge Noce pointed out, Washam, 312 F.3d at 929 previously stated that "the statute must not lend itself to arbitrary enforcement."   In Washam, the Eighth Circuit concluded that the definition of "controlled substance analogue" under the Analogue Act was not unconstitutionally vague.   Id. at 930.   In reaching its conclusion, the Eighth Circuit noted that the defendants had actual knowledge of the illegality of their conduct and the Analogue Act had provided specific notice that the conduct was illegal.   Id.

11

On a related note, in <u>Johnson</u>, the Supreme Court next found that "it is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined abstraction." <u>Id.</u> at 2558.   That did not happen in this indictment.   This case involves no application to any judge-imagined abstraction of anything.   At worst, the case involves the application of common sense to the definition of "substantially similar."   This alone does not necessarily render the statute unconstitutionally vague.

Further, in arguing that <u>Johnson</u> renders the "substantially similar" language in the Analogue Act unconstitutionally vague, Defendants ignore that <u>Johnson</u> expressly states that its ruling does not render other laws with such terms vague:

> The Government and the dissent next point out that dozens of federal and state criminal laws use terms like "substantial risk," "grave risk," and "unreasonable risk," suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt.   *Not at all*. … As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; *the law is full of instances where a man's fate depends on his estimating rightly ... some matter of degree*.

<u>Id</u>. at 2561 (emphasis added) (citations and quotations omitted).

"Substantially similar" is not vague for the same reasons that all laws containing language like "substantial risk" are not vague post-<u>Johnson</u>.   <u>Cf</u>. <u>id</u>.   As a result, the defendants' objections should be overruled.

> ### C.   The Magistrate Judge properly found that 21 U.S.C. § 812 and 21 U.S.C. § 802(32)(A) are not constitutionally vague and in conflict with one another

Defendants object to the Magistrate Judge's conclusion that 21 U.S.C. § 813 and 21 U.S.C. § 802(32)(A) do not conflict with one another.   Defendants maintain that prosecution does not lie under the Analogue Act with respect to a substance which is alleged to be a controlled substance analogue of one of the cannabimimetic agents included under 21 U.S.C. §

812(c)(d)(2)(B).   The Magistrate Court properly found that the 21 U.S.C. § 812 and 21 U.S.C. § 802(32)(A) do not conflict with one another.   The Government urges this Court to adopt that finding.

As discussed in the Government's Response to Defendants' Motions to Dismiss and Motion for Bill of Particulars (Doc #192), the Controlled Substance Analogue Enforcement Act of 1986 (hereinafter "CSAEA") was passed in order to address a deficiency in federal drug law that criminalizes dangerous drugs by establishing "schedules" of such drugs.   By prohibiting trafficking only in specifically identified controlled substances, the Controlled Substances Act provides opportunities for "underground chemists who tinker with the molecular structure of controlled substances to create new drugs that are not scheduled."   United States v. Forbes, 806 F. Supp. 232, 236 (D. Colo. 1992).   Before the CSAEA, unlawful conduct with regard to drug trafficking was tied to "precise chemical definitions," and "law enforcement authorities ha[d] long found themselves at least one step behind drug dealers who possess certain rudimentary scientific abilities."   S. Rep. No. 99-196, at 1 (1985).

Accordingly, the CSAEA was designed to "prohibit persons who specifically set out to manufacture or to distribute drugs which are substantially similar to the most dangerous controlled substances from engaging in this activity."   Forbes, 806 F. Supp. at 235 (quoting S. Rep. No. 99-196, at 5 (1985)).   See, e.g., United States v. Turcotte, 405 F.3d 515, 526 (7th Cir. 2005) ("[N]ew designer drugs are often created as alternatives to known illegal drugs precisely because they may be sold with an appearance of legality.   Unable to keep its controlled substance schedules current in the face of accelerating innovations in drug technology, Congress enacted the Analogue Provision to target distribution of just such substances."), abrogated on other grounds in McFadden, supra.

13

The CSAEA makes clear that a substance can be either a "controlled substance" under the CSA by virtue of inclusion on a schedule, or a "controlled substance analogue," as defined in 21 U.S.C. § 802(32)(A), but cannot be both.   21 U.S.C. § 802(32)(C)(i) (providing that the term "controlled substance analogue" does not include "a controlled substance").   A substance that meets the definition of a "controlled substance analogue" however, can be temporarily or permanently placed on a controlled substance schedule, converting it into a "controlled substance."   For example, after the inception of the conspiracy charged in Count One, some of the substances alleged in that count were temporarily added to schedule I as controlled substances.   See 78 Fed. Reg. 28735 (5/16/13) (notice of temporary scheduling of XLR11, AKB48, and UR-144); 79 Fed. Reg. 7577 (2/10/14) (notice of temporary scheduling of PB-22 and 5F-PB-22).

On July 9, 2012, The Synthetics Drug Abuse Prevention Act of 2012 (hereinafter "SDAPA" was passed).   SDAPA principally made two changes to the list of schedule I controlled substances in 21 U.S.C. § 812(c).   First, it added a class of substances to schedule I including "any material, compound, mixture, or preparation which contains any quantity of cannabimimetic agents, or which contains their salts, isomers, and salts of isomers."   It defined the term "cannabimimetic agents" by its effect on the brain and its structural class.   Id. at (d)(2)(A).   Second, it added a list of fifteen named substances that qualify as cannabimimetic agents under that definition to schedule I.   Id. at (d)(2)(B); see generally Congressional Research Service summary of SDAPA, available at https://www.govtrack.us/congress/bills/112/s3190/summary (summarizing the new legislation as amending "the Controlled Substances Act to add as schedule I controlled substances: (1) any material, compound, mixture, or preparation which contains specified cannabimimetic agents (or

14

the salts, isomers, or salts of isomers thereof); and (2) specified additional hallucinogenic substances (or the salts, isomers, or salts of isomers thereof).").

More specifically, SDAPA defines "cannabimimetic agents" to mean:

any substance that is a cannabinoid receptor type 1 (CB1 receptor) agonist as demonstrated by binding studies and functional assays within any of the following structural classes:

(i) 2-(3-hydroxycyclohexyl)phenol with substitution at the 5-position of the phenolic ring by alkyl or alkenyl, whether or not substituted on the cyclohexyl ring to any extent.

(ii) 3-(1-naphthoyl)indole or 3-(1-naphthylmethane)indole by substitution at the nitrogen atom of the indole ring, whether or not further substituted on the indole ring to any extent, whether or not substituted on the naphthoyl or naphthyl ring to any extent.

(iii) 3-(1-naphthoyl)pyrrole by substitution at the nitrogen atom of the pyrrole ring, whether or not further substituted in the pyrrole ring to any extent, whether or not substituted on the naphthoyl ring to any extent.

(iv) 1-(1-naphthylmethylene)indene by substitution of the 3-position of the indene ring, whether or not further substituted in the indene ring to any extent, whether or not substituted on the naphthyl ring to any extent.

(v) 3-phenylacetylindole or 3-benzoylindole by substitution at the nitrogen atom of the indole ring, whether or not further substituted in the indole ring to any extent, whether or not substituted on the phenyl ring to any extent.

21 U.S.C. § 812(c)(d)(2)(A).

The amendment further provides that the term "cannabimimetic agents," so defined, includes fifteen (15) substances, which were added to schedule I.   21 U.S.C. § 812(c)(d)(2)(B). JWH-018, JWH-073, JWH-250, JWH-122, and AM-2201 were among the synthetic cannabinoids included as cannabimimetic.   These are all controlled substances found in Schedule I.   Although this legislation codified some substances as Schedule I controlled substances, it did not replace the

necessity of the Analogue Act.

This SDAPA legislation -both the definition of "cannabimimetic agents" and the list of named substances- has no bearing at all on this case.   Defendants' argument that Count One of the Indictment fails to state and offense is based on a mischaracterization.   In making their argument, defendants state that, "the Indictment alleges that four (4) out of the six (6) substances listed in Count I are 'controlled substance analogues' of specific 'cannabimimetic agents' listed under 21 U.S.C. 812(c)(d)(2)(B)."   See Doc #182, p. 4.   The defendants list these substances as "AKB48" and "APINACA,[2]" "XLR-11" and "5 flouro-UR-144,[3]" "UR-144,[4]" and "5F-PB-22.[5]" Doc #182, pp. 4-5.

Count One of the Indictment charges the defendants with conspiring to distribute and possess with intent to distribute Schedule I controlled substances and controlled substance analogues intended for human consumption.   The Government expects its evidence at trial will demonstrate that all of the substances listed in the indictment were analogues intended for human consumption or controlled susbtances.   As noted above, (a) a controlled substance analogue cannot be a controlled substance; and (b) cannabimimetic agents, by virtue of their inclusion on schedule I as a result of the SDAPA, are, by definition, schedule I controlled substances.

There is no conflict in the statutory scheme as a result of the definition of "cannabimimetic agents" differing from the definition of controlled substance analogue under 21 U.S.C. § 802(32)(A).   Indeed, those substances which fit the definition of "cannabimimetic

---

[2]  The full chemical name of these substances is N-(1-Adamantyl)-1-pentyl-1H-indazole-3-carboxamide.
[3]  The full chemical name of these substances is [1-(5-Fluoro-pentyl)1H-indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone.
[4]  The full chemical name of this substance is (1-Pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone.
[5]  The full chemical name of this substance is Quinolin-8-yl 1-(5-fluoropentyl)-1H-indole-3-carboxylate.

agents" are controlled substances, not controlled substance analogues.

Four substances identified in Count One of the Indictment are not cannabimimetic agents. *See* 79 Fed. Reg. 7577 (2/10/14) (noting that 5F–PB–22 is among one of the four synthetic cannabinoids "along with UR-144, XLR11 and AKB48, [that] were not included among the 15 specific named synthetic cannabinoids, and do not fall under the definition of cannabimimetic agents, under FDASIA."

Defendants' motion incorrectly states that "Count I of the Indictment alleges that substances are 'controlled substance analogues' of specific 'cannabimimetic agents' listed under 21 U.S.C. 812(c)(d)(2)(A)."   Doc #182, pp. 4-5.   To the contrary, Count One of the Indictment contains no such language.   Count One includes six substances as having been substances involved in a conspiracy to distribute and possess with intent to distribute Schedule I controlled substances and controlled substance analogues intended for human consumption.   Among these six substances are the four substances targeted in Defendants' motion.   Defendants' motion which contains language linking these substances to the term "cannabimimetic agents" does not appear anywhere in the Indictment.   Even accepting Defendant's argument, the Government notes that there is no authority which requires that Defendants' conduct must only be analyzed under 21 U.S.C. § 812(c)(d)(2)(A) as opposed to 21 U.S.C. § 802(32)(A).   Indeed, 21 U.S.C. § 802(32)(A) is the framework for proving whether a substance is a controlled substance analogue. 21 U.S.C. § 812(c)(d)(2)(A) is merely the treatment of certain substances, including cannabimimetic agents, under Schedule I.   The two sections do not contradict each other.

Defendants raised the argument that many of the analogues charged do not share the same structural class of JWH-018 and as a result, cannot be deemed to be an analogue of JWH-018.   This is not the test for determining whether a substance meets the definition of a controlled

17

substance analogue.   What is required under the Analogue Act is that the substance contain a chemical structure which is *substantially similar* to the chemical structure of JWH-018.   To adopt Defendants' reasoning that these substances must share the exact same structural class defeats the purpose of the Analogue Act.

Count One is legally sufficient to charge the defendants with a conspiracy to traffic in controlled substance analogues.   As addressed by the Magistrate Judge, an indictment need only be "a plain, concise, and definite written statement of the essential facts constituting the offense charged...."   Fed. R. Crim. P. 7(c)(1).   Count I of the Indictment in this case complies with Fed. R. Crim P. 7(c) and Defendants' objection should be overruled.

**IV.   The Magistrate Judge properly found that the defendants are not entitled to a bill of particulars on the identity of scheduled controlled substances and the date range the substances were possessed**

In its Report and Recommendation, the Magistrate Judge ordered the Government to disclose the identity of any controlled substance analogue not listed in the indictment that the Government intends to present at trial.   The Government has complied with this request. Additionally, the Magistrate Court advised that the disclosure of the respective controlled substances that each of the analogues is substantially similar to will be addressed at a pretrial hearing.   Lastly, the Magistrate Court recommended that a bill of particulars be denied as to the dates the analogues were emergency scheduled, the range of dates as to which analogue was distributed or possessed with intent to distribute, and the identity of each defendant who is encompassed in that date range.   Defendant objects to the Magistrate Judge's findings. Defendants maintain that their request is necessary to inform the defendants of the nature of the charges and avoid surprise at trial.

The Magistrate Judge correctly noted that under Federal Rule of Criminal Procedure 7(f),

"A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite."   It is not the purpose of a bill of particulars to provide the defendant with evidentiary detail or discovery regarding the government's case.   United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990); United States v. Hill, 589 F.2d 1344, 1352 (8th Cir.), cert. denied, 442 U.S. 919 (1979).

In addition to the Indictment in this case, the Government has provided discovery to the defendants which contains in excess of 1,000,000 pages.   This discovery includes police reports, lab reports, search warrants, information generated from multiple electronic devices, as well as various seized documents.   Additionally, the Government has identified all of the substances it plans to introduce as evidence against the defendants at trial.   The information sought by Defendants, namely, the dates when certain substances were emergency scheduled, are public records and the Government is not obligated to provide such information.

With respect to the request to order the Government to disclose the specific controlled substances to which the analogues will be compared to at trial, there is no case law or other supporting authority which requires the Government to do this as part of discovery.   Moreover, as found by the Magistrate Judge, this request is premature.   To date, the Court has not set a deadline for expert disclosures in this case.   Thus, the United States has not yet been under any obligation to disclose the opinions of its expert witnesses regarding which controlled substances are comparable to the charged analogues.   The Government anticipates that in accordance with the Courts' trial orders, it will provide defendants with notice of the comparable controlled substances for all analogues charged in the Indictment.

19

Defendant's additional request, such as the dates when the defendants engaged in illegal conduct, can be found in the discovery provided by the Government.   Such discovery includes dated police reports, search warrants, lab reports, and records.   Based on the pretrial disclosure of discovery, Defendants cannot claim any lack of preparation or unfair surprise.   Thus, Defendants' objection to the Magistrate Court's ruling on a Bill of Particulars should be overruled.

## VI.   <u>CONCLUSION</u>

This Court should adopt the recommendations of the Magistrate Judge.   The Government notes that the Magistrate Judge carefully considered the arguments in this case and accurately applied existing case law and statutes.


Respectfully submitted,


RICHARD G. CALLAHAN
United States Attorney

*s/ Erin Granger*
ERIN GRANGER, #53593MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


*s/ Erin Granger*
ERIN GRANGER, #53593MO
Assistant United States Attorney